UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE ARCHDIOCESE OF MILWAUKEE SUPPORTING FUND INC., On Behalf of Plaintiff and All Others Similarly Situated,<br><br>    Plaintiff,<br><br>vs.<br><br>INVESTORS FINANCIAL SERVICES CORP., KEVIN J. SHEEHAN, MICHAEL F. ROGERS, ROBERT D. MANCUSO, EDMUND J. MARONEY, AND JOHN N. SPINNEY, JR.,<br><br>    Defendants. | Case No. 1:05-cv-11627-RCL |
| ROBERT FAUSSNER, Individually and on Behalf of All Others Similarly Situated<br><br>    Plaintiff,<br><br>vs.<br><br>INVESTORS FINANCIAL SERVICES CORP., KEVIN J. SHEEHAN, MICHAEL F. ROGERS, JOHN N. SPINNEY, JR., ROBERT D. MANCUSO, EDMUND J. MARONEY,<br><br>    Defendants. | Case No.: 1:05-cv-11687-RCL |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF THE IFIN INVESTORS GROUP TO CONSOLIDATE ACTIONS, TO BE APPOINTED LEAD PLAINTIFF AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF CO-LEAD COUNSEL AND LIAISON COUNSEL**

**I.    PRELIMINARY STATEMENT**

Investor's Financial Services Corp. ("IFIN" or the "Company") investors The Archdiocese of Milwaukee Supporting Fund, Inc., and John J. Nuttall Jr. (the "IFIN Investors Group" or "Movants") have losses totaling approximately $7,901.80 as a result of their investments in IFIN.[1]  Accordingly, the IFIN Investors Group is believed to have suffered the largest financial loss of any other movant and, as such, has the largest financial interest in the outcome of this litigation.  As the most adequate plaintiff, as defined by Private Securities Litigation Reform Act of 1995 ("PSLRA"), the IFIN Investors Group hereby moves for appointment as lead plaintiff of a proposed class of persons or entities who purchased or acquired the securities of IFIN between October 15, 2003, and July 15, 2005, inclusive (the "Class Period").

**II.    INTRODUCTION**

The above-captioned actions (the "Related Actions") are securities purchaser class action lawsuits that have been brought against IFIN and certain officers and/or directors of the Company alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder.[2]

The IFIN Investors Group, with losses of approximately $7,901.80, in connection with its purchases of IFIN securities during the Class Period, is suitable and adequate to serve as lead plaintiff.[3]  Furthermore, the IFIN Investors Group's members have submitted certifications,

---

[1]    Each plaintiffs' estimated loss is calculated by subtracting a presumed value (based on the average closing price to date of $34.22 per share for IFIN common stock since the end of the Class Period (see 15 U.S.C. § 78u-4 (e))) of each plaintiff's stock retained at the end of the Class Period from the total price paid for the stock during the Class Period (less any proceeds from Class Period sales). Based on this calculation, The Archdiocese of Milwaukee Supporting Fund, Inc., sustained losses of approximately $5,163.80 and Mr. Nuttall suffered estimated losses of $2,738.00.

[2]    Additionally, a shareholder derivative action was filed on September 22, 2005 in this Court styled *M. Lee Harris 1991 Trust, et al. v. Sheeha*n*, et al.,* No. 05-cv-11922 RCL.  Although docketed as a "related case," this action should not be consolidated with the above-captioned actions as it alleges breaches of fiduciary duties by the board of directors and seeks redress under different theories of law *on behalf of the Company* rather than the shareholders.

[3]    The losses suffered by Movants are not the same as their legally compensable damages, measurement of which is often a complex legal question which cannot be determined at this stage of the litigation.  The approximate losses can, however, be determined from the certification required under Section 21D of the

demonstrating their desire to serve as lead plaintiffs in this action and their understanding of the attendant duties and obligations of serving as such. *See* Hess-Mahan Decl. at Exhibit A.[4] To the best of its knowledge, the IFIN Investors Group's losses represent the largest known financial interest of any Class member seeking to be appointed as lead plaintiff. The IFIN Investors Group is not aware of any other class member who intends to seek lead plaintiff appointment that sustained greater financial losses. In addition, the IFIN Investors Group satisfies each of the requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and therefore, is qualified for appointment as lead plaintiff in these actions. Thus, as demonstrated herein, the IFIN Investors Group is presumptively the most adequate plaintiff and should be appointed lead plaintiff.

