EXHIBIT A



**Dow Jones & Reuters**

**Scott + Scott, LLC Client Files Initial Securities Fraud Class Action Lawsuit Against Investors Financial Services Corp Insiders Reap Almost $15 million Dollars**
825 words
4 August 2005
19:04
PR Newswire (U.S.)
English
Copyright © 2005 PR Newswire Association LLC. All Rights Reserved.

COLCHESTER, Conn., Aug. 4 /PRNewswire/ -- Scott + Scott, LLC ( http://www.scott-scott.com/ ), a law firm based in Connecticut with offices in Chagrin Falls, Ohio, and San Diego, California, filed a **class action** today in the United States District Court for the District of Massachusetts on behalf of the purchasers of **Investors Financial Services** Corp. securities during the Class Period between October 15, 2003, through July 15, 2005 inclusive (the "Class").

Any shareholder who desires to act as lead plaintiff must move the Court no later than 60 days from today. If you would like information about Scott + Scott's complaint and a copy of it -- or would like to discuss this action with an attorney, please contact attorney Neil Rothstein at nrothstein@scott-scott.com (800/332-2259 or cell 619/251-0887). Attorney Amy K. Saba can also be reached at asaba@scott-scott.com (800/332-2259, ext 26). Any member of the purported Class may move the Court to serve as lead plaintiff through counsel of their choice, or may choose to do nothing and remain an absent class member.

Contacting Scott + Scott does not automatically make you a potential lead plaintiff. If you choose or desire to undertake this position, an attorney will discuss it with you personally so you are aware of your duties should you choose to accept this position. You will, however, continue to receive the same treatment and benefits that are extended to all class members, like the return of a phone call, the benefit of participating in decision making and being kept informed on a regular basis.

**Investors Financial Services** Corp. ("IFIN") operates as a bank holding company for Investors Bank & Trust Company that provides asset managers with services including global custody, multi-currency accounting and mutual fund administration in the United States.

The Complaint alleges that Defendants caused IFIN shares to trade at artificially inflated levels through the issuance of false and misleading financial statements and guidance. The Company's statements served to convince investors that the Company's financial statements were accurate, including results for revenues, growth and interest income, and the Company had shrewdly built into its models and assumptions the impact of continued interest rate compression and flattening of the US interest rate yield curve.

In October 2004, the Company surprised the market when they finally revealed the need to restate financial results over a three-year period. On October 21, 2004, the price of IFIN stock plummeted, from its previous close of $43.70 to $36.50, on volume of over 11 million shares. Later, the Company revealed that during the period from 2001 to 2004, Investors had overstated net interest income by as much as $6.2 million.

On July 14, 2005, IFIN dropped 15% after the financial back-office company slashed earnings guidance, citing interest rate pressure. Once again, the Company announced an unprecedented "reset" of their 2005 quarterly and 2005 yearly guidance. Defendants did this, allegedly, to bring their numbers in line with the "new" realities of market-driven rates and rate spreads. The Complaint alleges further that IFIN's assertions that an interest rate event peculiar to the second quarter served as the purported "trigger" for the Company's changed circumstances. This was false. In fact, the Complaint alleges, the change in the Company's fortunes was a direct result of the dramatic flattening of the yield curve and contraction of rate spreads. The Company cited a flatter-than-expected yield curve; narrower-than-expected reinvestment spreads; weaker-than-expected market-sensitive revenues, which included fees, linked to both the equity and foreign currency markets; and continued investments in headcount and technology to support new and existing clients.

On July 15, 2005, the price of IFIN shares plummeted from its previous close of $41.52 to $34.05 for a loss 17.9% percent of their value on unprecedented volume of over 22 million shares. The Class Period high was

$53.44; it now trades under $35 per share.

Scott + Scott, LLC litigates cases throughout the nation on behalf of citizens of every continent. The firm dedicates itself to client communication and satisfaction and is currently litigating major securities, antitrust and employee retirement plan actions throughout the United States. The firm represents pension funds, charities, foundations, individuals and other entities worldwide. Please visit the Scott + Scott website to learn more about the firm, its practice and other cases.

Web Site: http://www.scott-scott.com/

CONTACT: Neil Rothstein, 1-800-332-2259 or cell +1-619-251-0887,nrothstein@scott-scott.com, or Amy K. Saba, 1-800-332-2259, ext 26,, or Amy K. Saba, 1-800-332-2259, ext 26,asaba@scott-scott.com, both of Scott + Scott, LLC

Document PRN0000020050805e1850002t

© 2005 Dow Jones Reuters Business Interactive LLC (trading as Factiva). All rights reserved.

EXHIBIT B

| Name | Date | Shares Purchased | Share Price | Total Cost | Date | Shares Sold | Share Price | Total Proceeds | Total Gain (Loss)* |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| City of Deerfield Beach Non-Uniform Employees Retirement Plan | 10/01/2004 | 3,500 | $46.74 | $163,590.00 | 02/22/2005 | 1,400 | $48.14 | $67,393.06 | |
| City of Deerfield Beach Non-Uniform Employees Retirement Plan | 03/14/2005 | 4,000 | $50.90 | $203,594.40 | 02/23/2005 | 2,100 | $48.51 | $101,877.51 | |
| City of Deerfield Beach Non-Uniform Employees Retirement Plan | 05/31/2005 | 1,900 | $41.26 | $78,403.31 | 07/15/2005 | 5,900 | $34.19 | $201,704.48 | |
| | | | | | | | | | |
| **City of Deerfield Beach Non-Uniform Employees Retirement Plan** | | **9,400** | | **$445,587.71** | | **9,400** | | **$370,975.05** | **($74,612.66)** |
| | | | | | | | | | |
| Ironworkers St. Louis District Council Pension Fund | 04/19/2004 - SD | 1,440 | $41.35 | $59,543.71 | 11/24/2004 - SD | 1,440 | $44.67 | $64,329.98 | |
| Ironworkers St. Louis District Council Pension Fund | 02/08/2005 - SD | 200 | $50.75 | $10,150.26 | 04/19/2005 - SD | 800 | $46.52 | $37,212.32 | |
| Ironworkers St. Louis District Council Pension Fund | 02/09/2005 - SD | 500 | $52.56 | $26,277.80 | 04/20/2005 - SD | 100 | $44.70 | $4,469.53 | |
| Ironworkers St. Louis District Council Pension Fund | 02/10/2005 - SD | 500 | $53.07 | $26,533.80 | 04/21/2005 - SD | 200 | $44.05 | $8,809.66 | |
| Ironworkers St. Louis District Council Pension Fund | 02/28/2005 - SD | 100 | $48.56 | $4,856.43 | 04/22/2005 - SD | 200 | $44.33 | $8,865.30 | |
| Ironworkers St. Louis District Council Pension Fund | 04/26/2005 - SD | 4,140 | $43.51 | $180,151.69 | 07/14/2005 | 873 | $35.31 | $30,821.44 | |
| Ironworkers St. Louis District Council Pension Fund | 05/13/2005 - SD | 2,450 | $41.48 | $101,634.82 | 7/19/2005 ** | 1,313 | $34.32 | $45,068.20 | |
| Ironworkers St. Louis District Council Pension Fund | 07/12/2005 | 1,025 | $40.47 | $41,485.54 | 7/20/2005 ** | 1,954 | $33.96 | $66,364.35 | |
| Ironworkers St. Louis District Council Pension Fund | | | | | held | 3,475 | $34.24 | $118,979.50 | |
| | | | | | | | | | |
| **Ironworkers St. Louis District Council Pension Fund** | | **10,355** | | **$450,634.05** | | **10,355** | | **$384,920.28** | **($65,713.77)** |
| | | | | | | | | | |
| **Movants' Total** | | **19,755** | | **$896,221.76** | | **19,755** | | **$755,895.33** | **($140,326.43)** |
| | | | | | | | | | |
| Settlement dates are indicated with "SD" attached to the date. | | | | | | | | | |
| | | | | | | | | | |
| *For shares held at the end of the class period, damages are calculated | | | | | | | | | |
| by multiplying the shares held by the average share price during the 90 | | | | | | | | | |
| calendar days after the end of the class period.  The price used is $34.24 | | | | | | | | | |
| as of September 30, 2005. | | | | | | | | | |
| | | | | | | | | | |
| **For post-class period sales, either the actual price or the | | | | | | | | | |
| mean price (end of class period to the actual post-class sale price) | | | | | | | | | |
| will be used depending on which value is higher. | | | | | | | | | |

EXHIBIT C

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

CITY OF DEERFIELD BEACH NON-UNIFORM EMPLOYEES RETIREMENT PLAN ("Plaintiff") declares:

1.     Plaintiff has reviewed a complaint and authorized its filing.

2.     Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|----------|-------------|------|-----------------|

*See* attached Schedule A.

5.     During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below:

*Deerfield Beach Non-Uniformed Municipal Employees Retirement Plan v. Doral Financial Corp.*, (D.P.R.)
*In re MBNA Corp.,* (S.D.N.Y.)/(D. Del.)
*Brown v. Biogen IDEC Inc., et al.*, No. 05-10400 (D. Mass.)

6.     The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23 day of September, 2005.

CITY OF DEERFIELD BEACH NON-UNIFORM EMPLOYEES RETIREMENT PLAN

By: _____

Its: _____

S:\Case Startup\Investors Financial\Certs\Deerfield.doc

INVESTORS FINANCIAL SERVICES CORP.

## SCHEDULE A

### SECURITIES TRANSACTIONS

Acquisitions

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 10/01/2004 | 3,500 | $46.74 |
| 03/14/2005 | 4,000 | $50.90 |
| 05/31/2005 | 1,900 | $41.26 |

Sales

| Date Sold | Type/Amount of Securities Sold | Price |
|---|---|---|
| 02/22/2005 | 1,400 | $48.14 |
| 02/23/2005 | 2,100 | $48.51 |
| 07/15/2005 | 5,900 | $34.19 |

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

IRONWORKERS ST. LOUIS DISTRICT COUNCIL PENSION FUND ("Plaintiff")
declares:

1.  Plaintiff has reviewed the complaint and authorized its filing.

2.  Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.  Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.  Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action.

| Security | Transaction | Date | Price Per Share |
|---|---|---|---|

See attached Schedule A.

5.  During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below:

– None –

6.  The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct to the best of the undersigned's knowledge, information and belief.

Executed this 22ᵗʰ day of September ____, 2005.

IRONWORKERS ST. LOUIS DISTRICT COUNCIL
PENSION FUND

By: _John Louis Brown_____
    John Louis Brown
Its:  Chairman, Board of Trustees

## SCHEDULE A

## SECURITIES TRANSACTIONS

### Acquisitions

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 04/19/2004 - SD | 1,440 | $41.35 |
| 02/08/2005 - SD | 200 | $50.75 |
| 02/09/2005 - SD | 500 | $52.56 |
| 02/10/2005 - SD | 500 | $53.07 |
| 02/28/2005 - SD | 100 | $48.56 |
| 04/26/2005 - SD | 4,140 | $43.51 |
| 05/13/2005 - SD | 2,400 | $41.48 |
| 07/12/2005 | 1,025 | $40.47 |

### Sales

| Date Sold | Type/Amount of Securities Sold | Price |
|---|---|---|
| 11/24/2004 - SD | 1,440 | $44.67 |
| 04/19/2005 - SD | 800 | $46.52 |
| 04/20/2005 - SD | 100 | $44.70 |
| 04/21/2005 - SD | 200 | $44.05 |
| 04/22/2005 - SD | 200 | $44.33 |
| 07/14/2005 | 873 | $35.31 |

*Settlement dates are indicated with "SD" attached to the date.

EXHIBIT D

# LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP

**LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP** ("Lerach Coughlin") is a 150-lawyer law firm with offices in San Diego, San Francisco, Los Angeles, New York, Boca Raton, Washington, D.C., Houston, Philadelphia and Seattle (*www.lerachlaw.com*). Lerach Coughlin is actively engaged in complex litigation, emphasizing securities, consumer, insurance, healthcare, human rights, employment discrimination and antitrust class actions. Lerach Coughlin's unparalleled experience and capabilities in these fields are based upon the talents of its attorneys who have successfully prosecuted thousands of class action lawsuits. As a result, Lerach Coughlin attorneys have been responsible for recoveries of more than $25 billion.

This successful track record stems from our experienced attorneys, including many who left partnerships at other firms or came to Lerach Coughlin from federal, state and local law enforcement and regulatory agencies, including dozens of former federal prosecutors. Lerach Coughlin also includes more than 25 former federal (circuit and district) and state judicial clerks.

Lerach Coughlin currently represents more institutional investors in securities and corporate litigation – public and multi-employer funds – than any other firm in the United States.

**William S. Lerach** is widely recognized as one of the leading securities lawyers in the United States. Lerach founded the West Coast operations of Lerach Coughlin's predecessor firm – Milberg Weiss – almost 30 years ago. He has prosecuted hundreds of securities class and stockholder derivative actions, resulting in recoveries of billions of dollars. Lerach and the firm are involved in many of the largest and highest-profile securities suits in recent years, including *Enron*, *Dynegy*, *AOL-TimeWarner* and *WorldCom*.

**Patrick J. Coughlin** has been lead counsel in several major securities matters, including *In re Apple Computer Securities Litigation*, where he obtained a $100 million verdict. Prior to joining the Firm, Coughlin was a federal prosecutor in Washington, D.C. and San Diego handling complex white collar fraud matters. He helped try one of the largest criminal RICO cases ever prosecuted by the United States, *United States v. Brown*, as well as an infamous oil fraud scheme resulting in a complex murder-for-hire trial, *United States v. Boeckman*. Coughlin now heads up the prosecution of the high profile *HealthSouth* and *Qwest* cases. Coughlin has handled and resolved a number of large securities cases involving such companies as 3Com, Boeing, IDB Communications Group, Unocal, Sybase, Connor, Media Vision, ADAC, Sunrise Medical, Valence, Sierra Tucson and Merisel. In addition, Coughlin spearheaded actions against the tobacco industry resulting in the phase-out of the Joe Camel Campaign and a $12.5 billion recovery to the Cities and Counties of California – unique in the nation.

**John J. Stoia, Jr.** has prosecuted numerous nationwide complex securities class actions, including *In re American Continental Corp./Lincoln Savings & Loan Sec. Litig.*, MDL No. 834 (D. Ariz.), which arose out of the collapse of Lincoln Savings & Loan and Charles Keating's empire. Stoia was a major part of the plaintiffs' trial team which resulted in verdicts against Keating and his co-defendants in excess of $3 billion and recoveries of over $240 million. Stoia has been involved in over 40 nationwide class actions brought by policyholders against U.S. and Canadian life insurance companies seeking redress for deceptive sales practices during the 1980s and 1990s, including, among others, Prudential, New York Life, Transamerica Life Insurance Company, General American Life Insurance Company, Manufacturer's Life, Metropolitan Life, American General, US Life, Allianz, Principal Life and Pacific Life Insurance Company. Because of Stoia's efforts, victimized policyholders have recovered over $7

billion.  Stoia also successfully litigated numerous cases brought against life insurance companies for racial discrimination involving the sale of small value or "industrial life" insurance policies during the 20th century, including serving as lead counsel in *McNeil v. Am. Gen. Life Ins. and Accident Co.*, the first major settlement involving discrimination claims ($234 million recovery).  Stoia has since resolved other race-based insurance cases, including *Brown v. United Life Ins. Co.*, *Morris v. Life Ins. Co. of Georgia* and *Thompson v. Metro. Life*.  In late summer 2004, Stoia filed the first complaint alleging kickbacks and rigged bidding in the insurance industry, and was hired by California Insurance Commissioner John Garamendi to represent the citizens of California in suits alleging these practices.

**Paul J. Geller** has served as lead or co-lead counsel in a majority of the securities class actions that have been filed in the southeastern United States in the past several years, including cases against *Hamilton Bancorp* ($ 8.5 million); *Prison Realty Trust*; total combined recovery of over $120 million); *Intermedia Corp.* ($38 million).  Mr. Geller is currently one of the Court-appointed lead counsel in cases involving the alleged manipulation of the asset value of some of the nations largest mutual funds, including *Hicks v. Morgan Stanley & Co.*, Case No. 01 Civ. 10071 (S.D.N.Y.); *Abrams v. Van Kampen Funds, Inc.*, Case No. 01 C 7538 (N.D. Ill.) and *In Re Eaton Vance Sec. Litig.*, Case No. C.A. No. 01-10911 (D. Mass.).

Mr. Geller has also successfully represented consumers in class-action litigation.  He was personal counsel to the lead plaintiff in *Stoddard v. Advanta*, a case that challenged the adequacies of interest rate disclosures by one of the nation's largest credit card companies ($11 million settlement) and was personal counsel to one of the lead plaintiffs in the American Family Publishers sweepstakes litigation, which alleged that the defendant misled consumers into thinking they would win a lottery if they purchased magazine subscriptions ($38 million settlement).

**Samuel H. Rudman** served in the Enforcement Division of the United States Securities & Exchange Commission in its New York Regional Office as a staff attorney, where he was responsible for numerous investigations and prosecutions of violations of the federal securities laws.  Thereafter, Mr. Rudman joined one of the largest corporate law firms in the country, where he represented public companies in the defense of securities class actions and also handled several white collar criminal defense matters.

In 1995, Mr. Rudman joined Milberg Weiss, where he was one of the youngest lawyers ever to be made a partner at the firm and was responsible for the investigation and initiation of securities and shareholder class actions.  In addition, Mr. Rudman developed a concentration in the area of lead plaintiff jurisprudence and has been responsible for numerous reported decisions in that area of securities law.

Mr. Rudman continues to focus his practice in the area of investigating and initiating securities and shareholder class actions and also devotes a considerable amount of time to representing clients in ongoing securities litigation.

**Darren J. Robbins** has extensive experience in federal and state securities litigation, serving as lead counsel in the *In re Dollar General Sec. Litig*, *In re Prison Realty Sec. Litig.* and *In re Hanover Compressor Sec. Litig*.  Robbins currently represents numerous pension funds in state and federal courts across the country and concentrates his practice in the structuring of corporate governance enhancements in connection with the resolution of shareholder class and derivative litigations.  Robbins was recognized as *California Lawyer* Attorney of the Year for 2003 as a result of his

participation as lead counsel in *Hanover Compressor*, where plaintiffs recovered approximately $85 million and obtained numerous groundbreaking corporate governance changes, including direct shareholder nomination of Board members and the mandatory rotation of the company's outside audit firm.

# PRACTICE AREAS AND CURRENT CASES

## Securities

As recent corporate scandals clearly demonstrate, it has become all-too-common for companies and their executives to manipulate the market price of their securities by misleading the public about the company's financial condition or prospects for the future. This misleading information has the effect of artificially inflating the price of the company's securities above their true values. When the underlying truth is eventually revealed, the prices of these securities plummet, harming those innocent investors who relied upon the company's misrepresentations.

Lerach Coughlin is the leader in the fight to provide investors with relief from corporate securities fraud. Lerach Coughlin utilizes a wide range of federal and state laws to provide investors with remedies, either by bringing a class action on behalf of all affected investors or, where appropriate, by bringing individual cases on behalf of large institutional investors.

The Firm's reputation for excellence has been repeatedly noted by courts and has resulted in the appointment of Lerach Coughlin attorneys to lead roles in hundreds of complex class action securities and other cases. In the securities area alone, the Firm's attorneys have been responsible for a number of outstanding recoveries on behalf of investors which, in the aggregate, exceed $25 billion. Currently, Lerach Coughlin is lead or named counsel in approximately 500 securities class action or large institutional investor cases including:

- Enron Securities class action
- AOL/Time Warner individual institutional investor private actions
- Cisco Systems Securities class action
- Coke Securities class action
- Oracle Securities class action
- WorldCom Bond individual institutional investor private actions
- HealthSouth Securities class action

One of the reasons for Lerach Coughlin's dominance stems from the Firm's unparalleled dedication of resources towards investor recovery. For example, the Firm has approximately 125 attorneys dedicated to investigating and prosecuting securities fraud class action and derivative cases on behalf of hundreds of institutional investors. In addition to ample human resources, Lerach Coughlin is also well capitalized to meet the demands of prosecuting complex cases.

Lerach Coughlin's securities department includes dozens of former federal and state prosecutors and trial attorneys. The Firm's securities practice is also strengthened by the existence of a strong Appellate Department – whose collective work has resulted in numerous legal precedents. The securities department also utilizes an extensive group of in-house economic and damage analysts, investigators and forensic accountants to aid in the prosecution of complex securities issues.

While obtaining recoveries for our clients is our primary focus, Lerach Coughlin attorneys have also been at the forefront of securities fraud **prevention**.  The Firm's prevention efforts are focused on creating important changes in corporate governance either as part of the global settlements of derivative and class cases or through court orders.  Recent cases in which such changes were made include: *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Hanover Compressor Co.*, Case No. H-02-0410 (S.D. Tex.) (groundbreaking corporate governance changes obtained include: direct shareholder nomination of two directors; mandatory rotation of the outside audit firm; two-thirds of the board required to be independent; audit and other key committees to be filled only by independent directors; creation and appointment of lead independent director with authority to set up board meetings); *In re Sprint Shareholder Litig., Case* No. 00-CV-230077 (Circuit Ct. Jackson County, Mo.) (in connection with the settlement of a derivative action involving Sprint Corporation, the company adopted over 60 new corporate governance provisions which, among other things, established a truly independent Board of Directors and narrowly defines "independence" to eliminate cronyism between the board and top executives; required outside board directors to meet at least twice a year without management present; created an independent director who will hold the authority to set the agenda, a power previously reserved for the CEO; and imposed new rules to prevent directors and officers from vesting their stock on an accelerated basis); *Teachers' Ret. Sys. of Louisiana v. Occidental Petroleum Corp.*, Case No. BC185009 (Cal. Super. Ct. 1998) (as part of the settlement, corporate governance changes were made to the composition of the company's Board of Directors, the company's Nominating Committee, Compensation Committee and Audit Committee), and *Barry v. E\*Trade Group, Inc.*, Case No. CIV419804 (Cal. Super. Ct., San Mateo County) (in connection with settlement of derivative suit, excessive compensation of CEO eliminated reduced salary from $800,000 to zero; bonuses reduced and to be repaid if company restates earnings; reduction of stock option grant and elimination of future stock option grants) and important governance enhancements obtained, including the appointment of a new unaffiliated outside director as chair of board's compensation committee).  Through these efforts, Lerach Coughlin has been able to create substantial shareholder guarantees to prevent future securities fraud.

The firm works exclusively with noted corporate governance consultant Robert Monks and his firm, LENS Governance Advisors, to shape corporate governance remedies for the benefit of investors.

**Insurance**

Fraud in the insurance industry by industry executives, agents, brokers, lenders and others is one of the most costly crimes in America.  Driving up everyone's insurance prices, some experts estimate the annual cost of this rising tide of white collar crime to be $120 billion nationally.  Lerach Coughlin stands at the forefront in protecting the rights of consumers and state and federal entities against insurance fraud and unfair business practices in the insurance industry.

Beginning in August 2004, Lerach Coughlin was the first to expose the illegal and improper bid-rigging and kickback scandal between insurance companies and their brokers.  The firm is currently one of the lead firms representing businesses, individuals, school districts, counties and the State of California in numerous actions in state and federal courts nationwide.

Our attorneys prosecute claims relating to the fraudulent and improper sale and servicing of insurance policies to recoup losses for victimized policyowners.  For example, Lerach Coughlin attorneys have represented and continue to represent policyowners against insurance companies who made misrepresentations at the point of sale concerning how the policy will perform, the amount of

money the policy will cost, whether premiums will "vanish." Claims also include allegations that purchasers were misled concerning the financing of a new policy, falling victim to a "replacement" or "churning" sales scheme where they were convinced to use loans, partial surrenders or withdrawals of cash values from an existing permanent life insurance policy to purchase a new policy. To date, Lerach Coughlin has been responsible for over $4 billion in recoveries for defrauded policyholders.

Lerach attorneys have long been at the forefront of race discrimination litigation against life insurance companies for their practice of intentionally charging African-Americans and other minorities more for life insurance than similarly situated Caucasians. Our attorneys have recovered over $400 million for African-Americans and other minority class members as redress for the civil rights abuses they were subjected to, including landmark recoveries in *McNeil v. American General Life & Accident Insurance Company*, *Thompson v. Metropolitan Life Insurance Company* and *Williams v. United Insurance Company of America*.

## Antitrust

Lerach Coughlin's antitrust practice focuses on representing plaintiffs in complex litigation, such as small businesses and individuals who have been the victims of price-fixing, unfair trade practices or other anticompetitive conduct. The firm has taken a leading role in many of the largest federal price-fixing and price discrimination cases throughout the United States.

For example, Lerach Coughlin attorneys played a lead role in *In re NASDAQ Market-Makers Antitrust Litig.*, MDL No. 1023 (S.D.N.Y.), serving as court-appointed co-lead counsel for a class of investors. The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry-wide conspiracy in one of the largest and most important antitrust cases in recent history. After three-and-one-half years of intense litigation, the case was settled for a total of $1.027 billion, the largest antitrust settlement ever. An excerpt from the court's opinion reads:

> Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties to this action achieved.

*See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998).

One of the most significant opinions in the case was Judge Sweet's decision to certify the class of millions of investors over the strenuous objections of defendants. *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y. 1996). Oral argument on behalf of plaintiffs on the class certification motion was presented by Leonard B. Simon, Of Counsel to Lerach Coughlin.

Other cases include:

- ***Hall v. NCAA*** (Restricted Earnings Coach Antitrust Litigation), Case No. 94-2392-KHV (D. Kan.). Lerach Coughlin attorneys served as lead counsel and lead trial counsel for one of three classes of coaches who alleged that the National Collegiate Athletic Association illegally fixed their compensation by instituting the "restricted earnings coach" rule. On May 4, 1998, the jury returned verdicts in favor of the three classes for more than $67 million. Trial counsel included the Firm's attorney Bonny E. Sweeney.