Movants respectfully submit this memorandum of law in support of its motion, pursuant to Section 21D of the Exchange Act, 15 U.S.C. § 78u-4 (a)(3)(B), as amended by the PSLRA, for an order: (1) consolidating all class actions concerning the subject matters of these actions pursuant to Fed. R. Civ. P. 42(a); (2) appointing the IFIN Investors Group to serve as Lead Plaintiff pursuant to the Exchange Act; and (3) approving the IFIN Investors Group's selection of Scott + Scott LLC and Wechsler Harwood LLP as Co-Lead Counsel for the Class and Shapiro Haber & Urmy LLP as Liaison Counsel for the Class.

### III.  PROCEDURAL BACKGROUND

The first of the Related Actions was commenced in this jurisdiction on or about August 4, 2005. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), on August 4, 2005, the first notice that a class action had been initiated against defendants was published over a widely circulated national business-oriented wire service advising members of the proposed class of their right to move the Court to serve as lead plaintiff no later than October 3, 2005. *See* Hess-Mahan Decl. at Exhibit

---

Exchange Act, 15 U.S.C. § 78u-4(u)(2)(A) and based upon reference to information concerning the current market for the Company's securities.

[4]     Sworn certifications for the members of the IFIN Investors Group documenting their transactions pursuant to the federal securities laws are attached as Exhibit A to the Declaration of Theodore Hess-Mahan In Support Of The Motion Of The IFIN Investors Group To Consolidate Actions, To Be Appointed Lead Plaintiff And For Approval Of Lead Plaintiff's Selection of Co-Lead Counsel and Liason Counsel (the "Hess-Mahan Decl.").

B.

The IFIN Investors Group's members are class members (*see* Hess-Mahan Decl. at Exhibit A) and are timely filing this motion within the 60-day period following publication of the August 4, 2005 notice pursuant to Section 21D of the PSLRA.

## IV.    STATEMENT OF FACTS[5]

Investors Financial operates as a bank holding company for Investors Bank & Trust Company that provides asset administration services for the financial services industry in the United States. The Company's services consist of securities lending, foreign exchange, cash management, performance measurement, institutional transfer agency, investment advisory services, lines of credit and brokerage, and transition management services.

During the Class Period, defendants caused Investors Financial's shares to trade at artificially inflated levels, through the issuance of false and misleading financial statements and guidance. Defendants' statements served to convince investors that (i) the Company's financial statements were accurate, including results for revenues, growth and interest income and (ii) the Company had prudently built into their models and assumptions the impact of continued interest rate compression and flattening of the US interest rate yield curve.

Defendants shocked the market in October of 2004, when they finally revealed the need restate financial results over a three year period. On October 21, 2004, the price of Investors Financial stock plummeted, from its previous close of $43.70, for a loss of $7.20, losing 16.4% percent of their value, closing at $36.50, on volume of over 11 million shares. Later, the Company would reveal that during the period from 2001 to 2004, defendants had overstated net interest income by as much as $6.2 million.

Although the market reacted severely to the news of the restatement, the news served as a "red herring," to (i) distract the investment community from inconsistencies between uncorrected

---

[5]    These facts were derived from the allegations contained in the first-filed action styled *The Archdiocese of Milwaukee Supporting Fund, Inc., et al. v. Investors Financial Corp.,et al*.,No.:05-cv-11627 filed in this Court on August 4, 2005.

and actual net interest income results and (ii) aid in defendants' continued concealment of the impact of a flattening yield curve and rate spread compression on net interest income and on its 2005 guidance.

On July 15, 2005, defendants again shocked the market, announcing an unprecedented "reset" of their quarterly and 2005 guidance, to bring their guidance in line with the "new" realities of market-driven rates and rate spreads. However, despite defendants' assertions that an interest rate event peculiar to the second quarter served as the purported "trigger" for the Company's changed circumstances, investors now understood that the change in the Company's fortunes was a direct result of the dramatic flattening of the yield curve and contraction of rate spreads, evident from the very beginning of the Class Period.

On July 15, 2005, following the Company's shocking announcement, the price of the Company's shares plummeted, from its previous close of $41.52, for a loss of $7.47, losing 17.9% percent of their value, closing at $34.05, on unprecedented volume of over 22 million shares.