- ***In re Disposable Contact Lens Antitrust Litig.***, MDL No. 1030 (M.D. Fla.).  Lerach Coughlin attorneys served as co-lead counsel for a class of contact lens wearers alleging that the principal manufacturers of disposable contact lenses conspired with the leadership of the American Optometric Association and other eye care practitioners to boycott alternative channels of contact lens distribution, including pharmacies and mail order suppliers.  The case settled for $89 million five weeks into a jury trial, shortly after plaintiffs' trial counsel, including Lerach Coughlin attorney Christopher M. Burke, defeated defendants' motion for a directed verdict.

- ***Microsoft I-V Cases***, J.C.C.P. Case No. 4106 (San Francisco Super. Ct.).  Lerach Coughlin attorneys served on the executive committee in these consolidated cases, in which California indirect purchasers challenged Microsoft's illegal exercise of monopoly power in the operating system, word processing and spreadsheet markets.  In a settlement approved by the court, class counsel obtained an unprecedented $1.1 billion worth of relief for the business and consumer class members who purchased the Microsoft products.

Current cases include:

- ***In re Currency Conversion Antitrust Litig.***, MDL No. 1409 (S.D.N.Y.).  Lerach Coughlin attorneys are co-lead counsel (with one other firm) in this multi-district litigation, in which a class of general purpose VISA and MasterCard cardholders allege that VISA and MasterCard, and certain leading member banks of Visa and MasterCard, conspired to fix and maintain the foreign currency conversion fee charged to U.S. cardholders.  Plaintiffs also allege that defendants failed to adequately disclose the fee in violation of federal law.  Discovery continues, and the plaintiffs' motion for class certification is fully briefed.

- ***Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc.*** (the ***Carbon Fiber Antitrust Litig.***), Case No. CV-99-7796 (C.D. Cal.).  Lerach Coughlin attorneys are co-lead counsel (with one other firm) in this consolidated class action, in which a class of purchasers alleges that the major producers of carbon fiber fixed the price of carbon fiber from 1993 to 1999.  The trial court denied defendants' motions to dismiss and granted plaintiffs' motion to certify the class, and the Ninth Circuit Court of Appeals has rejected defendants' challenge to the court's class certification order.  Discovery is continuing.

- ***In re Carbon Black Antitrust Litig.***, MDL No. 1543 (D. Mass.).  Lerach Coughlin attorneys serve as co-lead counsel for a class of businesses that allege that the major producers of carbon black unlawfully conspired to fix the price of carbon black, which is used in the manufacture of tires, rubber and plastic products, inks and other products, from 1999 through the present.  The parties are currently engaged in discovery.

- ***In re DRAM Antitrust Litig.***, MDL No. 1486 (N.D. Cal.).  Lerach Coughlin attorneys serve on the executive committee in this multi-district class action, in which a class of purchasers of high density low-cost-per-bit, random access memory chips, known as DRAM, allege that the leading manufactures of semiconductor products fixed the price

of DRAM from the fall of 2001 through at least the end of June 2002. Lerach Coughlin attorneys took the lead in briefing and successfully opposing defendant's motion to dismiss, which was denied. The parties are engaged in discovery.

- ***In re Medical Waste Services Antitrust Litig.***, MDL No. 1546 (D. Utah). Lerach Coughlin attorneys are co-lead counsel in this multi-district antitrust class action litigation involving two separate cases. In the first (the *Tri-State Class Action*), plaintiffs allege defendants illegally conspired to allocate customers and territories in the market for the collection, transportation and disposal of medical waste in three mountain states. In the second case (the *Stoll Action*), the firm is co-lead counsel for a California class of plaintiffs who allege that Stericycle, the largest provider of medical waste collection and disposal services in the United States, unlawfully monopolized the market for these services in California. Discovery is ongoing, and plaintiffs expect to move for certification of the class in July 2004.

- ***In re Microsoft Antitrust Litig.*** Lerach Coughlin attorneys have served as lead counsel, co-lead counsel and on the executive committees of more than 15 indirect purchaser actions against Microsoft brought in both state and federal courts alleging Microsoft illegally exercised its monopoly power in the operating system, word processing and spreadsheet markets. Plaintiffs successfully defeated motions to dismiss, challenges to class certification and motions for summary judgment in many state cases. Plaintiffs also engaged in a massive discovery effort in order to defeat Microsoft's challenges regarding its unlawful acts, and to prepare for trials in California and Minnesota, both of which ultimately resolved before the cases reached a jury. In many states, the parties are currently in the process of finalizing settlements and/or achieving court approval in settlements which provide an unprecedented result for indirect purchaser class members.

- ***The California Wholesale Electricity Antitrust Litig.***, Case No. 02-CV-990 (S.D. Cal.). Lerach Coughlin attorneys are co-lead counsel (with one other firm) in this litigation, which alleges buyers and sellers in markets operated by the California Power Exchange and California ISO manipulated markets during the period May 1, 2000 to June 19, 2001. The culmination of several years of litigation, review of company documents and investigation have led to the determination of widespread market manipulation of the California and Western energy markets during 2000 and 2001. The findings show the trading strategies and withholding of power, employed by Enron and other companies, were undertaken in an effort to manipulate the California energy market which led to increased energy prices for consumers. Plaintiffs reached a landmark settlement in the litigation with the Williams Companies worth an estimated $400 million dollars. The case is currently before the Ninth Circuit Court of Appeals awaiting oral argument on several issues.

## Consumer

Lerach Coughlin's attorneys represent plaintiffs nationwide in a variety of important, complex consumer class actions. Lerach Coughlin attorneys have taken a leading role in many of the largest state and federal consumer fraud, human rights, environmental, public health and tobacco-related cases throughout the United States. Lerach Coughlin is also actively involved in numerous cases

relating to the financial services industry, pursuing claims on behalf of individuals victimized by abusive mortgage lending practices, including violations of the Real Estate Settlement Procedures Act, market timing violations in connection with the sale of variable annuities and deceptive consumer-credit lending practices in violation of the Truth-In-Lending Act.

Current consumer cases include:

- **Dell's Bait and Switch Scheme**.  Plaintiffs have sued Dell, Inc. and its financing partners Dell Financial Services and CIT bank in connection with their bait and switch sales and financing practices.  The class action complaint alleges that Dell uses its advertisements to lure customers in, promising low price computers.  At the point of sale, Dell engages in one of several bait and switch schemes, including substituting lesser quality computer components for those ordered and paid for by customers, increasing the purchase price without adequate notice to customers, and canceling orders when Dell does not want to honor advertised deals.  This class action also alleges illegal financing behavior, including Dell switching, or failing to adequately disclose the terms of Dell's financing agreement, including less favorable financing plans, hidden charges and fees and much higher interest rates.

- **Ebay Shill Bidding Litigation**.  Lerach Coughlin attorneys represent a plaintiff and class members in litigation against auction company Ebay.  The class action alleges unlawful shill bidding by Ebay in its online auctions.  Plaintiff alleges that Ebay's practice of increasing winning bids, when an Ebay customer uses Ebay's proxy bidding tool, violates numerous California auction and consumer laws.

- **Illegal Internet Gambling Advertisements**.  Lerach Coughlin represents the general public and a class of California residents who have been harmed by the illegal online advertising for gambling casinos.  In a complaint upheld by Judge Kramer of the San Francisco complex litigation department, plaintiffs have alleged that the numerous online search engines have violated California law by taking payment in exchange for advertising illegal gambling websites.

- **Cellphone Termination Fee Cases**.  Lerach Coughlin attorneys are co-lead counsel in a lawsuit against the six major wireless telephone service providers in California.  The plaintiffs allege that the early termination fee provisions in defendants' contracts are illegal penalties under California law, designed to unfairly tether consumers to long-term contracts and prevent customers from changing their wireless service providers.

- **Tenet Healthcare Cases**.  Lerach Coughlin attorneys are co-lead counsel in a class action alleging a fraudulent scheme of corporate misconduct, resulting in the overcharging of uninsured patients by the Tenet chain of hospitals.  The Firm's attorneys represent uninsured patients of Tenet hospitals nationwide who were overcharged by Tenet's admittedly "aggressive pricing strategy," that resulted in price gouging of the uninsured.  Judge McCoy of the Los Angeles Superior Court granted preliminary approval of a settlement between plaintiffs and Tenet.

- **AT&T Wireless Coverage Maps**.  Lerach Coughlin attorneys represent consumers in a Los Angeles action that alleges false and misleading advertising by AT&T Wireless.

Plaintiffs claim that AT&T Wireless's coverage maps are deceptive because they fail to disclose that defendants' service area is riddled with coverage gaps and holes. Plaintiffs seek injunctive relief from the court requiring AT&T Wireless to publish accurate coverage maps indicating where consumers are actually able to place wireless telephone calls throughout the Los Angeles region.  AT&T Wireless was acquired by Cingular Wireless.

Prior consumer cases include:

- ***Schwartz v. Visa***.  After years of litigation and a six month trial, Lerach Coughlin attorneys won one of the largest consumer protection verdicts ever awarded in the United States.  In *Schwartz v. Visa Int'l, et al.*, Case No. 822404-4 (Cal. Super. Ct., Alameda County), California consumers sued Visa and MasterCard for intentionally imposing and concealing a fee from their cardholders.  The court ordered Visa and MasterCard to return $800,000,000 in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest.  In addition, the court ordered full disclosure of the hidden fee.

- ***In re Lifescan, Inc. Consumer Litig.***, Case No. CV-98-20321-JF (N.D. Cal.).  Lerach Coughlin attorneys were responsible for achieving a $45 million all-cash settlement with Johnson & Johnson and its wholly-owned subsidiary, Lifescan, Inc., over claims that Lifescan deceptively marketed and sold a defective blood-glucose monitoring system for diabetics.  The Lifescan settlement was noted by the district court for the Northern District of California as providing "exceptional results" for members of the class.

## Human Rights, Labor Practices and Public Policy

Lerach Coughlin attorneys have a long tradition of representing the victims of wrongdoing, ranging from unfair labor practices to violation of human rights.  These include:

- ***Does I, et al. v. The Gap, Inc., et al.***, Case No. 01 0031 (D. Northern Mariana Islands).  In this ground-breaking case, Lerach Coughlin attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top U.S. retailers such as The Gap, Target and J.C. Penney.  In the first action of its kind, Lerach Coughlin attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan.  This case was a companion to two other actions: ***Does I, et al. v. Advance Textile Corp., et al.***, Case No. 99 0002 (D. Northern Mariana Islands) – which alleged overtime violations by the garment factories under the Fair Labor Standards Act – and ***UNITE, et al. v. The Gap, Inc., et al.***, Case No. 300474 (Cal. Super. Ct., San Francisco County), which alleged violations of California's Unfair Practices Law by the U.S. retailers.  These actions resulted in a settlement of approximately $20 million that included a comprehensive Monitoring Program to address past violations by the factories and prevent future ones.  The members of the litigation team were honored as Trial Lawyers of the Year by the Trial

Lawyers for Public Justice in recognition of the team's efforts at bringing about the precedent-setting settlement of the actions.

- ***Kasky v. Nike, Inc.***, 27 Cal. 4th 939 (2002), *cert. dismissed*, 539 U.S. 654 (2003).  The California Supreme Court upheld claims that an apparel manufacturer misled the public regarding its exploitative labor practices, thereby violating California statutes prohibiting unfair competition and false advertising.  The court rejected defense contentions that any misconduct was protected by the First Amendment.  The court found the heightened constitutional protection afforded to noncommercial speech was inappropriate in such a circumstance.

- ***The Cintas Litigation***. Brought against one of the nation's largest commercial laundries for violations of the Fair Labor Standards Act for misclassifying truck drivers as salesmen to avoid payment of overtime.

Shareholder derivative litigation brought by Lerach Coughlin also sometimes involves anti-union activities, including:

- ***Southern Pacific/Overnite***.  A shareholder action stemming from several hundred million dollars in loss of value in the Company due to systematic violations by Overnite of U.S. labor laws.

- ***Massey Energy***.  A shareholder action against an anti-union employer for flagrant violations of environmental laws resulting in multi-million dollar penalties.

- ***Crown Petroleum***.  A shareholder action against a Texas-based oil company for self-dealing and breach of fiduciary duty while also involved in a union lockout.

Lerach Coughlin attorneys also represented over 2,300 Taco Bell workers who were denied thousands of hours of overtime pay because, among other reasons, they were improperly classified as overtime exempt employees.  Currently, the Firm's attorneys represent CINTAS workers with similar claims of violation of federal and state labor laws.

## Environment & Public Health

Lerach Coughlin attorneys have also represented plaintiffs in class actions related to environmental law.  The Firm's attorneys represented, on a *pro bono* basis, the Sierra Club and the National Economic Development and Law Center as *amici curiae* in a federal suit designed to uphold the state and federal use of project labor agreements ("PLAs").  The suit represented a legal challenge to President Bush's Executive Order 13202, which prohibits the use of project labor agreements on construction projects receiving federal funds.  Our Amici Brief in the matter outlined and stressed the significant environmental and socio-economic benefits associated with the use of PLAs on large scale construction projects.

Attorneys with Lerach Coughlin have been involved in several other significant environmental cases including:

- ***Public Citizen v. US DOT.***   Lerach Coughlin represented a coalition of labor, environmental, industry and public health organizations including Public Citizen, The

International Brotherhood of Teamsters, California AFL-CIO and California Trucking Industry, in a challenge to a decision by the Bush Administration to lift a congressionally-imposed "moratorium" on cross border trucking from Mexico on the basis that such trucks do not conform to emission controls under the Clean Air Act and, further, that the Administration did not first complete a comprehensive environmental impact analysis as required by the National Environmental Policy Act. The suit was dismissed at the Supreme Court, the Court holding that because the DOT lacked discretion to prevent cross-border trucking, an environmental assessment was not required.

- ***Sierra Club v. AK Steel***. Brought on behalf of the Sierra Club for massive emissions of air and water pollution by a steel mill, including homes of workers living in the adjacent communities, in violation of the Federal Clean Air Act, RCRA and the Clean Water Act.

- ***MTBE Litigation***. Brought on behalf of various water districts for befouling public drinking water with MTBE, a gasoline additive linked to cancer.

- ***Exxon Valdez***. Brought on behalf of fisherman and of Alaska residents for billions of dollars in damages resulting from the greatest oil spill in U.S. history.

- ***Avilla Beach***. A citizens suit against UNOCAL for leakage from the oil company pipeline so severe it literally destroyed the town of Avilla Beach, California.

Federal laws such as the Clean Water Act, the Clean Air Act, the Resource Conservation and Recovery Act and state laws such as California Proposition 65, exist to protect the environment and the public from abuses by corporate and government organizations. Companies can be found liable for negligence, trespass or intentional environmental damage and be forced to pay for reparations and to come into compliance with existing laws.

Prominent cases litigated by Lerach Coughlin attorneys include representing more than 4,000 individuals suing for personal injury and property damage related to the Stringfellow Dump Site in Southern California, participation in the Exxon Valdez oil spill litigation, and the toxic spill arising from a Southern Pacific train derailment near Dunsmuir, California.

**The Fight Against Big Tobacco**

Lerach Coughlin attorneys have led the fight against Big Tobacco since 1991. As an example, Lerach Coughlin attorneys filed the case that helped get rid of Joe Camel representing various public and private plaintiffs, including the State of Arkansas; the general public in California; the cities of San Francisco, Los Angeles and Birmingham; 14 counties in California; and the working men and women of this country in the Union Pension and Welfare Fund cases that have been filed in 40 states. In 1992, Lerach Coughlin attorneys filed the first case in the country that alleged a conspiracy by the Big Tobacco companies.

**Pro Bono**

Lerach Coughlin attorneys have a long history of engaging in *pro bono* cases and have been recognized for their demonstrated commitment to providing *pro bono* services to the poor and

disenfranchised.  In 2003, Lerach Coughlin attorneys Eric Isaacson, Bonny Sweeney and Amber Eck (from the San Diego office of the then Milberg Weiss) were nominated for the prestigious 2003 California State Bar President's *Pro Bono* Law Firm of the Year award, based in large part on their efforts with the ACLU in *Sanchez v. County of San Diego*.  The San Diego office received a commendation from the state bar president for its "dedication to the provision of *pro bono* legal services to the poor and for the significant contribution [the firm] made to extending legal services to underserved communities."  In recommending the firm for the award, Carl Poirot, of the San Diego Volunteer Lawyer Program, praised the firm for its "extraordinary efforts" in the case, stating that the "legal team generously gave of their time in the vigorous representation of a class of individuals who clearly do not have the financial resources nor wherewithal to retain legal counsel.  The County's questionable conduct would have gone unchallenged but for the intervention" of the legal team.

*Sanchez* is a class action brought on behalf of welfare applicants against the County of San Diego seeking an injunction requiring the County to discontinue its "Project 100%" program.  Under Project 100%, investigators from the San Diego D.A.'s office, Public Assistance Fraud Division, enter and search the home of every person who applies for welfare benefits, even though there is no suspicion of fraud or wrongdoing – and despite the fact that every individual is required to undergo an extensive application process with numerous verifications.  Plaintiffs contend that these searches by law-enforcement officers, performed without cause or suspicion, violate state and federal statutes and the Fourth Amendment of the U.S. Constitution.

The court certified a class of all present and future applicants for CalWORKs cash aid and food stamps in San Diego County who are subject to a search of their home under Project 100%.  Defendants have since admitted that the use of home visits to determine eligibility for food stamps violates California state regulations and has agreed to settle these claims.  Although defendants were granted summary judgment on the remaining claims, plaintiffs are currently in the process of filing an appeal with the Ninth Circuit Court of Appeals and are optimistic about the prospects for success there.  Due to the substantial number of hours dedicated to this important case, lead attorneys Eric Isaacson, Bonny Sweeney and Amber Eck were awarded the SDVLP Distinguished Service Award.

This San Diego office was also named as one of three finalists for the 1999 Pro Bono Law Firm of the Year award by the SDVLP, based in part for its work on the *Badua v. City of San Diego* case.  *Badua* was a case brought on behalf of Jenny Badua against the City of San Diego.  After working for the City for 15 years, she was placed on Long Term Disability ("LTD") leave due to severe manic depression.  Under the City's LTD Plan, which is similar to many other LTD plans, individuals with physical disabilities receive benefits until age 65 or longer, but individuals with mental disabilities receive benefits for only two years.  We alleged that this differential treatment of persons with mental disabilities violated the Americans with Disabilities Act and federal and state disability nondiscrimination statutes.  Unfortunately, after three years of working on the case, the Ninth Circuit Court of Appeals issued an opinion upholding the constitutionality of an LTD plan nearly identical to the one at issue, and plaintiffs settled the case for a nominal award to the plaintiff.  However, the Disability Rights Education & Defense Fund ("DREDF") and the ACLU commended our efforts and described this as one of the most important issues of the year.

Our co-counsel, Linda Kilb of the DREDF, said in recommending us for the award: "The talent, effort and commitment of [Lerach Coughlin attorneys have] been invaluable, and it is difficult to imagine how the case could proceed without them.  DREDF is enormously appreciative of [Lerach Coughlin

attorneys'] continuing role in this case, and of SDVLP's assistance in finding us co-counsel of this caliber."

## JUDICIAL COMMENDATIONS

Lerach Coughlin attorneys, working under the former Milberg Weiss mantel, have been commended by countless judges all over the country for the quality of representation in class action lawsuits.

When Judge Harmon appointed Lerach Coughlin attorneys as lead counsel for Enron securities purchasers, she commented:

In reviewing the extensive briefing submitted regarding the Lead Plaintiff/Lead Counsel selection, the Court has found that the submissions of [Lerach Coughlin attorneys] stand out in the breadth and depth of its research and insight. Furthermore, Mr. Lerach has justifiably "beat his own drum" in demonstrating the role his firm has played thus far in zealously prosecuting this litigation on Plaintiffs' behalf.

*See In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 458 (S.D. Tex. 2002). In *Stanley v. Safeskin Corp.*, Case No. 99 CV 454-BTM (S.D. Cal. May 25, 2004), where Lerach Coughlin obtained $55 million for the class of investors, Judge Moskowitz stated:

I said this once before, and I'll say it again. I thought the way that your firm handled this case was outstanding. This was not an easy case. It was a complicated case, and every step of the way, I thought they did a very professional job.

In *Roy v. The Independent Order of Foresters*, Case No. 97-6225 (SRC), slip op. at 32 (D.N.J. Aug. 3, 1999), Judge Chesler noted in his opinion on class certification that:

The firm of [Lerach Coughlin], which is co-lead counsel for the plaintiff, was also counsel for the plaintiff class in the Prudential case. Thus, the adequacy of the plaintiff's representation is beyond reproach. Furthermore, the tremendous and unprecedented settlements which the [Lerach Coughlin] firm has helped to secure for the plaintiff classes in both this case and the Prudential case are a testament to counsel's vigorous pursuit of the class interests.

In a November 9, 1998 order approving settlements totaling over $1.027 billion, the court in *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998), commented about Lerach Coughlin attorneys including Len Simon that:

Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties in this action achieved.

In approving a recovery in excess of $200 million in *Transamerica*, Judge Danielson of the California Superior Court made it a point to comment on the professionalism of Lerach Coughlin:

It would be hard to imagine what question I could come up with that I haven't already seen the information that I needed in the submissions that have been made to this

Court.  I can't remember anything so thoroughly and professionally handled in the 20-some odd years that I've been involved in the law.  It is interesting to see law practiced honorably.  And I think all of the lawyers who have involved themselves in this case can be very proud of their profession.

See *Natal v. Transamerica Occidental Life Ins. Co.*, Case No. 694829, Hearing Transcript dated June  26, 1997, at 39:3-12.

Similarly, in *Prudential*, in approving the settlement of a nationwide class action against a life insurer for deceptive sales practices, Judge Wolin observed:

[T]he results achieved by plaintiffs' counsel in this case in the face of significant legal, factual and logistical obstacles and formidable opposing counsel, are nothing short of remarkable....  Finally, the standing and professional skill of plaintiffs' counsel, in particular Co-Lead Counsel, is high and undoubtedly furthered their ability to negotiate a valuable settlement and argue its merits before this Court.  Several members of plaintiffs' counsel are leading attorneys in the area of class action litigation.

See *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 572, 585-86 (D.N.J. 1997), *vacated on other grounds*, 148 F.3d 283 (3d Cir. 1998).  Lerach Coughlin attorneys were co-lead counsel in this litigation.  At the Fairness Hearing in *Prudential*, Judge Wolin stated that "there is **no doubt** that Class Counsel have prosecuted the interests of the class members with the utmost vigor and expertise."  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 519 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998) (emphasis added).

In approving a $100 million settlement in *In re Prudential Securities Limited Partnerships Litig.*, 912 F. Supp. 97, 101 (S.D.N.Y. 1996), for which Lerach Coughlin attorneys, acting under the Milberg Weiss firm name, were part of the lead counsel, Judge Pollack noted that he had "the opportunity at first hand to observe the quality of plaintiffs' class counsel's representation, both here and in prior complex litigation, and [was] impressed with the quality of plaintiffs' class counsel."  In his opinion on class certification, Judge Chesler elaborated that:

The firm of Milberg Weiss Bershad Hynes & Lerach LLP, which is co-lead counsel for the plaintiff, was also counsel for the plaintiff class in the *Prudential* case.  Thus, the adequacy of the plaintiff's representation is beyond reproach.  Furthermore, the tremendous and unprecedented settlements which the Milberg firm has helped to secure for the plaintiff classes in both this case and the *Prudential* case are a testament to counsel's vigorous pursuit of the class interests.

See *Roy v. The Independent Order of Foresters*, Case No. 97-6225 (SRC), slip op. at 32 (D.N.J. Aug. 3, 1999).

At the Settlement Hearing in the *Chipcom* litigation, for which Lerach Coughlin attorneys were counsel, Judge Woodlock remarked:

[I]t seems to me that the level of legal services, the quality of legal services, the attention to the case on behalf of the plaintiffs, and ultimately plaintiffs' class, was

really very high quality and ought to be recognized by an appropriately high percentage figure here.

Of course, I disagree on the merits of the case. That is not, however, to say that I disagree with the quality of the lawyering or disregarded the quality of the lawyering or thought that the quality of the lawyering was not at the highest level. To the contrary, I thought it was at the highest level and that ought also to be reflected here.

*See Nappo v. Chipcom Corp.*, Case No. CA-95-11114-WD (D. Mass.), Settlement Hearing Transcript dated June 26, 1997, at 13-14.

## NOTABLE CLIENTS

### Public Fund Clients

- **Alaska Permanent Fund Corporation.**

- **Alaska State Pension Investment Board.**

- **California Public Employees' Retirement System.**

- **California State Teachers' Retirement System.**

- **City of Birmingham Retirement and Relief System (Ala.).**

- **Teachers' Retirement System of the State of Illinois, Illinois Municipal Retirement Fund, Illinois State Board of Investment.**

- **Los Angeles County Employees Retirement Association (LACERA).**

- **Maine State Retirement System.**

- **The Maryland-National Capital Park & Planning Commission Employees' Retirement System.**

- **Milwaukee Employees' Retirement System.**

- **Minnesota State Board of Investment.**

- **New Hampshire Retirement System.**

- **Pompano Beach Police & Firefighters Retirement System.**

- **The Regents of the University of California.**

- **State Universities Retirement System of Illinois.**

- **State of Wisconsin Investment Board.**

- **Tennessee Consolidated Retirement System.**

- **Washington State Investment Board.**

- **Wayne County Employees' Retirement System.**

- **West Virginia Investment Management Board.**

## Multi-Employer Clients

- **Alaska Electrical Pension Fund.**

- **Alaska Hotel & Restaurant Employees Pension Trust Fund.**

- **Alaska Ironworkers Pension Trust.**

- **Alaska Laborers Employers Retirement Fund.**

- **Alaska U.F.C.W. Pension Trust.**

- **Chemical Valley Pension Fund of West Virginia.**

- **Carpenters Health & Welfare Fund of Philadelphia & Vicinity.**

- **Carpenters Pension Fund of Baltimore, Maryland.**

- **Carpenters Pension Fund of Illinois.**

- **Carpenters Pension & Annuity Fund of Philadelphia & Vicinity.**

- **Southwest Carpenters Pension Trust (f/k/a Carpenters Pension Trust for Southern California).**

- **Central States, Southeast and Southwest Areas Pension Fund.**

- **Construction Industry and Carpenters Joint Pension Trust for Southern Nevada.**

- **Employer-Teamsters Local Nos. 175 & 505 Pension Trust Fund.**

- **Heavy & General Laborers' Local 472 & 172 Pension & Annuity Funds.**

- **UNITE Family of Funds.**

- **1199 SEIU Greater New York Pension Fund.**

- **Massachusetts State Carpenters Pension Fund.**

- **Massachusetts State Guaranteed Annuity Fund.**

- **New England Health Care Employees Pension Fund**.