During the Class Period, defendants knew and concealed that:

(a) the impact of interest rate yield compression and the flattening of the interest rate curve was so dire that it could cut the Company's growth rate in half;

(b) the Company's financial controls were flawed and a series of accounting errors existed in the Company's financial statements;

(c) accounting errors in the Company's 2001-2004 financial statements required restatement, making it difficult for analysts and investors to accurately track the impact of the flattening yield curve and tightened yield spreads on net interest income, for affected and future quarters;

(d) the Company's 2005 guidance was unachievable, based on the flattened interest rate yield curve and yield spread compression, events that had already transpired and were evident well before the end of the first quarter of 2005; and

(e)   defendants' "hedging activities" against negative impacts to the balance sheet using interest rate swaps were proving difficult to manage and were becoming ineffective.

V.   ARGUMENT

   A.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Each of the Related Actions involves class action claims on behalf of class members who purchased or otherwise acquired IFIN securities during the Class Period. Each of the Related Actions asserts essentially similar and overlapping class claims brought on behalf of purchasers of IFIN securities who purchased in reliance on the materially false and misleading statements and omissions at all relevant times. Consolidation is appropriate when, as here, there are actions involving common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir.), *cert. denied*, 498 U.S. 920 (1990). That test is met here. Therefore, these Related Actions should be consolidated.

   B.   THE IFIN INVESTORS GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

      1.   The Procedural Requirements Pursuant To The PSLRA

The PSLRA sets forth a detailed procedure for the selection of a lead plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Plaintiff The Archdiocese of Milwaukee Supporting Fund in the first-filed action, published a notice on *PRNewswire* on or about August 4, 2005. *See* Hess-Mahan Decl. at Exhibit B. This notice indicated that applications for appointment as lead plaintiff were to be made no later than October 3, 2005. Within 60 days after publication of the required notice, any member or members of the proposed

class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in this action. 15 U.S.C. § 78u-4(a)(3)(A) and (B).

Next, according to the PSLRA, the Court shall appoint as lead plaintiff the Movant that the Court determines to be most capable of adequately representing the interests of class members within 90 days after publication of the initial notice of pendency. 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining who is the "most adequate plaintiff," the Exchange Act provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that-
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. §78u-4(a)(3)(B)(iii). *See Sofran v. Labranche & Co.,* 220 F.R.D. 398, 401 (S.D.N.Y. 2004); *Ferrari v. Impath, Inc.*, No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *13 (S.D.N.Y. July 15, 2004).

### 2. The IFIN Investors Group Is "The Most Adequate Plaintiff"

#### (a) The IFIN Investors Group Has Made A Motion For Its Appointment As Lead Plaintiff

Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the notice, Movants *timely* move this Court to be appointed lead plaintiff on behalf of all plaintiffs and class members covered by the Related Actions and any other actions deemed related by this Court.

#### (b) The IFIN Investors Group Has The Largest Financial Interest

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the court shall appoint as lead plaintiff the class member who represents the largest financial interest in the relief sought by the action. *See Sofran*, 220 F.R.D. at 401-02. As is demonstrated herein, Movants (with losses of $7,901.80)

7

have the largest known financial interest in the relief sought by the Class.

### (c)     The IFIN Investors Group Otherwise Satisfies Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two -- typicality and adequacy -- directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (holding that typicality and adequacy are the only relevant prerequisites to lead plaintiff selection under the PSLRA); *See also Sczensy Trust v. DiCamillo*, 223 F.R.D. 319, 323-24 (S.D.N.Y. 2004) (same). As detailed below, the IFIN Investors Group satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as lead plaintiff.

### (i)     The IFIN Investors Group Fulfills The Typicality Requirement

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality exists if "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992), *cert. dismissed*

*sub nom.*, 506 U.S. 1088 (1993); *see also Oxford,* 182 F.R.D. at 50 (same).  However, the claims of the lead plaintiff need not be identical to the claims of the class to satisfy typicality.  *See Impath*, 2004 U.S. Dist. LEXIS 13898, at *18.  Courts have recognized that typicality exists if claims arise from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory.  *See Drexel,* 960 F.2d at 291.