- **PACE Industry Union-Management Pension Fund**.

- **Rocky Mountain UFCW Unions & Employers Pension Plan**.

- **SEIU Staff Fund**.

- **Southern California Lathing Industry Pension Fund**.

- **United Brotherhood of Carpenters Pension Fund**.

### Additional Institutional Investors

- **The Dot.Com Fund**.

- **Northwestern Mutual Life Insurance Company**.

- **Standard Life Investments**.

## PROMINENT CASES AND PRECEDENT-SETTING DECISIONS

### Prominent Cases

• ***In re Enron Sec. Litig.***, Case No. H-01-3624 (S.D. Tex.).  In appointing Lerach Coughlin lawyers sole lead counsel to represent the interests of Enron investors, the Court found the firm's zealous prosecution and level of "insight" set it apart from its peers.  Ever since, Lerach Coughlin and lead plaintiff The Regents of the University of California have aggressively pursued numerous defendants – including many of Wall Street's biggest banks and law firms.  Despite each defendant's claim that as a matter of law it could not be found liable for plaintiffs' losses, Lerach Coughlin and The Regents have thus far obtained settlements in excess of $7.1 billion for the benefit of investors.  Lerach Coughlin continues to press substantial and sizable claims against numerous defendants, including Enron's senior most officers and several large international banks, with every intention of winning further large recoveries at trial for the victims of this corporate catastrophe.

• ***In re NASDAQ Market-Makers Antitrust Litig.***, MDL No. 1023 (S.D.N.Y.).  Lerach Coughlin attorneys served as court-appointed co-lead counsel for a class of investors.  The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry wide conspiracy in one of the largest and most important antitrust cases in recent history.  After three and one half years of intense litigation, the case was settled for a total of $1.027 billion, the largest antitrust settlement ever.  An excerpt from the court's opinion reads:

> Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful and well regarded law firms in the country.  It is difficult to conceive of better representation than the parties to this action achieved.

• ***In re Dynegy Sec. Litig.***, Case No. H-02-1571 (S.D. Tex.).  As sole lead counsel representing The Regents of the University of California and the class of Dynegy investors, Lerach Coughlin obtained a combined settlement of $474 million from Dynegy Inc., Citigroup, Inc. and Arthur Andersen LLP for their involvement in a clandestine financing scheme known as Project Alpha.  Given Dynegy's limited ability to pay, Lerach Coughlin structured a settlement (reached shortly before the commencement of trial) that maximized plaintiffs' recovery without bankrupting the company.  Most notably, the settlement agreement provides that Dynegy will appoint two board members to be nominated by The Regents, which Lerach Coughlin and The Regents believe will result in benefits to all Dynegy's stockholders.

• ***In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig.***, MDL No. 834 (D. Ariz.).  Lerach Coughlin attorneys served as the court-appointed co-lead counsel for a class of persons who purchased debentures and/or stock in American Continental Corp., the parent company of the now infamous Lincoln Savings & Loan.  The suit charged Charles Keating, other insiders, three major accounting firms, three major law firms, Drexel Burnham, Michael Milken and others with racketeering and violations of securities laws.  Recoveries totaled $240 million on $288 million in losses.  A jury also rendered verdicts of more than $1 billion against Keating and others.

• ***In re 3Com, Inc. Sec. Litig.***, Case No. C-97-21083-JW (N.D. Cal.).  A hard-fought class action alleging violations of the federal securities law violations in which Lerach Coughlin attorneys served as lead counsel for the class and obtained a recovery totaling $259 million.

- ***Mangini v. R.J. Reynolds Tobacco Co.***, Case No. 939359 (Cal. Super. Ct., San Francisco County). In this case R.J. Reynolds admitted "the *Mangini* action, and the way that it was vigorously litigated, was an early, significant and unique driver of the overall legal and social controversy regarding underage smoking that led to the decision to phase out the Joe Camel Campaign."

- ***Cordova v. Liggett Group, Inc., et al.***, Case No. 651824 (Cal. Super. Ct., San Diego County), and ***People v. Philip Morris, Inc., et al.***, Case No. 980864 (Cal. Super. Ct., San Francisco County). Lerach Coughlin attorneys, as lead counsel in both these actions, played a key role in these cases which were settled with the attorneys general global agreement with the tobacco industry bringing $26 billion to the State of California as a whole and $12.5 billion to the cities and counties within California.

- ***Does I, et al. v. The Gap, Inc., et al.***, Case No. 01 0031 (D. Northern Mariana Islands). In this ground-breaking case, Lerach Coughlin attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top U.S. retailers such as The Gap, Target and J.C. Penney. In the first action of its kind, Lerach Coughlin attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan. This case was a companion to two other actions: ***Does I, et al. v. Advance Textile Corp., et al.***, Case No. 99 0002 (D. Northern Mariana Islands) – which alleged overtime violations by the garment factories under the Fair Labor Standards Act – and ***UNITE, et al. v. The Gap, Inc., et al.***, Case No. 300474 (Cal. Super. Ct., San Francisco County), which alleged violations of California's Unfair Practices Law by the U.S. retailers. These actions resulted in a settlement of approximately $20 million that included a comprehensive Monitoring Program to address past violations by the factories and prevent future ones. The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for Public Justice in recognition of the team's efforts at bringing about the precedent-setting settlement of the actions.

- ***In re Exxon Valdez***, Case No. A89 095 Civ. (D. Alaska), and ***In re Exxon Valdez Oil Spill Litig.***, Case No. 3 AN 89 2533 (Alaska Super. Ct., 3d Jud. Dist.). Lerach Coughlin attorneys served on the Plaintiffs' Coordinating Committee and Plaintiffs' Law Committee in the massive litigation resulting from the Exxon Valdez oil spill in Alaska in March 1989. A jury verdict of $5 billion was obtained and is currently on appeal.

- ***In re Washington Public Power Supply Sys. Sec. Litig.***, MDL No. 551 (D. Ariz.). A massive litigation in which Lerach Coughlin attorneys served as co-lead counsel for a class that obtained recoveries totaling $775 million after several months of trial.

- ***Hall v. NCAA*** (Restricted Earnings Coach Antitrust Litigation), Case No. 94-2392-KHV (D. Kan.). The firm was lead counsel and lead trial counsel for one of three classes of coaches in consolidated price fixing actions against the National Collegiate Athletic Association. On May 4, 1998, the jury returned verdicts in favor of the three classes for more than $54.5 million.

- ***Newman v. Stringfellow*** (Stringfellow Dump Site Litigation), Case No. 165994 MF (Cal. Super. Ct., Riverside County). Lerach Coughlin attorneys represented more than 4,000 individuals suing for personal injury and property damage arising from their claims that contact with the Stringfellow Dump Site may have caused them toxic poisoning. Recovery totaled approximately $109 million.

- ***In re Prison Realty Sec. Litig.***, Case No. 3:99-0452 (M.D. Tenn.).  Lerach Coughlin attorneys served as lead counsel for the class obtaining a $105 million recovery.

- ***In re Honeywell Int'l, Inc. Sec. Litig.,*** Case No. 00-cv-03605 (DRD) (D.N.J.).  Lerach Coughlin attorneys served as lead counsel for a class of investors that purchased Honeywell's common stock.  The case charged defendants Honeywell and its top officers with violations of the federal securities laws, alleging defendants made false public statements concerning Honeywell's merger with Allied Signal, Inc., and also alleging that defendants falsified Honeywell's financial statements.  After extensive discovery, Lerach Coughlin attorneys obtained a $100 million settlement for the class.

- ***In re AT&T Corp. Sec. Litig.,*** MDL No. 1399 (N.J.).  Lerach Coughlin attorneys served as lead counsel for a class of investors that purchased AT&T common stock.  The case charged defendants AT&T Corporation and its former Chairman and Chief Executive Officer, C. Michael Armstrong, with violations of the federal securities laws in connection with AT&T's April 2000 initial public offering of its wireless tracking stock, the largest IPO in American history.  After two weeks of trial, and on the eve of scheduled testimony by Armstrong and infamous telecom analyst Jack Grubman, defendants agreed to settle the case for $100 million.  In granting approval of the settlement, the Court stated the following about Lerach Coughlin:

> Lead Counsel are highly skilled attorneys with great experience in prosecuting complex securities action[s], and their professionalism and diligence displayed during litigation substantiates this characterization.  The Court notes that Lead Counsel displayed excellent lawyering skills through their consistent preparedness during court proceedings, arguments and the trial, and their well-written and thoroughly researched submissions to the Court.  Undoubtedly, the attentive and persistent effort of Lead Counsel was integral in achieving the excellent result for the Class.

- ***City of San Jose v. PaineWebber***, Case No. C-84-20601(RFP) (N.D. Cal.).  Lerach Coughlin attorneys filed a lawsuit on behalf of the City of San Jose to recover speculative trading losses from its former auditors and 13 brokerage firms.  In June 1990, following a six-month trial, the jury returned a verdict for the City, awarding over $18 million in damages plus pre-judgment interest.  The City also recovered an additional $12 million in settlements prior to and during the trial.

- ***Hicks v. Nationwide***, Case No. 602469 (Cal. Super. Ct., San Diego County).  Lerach Coughlin attorneys represented a class of consumers alleging fraud involving military purchasers of life insurance, in which a jury trial resulted in a full recovery for the class, plus punitive damages.

- ***In re Nat'l Health Labs. Sec. Litig.***, Case No. CV-92-1949-RBB (S.D. Cal.).  Lerach Coughlin attorneys served as co-lead counsel and obtained a pretrial recovery of $64 million in this securities fraud class action.

- ***In re Informix Corp. Sec. Litig.***, Case No. C-97-1289-CRB (N.D. Cal.).  Lerach Coughlin attorneys served as co-lead counsel for the class and obtained a recovery of $137.5 million.

- ***In re Apple Computer Sec. Litig.***, Case No. C-84-20148(A)-JW (N.D. Cal.).  Lerach Coughlin attorneys served as lead counsel and after several years of litigation obtained a $100 million jury verdict in this securities fraud class action.  The $100 million jury verdict was later upset on post-trial motions, but the case was settled favorably to the class.

- ***In re Nat'l Medical Enterprises Sec. Litig.***, Case No. CV-91-5452-TJH (C.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel and recovered $60.75 million in this securities fraud class action.

- ***In re Nucorp Energy Sec. Litig.***, MDL No. 514 (S.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel in this consolidated class action and recovered $55 million.

- ***In re U.S. Financial Sec. Litig.***, MDL No. 161 (S.D. Cal.). Lerach Coughlin attorneys acted as chairman of the Plaintiffs' Steering Committee and achieved a pretrial recovery of over $50 million.

- ***Barr v. United Methodist Church***, Case No. 404611 (Cal. Super. Ct., San Diego County). Lerach Coughlin attorneys served as lead and trial counsel in this class action on behalf of elderly persons who lost their life savings when a church-sponsored retirement home that had sold them prepaid life-care contracts went bankrupt. After four years of intensive litigation – three trips to the U.S. Supreme Court and five months of trial – plaintiffs obtained a settlement providing over $40 million in benefits to the class members. In approving that settlement, Judge James Foucht praised the result as "a most extraordinary accomplishment" and noted that it was the "product of the skill, effort and determination of plaintiffs' counsel."

- ***Grobow v. Dingman*** (The Henley Group Litigation), Case No. 575076 (Cal. Super. Ct., San Diego County). Lerach Coughlin attorneys served as co-lead counsel and obtained $42 million derivatively on behalf of The Henley Group, Inc.

- ***In re Itel Sec. Litig.***, Case No. C-79-2168A-RPA (N.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel in this securities class action that recovered $40 million.

- ***In re Fin. Corp. of America***, Case No. CV-84-6050-TJH(Bx) (C.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel and obtained a recovery of $41 million.

- ***In re Oak Indus. Sec. Litig.***, Case No. 83-0537-G(M) (S.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel in this case and obtained a recovery of $33 million.

- ***In re Wickes Cos. Sec. Litig.***, MDL No. 513 (S.D. Cal.). Lerach Coughlin attorneys served as liaison counsel in this consolidated securities law class action that recovered $32 million.

- ***Weinberger v. Shumway*** (The Signal Companies, Inc.), Case No. 547586 (Cal. Super. Ct., San Diego County). Lerach Coughlin attorneys served as co-lead counsel in this derivative litigation challenging executive "golden parachute" contracts, and obtained a recovery of approximately $23 million.

- ***In re Seafirst Sec. Litig.***, Case No. C-83-771-R (W.D. Wash.). Lerach Coughlin attorneys served as co-lead counsel in this class action and obtained a pretrial recovery of $13.6 million.

- ***In re Waste Mgmt. Sec. Litig.***, Case No. 83-C2167 (N.D. Ill.). Lerach Coughlin attorneys served as co-lead counsel in this case and obtained a pretrial recovery of $11.5 million.

- ***In re IDB Communications Group, Inc. Sec. Litig***., Case No. CV-94-3618 (C.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel in this case and obtained a pretrial recovery of $75 million.

- **In re Boeing Sec. Litig.**, Case No. C97-1715Z (W.D. Wash.).  A securities class action in which Lerach Coughlin attorneys served as co-lead counsel for the class obtaining a recovery in the amount of $92.5 million.

- **Thurber v. Mattel, Inc., et al.**, Case No. CV-99-10368-MRP (C.D. Cal.).  Lerach Coughlin attorneys served as chair of the Executive Committee of Plaintiffs' Counsel and obtained a recovery of $122 million.

- **In re Dollar General Sec. Litig.**, Case No. 3:01-0388 (M.D. Tenn.).  Lerach Coughlin attorneys served as co-lead counsel and obtained a recovery of $172.5 million.

- **Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Hanover Compressor Co.**, Case No. H-02-0410 (S.D. Tex.).  Lerach Coughlin attorneys served as lead counsel and obtained a recovery of $85 million.

- **In re Reliance Acceptance Group, Inc. Sec. Litig.**, MDL No. 1304 (D. Del.).  Lerach Coughlin attorneys served as co-lead counsel and obtained a recovery of $39 million.

- **Schwartz v. Visa Int'l, et al.**, Case No. 822404-4 (Cal. Super. Ct., Alameda County).  After years of litigation and a six month trial, Lerach Coughlin attorneys won one of the largest consumer protection verdicts ever awarded in the United States.  Lerach Coughlin attorneys represented California consumers who sued Visa and MasterCard for intentionally imposing and concealing a fee from their cardholders.  The court ordered Visa and MasterCard to return $800,000,000 in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest.  In addition, the court ordered full disclosure of the hidden fee.

- **Morris v. Lifescan, Inc.**, Case No. CV-98-20321-JF (N.D. Cal.).  Lerach Coughlin attorneys were responsible for achieving a $45 million all-cash settlement with Johnson & Johnson and its wholly-owned subsidiary, Lifescan, Inc., over claims that Lifescan deceptively marketed and sold a defective blood-glucose monitoring system for diabetics.  The Lifescan settlement was noted by the district court for the Northern District of California as providing "exceptional results" for members of the class.

- **Thompson v. Metro. Life Ins. Co.**, 216 F.R.D. 55 (S.D.N.Y. 2003).  Lerach Coughlin attorneys served as lead counsel and obtained $145 million for the class in a settlement involving racial discrimination claims in the sale of life insurance.

- **In re Prudential Ins. Co. of Am. Sales Practices Litig.**, 962 F. Supp. 450 (D. N.J. 1997).  In one of the first cases of its kind, Lerach Coughlin attorneys obtained a settlement of over $1.2 billion for deceptive sales practices in connection with the sale of life insurance involving the "vanishing premium" sales scheme.

- **Brody v. Hellman**, Case No. 00-CV-4142 (D. Colo.).  Lerach Coughlin was court-appointed counsel for a class of former stockholders of US West, Inc. who sought to recover a dividend declared by US West before its merger with Qwest.  The merger closed before the record and payment dates for the dividend, which Qwest did not pay following the merger.  The case was hard fought, and the plaintiffs survived a motion to dismiss, two motions for summary judgment and successfully certified the class over vigorous opposition from defendants.  In certifying the class, the Court commented,

"Defendants do not contest that Plaintiffs' attorneys are extremely well qualified to represent the putative class. This litigation has been ongoing for four years; in that time Plaintiffs' counsel has proven that they are more than adequate in ability, determination, and resources to represent the putative class." The case settled for $50 million, an outstanding settlement for the class given the novel and difficult legal questions raised in the case.

## Precedent-Setting Decisions

### Investor and Shareholder Rights

- ***Dura Pharmaceuticals, Inc. v. Broudo***, __ U.S. __, 125 S. Ct. 1627; 161 L. Ed. 2d 577 (2005). Resolving a conflict among the circuits on pleading and proving loss causation, the Supreme Court adopted a rule that investors may proceed by pleading and proving that securities they purchased declined in value because of the fraud alleged – as, for example, by alleging that the securities' market price fell when news of the issuer's true financial state began to leak out.

- ***In re Daou Systems Inc. Securities Litigation***, 411 F.3d 1006 (9th Cir. 2005). The Ninth Circuit sustained investors' allegations of accounting fraud, and ruled that loss causation was adequately alleged by pleading that the value of the stock they purchased declined when the issuer's true financial condition was revealed.

- ***Barrie v. Intervoice-Brite, Inc.***, 409 F.3d 653 (5th Cir. 2005). The Fifth Circuit held that where corporate officers made public statements together, an investor's allegations of the false statements meets the heightened pleading requirements for federal securities claims, and that the corporate officer who stood by silently while false statements were made – failing to correct them – may be liable along with the officer who actually made them.

- ***Newby v. Enron Corp.***, 394 F.3d 296 (5th Cir. 2004). The Fifth Circuit upheld a partial settlement in a complex case that was structured to support further litigation of that case in order to maximize recovery against the remaining defendants.

- ***Illinois Municipal Retirement Fund v. Citigroup, Inc.***, 391 F.3d 844 (7th Cir. 2004). The Seventh Circuit upheld a district court's decision that the Illinois Municipal Retirement Fund was entitled to litigate its claims under the federal Securities Act of 1933 against Worldcom's underwriters before a state court – rather than before the federal forum sought by the defendants.

- ***City of Monroe Employees Retirement System v. Bridgestone Corp.***, 387 F.3d 468 (6th Cir. 2005). The Sixth Circuit held that a statement regarding objective data supposedly supporting a corporation's belief that its tires were safe was actionable, where jurors could have found a reasonable basis to believe the corporation was aware of undisclosed facts seriously undermining the statement's accuracy.

- ***Nursing Home Pension Fund, Local 144 v. Oracle Corp.***, 380 F.3d 1226 (9th Cir. 2004). The Ninth Circuit ruled that defendants' fraudulent intent could be inferred from allegations concerning their false representations, insider stock sales and improper accounting methods.

- ***Southland Sec. Corp. v. INSpire Ins. Solutions Inc.***, 365 F.3d 353 (5th Cir. 2004).  The Fifth Circuit sustained allegations that an issuer's CEO made fraudulent statements in connection with a contract announcement.

- ***No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.***, 320 F.3d 920 (9th Cir. 2003).  *America West* is a landmark Ninth Circuit decision holding that investors pleaded with particularity facts raising a strong inference of corporate defendants' fraudulent intent under heightened pleading standards of the Private Securities Litigation Reform Act of 1995.

- ***Pirraglia v. Novell, Inc.***, 339 F.3d 1182 (10th Cir. 2003).  In *Pirraglia*, the Tenth Circuit upheld investors' accounting-fraud claims, concluding that their complaint presented with particularity facts raising a strong inference of the defendants' fraudulent intent, and that absence of insider trading by individual defendants did not mean they lacked a motive to commit fraud.

- ***In re Cavanaugh***, 306 F.3d 726 (9th Cir. 2002).  In *Cavanaugh*, the Ninth Circuit disallowed judicial auctions to select lead plaintiffs in securities class actions, and protected lead plaintiffs' right to select the lead counsel they desire to represent them.

- ***Lone Star Ladies Inv. Club v. Schlotzsky's, Inc.***, 238 F.3d 363 (5th Cir. 2001).  In *Lone Star Ladies*, the Fifth Circuit upheld investors' claims that securities-offering documents were incomplete and misleading, reversing a district court order that had  applied inappropriate pleading standards to dismiss the case.

- ***Bryant v. Dupree***, 252 F.3d 1161 (11th Cir. 2001).  The Eleventh Circuit held that investors were entitled to amend their securities-fraud complaint to reflect further developments in the case, reversing a contrary district court order.

- ***Bryant v. Avado Brands***, 187 F.3d 1271 (11th Cir. 1999).  Interpreting the Private Securities Litigation Reform Act of 1995, the Eleventh Circuit held that its provision requiring investors to plead facts raising a strong inference of scienter does not abrogate the principle that recklessness suffices to establish liability for violations of §10(b) of the Securities Exchange Act of 1934.

- ***Berry v. Valence Tech., Inc.***, 175 F.3d 699 (9th Cir. 1999).  The Ninth Circuit held that negative articles in the financial press do not cause the one-year "inquiry notice" statute of limitations to run, and indicated possible acceptance of an "actual knowledge" standard that would greatly extend the statute of limitations for victims of securities fraud.

- ***Hertzberg v. Dignity Partners, Inc.***, 191 F.3d 1076 (9th Cir. 1999).  The Ninth Circuit reversed dismissal of investors' claims that securities-offering documents were misleading, holding purchasers who bought shares in the aftermarket had standing to bring claims under the Securities Act of 1933 where a material fact is misstated or omitted from a registration statement.

- ***StorMedia, Inc. v. Superior Court***, 20 Cal. 4th 449 (1999).  Interpreting the anti-manipulation provisions of California's state securities laws, the California Supreme Court held that a corporation engages in the offer or sale of securities when it maintains an employee stock-option or stock-purchase plan, and thus may be liable under the statute for disseminating false or misleading public statements.

- ***Diamond Multimedia Sys., Inc. v. Superior Court***, 19 Cal. 4th 1036 (1999).  The California Supreme Court held that the California state securities laws' broad anti-manipulation provisions provide a remedy for out-of-state investors damaged by manipulative acts committed within the State of California.

- ***Cooper v. Pickett***, 137 F.3d 616 (9th Cir. 1998).  *Cooper* is the leading Ninth Circuit precedent on pleading accounting fraud with particularity.  The court held that plaintiffs stated claims against a company, its independent auditors and its underwriters, for engaging in a scheme to defraud involving improper revenue recognition.

- ***McGann v. Ernst & Young***, 102 F.3d 390 (9th Cir. 1996).  *McGann* is a leading federal appellate precedent interpreting Securities Exchange Act of 1934 §10(b)'s provision prohibiting manipulative or deceptive conduct "in connection with" the purchase or sale of a security.  The court rejected contentions that auditors could not be liable for a recklessly misleading audit opinion if they directly participated in no securities transactions.  Rather, an accounting firm is subject to liability if it prepares a fraudulent audit report knowing that its client will include the report in an SEC filing.

- ***Provenz v. Miller***, 102 F.3d 1478 (9th Cir. 1996).  In *Provenz*, the Ninth Circuit reversed a district court's entry of summary judgment for defendants in an accounting-fraud case.  The decision is a leading federal appellate precedent on the evidence required to prove fraudulent revenue recognition.

- ***Knapp v. Ernst & Whinney***, 90 F.3d 1431 (9th Cir. 1996).  The Ninth Circuit affirmed a jury verdict entered for stock purchasers against a major accounting firm.

- ***Warshaw v. Xoma Corp.***, 74 F.3d 955 (9th Cir. 1996).  *Warshaw* is a leading federal appellate precedent on pleading falsity in securities class actions – sustaining allegations that a pharmaceutical company misled securities analysts and investors regarding the efficacy of a new drug and the likelihood of FDA approval.  The court also held that a company may be liable to investors if it misled securities analysts.

- ***Gohler v. Wood***, 919 P.2d 561 (Utah 1996).  The Utah Supreme Court held that investors need not plead or prove "reliance" on false or misleading statements in order to recover under a state law prohibiting misleading statements in connection with the sale of a security.

- ***Fecht v. Price Co.***, 70 F.3d 1078 (9th Cir. 1995).  *Fecht* is another leading precedent on pleading falsity with particularity.  It sustained allegations that a retail chain's positive portrayal of its expansion program was misleading in light of undisclosed problems that caused the program to be curtailed.  The Ninth Circuit held that investors may draw on contemporaneous conditions – such as disappointing results and losses in new stores – to explain why a company's optimistic statements were false and misleading.  It also clarified the narrow scope of the so-called "bespeaks caution" defense.

- ***In re Software Toolworks Sec. Litig.***, 50 F.3d 615 (9th Cir. 1995).  In *Software Toolworks*, the Ninth Circuit reversed the summary judgment entered for defendants, including a company and its top insiders, independent auditors and underwriters.  Among other things, the court held that auditors and underwriters could be liable for their role in drafting a misleading letter sent to the SEC on the corporate defendant's attorneys' letterhead.

- ***In re Pac. Enters. Sec. Litig.***, 47 F.3d 373 (9th Cir. 1995). The Ninth Circuit approved shareholders' settlement of a derivative suit as fair, reasonable, and adequate.

- ***Kaplan v. Rose***, 49 F.3d 1363 (9th Cir. 1994). The court reversed entry of summary judgment for defendants because investors presented sufficient evidence for a jury to conclude that a medical device did not work as well as defendants claimed.