Movants seek to represent a class of purchasers of IFIN securities which have identical, non-competing and non-conflicting interests.  The IFIN Investors Group satisfies the typicality requirement because, just like all other class members, the members of the IFIN Investors Group: (1) purchased or acquired IFIN securities during the Class Period; (2) at prices allegedly artificially inflated by defendants' materially false and misleading statements and/or omissions; and (3) suffered damages thereby.  Thus, Movant's claims are typical of those of other class members since its claims and the claims of other class members arise out of the same course of events.

### (ii)   The IFIN Investors Group Fulfills The Adequacy Requirement

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class."  The PSLRA directs the Court to limit its inquiry regarding the adequacy of the Movant to: (1) whether there are any conflicts between the interests of the Movant and the members of the Class; (2) whether the Movant is an adequate representative of the Class; (3) whether the interests of the Movant is clearly aligned with the members of the putative Class; and (4) whether there is evidence of any antagonism between their respective interests.  15 U.S.C. § 78u-4(a)(3)(B).  As detailed above, the IFIN Investors Group shares common questions of law and fact with the members of the Class and its claims are typical of the claims of other class members.  Further, the members of the IFIN Investors Group have already taken significant steps demonstrating that they will protect the interests of the Class: they have executed certifications detailing their Class Period transactions and expressed their willingness to serve as lead plaintiff; they have moved this Court to be appointed as lead plaintiffs in this action; and they have retained competent and experienced counsel who, as shown below, will be able to conduct this

complex litigation in a professional manner. *See Sczensy Trust,* 223 F.R.D. at 324 (discussing adequacy requirement). Furthermore, the IFIN Investors Group has the largest known financial interest which gives them "an incentive to prosecute the action vigorously." *Ferrari v. Gisch*, 225 F.R.D. 599, 607 (C.D. Cal. 2004). Thus, Movants, in addition to having the largest financial interest, also *prima facie* satisfies the typicality (Rule 23(a)(3)) and adequacy (Rule 23(a)(4)) requirements of Rule 23 of the Federal Rules of Civil Procedure and, therefore, satisfies all elements of the Exchange Act's prerequisites for appointment as lead plaintiffs in this action pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### C. THE COURT SHOULD APPROVE THE IFIN INVESTOR GROUP'S CHOICE OF COUNSEL

Pursuant to 15 U.S.C § 78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to Court approval, select and retain counsel to represent the Class. In that regard, Movants have selected and retained Scott + Scott LLC and Wechsler Harwood LLP to serve as Co-Lead Counsel for the Class and Shapiro Haber & Urmy LLP to serve as Liaison Counsel for the Class. These firms have extensive experience in prosecuting complex securities actions and are well qualified to represent the Class. *See* Hess-Mahan Decl. at Exhibits C, D and E.

Because there is nothing to suggest that the Movants or their counsel will not fairly and adequately represent the Class, or that the Movants are subject to unique defenses -- which is the *only* evidence that can rebut the presumption of adequacy under the Exchange Act -- this Court should appoint the IFIN Investors Group as lead plaintiff and approve its selection of Scott + Scott LLC and Wechsler Harwood LLP to serve as Co-Lead Counsel and Shapiro Haber & Urmy LLP to serve as liason counsel for the Class.

### VI. CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court: (a) consolidate for all purposes the Related Actions against defendants; (b) appoint the IFIN Investors Group as Lead Plaintiff; and (c) approve Scott + Scott LLC and Wechsler Harwood LLP as Co-Lead Counsel for the Class and Shapiro Haber & Urmy as Liaison Counsel for the Class.

Dated: October 3, 2005

Respectfully submitted,

SHAPIRO HABER & URMY, LLP

**/s/Theodore M. Hess-Mahan**
Thomas G. Shapiro BBO #454680
Edward F. Haber BBO #215620
Theodore Hess-Mahan BBO #557109
53 State Street
Boston, MA 02109
Tel: (617) 439-3939
Fax: (617) 439-0134

SCOTT + SCOTT, LLC
David R. Scott
Neil Rothstein
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415
Tel: (860) 537-5537
Fax: (860) 537-4432

WECHSLER HARWOOD LLP
Robert I. Harwood
Jeffrey M. Norton
488 Madison Avenue
New York, New York 10022
Tel: (212) 935-7400
Fax: (212) 753-3630

Counsel for Plaintiffs