- ***In re Wells Fargo Sec. Litig.***, 12 F.3d 922 (9th Cir. 1993). *Wells Fargo* is a leading federal appellate decision on pleading accounting fraud, sustaining investors' allegations that a bank misrepresented the adequacy of its loan-loss reserves.

- ***Krangel v. Gen. Dynamics Corp.***, 968 F.2d 914 (9th Cir. 1992). The Ninth Circuit dismissed defendants' appeal from a district court's order upholding plaintiff investors' choice of forum by remanding the matter to the state court.

- ***Colan v. Mesa Petroleum, Co.***, 951 F.2d 1512 (9th Cir. 1991). In a shareholder derivative action, the Ninth Circuit held that exchange of common stock for debt securities was a "sale" subject to the Securities Exchange Act of 1934's regulation of short-swing profits.

- ***In re Apple Computer Sec. Litig.***, 886 F.2d 1109 (9th Cir. 1989). The Ninth Circuit reversed summary judgment for defendants, holding that investors could proceed to trial on claims that a company's representations about its new disk drive were misleading because they failed to disclose serious technical problems.

- ***Blake v. Dierdorff***, 856 F.2d 1365 (9th Cir. 1988). The Ninth Circuit reversed a district court's dismissal of claims for fraud brought against a corporation's directors and its lawyers.

- ***Mosesian v. Peat, Marwick, Mitchell & Co.***, 727 F.2d 873 (9th Cir. 1984). The Ninth Circuit upheld an investor's right to pursue a class action against an accounting firm, adopting statute-of-limitation rules for §10(b) suits that are favorable to investors.

- ***Barrie v. Intervoice-Brite, Inc.***, 409 F.3d 653 (5th Cir. 2005). The Fifth Circuit held that where corporate officers made public statements together, an investor's allegations of the false statements meets the heightened pleading requirements for federal securities claims, and that the corporate officer who stood by silently while false statements were made – failing to correct them – may be liable along with the officer who actually made them.

**ADDITIONALLY, IN THE CONTEXT OF SHAREHOLDER DERIVATIVE ACTIONS**, Lerach Coughlin attorneys have been at the forefront of protecting shareholders' investments by causing important changes in corporate governance as part of the global settlement of such cases. Three recent cases in which such changes were made include:

- ***Teachers' Retirement Sys. of Louisiana v. Occidental Petroleum Corp.***, Case No. BC185009 (Cal. Super. Ct.) (as part of the settlement, corporate governance changes were made to the composition of the company's board of directors, the company's nominating committee, compensation committee and audit committee).

- ***In re Sprint Shareholder Litig.***, Case No. 00-CV-230077 (Circuit Ct. Jackson County, Mo.) (in connection with the settlement of a derivative action involving Sprint Corporation, the company adopted over 60 new corporate governance provisions, which, among other things, established a truly independent Board of Directors and narrowly defines "independence" to eliminate cronyism between the board and top executives; required outside board directors to meet at least twice a year without management present; created an independent director who will hold the authority to set the agenda, a power previously reserved for the CEO; and imposed new rules to prevent directors and officers from vesting their stock on an accelerated basis).

- ***Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Hanover Compressor Co.***, Case No. H-02-0410 (S.D. Tex.) (groundbreaking corporate governance changes obtained include: direct shareholder nomination of two directors; mandatory rotation of the outside audit firm; two-thirds of the board required to be independent; audit and other key committees to be filled only by independent directors; creation and appointment of lead independent director with authority to set up board meetings).

## Insurance

- ***Lebrilla v. Farmers Group, Inc.***, 119 Cal. App. 4th 1070 (2004). Reversing the trial court, the California Court of Appeal ordered class certification of a suit against Farmers, one of the largest automobile insurers in California. The case involves Farmers' practice of using inferior imitation parts when repairing insureds' vehicles.

- ***Dehoyos v. Allstate Corp.***, 345 F.3d 290 (5th Cir. 2003), *cert. denied*, 2004 U.S. LEXIS 3088 (Apr. 26, 2004). The Fifth Circuit Court of Appeals held that claims under federal civil rights statutes involving the sale of racially discriminatory insurance policies based upon the use of credit scoring, did not interfere with state insurance statutes or regulatory goals and were not preempted under the McCarran-Ferguson Act. Specifically, the appellate court affirmed the district court's ruling that the McCarran-Ferguson Act does not preempt civil-rights claims – under the Civil Rights Act of 1866 and the Fair Housing Act – for racially discriminatory business practices in the sale of automobile and homeowners insurance. The U.S. Supreme Court denied defendants' petition for certiorari and plaintiffs can now proceed with their challenge of defendants' allegedly discriminatory credit-scoring system used in pricing of automobile and homeowners insurance policies.

- ***In re Monumental Life Ins. Co.***, 345 F.3d 408, (5th Cir. 2004). The Fifth Circuit Court of Appeals reversed a district court's denial of class certification in a case filed by African-Americans seeking to remedy racially-discriminatory insurance practices. The Fifth Circuit held that a monetary relief claim is viable in a Rule 23(b)(2) class if it flows directly from liability to the class as a whole and is capable of classwide "computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances."

- ***Moore v. Liberty Nat'l Life Ins. Co.***, 267 F.3d 1209 (11th Cir. 2001). The Eleventh Circuit affirmed the district court's denial of the defendant's motion for judgment on the pleadings, rejecting contentions that insurance policyholders' claims of racial discrimination were barred by Alabama's common-law doctrine of repose. The Eleventh Circuit also rejected the insurer's argument that the McCarran-Ferguson Act mandated preemption of plaintiffs' federal civil-rights claims under 42 U.S.C. §§1981 and 1982.

- ***Massachusetts Mutual Life Ins. Co. v. Superior Court***, 97 Cal. App. 4th 1282 (2002).  The California Court of Appeal affirmed a trial court's order certifying a class in an action by purchasers of so-called "vanishing premium" life-insurance policies who claimed violations of California's consumer-protection statutes.  The court held common issues predominate where plaintiffs allege a uniform failure to disclose material information about policy dividend rates.

## Consumer Protection

- ***Kasky v. Nike, Inc.***, 27 Cal. 4th 939 (2002), *cert. dismissed*, 539 U.S. 654 (2003).  The California Supreme Court upheld claims that an apparel manufacturer misled the public regarding its exploitative labor practices, thereby violating California statutes prohibiting unfair competition and false advertising.  The court rejected defense contentions that such misconduct was protected by the First Amendment.

- ***West Corp. v. Superior Court***, 116 Cal. App. 4th 1167 (2004).  The California Court of Appeal upheld the trial court's finding that jurisdiction in California was appropriate over the out-of-state corporate defendant whose telemarketing was aimed at California residents.  Exercise of jurisdiction was found to be in keeping with considerations of fair play and substantial justice.

- ***Spielholz v. Superior Court***, 86 Cal. App. 4th 1366 (2d Dist. 2001).  The California Court of Appeal held that false advertising claims against a wireless communications provider are not preempted by the Federal Communications Act of 1934.

- ***Day v. AT & T Corp.***, 63 Cal. App. 4th 325 (1998).  The California Court of Appeal held that an action which seeks only to enjoin misleading or deceptive practices in the advertising of telephone rates does not implicate the federal filed-rate doctrine, and can proceed under Cal. Bus. & Prof. Code §§17200 and 17500.  The court also held that the claims were not preempted by the Federal Communications Act, that the California Public Utilities Commission does not have exclusive jurisdiction, that the doctrine of primary jurisdiction did not compel dismissal or stay of the action, and that the plaintiffs were not required to exhaust their administrative remedies.

- ***Mangini v. R.J. Reynolds Tobacco Co.***, 7 Cal. 4th 1057 (1994).  The California Supreme Court upheld allegations that a cigarette manufacturer committed an unlawful business practice by targeting minors with its advertising.  It flatly rejected the manufacturer's contention that the action was preempted by federal cigarette labeling laws.

- ***Jordan v. Dep't of Motor Vehicles***, 75 Cal. App. 4th 449 (1999).  The California Court of Appeal invalidated a non-resident vehicle "smog impact" fee imposed on out-of-state autos being registered for the first time in California, finding that the fee violated the Interstate Commerce Clause of the U.S. Constitution.

- ***Clothesrigger, Inc. v. GTE Corp.***, 191 Cal. App. 3d 605 (1987).  The California Court of Appeal reversed the trial court's decision refusing to apply California law to the claims of nonresident plaintiffs.  In reversing the lower court's ruling, the court found that California law may constitutionally apply to the claims of proposed nationwide class members who are not residents of California, provided there are significant contacts to the claims asserted by each member.

- ***Lazar v. Hertz Corp.***, 143 Cal. App. 3d 128 (1983).  The California Court of Appeal ordered a consumer class certified, in an opinion that significantly broadens the right of injured consumers to bring class actions.

- ***Barr v. United Methodist Church***, 90 Cal. App. 3d 259 (1979).  The California Court of Appeal rejected constitutional defenses to an action for civil fraud and breach of contract committed by religiously affiliated defendants.

## Antitrust

- ***Law v. NCAA***, 134 F.3d 1010 (10th Cir. 1998).  The Tenth Circuit upheld summary judgment on liability for plaintiffs in college coaches' antitrust action against the National Collegiate Athletic Association on the issue of antitrust liability under §1 of the Sherman Antitrust Act, 15 U.S.C. §1 (plaintiffs subsequently prevailed on a damages trial).  It also upheld the district court's order permanently enjoining the NCAA from enforcing the "restricted earnings coach" rule, through which NCAA member institutions limited the salary of certain coaches to $12,000 during the academic year.

- ***In re NASDAQ Market-Makers Antitrust Litig.***, 172 F.R.D. 119 (S.D.N.Y. 1997).  In a case where plaintiffs alleged that approximately 30 NASDAQ market-makers engaged in a conspiracy to restrain or eliminate price competition, the district court certified a class of millions of investors – including institutional investors to be represented by five public pension funds.

- ***In re Disposable Contact Lens Antitrust Litig.***, 170  F.R.D. 524 (M.D. Fla. 1996).  Plaintiff contact lens purchasers alleged that defendant manufacturers conspired on a nationwide basis to eliminate competition and maintain artificially inflated prices for replacement contact lenses.  The district court denied defendant manufacturers' motion to dismiss plaintiffs' Clayton Act claims and granted their motion for class certification, finding that plaintiffs' vertical–conspiracy evidence was general to the class and provided a colorable method of proving impact on the class at trial.

- ***In re Currency Conversion Fee Antitrust Litig.***, 265 F. Supp. 2d 385 (S.D.N.Y. 2003).  In a case consolidating more than 20 putative class actions, plaintiff credit-card holders alleged that two credit-card networks, Visa and MasterCard, and their member banks, conspired to fix the foreign-currency conversion fees they charged.  The district court found that plaintiffs pleaded facts sufficient to permit the inference of an antitrust conspiracy, denying defendants' motion to dismiss the antitrust allegations.

- ***Pharmacare v. Caremark***, 965 F. Supp. 1411 (D. Haw. 1996).  The district court denied defendant's motion to dismiss plaintiffs' Robinson-Patman Act claim in a case where the largest company in the alternate-site infusion therapy industry had pleaded guilty to mail fraud for making improper payments to physicians in exchange for their referrals of patients.  Plaintiffs, defendant's competitors, alleged that they suffered injury as a result of defendant's agreements, which violated the anti-kickback provisions of the Clayton Act, §2(c) as amended by the Robinson-Patman Act, 15 U.S.C. §13(c).

# THE FIRM'S PARTNERS

**WILLIAM S. LERACH** is widely recognized as one of the leading securities lawyers in the United States. He has headed the prosecution of hundreds of securities class and stockholder derivative actions resulting in recoveries for defrauded shareholders amounting to billions of dollars. Mr. Lerach has been the subject of considerable media attention and is a frequent commentator on securities and corporate law, as well as a frequent lecturer. He represents numerous public and multi-employer pension funds in corporate securities matters.

He is the author of *Plundering America: How American Investors Got Taken for Trillions by Corporate Insiders - The Rise of the New Corporate Kleptocracy*, 8 Stanford J. of Law, Bus. and Fin. 1 (2002); *Why Insiders Get Rich, and the Little Guy Loses*, L.A. Times, Jan. 20, 2002; *The Chickens Have Come Home to Roost: How Wall Street, the Big Accounting Firms and Corporate Interests Chloroformed Congress and Cost America's Investors Trillions; Achieving Corporate Governance Enhancements Through Litigation*, keynote address to Council of Institutional Investors spring meeting, Mar. 27, 2001; *The Private Securities Litigation Reform Act of 1995 - 27 Months Later: Securities Class Action Litigation Under The Private Securities Litigation Reform Act's Brave New World*, Washington U. L. Rev., Vol. 76, No. 2 (1998); *An Alarming Decline In the Quality of Financial Reporting* (unpublished paper presented to 7th Annual BusinessWeek CFO Forum (June 1998); co author of *Civil RICO in Shareholders Suits Involving Defense Contractors* in Civil RICO Practice: Causes of Action, published by John Wiley & Sons, Inc. (1991); *The Incorporation Trap: How Delaware Has Destroyed Corporate Governance* (unpublished paper presented to the Council of Institutional Investors (1990)); *Securities Class Actions and Derivative Litigations Involving Public Companies: A Plaintiff's Perspective*, ALI/ABI, Civil Practice and Litigation in Federal and State Courts

(1985), ABA Fall Meeting (1985) and PLI Securities Litigation, Prosecution and Defense Strategies (1985); *Alternative Approaches for Awarding Attorneys' Fees in Federal Court Litigation: It's Time to Unload the Lodestar* (unpublished paper presented to the Ninth Circuit Judicial Conference (1984)); *Class Action and Derivative Suits in the Aftermath of Control Contests, Mergers and Acquisitions: Choice of Forum and Remedies; Attorney/Client Privilege in Class and Derivative Cases*, ABA 1984 Annual Meeting (1984); *Class Actions: Plaintiffs' Perspectives, Tactics and Problems*, ALI/ABA, Civil Practice and Litigation in Federal and State Courts (1984); *Life After Huddleston: Streamlining and Simplification of the Securities Class Action*, 7 Class Action Reports 318 (1982). He is also the author of *Termination of Class Actions: The Judicial Role*, McGough & Lerach, 33 U. Pitt L. Rev. 446 (1972); *Class and Derivative Actions Under the Federal Securities Laws* (1980 Regents of the University of California).

Mr. Lerach is chief counsel in many of the largest and highest profile securities class action and corporate derivative suits in recent years, including *Enron*, *Dynegy*, *Qwest* and *WorldCom*. He is listed in the "Best Lawyers in America" and is a Master of the American Inns of Court. Mr. Lerach has been the President of the National Association of Securities and Commercial Lawyers (NASCAT), a national group of attorneys concentrating in commercial and securities litigation. Mr. Lerach is a member of the Editorial Board of Class Action Reports, and frequently lectures on class and derivative actions, accountants' liability, and attorneys' fees, and has been a guest lecturer at Stanford University, University of California at Los Angeles and San Diego, University of Pittsburgh, San Diego State University and at the Council of Institutional Investors and the International Corporate Governance Network. He is also a member of

the American Law Institute faculty on Federal and State Class Action Litigation.

Mr. Lerach received his Bachelor of Arts degree from the University of Pittsburgh in 1967 and his Juris Doctor degree in 1970 where he graduated second in his class, *magna cum laude*, and was a member of the Order of the Coif.    Mr. Lerach was admitted to the Pennsylvania Bar in 1970 and to the California Bar in 1976.    Mr. Lerach was a partner with Pittsburgh firm Reed Smith Shaw & McClay before opening the West Coast office of Milberg Weiss in 1976.  Mr. Lerach served as Co-Chairman of Milberg Weiss and serves as Chairman of Lerach Coughlin.  He is a member of the Pennsylvania and California Bar Associations and has been admitted to practice before numerous federal and state courts.  He is a member of the ABA Litigation Section's Committee on Class Actions and Derivative Skills.

Mr. Lerach has testified before federal and state legislative committees concerning corporate governance and securities matters and is frequently quoted in the national media regarding corporate issues.

Mr. Lerach was honored by President Clinton who appointed him to be a member of the United States Holocaust Memorial Council.

PATRICK J. COUGHLIN has been lead counsel for several major securities matters including one of the largest class action securities cases to go to trial, *In re Apple Computer Sec. Litig.*, Case No. C-84-20148(A)-JW (N.D. Cal.).  Formerly, Mr. Coughlin was an Assistant U.S. Attorney in Washington, D.C. and San Diego handling complex white collar fraud matters.  During this time Mr. Coughlin helped try one of the largest criminal RICO cases ever prosecuted by the United States, *United States v. Brown, et al.*, 86-3056-SWR, as well as an infamous oil fraud scheme resulting in a complex murder-for-hire trial, *United States v. Boeckman, et al.*, 87-0676-K.  Mr. Coughlin has instructed on the

current state of securities class action litigation in light of U.S. Congressional action aimed at weakening U.S. securities laws.

While at Milberg Weiss, Mr. Coughlin handled a number of large securities cases involving such companies as IDB Communications Group ($75 million recovery);Unocal ($47.5 million recovery); Media Vision ($25 million recovery); Boeing ($92.5 million recovery); Sunrise Medical ($20 million recovery); Sybase ($28.5 million recovery); Conner Peripherals ($26 million recovery); and 3Com ($259 million recovery).  Mr. Coughlin also prosecuted a number of actions against the tobacco industry which resulted in the phase-out of the Joe Camel Campaign and a $12.5 billion recovery to the Cities and Counties of California.  Mr. Coughlin's trials include a RICO case against the tobacco industry (March 1999) and securities cases which went to trial against Wells Fargo (October 1999) and California Amplifier (February 2000).

JOHN J. STOIA, JR. received his Bachelor of Science degree from the University of Tulsa in 1983.  While working on his degree, Mr. Stoia was elected President of the National Political Science Honor Society and graduated with highest honors.  In 1986, Mr. Stoia received his Juris Doctor degree from the University of Tulsa and graduated in the top of his class.

In 1987, Mr. Stoia graduated from the Georgetown University Law Center in Washington, D.C., receiving his Masters of Law in Securities Regulation.  Thereafter, Mr. Stoia served as an enforcement attorney with the U.S. Securities and Exchange Commission, until joining Milberg Weiss. Mr. Stoia was a partner with Milberg Weiss until co-founding Lerach Coughlin.

Mr. Stoia worked on numerous nationwide complex securities class actions, including *In re American Continental Corp./Lincoln Savings & Loan Sec. Litig.*, MDL No. 834 (D. Ariz.), which arose out of the collapse of Lincoln Savings &

Loan and Charles Keating's empire. Mr. Stoia was a member of plaintiffs' trial team which obtained verdicts against Mr. Keating and his co-defendants in excess of $3 billion and settlements of over $240 million.

Mr. Stoia was involved in over 40 nationwide class actions brought by policyholders against U.S. and Canadian life insurance companies seeking redress for deceptive sales practices during the 1980s and 1990s. Mr. Stoia was actively involved in cases against, among others, Prudential, New York Life, Transamerica Life Insurance Company, General American Life Insurance Company, Manufacturer's Life, Metropolitan Life, American General, US Life, Allianz, Principal Life and Pacific Life Insurance Company. While at Milberg Weiss, Mr. Stoia was appointed lead counsel for plaintiffs and class members in all deceptive sales practices cases in which Milberg Weiss was involved.

Mr. Stoia was also involved in numerous cases brought against life insurance companies for racial discrimination involving the sale of small value or "industrial life" insurance policies during the 20th century. Mr. Stoia was lead counsel in *McNeil, et al. v. American General Life Insurance and Accident Insurance Company*, the first major settlement involving discrimination claims that resulted in a $234 million recovery for class members. Mr. Stoia resolved other race-based insurance cases, including *Brown v. United Life Insurance Company* ($40 million), *Morris v. Life Insurance Company of Georgia* ($55 million) and *Thompson v. Metropolitan Life* ($145 million).

Mr. Stoia currently represents numerous large institutional investors who suffered hundreds of millions of dollars in losses as a result of the major financial scandals, including WorldCom and AOL-Time Warner.

Mr. Stoia is a frequent lecturer at ALI-ABA, Practicing Law Institute and American Trial Lawyers Association seminars and conferences: speaker: *ALI-ABA Program: Life and Health Insurance Litigation*; co-chair, *ALI-ABA Program: Financial Services and Insurance Industry Litigation*; speaker, *ATLA Winter Convention – Securities Fraud: Rights and Remedies of Shareholders*; speaker, ATLA Annual Convention – Insurance Law Section, Panel: Broker/Dealer Liability; speaker, *ACI Consumer Finance Class Actions Conference*; speaker, Barreau du Quebec Class Action Seminar.

PAUL J. GELLER received his Bachelor of Science degree in Psychology from the University of Florida, where he was a member of the University Honors Program. Mr. Geller then earned his Juris Doctor degree, with highest honors, from Emory University School of Law. At Emory, Mr. Geller was an Editor of the Law Review, was inducted into the Order of the Coif legal honor society, and was awarded multiple American Jurisprudence Book Awards for earning the highest grade in the school in a dozen courses.

After spending several years representing blue chip companies in class action lawsuits at one of the largest corporate defense firms in the world, Mr. Geller was a founding partner and head of the Boca Raton offices of the national class action boutiques Cauley Geller Bowman & Rudman, LLP and Geller Rudman, PLLC. In June 2004, through a merger of Lerach Coughlin and Geller Rudman, PLLC, Mr. Geller opened the Boca Raton, Florida office of the Firm.

In July 2002, Mr. Geller was named by the *National Law Journal* as one of the nation's "40 Under 40" – an honor bestowed upon 40 of the country's top young litigators. In July 2003, Mr. Geller was featured in *Florida Trend* magazine and the *South Florida Business Journal* as one of Florida's top lawyers.

Mr. Geller is rated AV by Martindale Hubbell (the highest rating available) and has served as lead or co-lead counsel in a majority of the

securities class actions that have been filed in the southeastern United States in the past several years, including cases against *Hamilton Bancorp* ($8.5 million settlement), *Prison Realty Trust* (Co-Lead Derivative Counsel; total combined settlement of over $120 million), and *Intermedia Corporation* ($38 million settlement). Mr. Geller is currently one of the court-appointed Lead Counsel in cases involving the alleged manipulation of the asset value of some of the nations largest mutual funds, including *Hicks v. Morgan Stanley & Co.*, Case No. 01 Civ. 10071 (S.D.N.Y.), *Abrams v. Van Kampen Funds, Inc.*, Case No. 01 C 7538 (N.D. Ill.), and *In re Eaton Vance Securities Litigation*, Case No. C.A. No. 01-10911 (D. Mass.). Mr. Geller is also heavily involved in corporate governance litigation. For example, Mr. Geller represented a shareholder of Applica, Inc. who was concerned with allegedly reckless acquisitions made by the company. Mr. Geller and his partners secured a settlement that required Applica to establish a new independent acquisitions committee charged with conducting due diligence and approving future acquisitions, even though such a committee is not required by SEC regulations. In another corporate governance lawsuit, Mr. Geller and his co-counsel challenged the independence of certain members of a special committee empaneled by Oracle Corp. to look into certain stock sales made by its Chairman and Chief Executive, Larry Ellison. After Delaware Chancery Court Vice Chancellor Leo E. Strine issued an order agreeing that the special committee was "fraught with conflicts," the *Wall Street Journal* called the decision "one of the most far-reaching ever on corporate governance."

Mr. Geller has also successfully represented consumers in class action litigation. He was personal counsel to the lead plaintiff in *Stoddard v. Advanta*, a case that challenged the adequacies of interest rate disclosures by one of the nation's largest credit card companies ($11 million settlement) and was personal counsel to one of the lead plaintiffs in the American Family Publishers sweepstakes litigation, which alleged that the defendant misled consumers into thinking they would win a lottery if they purchased magazine subscriptions ($38 million settlement).

During the past few years, several of Mr. Geller's cases have received regional and national press coverage. Mr. Geller has appeared on CNN's Headline News, CNN's Moneyline with Lou Dobbs, ABC, NBC and FOX network news programs. Mr. Geller is regularly quoted in the financial press, including the *New York Times*, the *Wall Street Journal*, the *Washington Post* and *Business Week*.

Mr. Geller has been or is a member of the Association of Trial Lawyers of America, the Practicing Law Institute, the American Bar Association, the Palm Beach County Bar Association (former Member of Bar Grievance Committee) and the South Palm Beach County Bar Association (former Co-Chair of Pro Bono Committee).

**SAMUEL H. RUDMAN** received his Bachelor of Arts degree in Political Science from Binghamton University in 1989 and earned his Juris Doctor degree from Brooklyn Law School in 1992. While at Brooklyn Law School, Mr. Rudman was a Dean's Merit Scholar and a member of the Brooklyn Journal of International Law and the Moot Court Honor Society.

Upon graduation from law school, Mr. Rudman joined the Enforcement Division of the United States Securities & Exchange Commission in its New York Regional Office as a staff attorney. In his position as a staff attorney, Mr. Rudman was responsible for numerous investigations and prosecutions of violations of the federal securities laws. Thereafter, Mr. Rudman joined one of the largest corporate law firms in the country, where he represented public companies in the defense of securities class actions and also

handled several white collar criminal defense matters.

Shortly after the passage of the Private Securities Litigation Reform Act of 1995, Mr. Rudman joined the firm of Milberg Weiss, where he was one of the youngest lawyers ever to be made a partner at the firm and was responsible for the investigation and initiation of securities and shareholder class actions. In addition, Mr. Rudman developed a focus in the area of lead plaintiff jurisprudence and has been responsible for numerous reported decisions in that area of securities law.

Mr. Rudman continues to focus his practice in the area of investigating and initiating securities and shareholder class actions and also devotes a considerable amount of time to representing clients in ongoing securities litigation.

**DARREN J. ROBBINS** received his Bachelor of Science and Master of Arts degrees in Economics from the University of Southern California. Mr. Robbins received his Juris Doctor degree from Vanderbilt Law School, where he served as the Managing Editor of the *Vanderbilt Journal of Transnational Law*.

Mr. Robbins oversees Lerach Coughlin's merger and acquisition practice. Mr. Robbins has extensive experience in federal and state securities class action litigation. Mr. Robbins served as one of the lead counsel in the *In re Prison Realty Sec. Litig.* ($120+ million recovery), *In re Dollar General Sec. Litig.* ($172.5 million recovery) and *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Hanover Compressor Co.* ($85+ million recovery). Mr. Robbins currently represents institutional and individual investors in securities actions in state and federal courts across the country, including The Regents of the University of California in the *Enron* litigation and numerous public pension funds in the *WorldCom* bond litigation.

Mr. Robbins is a frequent speaker at conferences and seminars concerning securities matters and shareholder litigation across the country.

**KEITH F. PARK** graduated from the University of California at Santa Barbara in 1968 and from the Hastings College of Law of the University of California in 1972.

Mr. Park is responsible for the recoveries in more than 1,000 securities class actions, including actions involving: Dollar General ($162 million recovery); Mattel ($122 million recovery); Prison Realty ($105 million recovery); Honeywell (in addition to the $100 million recovery, obtained Honeywell's agreement to adopt significant corporate governance changes relating to compensation of senior executives and directors, stock trading by directors, executive officers and key employees, internal and external audit functions, and financial reporting and board independence); Sprint (in addition to $50 million recovery, obtained important governance enhancements, including creation of "Lead Independent Director" and expensing of stock options); Hanover Compressor (on top of $85 million recovery, obtained the following governance enhancements, among others: direct shareholder nomination of Board and mandatory rotation of audit firm); 3COM ($259 million recovery); Chiron ($43 million recovery); MedPartners ($56 million recovery); NME ($60.75 million recovery); and TCI ($26.5 million recovery).

He is admitted to practice in California and New York. He is admitted to practice in California and New York.

**HELEN J. HODGES** received her Bachelor of Science degree in accounting from Oklahoma State University in 1979. While attending Oklahoma State, Ms. Hodges obtained her private pilot's license and in 1980 was a member of Oklahoma State's flying team, which won top honors at the National

Intercollegiate Flying Association competition. Ms. Hodges became a certified public accountant in 1982 and received her Juris Doctor degree from the University of Oklahoma in 1983, where she was the Managing Editor of the Law Review. She was admitted to the State Bars of Oklahoma in 1983 and California in 1987.

Before partnership with Lerach Coughlin, Ms. Hodges was a partner with Milberg Weiss. Formerly, she was staff accountant with Arthur Andersen & Co. and served as the law clerk for the *Penn Square* cases in the Western District of Oklahoma. Ms. Hodges has been involved in numerous securities class actions, including *Knapp v. Gomez*, Civ. No. 87-0067-H(M) (S.D. Cal.), in which a plaintiffs' verdict was returned in a Rule 10b-5 class action; *National Health Labs*, which was settled for $64 million; and *Thurber v. Mattel*, which was settled for $122 million.

**REED R. KATHREIN**, prior to his partnership with Lerach Coughlin, was partner of the San Francisco office of Milberg Weiss, which he opened in 1994. For the past 15 years, he has focused his practice on complex and class action litigation, principally involving securities or consumer fraud. He was lead counsel in numerous state as well as federal court actions around the country, including co-lead counsel in the *In re 3Com Sec. Litig.* which settled for $259 million.

Mr. Kathrein publishes and lectures extensively in the fields of litigation, consumer and securities law, class actions, and international law. He annually co-chairs the Executive Enterprises program for corporate officers and counsel entitled, "Dealing With Analysts and the Press." He has spoken to the American Bar Association, the American Business Trial Lawyers Association, the Consumer Attorneys of California, the Practicing Law Institute, the Securities Law Institute, the National Investor Relations Institute, state and local bar groups, private seminar organizations and

corporations. He testified before the Senate Foreign Relations Committee on behalf of the American Bar Association in favor of advice and consent to ratification of treaties on international sales, arbitration, evidence and service of process. He testified before the California Assembly and Senate Committees on Y2K litigation, the unfair trade practice act and changes in the business judgment rule. He actively fought the passage of the Private Securities Litigation Reform Act of 1995 and the Securities Litigation Uniform Standard Act of 1998. He worked behind the scenes to shape the Sarbanes–Oxley Act of 2002 on corporate responsibility and accountability.

He served as chairman of the Private International Law Committee of the American Bar Association from 1984-1990, as a director and officer of the International Business Counsel Mid-America from 1983-1988, where he also chaired the policy committee. He acted as an advisor to the U.S. State Department's Advisory Committee on Private International Law from 1984-1990. He is a member of the executive committee of the National Association of Securities and Commercial Law Attorneys, and since 1998 has been a member of the Board of Governors of the Consumer Attorneys of California.

Formerly, Mr. Kathrein was a partner in the Chicago law firm Arnstein & Lehr, where he represented national and international corporations in litigation involving antitrust, commercial, toxic tort, employment and product and public liability disputes. Mr. Kathrein graduated from the University of Miami, in 1977, he received his Bachelor of Arts degree, *cum laude*. He served as Editor-in-Chief of the *International Law Journal*. He is admitted to the Bar of the States of Illinois (1977), Florida (1978) and California (1989).

**ERIC ALAN ISAACSON** received his A.B. *summa cum laude* from Ohio University in 1982. He earned his Juris Doctor with high honors from the Duke University School of Law in 1985 and

was elected to the Order of the Coif. Mr. Isaacson served as a Note and Comment Editor for the *Duke Law Journal*, and in his third year of law school became a member of the moot court board. After graduation Mr. Isaacson clerked for the Honorable J. Clifford Wallace of the United States Court of Appeals for the Ninth Circuit.

In 1986, Mr. Isaacson joined the litigation department of O'Melveny & Myers, where his practice included cases involving allegations of trademark infringement, unfair business practices and securities fraud. He served as a member of the trial team that successfully prosecuted a major trademark-infringement action.

Prior to his partnership at Lerach Coughlin, Mr. Isaacson was a partner at Milberg Weiss, where he took part in prosecuting many securities-fraud class actions. He was a member of the plaintiffs' trial team in *In re Apple Computer Sec. Litig.*, Case No. C 84-20198(A)-JW (N.D. Cal.), for example.

Since the early 1990s, his practice has focused on appellate matters in cases before the California Courts of Appeal, the California Supreme Court, the United States Court of Appeals and the United States Supreme Court. *See*, *e.g.*, *In re Daou Systems, Inc., Securities Litigation*, 411 F.3d 1006 (9th Cir. 2005); *Illinois Municipal Retirement Fund v. CitiGroup, Inc.*, 391 F.3d 844 (7th Cir. 2004); *Lone Star Ladies Investment Club v. Schlotzsky's Inc.*, 238 F.3d 363 (5th Cir. 2001); *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076 (9th Cir. 1999); *Warshaw v. Xoma Corp.*, 74 F.3d 955 (9th Cir. 1996); *Fecht v. Price Co.*, 70 F.3d 1078 (9th Cir. 1995); *Mangini v. R.J. Reynolds Tobacco Co.*, 7 Cal. 4th 1057 (1994).

Mr. Isaacson's publications include: "What's Brewing in Dura?" (coauthored with Patrick J. Coughlin and Joseph D. Daley), Loyola University Chicago Law Journal (publication forthcoming 2005); "Duped Investors See 'Dura' as Diamond in the Rough," (coauthored with Patrick J. Coughlin and Joseph D. Daley), Los Angeles Daily Journal, July 5, 2005, p. 8; "Pleading Scienter Under Section 21D(b)(2) of the Securities Exchange Act of 1934: Motive, Opportunity, Recklessness and the Private Securities Litigation Reform Act of 1995" (co-authored with William S. Lerach), 33 San Diego Law Review 893 (1996); "Securities Class Actions in the United States" (co-authored with Patrick J. Coughlin), in William G. Horton & Gerhard Wegen, editors, *Litigation Issues in the Distribution of Securities: An International Perspective* 399 (Kluwer International/International Bar Association, 1997); "Pleading Standards Under the Private Securities Litigation Reform Act of 1995: The Central District of California's *Chantal* Decision" (co-authored with Alan Schulman & Jennifer Wells), *Class Action & Derivative Suits*, Summer 1996, at 14; "Commencing Litigation Under the Private Securities Litigation Reform Act of 1995" (co-authored with Patrick J. Coughlin), in Jay B. Kasner & Bruce G. Vanyo, editors, *Securities Litigation 1996* 9-22 (Practising Law Institute 1996); "The Flag Burning Issue: A Legal Analysis and Comment," 23 Loyola of Los Angeles Law Review 535 (1990).

Mr. Isaacson also has received awards for *pro bono* work from the California Star Bar and the San Diego Volunteer Lawyer Program. He has filed *amicus curiae* briefs on behalf of a variety of organizations, including the Social Justice Committee and Board of Trustees of the First Unitarian Universalist Church of San Diego. Since January 2004 Mr. Isaacson has served as a member of the Board of Directors – and since March 2005 as Board President – of the San Diego Foundation for Change, an organization dedicated to funding and supporting community-led efforts that promote social equality, economic justice, and environmental sustainability. Its grantees have included groups as diverse as Activist San Diego, the Interfaith Committee for Worker Justice, and the San Diego Audubon Society.

Mr. Isaacson has been a member of the California Bar since 1985. He also is admitted to practice before the United States Supreme Court, the United States Courts of Appeals for the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits, and before all federal district courts in the State of California.

**MARK SOLOMON** is a partner at Lerach Coughlin. Prior to joining Lerach Coughlin, Mr. Solomon was a partner at Milberg Weiss. He received his Juris Doctor degrees from Trinity College, Cambridge University, England (1985), Harvard Law School (1986) and the Inns of Court School of Law, England (1987). He is admitted to the bars of England and Wales (Barrister), Ohio and California, as well as to various U.S. Federal District and Appellate Courts.

Before attending Trinity College in England, Mr. Solomon served as a British police officer. After qualifying as a barrister, and prior to joining Milberg Weiss in September 1993, he practiced at the international firm Jones Day Reavis & Pogue in Cleveland, Ohio followed by practice at the Los Angeles office of New York's Stroock & Stroock & Lavan. At those firms Mr. Solomon's representations included the defense of securities fraud and other white-collar crimes, antitrust, copyright, commercial and real estate litigation and reinsurance arbitration. While practicing in Los Angeles, Mr. Solomon took to trial, and won, complex commercial contract and real estate actions in respectively, the Orange County and Los Angeles Superior Courts.

Since 1993, Mr. Solomon has spearheaded the prosecution of many significant cases. He has obtained substantial recoveries and judgments through settlement, summary adjudications and trial. He litigated, through trial, *In re Helionetics*, Case No. SACV-94-1069-AHS(EEx) (C.D. Cal.), where he and his trial partner, Paul Howes, won a unanimous $15.4 million jury verdict in November 2000. He has led the litigation of many other cases, among them *In re Informix Corp. Sec. Litig.*, Case No. C-97-1289-CRB (N.D. Cal.) ($142 million recovery); *Rosen, et al. v. Macromedia, Inc., et al.*, Case No. 988526 (Cal. Super. Ct., County of San Francisco) ($48 million recovery); *In re Community Psychiatric Centers Sec. Litig.*, Case No. SACV-91-533-AHS(EEx) (C.D. Cal.) ($42.5 million recovery); *In re Advanced Micro Devices Sec. Litig.*, Case No. C-93-20662-RPA(PVT) (N.D. Cal.) ($34 million recovery); *In re Tele-Communications, Inc. Sec. Litig.*, No. 97CV421 (Arapahoe Dist. Ct. Colo.) ($33 million recovery); *In re Home Theater Sec. Litig.*, Case No. SACV-95-858-GLT(EEx) (C.D. Cal.) ($22.5 million judgment); *In re Gupta Corp. Sec. Litig.*, Case No. C-94-1517-FMS (N.D. Cal.) ($15 million recovery); *In re Radius Sec. Litig.*, Case No. C-92-20597-RPA(EAI) (N.D. Cal.); *In re SuperMac Tech., Inc. Sec. Litig.*, Case No. C-94-20206-RPA(PVT) (N.D. Cal.) (combined recovery of $14 million); *Markus, et al. v. The North Face, et al.*, Case No. 99-2-473 (D.C. Colo.) ($12.5 million recovery); *In re Brothers Gourmet Coffees, Inc. Sec. Litig.*, Case No. 95-8584-CIV-Ryskamp (C.D. Fla.) ($9 million recovery); *Anderson, et al. v. EFTC, et al.*, Case No. 98-CV-962 (County of Weld District Ct., Colo.) ($9 million recovery); *Sharma v. Insignia*, Case No. CV757058 (Super. Ct., Santa Clara County) ($8 million recovery); *In re Medeva Sec. Litig.*, Case No. 93-4376-KN(AJWx) (C.D. Cal.) ($6.75 million recovery); *In re Flir Sys. Inc. Sec. Litig.*, Case No. CV-00-360-HA (D. Or.) ($6 million recovery); *In re Nike, Inc. Sec. Litig.*, Case No. CV-01-332-KI (D. Or.) ($8.9 million recovery); *Hayley, et al. v. Parker, et al.*, Case No. CV-02-9721-RGK(PLAx) (D.C. Cal.) ($16.4 million recovery).

Mr. Solomon chaired the American Bar Association Directors and Officers Liability Sub-Committee and the Accountants Liability Sub-Committee between 1996 and 2001.

**RANDI D. BANDMAN** is a partner at Lerach Coughlin whose responsibilities include the management of the Los Angeles office and involvement in the firm's Institutional Investor

Department. Ms. Bandman received her Juris Doctor degree from the University of Southern California in 1989 and her Bachelor of Arts degree in English from the University of California at Los Angeles in 1986. Having been associated with the Lerach Coughlin lawyers for more than 12 years, Ms. Bandman's practice has focused on securities and consumer class actions in both state and federal court. She has represented shareholders of companies in industries as diverse as aircraft manufacturing, battery technology, and computer software. These cases, which yielded significant recoveries for the plaintiffs, were against such companies as National Health Labs ($64 million); Sybase ($28.5 million); Unocal ($47.5 million); Sunrise Medical ($20 million); Valence ($20 million); and Coeur d'Alene ($13 million). Ms. Bandman was responsible for running one of the largest class actions in the country over a four-year period against the Boeing Company which settled for more than $90 million. Ms. Bandman was also an early member of the team that directed the prosecution of the cases against the tobacco companies.

Using her extensive experience in asserting claims for injured investors, Ms. Bandman lectures and advises union and public funds both domestically and internationally on their options for seeking redress for losses due to fraud sustained in their pension portfolios. Ms. Bandman is currently interfacing with numerous public and union funds including those workers for various States and Municipalities and the Entertainment Industry, as well as trades such as Sheetmetal, Construction, Airconditioning, Food and Hospitality, Plumbers and Teamsters.

Ms. Bandman has served as a lecturer on numerous matters concerning securities litigation to attorneys for continuing legal education, as well as a panelist for the Practicing Law Institute.

**THEODORE J. PINTAR** received his Bachelor of Arts degree from the University of California at Berkeley in 1984 where he studied Political Economies of Industrial Societies. Mr. Pintar received his Juris Doctor degree from the University of Utah College of Law in 1987 where he was Note and Comment Editor of the *Journal of Contemporary Law* and the *Journal of Energy Law and Policy*. Formerly, Mr. Pintar was associated with the firm of McKenna, Conner & Cuneo in Los Angeles, California, where he focused in commercial and government contracts defense litigation. Mr. Pintar is co-author of "Assuring Corporate Compliance with Federal Contract Laws and Regulations," Corporate Criminal Liability Reporter, Vol. 2 (Spring 1988).

Prior to partnership with Lerach Coughlin, Mr. Pintar was a partner with Milberg Weiss, where he worked for 14 years. Mr. Pintar participated in the successful prosecution of numerous securities fraud class actions and derivative actions, including participation on the trial team in *Knapp v. Gomez*, Case No. 87-0067-H(M) (S.D. Cal.), which resulted in a plaintiff's verdict. Mr. Pintar also participated in the successful prosecution of numerous consumer class actions, including: (i) actions against major life insurance companies such as Manulife ($555 million settlement value) and Principal Life Insurance Company ($379 million settlement value); (ii) actions against major homeowners insurance companies such as Allstate ($50 million settlement) and Prudential Property and Casualty Co. ($7 million settlement); and (iii) actions against Columbia House ($55 million settlement value) and BMG ($10 million settlement value), a direct marketer of CDs and cassettes.

Mr. Pintar is a member of the State Bar of California and the San Diego County Bar Association.

**JOY ANN BULL** received her Juris Doctor degree, *magna cum laude*, from the University of San Diego in 1988. She was a member of the

University of San Diego National Trial Competition Team and *San Diego Law Review*. Ms. Bull focuses on the litigation of complex securities and consumer class actions. For nine years, Ms. Bull has concentrated her practice in negotiating and documenting complex settlement agreements and obtaining the required court approval of the settlements and payment of attorneys' fees. These settlements include: *In re Dole Shareholders' Litig.*, Case No. BC281949 (Cal. Super. Ct., Los Angeles County) ($172 million recovery plus injunctive relief); *Lindmark v. American Express*, Case No. 00-8658-JFW(CWx) (C.D. Cal.) ($38 million cash payment plus injunctive relief); *In re Disposable Contact Lens Antitrust Litig.*, MDL No. 1030 (M.D. Fla.) (cash and benefits package over $90 million plus injunctive relief); *In re LifeScan, Inc. Consumer Litig.*, Case No. C-98-20321-JF(EAI) (N.D. Cal.) ($45 million cash recovery); *In re Bergen Brunswig Corp. Sec. Litig.*, Case No. SACV-99-1305-AHS(ANx) (C.D. Cal.) ($27.9 million cash recovery); *Hall v. NCAA*, Case No. 94-2392-KHV (D. Kan.) ($54.4 million cash recovery); *In re Glen Ivy Resorts, Inc.*, Case No. SD92-16083MG (Banker. Ct. C.D. Cal.) ($31 million cash recovery); and *In re Advanced Micro Devices Sec. Litig.*, Case No. C-93-20662-RPA(PVT) (N.D. Cal.) ($34 million cash recovery).

**BONNY E. SWEENEY** received her Bachelor of Arts degree from Whittier College in 1981 and a Master of Arts degree from Cornell University in 1985. She graduated *summa cum laude* from Case Western Reserve University School of Law in 1988, where she served as an editor of the Law Review and was elected to the Order of the Coif.

Ms. Sweeney was with Milberg Weiss for eight years and was a partner prior to her partnership with Lerach Coughlin. Formerly, she practiced in the Litigation Department of the Boston law firm of Foley, Hoag & Eliot. Ms. Sweeney concentrates her practice in antitrust and unfair competition litigation. Ms. Sweeney participated in the prosecution of

several antitrust and unfair competition cases that have resulted in significant settlements, including *In re NASDAQ Market-Makers Antitrust Litig.*, MDL No. 1023 (S.D.N.Y.), which settled for $1.027 billion in 1997, the largest antitrust settlement ever; *In re Airline Ticket Comm'n Antitrust Litig.*, MDL No. 1058 (D. Minn.), which settled for more than $85 million in 1996; and *In re LifeScan, Inc. Consumer Litig.*, No. C-98-20321-JF(EAI) (N.D. Cal.), which settled just before trial for $45 million. Ms. Sweeney was also one of the trial counsel for a class of coaches in *Hall v. NCAA*, Case No. 94-2392-KHV (D. Kan.), an antitrust class action that resulted in a $67 million jury verdict in three consolidated cases after a three-week trial.

Ms. Sweeney has served on the Executive Committee of the Antitrust and Unfair Competition Law Section of the California State Bar since 2002, and is currently Vice Chair of Antitrust Programs. She also lectures on California's Unfair Competition Law and antitrust topics. In 2003, Ms. Sweeney was a recipient of the Wiley M. Manuel Pro Bono Services Award and the San Diego Volunteer Lawyer Program Distinguished Service Award.

Ms. Sweeney is admitted to practice in California and Massachusetts, and is a member of the Antitrust Section of the American Bar Association, the Antitrust and Unfair Competition Section of the California Bar Association and the San Diego County Bar Association.

**TRAVIS E. DOWNS III** received his Bachelor of Arts degree in History, *cum laude*, from Whitworth College in 1985, and received his Juris Doctor degree from University of Washington School of Law in 1990. Mr. Downs concentrates his practice in securities class actions and shareholders' derivative actions. Formerly a partner with Milberg Weiss, he was responsible for the prosecution and recovery of significant settlements in the following cases: *In re Informix Corp. Sec. Litig.*, Case No.

C-97-1289-CRB (N.D. Cal.) ($137.5 million recovery); *In re MP3.com, Inc. Sec. Litig.*, Case No. 00-CV-1873-K(NLS) (S.D. Cal.) ($36 million recovery); *In re Conner Peripherals, Inc. Sec. Litig.*, Case No. C-95-2244-MHP (N.D. Cal.) ($26 million recovery); *In re Silicon Graphics, Inc. II Sec. Litig.*, Case No. 97-4362-SI (N.D. Cal.) ($20.3 million recovery); *In re J.D. Edwards Sec. Litig.*, Case No. 99-N-1744 (D. Colo.) ($15 million recovery); *In re Sony Corp. Sec. Litig.*, Case No. CV-96-1326-JGD(JGx) (C.D. Cal.) ($12.5 million recovery); *In re Veterinary Centers of America, Inc. Sec. Litig.*, Case No. 97-4244-CBM(MCx) (C.D. Cal.) ($6.75 million recovery); *In re JDN Realty Corp. Derivative Litig.*, Case No. 00-CV-1853 (N.D. Ga.) (obtained extensive corporate governance enhancements); *In re Hollywood Entertainment Corp. Sec. Litig.*, Case No. 95-1926-MA (D. Or.) ($15 million recovery); *In re Legato Sys., Inc. Derivative Litig.*, Case No. 413050 (Cal. Super. Ct., San Mateo Cty.) (obtained extensive corporate governance enhancements); *In re Flagstar Companies, Inc. Derivative Litig.*, Case No. 736748-7 (Cal. Super. Ct., Alameda County) (obtained extensive corporate governance enhancements). Mr. Downs is a member of the Bar of the State of California and is also admitted to practice before the district courts of the Central, Northern and Southern Districts of California. He is also a member of the American Bar Association and the San Diego County Bar Association. Mr. Downs lectures and participates in professional education programs.

**ALBERT H. MEYERHOFF** has concentrated his practice for more than 30 years in labor, civil rights and environmental law. After graduating from Cornell Law School in 1972, he joined California Rural Legal Assistance representing farm workers and the rural poor. These efforts included the landmark case of *CAAP v. Regents of the University of California*, challenging the use of public research funds to promote agricultural mechanization. He also litigated a host of state and federal civil rights cases involving racial discrimination in employment, voting and public education, including *Maria P. v. Riles*, invalidating a California statute excluding undocumented children from California schools. In 1981, Mr. Meyerhoff joined the Natural Resources Defense Council (NRDC), a national environmental organization, as Director of their Public Health Program. His concentration is in litigation concerning toxic substances and occupational health and brought successful challenges to the continued use of cancer-causing pesticides *Les v. Reilly*, the exclusion of women of "child-bearing age" from the workplace *Love v. Thomas*, and the California Governor's failure to comply with Proposition 65, an anti-toxics law *AFL-CIO v. Deukmejian*. During his 17 years with NRDC, Mr. Meyerhoff testified more than 50 times before the U.S. Senate and House of Representatives.

Mr. Meyerhoff has authored numerous articles for scholarly and general publications, including the *Stanford Law Review*, *EPA Journal*, *Environmental Law Quarterly*, *The New York Times*, *The Washington Post* and *Los Angeles Times*; has appeared regularly on such programs as CBS News 60 Minutes, ABC 20/20, NBC Dateline, Good Morning America, The Today Show and The NewsHour with Jim Lehrer; and has been an invited speaker at the Harvard Business School, the National Academy of Sciences, the American Academy of Sciences and the AFL-CIO.

Since 1998, Mr. Meyerhoff has been lead counsel in several labor and environmental cases, including *UNITE v. The Gap*, contesting the sale of garments manufactured under sweatshop conditions in the Commonwealth of the Mariana Islands, and *Public Citizen v. US DOT*, challenging cross border trucking from Mexico to conform to NAFTA but in violation of U.S. environmental laws.

Mr. Meyerhoff was selected "Trial Lawyer of the Year" by Trial Lawyers for Public Justice and a lifetime achievement award from the ACLU.

**G. PAUL HOWES**, after Marine Corps Vietnam service, received his Bachelor of Arts degree with distinction from the University of New Mexico, was elected to Phi Beta Kappa and Phi Kappa Phi, and was the tympanist for the New Mexico Symphony Orchestra. He received his Juris Doctor degree and Masters in Public Administration from the University of Virginia. He served as a Special Assistant to the Director of the FBI, Judge William H. Webster, and then as a law clerk to Judge Roger Robb, United States Circuit Court of Appeals for the District of Columbia Circuit. He was an ABC News correspondent for the Washington Bureau and then served for 11 years as an Assistant U.S. Attorney for the District of Columbia, primarily prosecuting complex drug-organization homicides. He is a member of the New Mexico, District of Columbia and California bars.

**SPENCER A. BURKHOLZ** received his Bachelor of Arts degree in Economics, *cum laude*, from Clark University in 1985, where he was elected to Phi Beta Kappa, and received his Juris Doctor degree from University of Virginia School of Law in 1989. Mr. Burkholz concentrates his practice in securities class actions. A former partner of Milberg Weiss, he has recovered settlements in the following cases: *3Com* ($259 million); *Vesta Insurance* ($78 million); *Samsonite* ($24 million); *Emulex* ($39 million); *Mossimo* ($13 million); *Triteal* ($13.8 million); *Price Company* ($15 million); *Stratosphere Corp.* ($9 million); and *IMP* ($9.5 million). Mr. Burkholz was also on the trial team in *Long v. Wells Fargo*. Mr. Burkholz is currently representing large public and multi-employer pension funds seeking to recover for their investments in WorldCom bonds. Mr. Burkholz is a member of the California bar and has been admitted to practice in numerous federal courts throughout the country.

**TIMOTHY G. BLOOD** graduated *cum laude* and with honors in economics from Hobart College in 1987 and the National Law Center of George Washington University in 1990. He was elected to Phi Beta Kappa, Omicron Delta Epsilon (economics) and the Moot Court Board (first year honors).

Prior to partnership with Lerach Coughlin, Mr. Blood was a partner with Milberg Weiss. Mr. Blood focuses on consumer fraud and unfair competition litigation with a focus on actions brought by policyholders against life and property and casualty insurers for deceptive sales practices, racial discrimination and systematic failures in claims adjustment. Mr. Blood has been involved in a number of cases that have resulted in significant settlements, including *McNeil v. American General Life & Accident Ins. Co.* ($234 million), *Lee v. USLife Corp.* ($148 million), *Garst v. Franklin Life Ins. Co.* ($90.1 million), *In re General American Sales Practices Litig.* ($67 million), *Williams v. United Ins. Co. of America* ($51.4 million); and *Sternberg v. Apple Computer, Inc.* ($50 million).

Mr. Blood is also responsible for several precedent-setting appellate decisions, including *Lebrilla v. Farmers Group, Inc.*, 119 Cal. App. 4th 1070 (2004). Mr. Blood is a frequent lecturer on class action procedure and consumer fraud issues and is a member of the Board of Governors of the Consumer Attorneys of California.

Mr. Blood is admitted to practice in California and in the U.S. Courts of Appeals for the Fifth, Sixth, Eighth, Ninth and Eleventh Circuits and the U.S. District Courts for the Southern, Central, Eastern and Northern Districts of California. He is a member of the San Diego County and American Bar Associations, the State Bar of California, the Association of Business Trial Lawyers, the Association of Trial Lawyers of America and the Consumer Attorneys of California.

**ARTHUR C. LEAHY** graduated with a Bachelor of Arts degree in Business from Point Loma College in 1987. In 1990, Mr. Leahy graduated *cum laude* and received a Juris Doctor degree from the University of San Diego School of

Law, where he served as Managing Editor of the Law Review. While in law school, Mr. Leahy authored an article published in the *San Diego Law Review* and other articles published in another Law Journal. In addition, he served as a judicial extern for the Honorable J. Clifford Wallace of the U.S. Court of Appeals for the Ninth Circuit. After law school, Mr. Leahy served as a judicial law clerk for the Honorable Alan C. Kay of the U.S. District Court for the District of Hawaii.

Prior to partnership with Lerach Coughlin, Mr. Leahy was a partner with Milberg Weiss where for eight years he worked on securities fraud and consumer class actions in which his clients recovered millions of dollars. Mr. Leahy is a member of the California Bar, and has been admitted in numerous federal courts throughout the country.

**FRANK J. JANECEK, JR.** received his Bachelor of Science degree in Psychology from the University of California at Davis in 1987, and his Juris Doctor degree from Loyola Law School in 1991. He is admitted to the bar of the State of California, the district courts for all districts California, and to the U.S. Court of Appeals for the Sixth, Ninth and Eleventh Circuits. Prior to joining Lerach Coughlin, Mr. Janecek was a partner with Milberg Weiss, where, for 11 years he practiced in the area of consumer, Proposition 65, taxpayer and tobacco litigation. He has participated as a panelist and a speaker in continuing legal education programs relating to California's Unfair Competition laws, public enforcement tobacco litigation and challenging unconstitutional taxation schemes.

Mr. Janecek litigated several Proposition 65 actions, including *People ex. rel. Lungren v. Superior Court*, 14 Cal. 4th 294 (1996), which was jointly prosecuted with the Attorney General's office. These actions resulted in the recovery of more than $10 million in disgorgement and/or civil penalties and warnings to consumers of their exposure to cancer causing agents and reproductive toxins. Mr. Janecek chaired several of the litigation committees in California's tobacco litigation which resulted in the $25.5 billion recovery for California and its local entities. Mr. Janecek also handled a constitutional challenge to the State of California's Smog Impact Fee, in the case *Ramos v. Department of Motor Vehicles*, Case No. 95AS00532 (Sacramento Super. Ct.). As a result of the *Ramos* litigation, more than a million California residents received full refunds, plus interest, totaling $665 million.

Mr. Janecek is the co-author with Patrick J. Coughlin of "A Review of R.J. Reynolds' Internal Documents Produced in *Mangini v. R.J. Reynolds Tobacco Co.*, No. 939359 - The Case that Rid California and the American Landscape of 'Joe Camel'" (January 1998), which, along with more than 60,000 internal industry documents, was released to the public through Congressman Henry Waxman. He is also the author of "California's Unfair Competition Act and Its Role in the Tobacco Wars" (Fall 1997). Mr. Janecek is a member of the American Bar Association, the California Bar Association, the San Diego County Bar Association and the Consumer Attorneys of California and San Diego.

**DAVID J. GEORGE** earned his Bachelor of Arts degree in Political Science from the University of Rhode Island, *summa cum laude*. Mr. George then graduated at the top of his class at the University of Richmond School of Law. At the University of Richmond, Mr. George was a member of Law Review, was the President of the McNeill Law Society/Order of the Coif, and earned numerous academic awards, including outstanding academic performance in each of his three years there and outstanding graduate.

Before joining Lerach Couglin, he was a partner in the Boca Raton office of Geller Rudman, PLLC. While at Geller Rudman, Mr. George, a zealous advocate of shareholder rights, has been lead and/or co-lead counsel

with respect to various securities class action matters, including *In re Cryo Cell Int'l, Inc. Sec. Litig.* (M.D. Fla.), *In re Gilead Sciences Sec. Litig.* (N.D. Cal.) and *Mobility Electronics Sec. Litig.* (D. Ariz.).  Mr. George has also acted as lead counsel in numerous consumer class actions. Before joining Geller Rudman, Mr. George spent more than a decade as a commercial litigator with two of the largest corporate law firms in the United States.  During that time Mr. George aggressively prosecuted and defended a wide array of complex commercial litigation matters, including securities class action matters, non-compete litigation, fraud claims, and real estate based litigation matters.

Mr. George is licensed to practice law in the state courts of Florida, as well as the United States District Courts for the Southern, Middle and Northern Districts of Florida.  He is currently or has been a member of the American Bar Association, the Academy of Florida Trial Lawyers, the Palm Beach County Bar Association and the South Palm Beach County Bar Association.

**SANFORD SVETCOV** is a partner with the Appellate Practice Group of Lerach Coughlin. He was formerly a partner with Milberg Weiss. He has briefed and argued more than 300 appeals in state and federal court, including *Braxton v. Mun. Court*, 10 Cal. 3d 138 (1973) (First Amendment); *Procunier v. Navarette*, 434 U.S. 555 (1978) (civil rights); *Parker Plaza West Partners v. UNUM Pension & Ins. Co.*, 941 F.2d 349 (5th Cir. 1991) (real estate); *Catellus Dev. Corp. v. United States*, 34 F.3d 748 (9th Cir. 1994) (CERCLA); *U.S. v. Hove*, 52 F.3d 233 (9th Cir. 1995) (criminal law); *Kelly v. City of Oakland*, 198 F.3d 779 (9th Cir. 1999) (employment law, same gender sexual harassment); *United States v. Henke*, 222 F.3d 633 (9th Cir. 2000) (securities fraud); *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209 (11th Cir. 2001) (civil rights); *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002) (securities fraud).

Mr. Svetcov's professional appellate litigation experience includes securities fraud litigation, CERCLA, CEQA, commercial litigation, Clean Water Act, Civil Rights Act litigation, toxic torts, federal criminal law, California writ practice, employment law and ERISA.

Prior to joining Milberg Weiss in July 2000, Mr. Svetcov was a partner with the firm of Landels Ripley & Diamond, LLP, in San Francisco, from 1989 to 2000.  His extensive legal experience includes service as: Chief, Appellate Section, U.S. Attorney's Office, San Francisco, 1984-1989; Attorney-in-Charge, Organized Crime Strike Force, San Francisco, 1981-1984; Chief Assistant U.S. Attorney, San Francisco, 1978-1981; Deputy Attorney General, State of California, 1969-1977; Legal Officer, U.S. Navy, VT-25, Chase Field, Beeville, Texas, 1966-1969; and Deputy Legislative Counsel, Legislature of California, Sacramento, 1965-1966.

Mr. Svetcov is certified as a Specialist in Appellate Practice by the State Bar of California Board of Legal Specialization.  He was selected by the Attorney General for the Department of Justice's John Marshall Award for Excellence in Appellate Advocacy in 1986 and is a member and past President (1998) of the American Academy of Appellate Lawyers, and a member of the California Academy of Appellate Lawyers.

In 1999, Chief Justice Rehnquist appointed Mr. Svetcov to a three-year term on the Federal Appellate Rules Advisory Committee.  He is also an ex-officio member of the Ninth Circuit Rules Advisory Committee on Rules and Internal Operating Procedures.  His other memberships and service commitments to the legal profession include the California Academy of Appellate Lawyers; the Bar Association of San Francisco (Appellate Courts section); the American Bar Association (Appellate Judges Conference) Committee on Appellate Practice; Northern California Federal Bar Association, Board of Directors.

Mr. Svetcov earned his Bachelor of Arts degree, *cum laude*, from Brooklyn College in 1961 and his Juris Doctor degree from the University of California, Berkeley, in 1964. He is a member of the Bars of the State of California; the U.S. Supreme Court; the Court of Appeals, Fifth, Eighth, Ninth and Eleventh Circuits; and the U.S. District Court, Northern District of California.

For two decades, he as been active as a teacher and lecturer at continuing legal education programs, including those of the ABA Appellate Practice Institutes (1990-2000); the Ninth Circuit Federal Bar Association Appellate Practice Seminar; and the N.I.T.A. Appellate Advocacy Seminar, and Fifth Circuit Bar Association Appellate Practice Seminars (1991-1999). He has served as an adjunct professor at Hastings College of Law and an instructor in Appellate Advocacy at the U.S. Attorney General's Advocacy Institute (1980-1989).

Sandy Svetcov is also active in community affairs. He has been a member of the San Francisco Jewish Community Relations Council since 1982, its president from 1991-1992, and during the years 1993-1995, he also served on the Northern California Hillel Council.

**MICHAEL J. DOWD** graduated from Fordham University, *magna cum laude*, with a degree in History and Latin (B.A., in 1981). While at Fordham, he was elected to Phi Beta Kappa. He earned his law degree from the University of Michigan School of Law (J.D., 1981) and entered private practice in New York that same year. He was admitted to practice in New York in 1985 and in California in 1988.

Mr. Dowd served as an Assistant U.S. Attorney in the Southern District of California from 1987-1991 and again from 1994-1998. As an Assistant U.S. Attorney, Mr. Dowd obtained extensive trial experience, including the prosecution of bank fraud, bribery, money laundering and narcotics cases. He is a recipient of the Director's Award for Superior Performance as an Assistant U.S. Attorney. Prior to joining Lerach Coughlin, Mr. Dowd was a partner with Milberg Weiss. Mr. Dowd has been responsible for prosecuting complex securities cases and obtaining recoveries for investors, including cases involving *Safeskin* ($55 million recovery), *Bergen Brunswig* ($42.5 million recovery) and *P-Com* ($16 million recovery). Mr. Dowd was the lead lawyer for the Lerach Coughlin trial team in *In re AT&T Corp. Securities Litigation*, which was tried in the District of New Jersey, and which settled after two weeks of trial for $100 million. Mr. Dowd is currently one of the lead litigators in the firm's *WorldCom* litigation, representing over 70 public and multi-employer pension funds and other financial institutions. Mr. Dowd has also participated in the firm's tobacco and firearms cases.

**DAVID C. WALTON** earned his Bachelor of Arts degree in Accounting from the University of Utah and his Juris Doctor degree from the University of Southern California Law Center in 1993. While there, he was a staff member of the *Southern California Law Review* and a member of the Hale Moot Court Honors Program.

Mr. Walton was formerly a partner with Milberg Weiss where he worked for ten years prior to joining Lerach Coughlin. He is a member of the Bar of California. Mr. Walton, a Certified Public Accountant (California 1992) and Certified Fraud Examiner, who is also fluent in Spanish, focuses on class actions on behalf of defrauded investors, particularly in the area of accounting fraud. He has investigated and participated in the litigation of many large accounting scandals, including Enron, WorldCom, Informix, HealthSouth, Dynegy and Dollar General. In 2003-2004, Mr. Walton served as a member of the California Board of Accountancy which is responsible for regulating the accounting profession in California.

**RANDALL H. STEINMEYER** earned his Bachelor of Science degree from the University of Southern California in 1993, and his Juris Doctor degree, *cum laude* from Hamline University School of Law in 1996, where he was a member of the *Hamline Law Review*. He is the author of "The Interrelationship Between NASD Arbitrations and NASD Disciplinary Proceedings," 281 Practicing Law Institute (1998). Prior to joining Lerach Coughlin, Mr. Steinmeyer was with Milberg Weiss for five years. Formerly, Mr. Steinmeyer headed the securities litigation department of Reinhardt & Anderson in St. Paul, Minnesota. Mr. Steinmeyer is a member of the bar of Minnesota and the U.S. District Court for the District of Minnesota. Mr. Steinmeyer is a former securities broker and held a Series 7 license with the National Association of Securities Dealers.

In 2003, he was a guest lecturer at Oxford University (UK) on the impact of corporate and broker dealer fraud on the investment community. Prior to joining Lerach Coughlin, Mr. Steinmeyer was a partner with Milberg Weiss. He also sits on the Board of Directors of the Hedge Fund Association. He has authored numerous articles on the hedge fund industry and offshore financial community.

Mr. Steinmeyer focuses on class actions on behalf of defrauded investors. Prior to joining Milberg Weiss, Mr. Steinmeyer was appointed lead counsel in several large and complex class actions which resulted in the recovery of tens of millions of dollars for aggrieved investors. Mr. Steinmeyer's reported cases include: *Ganesh LLC v. Computer Learning Centers*, 1998 WL 892622 (E.D. Va. 1998); *Gart v. Electroscope*, 1998 WL 757970 (D. Minn. 1998); *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398 (D. Minn. 1998); and *In re Transcrypt Int'l Sec. Litig.*, Case No. 4:98CV3099, 1999 U.S. Dist. LEXIS 17540 (D. Neb. Nov. 4, 1999).

**JEFFREY W. LAWRENCE** received his Bachelor of Arts degree, *magna cum laude*, from Tufts University in 1976. In 1979, Mr. Lawrence graduated *magna cum laude* with a Juris Doctor degree from Boston School of Law. He was a staff member of the *Boston University Law Review* from 1977-78, and its editor from 1978-79.

From September 1979 to September 1980, Mr. Lawrence served as law clerk to the Honorable Walter Jay Skinner, U.S. District Court, District of Massachusetts. He was admitted to the Massachusetts bar in 1979, and to the Bar of California in 1991. He is licensed to practice before the U.S. Court of Appeals, First and Ninth Circuits, the U.S. District Court, District of Massachusetts and the Northern District of California.

From 1983 to 1994, Mr. Lawrence was an Assistant U.S. Attorney, Criminal Division, where he obtained extensive trial experience in white collar crimes, ranging from money-laundering to stock fraud. He was formerly a partner with Milberg Weiss, where he worked for eight years.

**HENRY ROSEN** obtained his Bachelor of Arts degree in 1984 from the University of California, after attending American College in Paris. In 1988, Mr. Rosen received his Juris Doctor degree from the University of Denver, where he was Editor-in-Chief for the *University of Denver Law Review*. Mr. Rosen served as Judicial Law Clerk to the Honorable Jim R. Carrigan, U.S. District Court, District of Colorado, from 1989 to 1990. He is a member of the firm's Hiring Committee and is also a member of the firm's Technology Committee which focuses on applications to digitally manage documents produced during litigation and internally generate research files.

Prior to joining Lerach Coughlin, Mr. Rosen had 13 years experience prosecuting securities fraud actions with Milberg Weiss on behalf of individual clients and investor classes. Major clients include Minebea Co., Ltd., a Japanese manufacturing company, represented in a securities fraud arbitration against a U.S.

investment bank. Mr. Rosen has significant experience prosecuting every aspect of securities fraud class actions and has obtained hundreds of millions of dollars on behalf of defrauded investors. Prominent cases include: *In re Storagetek Sec. Litig.*, Case No. 92-B-750 (D. Colo.); *In re Access HealthNet Sec. Litig.*, Case No. SACV-96-1250-GLT(EEx) and Case No. SACV-97-191-GLT(EEx) (C.D. Cal.); *In re Valence Sec. Litig.*, Case No. C-95-20459-JW(EAI) (N.D. Cal.); *In re J.D. Edwards Sec. Litig.*, Case No. 99-N-1744 (D. Colo.); *In re Bergen Brunswig Sec. Litig.* and *Bergen Brunswig Capital Litig.*, Case No. SACV-99-1462-AHS(ANx) (C.D. Cal.); *In re Advanced Lighting Sec. Litig.*, No. 1:99CV8936 (N.D. Ohio); and *In re Safeskin Sec. Litig.*, Case No. 99cv454-BTM(LSP) (S.D. Cal.).

Mr. Rosen is admitted to the California bar (1991) and the Colorado bar (1988). He is a member of the State Bar of California, the American Bar Association (Litigation Section), the Association of Trial Lawyers of America, the California Trial Lawyers of America, California Trial Lawyers Association and the San Diego Trial Lawyers Association.

**RANDALL J. BARON** was born in Albuquerque, New Mexico in 1964. Mr. Baron received his Bachelor of Arts degree from University of Colorado at Boulder in 1987 and his Juris Doctor degree, *cum laude* from University of San Diego School of Law in 1990. He was a member of the *San Diego Law Review* from 1988-1989. Mr. Baron was admitted to the California Bar in 1990 and the Colorado Bar in 1993. Since 1997, Mr. Baron is licensed to practice in Colorado State Court as well as the U.S. District Court for the Southern, Northern and Central Districts of California, as well as the District of Colorado. Formerly, Mr. Baron served as a Deputy District Attorney in Los Angeles County. From 1990-1994, he was a trial deputy in numerous offices throughout Los Angeles County, where he tried over 70 felony cases. From 1990-1994, Mr. Baron was part of the Special Investigation Division of the Los Angeles District Attorneys office where he

investigated and prosecuted public corruption cases. Mr. Baron was formerly a partner with Milberg Weiss, where he worked for seven years prior to joining Lerach Coughlin. He concentrates his practice in securities litigation and actions for breach of fiduciary duty.

**EDWARD P. DIETRICH** was born in White Plains, New York on October 14, 1961. Mr. Dietrich received his Bachelor of Arts degree from Skidmore College in 1983. He received his Juris Doctor degree from George Washington University in 1986 and was elected to Phi Beta Kappa. He was a member of the moot court board. He was admitted to the New York state bar in 1987. Mr. Dietrich is able to practice in U.S. District Court, Southern and Eastern Districts of New York; 1994, U.S. District Court, Northern District of California; 1995, California and U.S. District Courts, Central District of California; 1997, U.S. District Court, Southern and Eastern Districts of California, U.S. District Court, District of Arizona and U.S. Court of Appeals, Ninth Circuit.

**JACK REISE** earned his Bachelor of Arts degree in History from Binghamton University. He graduated *cum laude* from University of Miami School of Law where he was an Associate Editor on the University of Miami Inter-American Law Review and was also the recipient of the American Jurisprudence Book Award in Contracts.

Since he began practicing law, Mr. Reise has been devoted to protecting the rights of those who have been harmed by corporate misconduct. Mr. Reise started his legal career representing individuals suffering the debilitating affects of asbestos exposure back in the 1950s and 1960s.

Mr. Reise has since concentrated his practice on class action litigation, including securities fraud, shareholder derivative actions, consumer protection, unfair and deceptive insurance practices and antitrust. Prior to joining the firm, Mr. Reise was a partner at the

law firm of Cauley Geller.  He was also an associate with Milberg Weiss from 1998-2000.

A substantial portion of Mr. Reise's practice is devoted to representing shareholders in actions brought under the federal securities laws. He is currently serving as lead counsel in more than a dozen cases nationwide including *Abrams v.Van Kampen Funds*, No. 01 C 7538 (N.D. Ill.) (case involving a mutual fund that is charged with improperly valuating its net asset value), and *In re NewPower Holdings Sec. Litig.*, Case No. 02 Civ. 1550 (CLB) (S.D.N.Y.), which settled with several of the defendants for $26 million.

Mr. Reise has been admitted to the Florida Bar since 1995.  He is also admitted to practice before United States Courts of Appeals for the First, Fourth and Eleventh Circuits, as well as the Southern and Middle District Courts of Florida.

**PAMELA M. PARKER** received her Bachelor of Arts degree in Political Science and French, with a concentration in International Politics, from the State University of New York at Binghamton, and was elected to Phi Beta Kappa.  Ms. Parker received a Juris Doctor degree from Harvard Law School *cum laude* in 1982.  While at Harvard, Ms. Parker was an Articles Editor of the *Civil Rights/Civil Liberties Law Review*.  After graduation, she served as a law clerk to the Honorable Frank J. Battisti, Chief Judge of the U.S. District Court, Northern District of Ohio.  Upon leaving the clerkship, Ms. Parker worked as an associate with the New York firm of Paul Weiss Rifkind Wharton & Garrison.  In 1988, Ms. Parker became associated with the New York firm of Lankenau Kovner & Bickford, concentrating her practice in representation of publications, libel defense and First Amendment law.

Ms. Parker was formerly with Milberg Weiss for 13 years.  As a partner there, her practice included appellate matters and environmental, consumer fraud and securities fraud litigation.

Ms. Parker participated in the successful prosecution of several important actions including *In re The Exxon Valdez*, Case No. A89-095 (D. Alaska), in which she served as a member of the trial support team, and which resulted in a $5 billion jury verdict; *Pinney v. Great Western Bank, et al.*, Case No. CV-95-2100-I(RNBx) (C.D. Cal.), in which she served as one of the principal attorneys for plaintiffs and which resulted in a settlement of $17.2 million, and *Does I, et al. v. The Gap, Inc., et al.*, Case No. 01 0031 (D. Northern Mariana Islands), in which she was the lead prosecuting attorney and which resulted in a $20 million settlement, including a precedent-setting Monitoring Program to monitor labor and human rights practices in Saipan garment factories.  In July 2003, Ms. Parker was named Trial Lawyer of the Year by the Trial Lawyers for Public Justice, in recognition of her work on the case in the Northern Mariana Island.

Ms. Parker is a member of the Appellate Practice Group of Lerach Coughlin.  She has worked on a variety of appellate matters before numerous courts, including the U.S. Courts of Appeal for the Fifth, Sixth, Ninth and Tenth Circuits and the appellate courts of California, Alabama, Ohio and Tennessee.  She is a Lawyer Representative to the Ninth Circuit Judicial Conference.

Ms. Parker is admitted to practice in California and New York.  She has been an active member of the Federal Bar Association, the San Diego County Bar Association and the Lawyers Club of San Diego, and also holds memberships with the American Bar Association and California Women Lawyers. She sits on the Board of Directors for the Legal Aid Society of San Diego.

**STEVEN W. PEPICH** received his Bachelor of Science degree in Economics from Utah State University in 1980 and his Juris Doctor degree from De Paul University in 1983.  Mr. Pepich is admitted to practice before the Courts of California and the District Court for the

Southern, Central, Eastern and Northern Districts of California. Formerly a partner with Milberg Weiss, Mr. Pepich has been engaged in a wide variety of civil litigation, including consumer fraud, mass tort, royalty, civil rights, human rights, ERISA and employment law actions, as well as many securities and corporate litigations. He was part of the plaintiffs' trial team in *Mynaf v. Taco Bell Corp.*, which settled after two months of trial on terms favorable to two plaintiff classes of restaurant workers, for recovery of unpaid wages. He was also a member of the plaintiffs' trial team in *Newman v. Stringfellow* where, after a nine-month trial in Riverside, California, all claims for exposure to toxic chemicals were ultimately resolved for $109 million. Mr. Pepich has also participated in the successful prosecution of numerous securities fraud class actions, including *Gohler v. Wood*, Case No. 92-C-181 ($17.2 million recovery); *In re Advanced Micro Devices Sec. Litig.*, Case No. C-93-20662-RPA(PVT) ($34 million recovery); *In re Catalyst Semiconductor Sec. Litig.*, Case No. C-93-2096 ($15 million recovery); *In re Gupta Corp. Sec. Litig.,* Case No. C-94-1517 ($6 million recovery); *In re Louisiana-Pacific Corp. Sec. Litig.*, Case No. C-95-707 ($65 million recovery); and *In re Boeing Sec. Litig.*, Case No. C-97-1715Z ($92 million recovery). Mr. Pepich is a member of the American Bar Association, the San Diego Bar Association and the Association of Business Trial Lawyers of San Diego. Mr. Pepich co-authored with William S. Lerach "Personal Liability Considerations of Officers and Directors in the Takeover Context," CEB, Business Law Institute, April 1986, and "New Diligence Considerations in the Context of the Federal Securities Laws," CEB Fourth Annual Securities Institute, May 1986.

**LAURA ANDRACCHIO,** prior to joining Lerach Coughlin, was a partner with Milberg Weiss. Her practice focuses primarily on litigation under the federal securities laws. Ms. Andracchio has litigated dozens of cases against public companies in federal and state courts throughout the country, and has contributed to hundreds of millions of dollars in recoveries for injured investors. Ms. Andracchio was a lead member of the trial team in *In re AT&T Corp. Sec. Litig.*, which was tried in district court in New Jersey, and which settled after two weeks of trial for $100 million. Prior to trial, Ms. Andracchio was responsible for managing and litigating the case, which was pending for four years.

Ms. Andracchio received her Bachelor of Arts degree from Bucknell University in 1986, and her Juris Doctor degree with honors from Duquesne University School of Law in 1989. While at Duquesne, Ms. Andracchio was elected to the Order of Barristers and represented the Law School in the National Samuel J. Polsky Appellate Moot Court competition, in which she placed as a finalist, and in the regional Gourley Cup Trial Moot Court competition.

**JOHN K. GRANT** was born in Provo, Utah in 1961. Mr. Grant received his Bachelor of Arts degree from Brigham Young University in 1988 and his Juris Doctor degree from the University of Texas at Austin in 1990. Mr. Grant was admitted to the California bar in 1994.

**KATHLEEN A. HERKENHOFF** received a Bachelor of Arts in English Literature from the University of California at Berkeley in 1989, and received a Juris Doctor degree from Pepperdine University School of Law in 1993. While at Pepperdine, she received American Jurisprudence Awards in Constitutional Law and Agency-Partnership Law. After graduation from Pepperdine, Ms. Herkenhoff was an enforcement attorney with the U.S. Securities and Exchange Commission. Prior to joining Lerach Coughlin, she was a partner with Milberg Weiss. Ms. Herkenhoff is a 1993 admittee to the State Bar of California and has been admitted to practice before the U.S. District Courts for the Northern, Central, Eastern and Southern Districts of California. Ms. Herkenhoff has successfully prosecuted several complex securities class actions,

including obtaining a $122 million settlement against Mattel, Inc. and several of its former officers and directors.

**KIMBERLY C. EPSTEIN** graduated with a Bachelor of Science in Business Administration from California State University at Hayward in 1988. She attended University of San Francisco School of Law where she was a joint J.D./MBA degree candidate and obtained her Juris Doctor degree in 1993. Ms. Epstein clerked in the Law and Motion Department of the San Francisco Superior Court for the Honorable William J. Cahill (Ret.). She was admitted to the California bar in 1993 and predominantly practices in the area of securities litigation. Prior to partnership with Lerach Coughlin, Ms. Epstein was a partner with Milberg Weiss where she began her employment in 1994. She is licensed to practice in the state of California and before the U.S. District Courts in Northern and Central California, Arizona and the U.S. Court of Appeals, Ninth Circuit.

**MICHELLE M. CICCARELLI** represents workers, consumers and shareholders in a broad range of complex class-action litigations for securities fraud, fraudulent business practices, human rights abuses, labor and employment violations, as well as derivative litigation for breaches of fiduciary duties by corporate officers and directors. She is the editor of Lerach Coughlin's Corporate Governance Bulletin and Taking Action - Fighting Corporate Corruption, and the author of Pension Power: How Union Pension Funds Are Recovering Stolen Assets and Changing the Way Public Companies Do Business and "Improving Corporate Governance through Litigation Settlements" (Corporate Governance Review, 2003). She is a frequent lecturer on securities fraud, corporate governance, and other issues of import to institutional investors.

Prior to partnership with Lerach Coughlin, she was a partner at Milberg Weiss, where she participated in the successful prosecution of several important actions, including *Does I, et al. v. The Gap, Inc. et al.*, Case No. 01-0031 (D N. Mariana Islands), in which she was one of the lead litigators, spending several months on Saipan working with clients, investigating claims, and obtaining discovery. The case was successfully concluded with a $20 million settlement, including a precedent-setting Monitoring Program to monitor labor and human rights practices in Saipan garment factories.

Formerly, she practiced in Kentucky in the area of labor and employment law. She was the co-editor of the Kentucky Employment Law Letter (1998) and co-author of "Wage and Hour Update" (Lorman 1998). She was also a regular lecturer for the Kentucky Cabinet for Economic Development.

She was a law clerk to the Honorable Sara Walter Combs, Kentucky Court of Appeals (1994-95) after obtaining her Juris Doctor degree from the University of Kentucky in 1993. She is a member of the California and Kentucky bars, and is admitted to practice before the U.S. District Courts for both jurisdictions as well as the Sixth Circuit Court of Appeals.

**JAMES I. JACONETTE** was born in San Diego, California in 1967. Mr. Jaconette is one of three partners responsible for the day-to-day prosecution of *In re Enron Corp. Sec. Litig.* (S.D. Tex.) and *In re Dynegy, Inc. Sec. Litig.* (S.D. Tex.), on behalf of Lead Plaintiff The Regents of the University of California, and the large classes of public investors represented in those actions. Mr. Jaconette has litigated securities class actions and corporate governance/merger & acquisition-related actions since 1995. To date, cases in which Mr. Jaconette executed a primary litigating role, including *In re Informix Corp. Sec. Litig.* (N.D. Cal.), resulted in approximately $300 million in settlements, judgments, or common funds that benefited investors.

Mr. Jaconette attended San Diego State University, receiving his Bachelor of Arts degree with honors and distinction in 1989 and his M.B.A. in 1992. In 1995, Mr. Jaconette received his Juris Doctor degree *cum laude* from Hastings College of the Law, University of California, San Francisco. Mr. Jaconette was the Mortar Board Vice President from 1988-1989, a member of the Hastings Law Journal from 1993-1994, and Associate Articles Editor for same from 1994-1995. Mr. Jaconette authored "The Fraud-on-the-Market Theory in State Law Securities Fraud Suits," *Hastings Law Journal*, Volume 46, August, 1995. In 1993, Mr. Jaconette served as law clerk to the Honorable Barbara J. Gamer, and in 1994, as extern to the Honorable William H. Orrick, Jr., District Judge.

In 1995, Mr. Jaconette was admitted to the California bar and licensed to practice before the U.S. District Court, Southern District of California.

**TOR GRONBORG** was born in Portland, Oregon in 1969. Mr. Gronborg received his Bachelor of Arts degree in 1991 from the University of California at Santa Barbara and was a recipient of an AFL-CIO history scholarship. In 1992, Mr. Gronborg did graduate work in international relations and strategic studies at the University of Lancaster, UK on a Rotary International Fellowship. Mr. Gronborg received his Juris Doctor degree from Boalt Hall at the University of California at Berkeley where he was a member of the Moot Court Board.

Mr. Gronborg was admitted to the California bar in 1995, and in 1997 was licensed to practice in the courts of the Ninth Circuit and the Northern, Central and Southern Districts of California. Mr. Gronborg's practice areas at Lerach Coughlin include securities litigation, and campaign and election law.

**THOMAS E. EGLER** was born in Pittsburgh, Pennsylvania in 1967. Mr. Egler received his Bachelor of Arts degree from Northwestern University in 1989. Mr. Egler received his Juris

Doctor degree in 1995 from Catholic University of America, Columbus School of Law, where he served as Associate Editor for *Catholic University Law Review* from 1994-1995. From 1995-1997, Mr. Egler was Law Clerk to the Honorable Donald E. Ziegler, Chief Judge, U.S. District Court, Western District of Pennsylvania.

Mr. Egler was admitted to the California bar in 1995 and the Pennsylvania bar in 1996. He is admitted to practice before the U.S. District Courts for the Western District of Pennsylvania, the Northern, Southern and Central Districts of California, and the U.S. Court of Appeals for the Third and Eleventh Circuits.

**PATRICK W. DANIELS** earned his Bachelor of Arts degree, *cum laude* from the University of California, Berkeley in 1993 and his Juris Doctor degree from the University of San Diego School of Law in 1997. He is the author of "The Capital Formation and Securities Fraud Enforcement Act of 1996: Historic and Economic Perspectives," Joint Interim Hearing, California State Senate Finance, Investment and International Trade and Assembly Banking and Finance Committees, Information Hearing Final Report, at 393 (1997). Admitted to practice: California, 1997.

Mr. Daniels represents workers, consumers and shareholders in a broad range of complex litigation class actions for fraudulent business practices, human rights abuses and shareholder actions for defrauded investors. Mr. Daniels represents a number of international public and jointly-trusteed labor-management pension funds, as well as fund managers in securities fraud and individual actions involving Enron, WorldCom and AOL Time Warner, among many other actions. Mr. Daniels has been a featured speaker at pension fund conferences in the United States, Europe, the South Pacific and Australia.

In the human rights area, Mr. Daniels was a member of an international coalition of attorneys and human rights groups who won

an historical settlement with major U.S. clothing retailers and manufacturers, including The Gap, Target Corporation and J.C. Penney, on behalf of a certified class of over 50,000 predominantly female Chinese garment workers on the island of Saipan in an action seeking to hold the Saipan garment industry responsible for creating a system of indentured servitude and forced labor in Saipan garment factories. The coalition obtained an agreement for supervision of working conditions in the Saipan factories by an independent NGO, as well as a substantial monetary award for the workers. In July 2003, several members of the coalition of attorneys were collectively honored as the "Trial Lawyers of the Year" by the Trial Lawyers for Public Justice.

Mr. Daniels is also one of the lead attorneys in historic class action litigation on behalf of U.S. POWs and Chinese and Korean civilians against Japanese corporations that used slave and forced labor during WWII.

**ANDREW J. BROWN** was born in Northern California in 1966. He received his Bachelor of Arts degree from the University of Chicago in 1988 and received his Juris Doctor degree from the University of California, Hastings College of Law in 1992. Upon passing the bar, Mr. Brown worked as a trial lawyer for the San Diego County Public Defender's Office. In 1997, he opened his own firm in San Diego, representing consumers and insureds in lawsuits against major insurance companies. Prior to joining Lerach Coughlin, Mr. Brown was a partner, and had worked for Milberg Weiss for four years. His current practice focuses on representing consumers and shareholders in class action litigation against companies nationwide.

As a partner at the Firm, Mr. Brown continues to change the way corporate America does business. He prosecutes complex securities fraud and shareholder derivative actions, resulting in multi-million dollar recoveries to shareholders and precedent-setting changes in corporate practices. Examples include *Does I, et al. v. The Gap, Inc., et al.*, Case No. 010031 (D. Northern Mariana Islands), *Arlia v. Blankenship*, 234 F. Supp. 2d 606 (S.D. W.Va. 2002), and *In re FirstEnergy Corp. Sec. Litig.*, 316 F. Supp. 2d 581 (N.D. Ohio 2004)

Mr. Brown is admitted to the bars of California and the U.S. District Courts for all Districts in California.

**CHRISTOPHER BURKE** earned his Juris Doctor degree from the University of Wisconsin in 1993 and his Ph.D. in 1996. His practice areas include antitrust and consumer protection. Formerly a partner with Milberg Weiss, he was a part of the trial teams that successfully prosecuted the *In re Disposable Contact Lens Antitrust Litig.* ($89 million) and *Schwartz v. Visa, et al.* ($170 million).

Prior, he was an Assistant Attorney General at the Wisconsin Department of Justice. He has lectured on law-related topics including constitutional law, law and politics and civil rights at the State University of New York at Buffalo and at the University of Wisconsin. His book, *The Appearance of Equality: The Supreme Court and Racial Gerrymandering* (Greenwood, 1999), examines conflicts over voting rights and political representation within the competing rhetoric of communitarian and liberal strategies of justification.

**JONATHAN M. STEIN** earned his Bachelor of Science degree in Business Administration from the University of Florida, where he concentrated his studies in Finance. While at Florida, he was selected to join the honor society of Omicron Delta Epsilon, recognizing outstanding achievement in Economics. Mr. Stein earned his Juris Doctor degree from Nova Southeastern University, where he was the recipient of the American Jurisprudence Book Award in Federal Civil Procedure and served as Chief Justice of the Student Honor Court.

Mr. Stein began his practice of law in Fort Lauderdale as a prosecutor in the State Attorney's Office for the Seventeenth Judicial Circuit of Florida, where he handled numerous jury trials. Before concentrating his practice in class action litigation, he also practiced as a litigator with one of Florida's largest law firms, where he concentrated on fighting insurance fraud. Prior to joining the firm, Mr. Stein was a partner with Geller Rudman, PLLC. Mr. Stein is involved in all aspects of class action litigation, including securities fraud, shareholder class and derivative actions, consumer fraud, products liability and antitrust.

A substantial portion of Mr. Stein's practice is dedicated to the representation of public shareholders of companies whose shares are acquired through management buyouts, leveraged buyouts, mergers, acquisitions, tender offers and other change-of-control transactions. Mr. Stein has represented clients in seeking to protect shareholders by insuring that they receive maximum compensation for their shares and also by insuring that they receive all necessary information and disclosure concerning the transactions. He has been successful in restructuring many transactions and recovering millions of dollars in additional value for shareholders.

Mr. Stein is licensed to practice law in the state courts of Florida, as well as in the United States District Courts for the Southern and Middle Districts of Florida and the District of Colorado. In addition to these courts and jurisdictions, Mr. Stein regularly works on cases with local counsel throughout the country. Mr. Stein has been or is a member of the Association of Trial Lawyers of America, the American Bar Association, the Palm Beach County Bar Association and the South Palm Beach County Bar Association.

**ROBERT M. ROTHMAN** earned his Bachelor of Arts Degree in Economics from the State University of New York at Binghamton. He then earned his Juris Doctor degree, with distinction, from Hofstra University School of Law. During law school, Mr. Rothman was a member of the Law Review and was awarded The Dean's Academic Scholarship for completing his first year in the top one percent of his class.

After law school, Mr. Rothman practiced commercial litigation with an international law firm. Having litigated cases involving many of the nation's largest companies, Mr. Rothman has extensive experience in the areas of consumer protection, antitrust and investment fraud. Mr. Rothman also regularly tries and arbitrates cases. For example, he obtained a multi-million dollar verdict after the trial of a shareholders' derivative case, as well as multi-million dollar judgments on behalf of defrauded investors.

Prior to joining Lerach Coughlin, Mr. Rothman was a partner at Geller Rudman, PLLC where he concentrated his practice on representing shareholders and consumers in class actions.

Mr. Rothman is admitted to practice before the courts of the State of New York, as well as the United States District Courts for the Southern and Eastern Districts of New York. Mr. Rothman is a member of the American Bar Association's Sections of Litigation and Antitrust Law.

**DANIEL DROSMAN** is a partner with Lerach Coughlin. He is a former federal prosecutor with extensive litigation experience before trial and appellate courts. His practice focuses on securities fraud litigation and other complex civil litigation. Mr. Drosman is admitted to practice in New York and California and before federal courts throughout those states.

Mr. Drosman is a native San Diegan who received his Bachelor of Arts degree in political science from Reed College in 1990 with honors and Phi Beta Kappa. He received his Juris

Doctor degree from Harvard Law School in 1993. Following graduation from law school, Mr. Drosman served for three years as an Assistant District Attorney for the Manhattan District Attorney's Office. While at the Manhattan District Attorney's Office, Mr. Drosman served in both the appellate section, where he briefed and argued over 25 cases to the New York appellate courts, and in the trial section, where he prosecuted a wide variety of street crime.

From 1996 until 1997, Mr. Drosman was an associate in the New York office of Weil Gotshal & Manges, where he concentrated his practice in civil litigation and white collar criminal defense.

In 1997, Mr. Drosman returned to San Diego and became an Assistant U.S. Attorney in the Southern District of California. In the Southern District, Mr. Drosman tried cases before the U.S. District Court and briefed and argued numerous appeals before the Ninth Circuit Court of Appeals. He was a member of the border crimes unit, where he was assigned to investigate and prosecute violations of the federal narcotics and immigration laws, and official corruption cases. During his tenure as an Assistant U.S. Attorney, Mr. Drosman received the Department of Justice Special Achievement Award in recognition of sustained superior performance of duty.

Mr. Drosman was a partner for Milberg Weiss before joining the Firm in 2004. Mr. Drosman's practice involves representing defrauded investors in securities class actions, an area in which Mr. Drosman has co-authored a law journal article.

**AZRA Z. MEHDI** earned her Bachelors of Arts in 1992 from the University of Illinois at Chicago with high honors in English and German Literature. She was a member of the Honors College and spent a year at the University of Vienna in Austria. She received her Juris Doctor degree from DePaul University College

of Law in Chicago in 1995. Upon graduation, Ms. Mehdi did an internship at the Austrian law firm of Ortner Poch & Foramitti. Ms. Mehdi began her employment at Milberg Weiss in 1997 focusing her practice on antitrust litigation and securities fraud litigation. She was a partner at Milberg Weiss prior to her partnership at Lerach Coughlin.

Ms. Mehdi is admitted to practice in New York (1996), California (2002), before the U.S. District Court for the Southern and the Eastern Districts of New York (1997) and the U.S. District Court for the Northern, Central and Southern Districts of California (2002). She is a member of the American Bar Association, the California Bar Association and the San Francisco Bar Association. Ms. Mehdi is fluent in German and Hindi.

**KEVIN K. GREEN** is a member of the firm's Appellate Practice Group. He concentrates his practice in appeals and writs in state courts, particularly the California appellate courts.

Mr. Green received his Bachelor of Arts degree, with honors and distinction from the University of California at Berkeley in 1989 and his Juris Doctor degree from Notre Dame Law School in 1995. After law school, he clerked for the Honorable Theodore R. Boehm, Associate Justice, Supreme Court of Indiana, and the Honorable Barry T. Moskowitz, U.S. District Judge, Southern District of California. In 1999, Mr. Green joined Milberg Weiss, where he became a partner. He then joined Lerach Coughlin when the firm was founded in 2004.

Due to the national scope of the practice, Mr. Green has handled appellate matters in numerous states. His appellate decisions include: *Lebrilla v. Farmers Group, Inc.*, 119 Cal. App. 4th 1070 (2004) (reversing denial of class certification and ordering certification of statewide class); *West Corp. v. Superior Court*, 116 Cal. App. 4th 1167 (2004) (upholding personal jurisdiction over telemarketers sued

under California law); *Ritt v. Blanks*, 2003 Ohio App. LEXIS 3297 (Ohio Ct. App. July 10, 2003) (reversing denial of class certification); and *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496 (2003) (addressing "reasonable consumer" standard under California law).

While in law school, Mr. Green authored a student note titled "A Vote Properly Cast? The Constitutionality of the National Voter Registration Act of 1993," 22 Journal of Legislation 45 (1996). He is a member of the San Diego County Bar Association's Appellate Court Committee. He was admitted to the State Bar of California in 1995.

**JONAH H. GOLDSTEIN** is a partner with Lerach Coughlin. Mr. Goldstein was a partner with Milberg Weiss prior to joining the Firm in 2004. Formerly, Mr. Goldstein was an Assistant U.S. Attorney for the Southern District of California, where he tried 13 jury trials (including a seven-defendant 11 week trial), and briefed and argued appeals before the Ninth Circuit Court of Appeals.

In 1991, Mr. Goldstein received his Bachelor of Arts degree in political science from Duke University. He received his Juris Doctor degree from the University of Denver College of Law in 1995, where he was the Notes & Comments Editor of the University of Denver Law Review. Following graduation from law school, Mr. Goldstein served as a law clerk for the Honorable William H. Erickson on the Colorado Supreme Court.

Mr. Goldstein is admitted to practice in Colorado (1995) and California (1997).

**SHAWN A. WILLIAMS** earned his Bachelor of Arts degree in English from the State University of New York at Albany in 1991. He earned his Juris Doctor degree from the University of Illinois College of Law in 1995. Upon graduation from law school, he served as an Assistant District Attorney in the Manhattan District Attorney's Office (1995-2000) where he

spent four years in the trial division prosecuting all levels of street crimes and one year conducting white collar fraud investigations.

Mr. Williams worked for Milberg Weiss for four years and was a partner before joining Lerach Coughlin in 2004. Mr. Williams' practice focuses on class action securities fraud matters. He is admitted to practice in all courts of the State of New York, including the U.S. District Courts for the Southern and Eastern Districts of New York. Mr. Williams is also admitted to practice in all courts of the State of California and the United States Court of Appeals for the Ninth Circuit.

**JOSEPH D. DALEY** received his Bachelor of Arts degree from Jacksonville University, and his Juris Doctor degree from the University of San Diego School of Law. He was a member of the USD Appellate Moot Court Board (1995-96), and has received several awards for written and oral advocacy, including: Order of the Barristers, Roger J. Traynor Constitutional Law Moot Court Team (Best Advocate Award); Philip C. Jessup International Law Moot Court Team (United States National Champions, First Place Regional Team); USD Alumni Torts Moot Court Competition (First Place Overall and Best Brief); the USD Jessup International Law Moot Court Competition (First Place Overall and Best Brief), and the American Jurisprudence Award in Professional Responsibility.

Mr. Daley edited the award-winning Federal Bar Association Newsletter (San Diego chapter) in the Year 2000, and served as the Year 2000 Chair of San Diego's Co-Operative Federal Appellate Committees ("COFACS"). Mr. Daley co-authored with Susan S. Gonick *The Nonretroactivity of the Private Securities Litigation Reform Act of 1995*, 25 Sec. Regulation L.J. 60 (1997); reprinted in 3 Sec. Reform Act Litig. Rep. 258 (1997) and 25 RICO L. Rep. 819 (1997).

Mr. Daley was admitted to the California Bar in 1996, and is admitted to practice before the U.S. District Courts for the Northern, Southern, Eastern, and Central Districts of California, as well as before the U.S. Courts of Appeals for the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh Circuits.

Mr. Daley's practice concentrates on federal appeals. Prior to joining Lerach Coughlin in 2004, Mr. Daley was a partner at Milberg Weiss.

**DOUGLAS R. BRITTON** was born in Los Angeles, California, in 1968. Mr. Britton received his B.B.A. from Washburn University in Topeka, Kansas in 1991 and his Juris Doctor degree, *cum laude*, from Pepperdine University Law School in 1996. Mr. Britton was admitted to the Nevada Bar in 1996 and to the California Bar in 1997 and is admitted to practice in all of the state courts in California, as well as the U.S. District Courts for the Northern, Southern, Eastern, and Central Districts of California. Mr. Britton has been litigating securities class action lawsuits since his admission to the Bar in 1996.

**ELLEN A. GUSIKOFF STEWART** was born in New York, New York in 1964. She received her Bachelor of Arts degree in Economics from Muhlenberg College in 1986, and her Juris Doctor degree from Case Western Reserve University in 1989. Mrs. Stewart was admitted to the California bar in 1989, and is admitted to practice before all federal courts in California, the Sixth and Ninth Circuit Courts of Appeals and the Western District of Michigan.

Mrs. Stewart currently practices in the firm's settlement department, negotiating and documenting the firm's complex securities, merger and consumer privacy class and derivative actions. Notably, these settlements include, *In re Vesta Ins. Group, Inc. Sec. Litig.*, (N.D. Ala. 2002) ($78 million recovery, to date); *In re Prison Realty Sec. Litig.*, (M.D. Tenn. 2001) (over $140 million in cash and stock); *Stanley v.*

*Safeskin Corp.*, (S.D. Ca. 2003) ($55 million recovery); and *In re Wisconsin Energy Derivative Litig.*, (Milwaukee County Circuit Court).

**A. RICK ATWOOD, JR**. prosecutes securities class actions, merger-related class actions, and shareholder derivative suits at both the trial and appellate levels. He has successfully represented shareholders in federal and state courts in numerous jurisdictions, including Alabama, California, Colorado, Delaware, Georgia, Hawaii, Illinois, New York, New Jersey, Nevada, North Carolina, Oregon, South Dakota, Texas, Tennessee, Utah, Washington and Washington, D.C.

Mr. Atwood was born in Nashville, Tennessee in 1965. In 1987, he received a Bachelor of Arts degree (with honors) in Political Science from the University of Tennessee at Knoxville. He received a Bachelor of Arts, with great distinction in Philosophy from the Katholieke Universiteit Leuven in Leuven, Belgium in 1988. He received his Juris Doctor in 1991 from Vanderbilt University Law School, where he served as Authorities Editor on the Vanderbilt Journal of Transnational Law.

Mr. Atwood was admitted to the California Bar in 1991, and is licensed to practice before the United States District Courts for the Southern, Central and Northern Districts of California. Prior to joining Lerach Coughlin, Mr. Atwood practiced in the San Diego office of Milberg Weiss, and before that was an associate in the Los Angeles office of Brobeck Phleger & Harrison LLP.

**JONATHAN E. BEHAR** was born in Los Angeles in 1968. In 1991, Mr. Behar received his Bachelor of Arts degree in English Literature from the University of California at Santa Barbara, with high honors and his Juris Doctor degree from the University of San Diego School of Law in 1994. He is admitted to the State Bar of California (1994) and the Southern and Central Districts of California (1998 and 2000

Lerach Coughlin Stoia Geller Rudman & Robbins LLP
Firm Resumé – Page 55 of 64

respectively). Prior to joining Lerach Coughlin, Mr. Behar practiced law with Milberg Weiss from 1994 to 2004.

As a partner at the Firm, Mr. Behar currently practices in the areas of securities, environmental and consumer litigation. While at Milberg Weiss, Mr. Behar was actively involved in the prosecution of two of California's seminal tobacco cases, *Mangini v. R.J. Reynolds Tobacco Company*, the "Joe Camel" case, as well as *Cordova v. Liggett Group, Inc., et al*., which alleged a 40 year conspiracy by the United States tobacco manufacturers.

**AMBER L. ECK** graduated from Pepperdine University, *magna cum laude*, with a Bachelor of Arts degree in 1990. Upon graduation, she worked for two years at a Los Angeles legal newspaper, the Metropolitan News-Enterprise. Ms. Eck then attended Boston University School of Law, graduating *magna cum laude* in 1995. At Boston University, Ms. Eck was a member of the Giles Sutherland Rich Intellectual Property Moot Court Team which received honors for Best Brief in the Northeast Region. In addition, she served as Case and Note Editor for the Boston University International Law Journal and Chapter Justice for Phi Alpha Delta.

Ms. Eck practiced law with Milberg Weiss from 1997 to 2004, before joining Lerach Coughlin. Her practice focuses on the prosecution of securities class actions and shareholder derivative suits. In addition, Ms. Eck received the Wiley W. Manuel *pro bono* service award in 1999 and the Distinguished Service Award in 2002 from the County of San Diego for pro bono service. Ms. Eck is a member of the California (1995) and Nevada (1996) bars, and is admitted to practice before the United States District Courts for all districts in both jurisdictions. She served on the Board of Directors for the Barristers Club of San Diego (1996-1997), and is a member of the American Inns of Court, Enright Chapter.

**DENNIS J. HERMAN** is a 1992 graduate of Stanford Law School, where he received the Order of the Coif and the Urban A. Sontheimer Award for graduating second in his class. Mr. Herman practiced law with Milberg Weiss from 2002 to 2004, where he concentrated his practice in securities class action litigation on behalf of defrauded investors. Mr. Herman is actively involved in the firm's on-going prosecution of securities fraud class actions, including those now pending against VeriSign Corp. and The Coca-Cola Company, Inc. He has also participated in the successful prosecution of numerous other securities fraud claims that have resulted in substantial recoveries for investors, including actions filed against Northwestern Corp. (recovery in excess of $40 million); Specialty Laboratories, Inc. ($12 million recovery); Electro-Scientific Industries, Inc. ($9 million); and Commtouch Software, Inc. ($15 million recovery). Mr. Herman also concluded the successful representation of the estate of a bankrupt company in lawsuits against its former officers and outside auditor seeking recovery for actions that deepened the company's insolvency before it went bankrupt.

**NANCY M. JUDA** concentrates her practice in employee benefits law and works in the firm's Institutional Investor Department. Ms. Juda received her Juris Doctor degree from American University in 1992 and her undergraduate degree from St. Lawrence University in 1988.

Prior to joining Lerach Coughlin, Ms. Juda was employed by the United Mine Workers of America Health & Retirement Funds, where she began her practice in the area of employee benefits law. Ms. Juda was also associated with union-side labor law firms in Washington, D.C., where she represented the trustees of Taft-Hartley pension and welfare funds on qualification, compliance, fiduciary and transactional issues under ERISA and the Internal Revenue Code.

Using her extensive experience representing union pension funds, Ms. Juda advises Taft-Hartley fund trustees regarding their options for seeking redress for losses due to securities fraud. Ms. Juda currently advises trustees of funds providing benefits for members of unions affiliated with the Building and Construction Trades Department of the AFL-CIO, including funds sponsored by the Operative Plasterers and Cement Masons International Association of America and Canada, International Union of Painters and Allied Trades, United Union of Roofers, Waterproofers and Allied Workers and International Union of Elevator Constructors. Ms. Juda also represents workers in ERISA class actions involving breach of fiduciary duty claims against corporate plan sponsors and fiduciaries.

Ms. Juda is licensed to practice in Maryland (1992) and the District of Columbia (1995). She is a member of the National Coordinating Committee for Multi-Employer Plans, the International Foundation of Employee Benefit Plans, the Employee Benefits Committee of the American Bar Association's Section of Labor and Employment Law and the AFL-CIO Lawyers' Coordinating Committee.

Ms. Juda is the editor of the Firm's quarterly newsletter, *Taking Action – Fighting Corporate Corruption*.

**JEFFREY D. LIGHT** was born in Los Angeles, California in 1964. He received his Bachelor of Science degree from San Diego State University in 1987 and his Juris Doctor degree from the University of San Diego in 1991 *cum laude*. Mr. Light was the recipient of the American Jurisprudence Award in Constitutional Law. He served as law clerk to the Honorable Louise DeCarl Adler, U.S. Bankruptcy Court and the Honorable James Meyers, Chief Judge, Southern District of California, United States Bankruptcy Court. Mr. Light practiced law with Milberg Weiss from 1994 to 2004, before joining Lerach Coughlin. He was admitted to

the California bar in 1992 and is admitted to practice before all federal courts in California.

Mr. Light is also a member of the San Diego County Bar Association and is on the Attorney Fee Arbitration Panel. Mr. Light currently practices in the firm's settlement department, negotiating, documenting and obtaining court approval of the firm's complex securities, merger, consumer and derivative actions. These settlements include: *In re AT&T Corp. Sec. Litig.* (D.N.J. 2005) ($100 million recovery); *In re Infonet Corp. Sec. Litig.* (C.D. Cal. 2004) ($18 million recovery); and *In re Ashworth, Inc. Sec. Litig.* (S.D. Cal. 2004) ($15.250 million recovery).

**CHRISTOPHER P. SEEFER** received his Bachelor of Arts degree from the University of California, Berkeley in 1984 and his Master of Business Administration degree from the University of California, Berkeley in 1990. He received his Juris Doctor degree from the Golden Gate University School of Law in 1998. Prior to joining Milberg Weiss in March 1999, Mr. Seefer was a Fraud Investigator with the Office of Thrift Supervision, Department of the Treasury (1990-1999) and a field examiner with the Office of Thrift Supervision (1986-1990). Mr. Seefer is a member of the bar of California, the United States District Court for the Northern District of California and the United States Court of Appeals for the Ninth Circuit.

## OF COUNSEL

**LEONARD B. SIMON** is admitted to practice in California, New York, and the District of Columbia.

Mr. Simon's practice has been devoted heavily to litigation in the federal courts, including both the prosecution and the defense of major class actions and other complex litigation in the securities and antitrust fields. He has argued more than 20 appeals in the federal and state courts of appeal. He has also

represented large, publicly traded corporations.

Mr. Simon served as plaintiffs' co-lead counsel in *In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig.*, MDL No. 834 (D. Ariz.) (settled for $240 million), and *In re NASDAQ Market-Makers Antitrust Litig.*, MDL No. 1023 (S.D.N.Y.) (settled for more than one billion dollars). He is currently in a leadership position in the private *Microsoft Antitrust Litig.*, and in the *California Utilities Antitrust Litig.* He was centrally involved in the prosecution of *In re Washington Public Power Supply System Sec. Litig.*, MDL No. 551 (D. Ariz.), the largest securities class action ever litigated.

Mr. Simon is an Adjunct Professor of Law at Duke University, the University of San Diego, and the University of Southern California law schools. He has lectured extensively on securities, antitrust and complex litigation on programs sponsored by the ABA Section of Litigation, the Practising Law Institute, and ALI-ABA, and at UCLA Law School, University of San Diego Law School and Stanford Business School. He is an editor of California Federal Court Practice, and has authored a law review article on the Private Securities Litigation Reform Act of 1995.

Mr. Simon received his Bachelor of Arts degree from Union College in 1970 and his Juris Doctor degree from Duke University School of Law, Order of the Coif and with distinction, in 1973. He served as law clerk to the Honorable Irving Hill, U.S. District Judge for the Central District of California, in 1973-74.

**BYRON S. GEORGIOU** received his A.B. with great distinction, with honors in Social Thought and Institutions, in 1970 from Stanford University, attending on an Alfred P. Sloan full academic scholarship. After a year co-founding and teaching 7th and 8th graders at the Mariposa School, which has thrived for 35 years as an alternative primary through middle school in rural Mendocino County, he attended Harvard Law School, graduating *magna cum laude* in 1974. He was admitted to the California Bar in 1974 and served for one year as law clerk to the Honorable Robert F. Peckham, Chief Judge of the U.S. District Court for the Northern District of California. He is a member of the bar of the U.S. Supreme Court, the U.S. Court of Appeals for the Ninth Circuit and the U.S. District Courts for the Northern, Eastern, Central and Southern Districts of California.

Mr. Georgiou served from 1975 to 1980 in various capacities with the California Agricultural Labor Relations Board, defending the constitutionality of the law up through the U.S. and California Supreme Courts and prosecuting unfair labor practice cases enforcing the collective bargaining rights of farmworkers, who had been excluded from coverage under the National Labor Relations Act.

From 1980 to 1983, Mr. Georgiou served as Legal Affairs Secretary to California Governor Edmund G. Brown Jr., responsible for litigation by and against the Governor, judicial appointments, liaison with the Attorney General, Judiciary and State Bar, legal advice to the Governor and members of his Cabinet, and exercise of the Governor's powers of extradition and clemency.

From 1983 to 1994, he was Managing Partner and co-founder of the San Diego law firm of Georgiou, Tosdal, Levine & Smith, engaged in a general civil practice, with emphasis on litigation, appearances before executive and legislative governmental bodies and representation of labor organizations and their members, including contract negotiations and enforcement for many California public and private sector unions.

In 1994, he co-founded and served as President of American Partners Capital Group, concentrating in serving the needs of

institutional investors through capital formation programs in a variety of alternative asset categories.

In 1981 Mr. Georgiou was honored as Public Official of the Year by the California Trial Lawyers Association and served as Chair of the Governor's Task Force on Alcohol, Drugs and Traffic Safety, one of the nation's first vehicles for enacting tough drunk driver legislation sponsored by the Mothers Against Drunk Driving (MADD).

Since affiliating with Milberg Weiss in 2000 and continuing with Lerach Coughlin, Mr. Georgiou serves as the primary liaison with a number of the firm's principal institutional clients and is actively involved in the historic litigations seeking recoveries for defrauded investors in *Enron*, *Dynegy*, *AOL Time Warner* and *WorldCom*.

**SANDRA STEIN** received her Bachelor of Science degree from the University of Pennsylvania and a Juris Doctor degree from Temple University Law School. She is a member of the Pennsylvania and Washington, D.C. bars. Ms. Stein concentrates her practice in securities class action litigation, legislative law, and antitrust litigation. She served as counsel to U.S. Senator Arlen Specter and to the U.S. Institute for Law and Economic Policy, a think tank which develops policy positions on selected issues involving the administration of justice within the American Legal System. In addition, Ms. Stein served on the Board of Advisors of the Annenberg Institute of Public Service at the University of Pennsylvania. Ms. Stein was the recipient of the National Federation of Republican Women's "Best of America" Award and has been honored by the White House, California State Senate, and California State Assembly for civic leadership.

In a unique partnership with her daughter, Attorney Laura Stein, a former associate of Milberg Weiss, the Steins served as two of the top asset recovery attorneys in the firm. The Steins focus on maximizing profits and minimizing losses to shareholders due to corporate fraud and breaches of fiduciary duty. They also seek to deter future violations of federal and state securities laws by reinforcing the standards of good corporate governance.

Ms. Stein has been active in a number of organizations, including the National Association of Shareholder and Consumer Attorneys (NASCAT), National Association of State Treasurers (NAST), the AFL-CIO Lawyers Coordinating Committee, the National Coordinating Committee for multi-employer Plans (NCCMP), the International Foundation for Employer Benefit Plans (IFEBP) among others.

Ms. Stein has addressed the National Association of Auditors, Controllers and Treasurers on the subject of corporate governance and its role as a positive force in future class action securities settlements. She has also spoken before numerous AFL-CIO conventions and dozens of public and multi-employer pension funds.

**ELISABETH A. BOWMAN** is part of Lerach Coughlin's in-house graphics group which creates visual and audio aids to help explain complex cases and legal theories in a succinct and understandable way. Ms. Bowman's eight years as a criminal defense trial attorney and her former experience in the graphic arts combine to make her exceptionally well suited to produce persuasive legal graphics at every stage of litigation and at trial. Before joining Lerach Coughlin, Ms. Bowman practiced law with Milberg Weiss for six years, during which time she assisted in the trials of: *Long v. Wells Fargo Co., et al.; Yourish v. California Amplifier, et al.; In re Helionetics, Inc. Sec. Litig.;* and *Schwartz v. Visa, et al.*

Since joining the Firm in 2004, Ms. Bowman assisted in the trials of: *Douglas Shooker, et. al.*

*v. Gary Winnick, et. al.*, and *In re AT&T Corp. Sec. Litig.*

Ms. Bowman received her B.F.A. from the University of Alaska at Anchorage in 1986, where she majored in Fine Arts and Psychology. While a student at the U of A, she received a grant from the Ford Foundation to participate in the artists in residency program at the Visual Arts Center, Alaska. Ms. Bowman received her Juris Doctor degree from the University of San Diego in 1989. During the summer of 1987, she attended USD's Institute on International and Comparative Law in Oxford, England.

Ms. Bowman was in private practice as a criminal defense attorney for eight years, handling both trials and appeals in state and federal courts. Ms. Bowman is a member of Volunteers in Parole, an organization based on the Big Brothers' paradigm, in which attorneys are matched with parolees from the California Youth Authority in an effort to offer positive mentoring. She also served on VIP's local and state-wide boards.

Ms. Bowman is a member of the California bar (1990), and is admitted to the Supreme Court of the State of California, the U.S. District Court for the Southern District of California, the U.S. Court of Appeals for the Ninth Circuit, and the Supreme Court of the United States.

**JAMES CAPUTO** has focused his practice on the prosecution of complex litigation involving securities fraud and corporate misfeasance, consumer actions, unfair business practices, contamination and toxic torts, and employment and labor law violations. He has successfully served as lead or co-lead counsel in numerous class and consumer actions litigation matters, including, for example: *In re S3 Sec. Litig.*, Case No. CV770003 (Cal. Super. Ct., Santa Clara County); *Santiago v. Kia Motors America*, Case No. 01CC01438 (Cal. Super. Ct., Orange County); Case No. 0988 MJJ (N.D. Cal.); *In re Fleming Co. Sec. Litigation*, Case No. 5:02-CV-

178 (TJW) (E.D. Tex.); *In re Capstead Mortgage Corp. Sec. Litig.*, Case No. 3:98-CV-1716 (N.D. Tex.); *In re Valence Tech. Sec. Litig.*, Case No. C95-20459 (JW)(EAI) (N.D. Cal.); *In re THQ, Inc. Sec. Litig.*, Master File No. CV-00-01783-JFW (C.D. Cal.); and *In re ICN Pharm. Corp. Sec. Litig.,* Case No. CV-98-02433 (C.D. Cal.).

Mr. Caputo was formerly a partner at Spector Roseman & Kodroff and Milberg Weiss. During the latter tenure, he was one of the trial counsels in the year-long trial of *Newman v. Stringfellow*, a toxic exposure case involving nearly 4,000 plaintiffs. That case ultimately settled for approximately $110 million. He was co-trial counsel in an employment law class action against Taco Bell, which settled for $14 million.

Mr. Caputo received a Bachelor of Science degree from the University of Pittsburgh in 1970 and a Masters degree from the University of Iowa in 1975. In 1984, he received his Juris Doctor degree *magna cum laude* from California Western School of Law, where he served as editor-in-chief of the International Law Journal. He also clerked for Presiding Justice Daniel J. Kremer of the California Court of Appeal from 1985 to 1987 and to Associate Justice Don R. Work of the California Court of Appeal from 1984 to 1985. He has co-authored: "No Single Cause: Juvenile Delinquency and the Search for Effective Treatment" (1985) and authored Comment, *Equal Right of Access in Matters of Transboundary Pollution: Its Prospects in Industrial and Developing Countries*, 14 Cal. West. Intl. L. J. 192 (1984). Mr. Caputo has also numerous presentations to various legal and professional groups regarding complex and class action litigation.

He is admitted to practice in the State of California and the U.S. District Courts for the Southern, Central and Northern Districts of California as well as numerous other jurisdictions. Mr. Caputo is a member of the San Diego County and American Bar

Associations, the Consumer Attorneys of California, and the Association of Trial Lawyers of America.

**MITCHELL D. GRAVO** concentrates his practice in lobbying and government relations. He represents clients before the Alaska Congressional delegation, the Alaska Legislature, the Alaska State Government and the Municipality of Anchorage.

Mr. Gravo attended Ohio State University as an undergraduate before attending the University of San Diego School of Law. He came to Alaska in 1977, served briefly as an intern with the Municipality of Anchorage and then clerked a year for Superior Court Judge J. Justin Ripley. After his clerkship with Judge Ripley, he went back to the work for the Municipality of Anchorage, where he first served as the executive assistant to the Municipal Manager and then as the first lobbyist for the then Mayor of Anchorage, George M. Sullivan. Mr. Gravo has been described as one of the "top lobbyists in the state" by Alaska's major daily newspaper, *The Anchorage Daily News*.

His legislative clients include the Anchorage Economic Development Corporation, the Anchorage Convention and Visitors Bureau, UST Public Affairs, Inc., the International Brotherhood of Electrical Workers, Alaska Seafood International, Distilled Spirits Council of America, RIM Architects, Anchorage Police Department Employees Association, Fred Meyer, and the Automobile Manufacturer's Association.

**JACQUI E. MOTTEK** received her Bachelor of Science degree in Government and Politics, *cum laude* from the University of Maryland, College Park, Maryland in 1979. Ms. Mottek obtained her Juris Doctor degree in 1986 from the University of San Francisco School of Law, where she was a recipient of the American Jurisprudence Award in Constitutional Law and a member of the University of San Francisco's Law Review.

Ms. Mottek was associated with the law firm Brobeck Phleger & Harrison from 1987 to 1994. In 1994, Ms. Mottek served as sole chair in a jury trial resulting in a verdict in favor of her clients of $1 million. In 1994, Ms. Mottek became a partner with the firm Lieff Cabraser Heimann & Bernstein concentrating her practice in plaintiffs' class actions with an emphasis on consumer fraud litigation and other complex business litigation for plaintiffs. She successfully prosecuted a certified class action on behalf of physicians who provided medical services to Blue Cross of California HMO members. She is the author of "The Impact of Classwide Arbitration on Mandatory Arbitration," Vol. 1, No. 13, Class Action Litigation Report (October 27, 2000).

Prior to joining Lerach Coughlin in 2004, Ms. Mottek prosecuted consumer fraud class actions. She serves as co-lead counsel in several consumer class actions, including *Tenet HealthCare Cases II*, JCCP 4285, pending before the Los Angeles Superior Court, and as co-lead counsel and a member of the executive committee of the *Cellphone Termination Fees Litigation*, JCCP 4332, pending before the Superior Court of Alameda County. She is also a senior litigator in *Spielholz v. LA Cellular, Inc*,. Case No. BC186787 (resulting in the published opinion *Spielholz v. Superior Court*, 86 Cal. App. 4th 1866 (2001), granting a petition for a writ of mandamus she drafted in a question of first impression in California); in the matters coordinated before the federal court in the Northern District of Illinois, styled *In re Owen Federal Bank Mortgage Servicing Litig.*, MDL No. 1604 and as counsel in *Paton v. Cingular Wireless*, Case No. CGC-04-428855, in the Superior Court of San Francisco.

**L. THOMAS GALLOWAY** received a Bachelor of Arts degree in History/Latin from Florida State University and received his Juris Doctor degree from the University of Virginia Law School in

1972, where he was a member of the Editorial Board of the University of Virginia Law Review.

Mr. Galloway is the founding partner of Galloway & Associates, a law firm that concentrates in the representation of institutional investors – namely, public and multi-employer pension funds.

Mr. Galloway has authored several books and articles, including: "*The American Response to Revolutionary Change: A Study of Diplomatic Recognition"* (AEI Institute 1978); "*America's Energy: Reports from the Nation"* (Pantheon 1980); Contributor, "*Coal Treatise"* (Matthew Bender 1981); Contributor, "*Mining and the Environment: A Comparative Analysis of Surface Mining in Germany, Great Britain, Australia, and the United States*," 4 Harv. Envtl. L. Rev. 261 (Spring 1980); "*A Miner's Bill of Rights*," 80 W. Va. L. Rev. 397 (1978); and Contributor, "*Golden Dreams, Poisoned Streams"* (Mineral Policy Center Washington D.C. 1997).

Mr. Galloway represents and/or provides consulting services for the following: National Wildlife Federation, Sierra Club, Friends of the Earth, United Mine Workers of America, Trout Unlimited, National Audubon Society, Natural Resources Defense Council, German Marshal Fund, Northern Cheyenne Indian Tribe and Council of Energy Resource Tribes.  He is a member of the District of Columbia and Colorado State Bars.

**JERRILYN HARDAWAY**, in the Houston Enron Trial office, is a seventh-generation Texan who grew up in Greenville and graduated from Texas A&M with three undergraduate degrees- English, Psychology and Applied Mathematics. She was a Fulbright Scholar, studying Italian architecture and writing a prize-winning article on international trade relations. Despite her primarily liberal arts education she was really only interested in computers, focusing on software development for vertically integrated markets, which led to an interest in antitrust law.  She graduated in 1993 from the University of Houston Law Center, where she was a member of the Houston Journal of International Law.  She worked alongside renowned class-action attorney Charles Kipple for the next eight years, assisting as lead counsel or co-lead counsel in several complex anti-trust cases through 1999, including MDL No. 1206, *In re Lease Oil Antitrust Litig.* in the Southern District of Texas, Corpus Christi Division.  After traveling and living abroad for three years, she returned to Houston and, in March 2002, was asked to "build a simple database, probably won't take longer than the summer."  Now, more than two years later, her Enron databases manage more than 100 million documents and she supervises two teams of litigation support.  Jerri is a frequent speaker and author on electronic discovery and developing issues in technology and the law. She speaks several languages, which helps because she very much enjoys traveling.

## SPECIAL COUNSEL

**SUSAN K. ALEXANDER** graduated with honors from Stanford University in 1983 and earned her Juris Doctor degree from the University of California at Los Angeles in 1986.  Ms. Alexander joined the Appellate Practice Group at Lerach Coughlin in 2004 after working with Milberg Weiss in San Francisco for four years.

Following her admission to the California Bar in 1986, Ms. Alexander joined Bronson, Bronson & McKinnon, where she litigated professional malpractice and product liability cases on behalf of attorneys, doctors and automobile manufacturers, second-chairing two dental malpractice cases to a defense verdict.  In 1990, Ms. Alexander joined the California Appellate Project ("CAP"), where she prepared appeals and petitions for writs of *habeas corpus* on behalf of individuals sentenced to death, as well as supervising private attorneys in their preparation of appeals and *habeas corpus* petitions.  At CAP

and subsequently in private practice, Ms. Alexander litigated and consulted on death penalty direct and collateral appeals for 10 years, including favorable decisions in the California Supreme Court, *In re Brown*, 17 Cal. 4th 873 (1998) and the Ninth Circuit *Odle v. Woodford*, 238 F.3d 1084 (9th Cir. 2001). At Milberg Weiss, Ms. Alexander has argued *Shuster v. Symmetricom, Inc.* and *Wilkes v. Versant Object Tech. Corp.* in the Ninth Circuit, and will argue *Pirraglia v. Novell, Inc.* in the Tenth Circuit.

Ms. Alexander is a member of the bar of the U.S. Supreme Court, the Ninth Circuit Court of Appeals, the Tenth Circuit Court of Appeals, U.S. District Court, Northern, Central, Eastern and Southern Districts of California, and the California Supreme Court. Ms. Alexander is also a member of the Federal Bar Association, Appellate Division and the Appellate Practice Section of the Bar Association of San Francisco.

## FORENSIC ACCOUNTANTS

**ANDREW J. RUDOLPH** is a Certified Fraud Examiner and a Certified Public Accountant licensed to practice in California. He is an active member of the American Institute of Certified Public Accountants, California's Society of Certified Public Accountants and the Association of Certified Fraud Examiners. His 20 years of public accounting, consulting and forensic accounting experience includes financial fraud investigation, auditor malpractice, auditing of public and private companies, business litigation consulting, due diligence investigations and taxation. Mr. Rudolph is the National Director of Lerach Coughlin's Forensic Accounting Department which provides the firm with in-house forensic accounting expertise in connection with securities fraud litigation against national and foreign companies. Prior to joining Lerach Coughlin in 2004, Mr. Rudolph was the Director of Forensic Accounting for the law firm of Milberg Weiss for 12 years. Mr. Rudolph has given numerous lectures and assisted with articles on forensic investigations and financial statement fraud. Mr. Rudolph has directed hundreds of financial statement fraud investigations which were instrumental in the recovery of billions of dollars for defrauded investors. Prominent cases include *Qwest*, *HealthSouth*, *WorldCom*, *Boeing*, *Honeywell*, *Vivendi*, *Aurora Foods*, *Informix* and *Platinum Software*.

**CHRISTOPHER YURCEK** is one of the firm's senior forensic accountants and provides in-house forensic accounting and litigation expertise in connection with major securities fraud litigation. Mr. Yurcek is a Certified Public Accountant with 19 years of accounting, forensic examination and consulting experience in areas including financial statement audit, fraud investigation, auditor malpractice, turn-around consulting, business litigation, and business valuation. Mr. Yurcek is currently responsible for overseeing the firm's forensic accounting investigation in *In re Enron Corp. Sec. Litig*. Prior to joining Lerach Coughlin, Mr. Yurcek provided in-house forensic accounting expertise to Milberg Weiss where he directed accounting investigations in connection with well-publicized securities fraud litigation including cases such as *Enron*, *Vesta*, *Informix*, *Mattel*, *Coca Cola Company* and *Media Vision*. Mr. Yurcek's experience included providing forensic accounting expertise to bankruptcy trustees, and audit and accounting services at a national CPA firm. Mr. Yurcek speaks at professional accounting seminars on topics such as financial statement fraud and fraud prevention, and has co-authored articles on the subjects. Mr. Yurcek is a member of the American Institute of Certified Public Accountants, and the California Society of CPAs.

**R. STEVEN ARONICA** is a Certified Public Accountant licensed in the States of New York and Georgia and is a member of the American Institute of Certified Public Accountants, the Institute of Internal Auditors and the Association of Certified Fraud Examiners. He

has been employed in the practice of accounting for 25 years, including: (1) public accounting where he was responsible for providing clients with a wide range of accounting and auditing services; (2) private accounting with Drexel Burnham Lambert, Inc. where he held positions with accounting and financial reporting responsibilities as a Vice President; (3) various positions with the United States Securities and Exchange Commission; and (4) the chief forensic accountant in the New York office of Milberg Weiss. Mr. Aronica has extensive experience in securities regulation and litigation. At the SEC, Mr. Aronica reviewed and analyzed financial statements and related financial disclosures contained in public filings for compliance with generally accepted accounting principles, generally accepted auditing standards, and the accounting and auditing rules, regulations and policies of the SEC. Mr. Aronica was also an Enforcement Division Branch Chief, responsible for managing a group of investigators and accountants who initiated, developed and executed numerous investigations involving financial fraud, accounting improprieties and audit failures. During his seven-year tenure at the SEC, Mr. Aronica was responsible for directing and investigating a complex, Mr. Aronica has been instrumental in the prosecution of numerous financial and accounting fraud civil litigation claims against companies which include: Lucent Technologies, Oxford Health Plans, Computer Associates, Aetna, WorldCom, Tyco, Vivendi, AOL Time Warner, Ikon, Thomas & Betts, InaCom and Royal Ahold. In addition, Mr. Aronica helped prosecute numerous claims against each of the major U.S. public accounting firms.