UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE ARCHDIOCESE OF MILWAUKEE SUPPORTING FUND, On Behalf of Plaintiff and All Others Similarly Situated, ) ) ) | No. 1:05-cv-11627-RCL **(Consolidated)** |
| ) | CLASS ACTION |
| Plaintiff, ) ) | |
| vs. ) ) | |
| INVESTORS FINANCIAL SERVICES CORP., et al., ) ) ) | |
| Defendants. ) ) ) | |

PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................1

II.   THE DOCUMENTS ARE RELEVANT AND THE PROPER SUBJECT OF
      JUDICIAL NOTICE AT THE PLEADING STAGE........................................................2

III.  THE CONTENT OF THE JUDICIALLY NOTICED DOCUMENTS SHOULD
      BE INCORPORATED IN THE COMPLAINT AND CONSTRUED IN
      PLAINTIFFS' FAVOR ........................................................................................10

IV.   CONCLUSION....................................................................................................11

## TABLE OF AUTHORITIES

**Page**

### CASES

*Adams v. Kinder-Morgan, Inc.,*
340 F.3d 1083 (10th Cir. 2003) ..............................................................................11

*Beddall v. State St. Bank & Trust Co.,*
137 F.3d 12 (1st Cir. 1998)..............................................................................2, 5, 7

*Branch v. Tunnell,*
14 F.3d 449 (9th Cir. 1994) ...........................................................................2, 5, 10

*In re Cylink Sec. Litig.,*
178 F. Supp. 2d 1077 (N.D. Cal. 2001) ..................................................................10

*Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC,*
369 F.3d 1197 (11th Cir. 2004) ................................................................................2

*In re Cabletron Sys.,*
311 F.3d 11 (1st Cir. 2002).....................................................................................10

*In re Cree, Inc. Sec. Litig.,*
333 F. Supp. 2d 461 (M.D.N.C. 2004) ...................................................................10

*In re Cytyc Corp. Sec. Litig.,*
2005 U.S. Dist. LEXIS 6166 (D. Mass. Mar. 1, 2005).............................................7

*In re Royal Ahold N.V. Sec. & ERISA Litig.,*
351 F. Supp. 2d 334, (D. Md. 2004) .......................................................................10

*In re Vertex Pharm., Inc., Sec. Litig.,*
357 F. Supp. 2d 343 (D. Mass. 2005) .......................................................................2

*In re Vivendi Universal, S.A. Sec. Litig.,*
381 F. Supp. 2d 158 (S.D.N.Y. 2003).................................................................5, 7

*In re Wells Fargo Sec. Litig.,*
12 F.3d 922 (9th Cir. 1993) ..................................................................................5, 7

*Int'l Audiotext Network v. AT&T,*
62 F.3d 69 (2d Cir. 1995) .......................................................................................10

*Lee v. City of Los Angeles,*
250 F.3d 668 (9th Cir. 2001) .............................................................................10, 11

**Page**

*Oran v. Stafford*,
226 F.3d 275 (3d Cir. 2000)....................................................................................10

*Republican Party v. Martin*,
980 F.2d 943 (4th Cir. 1992) ...................................................................................10

*Romani v. Shearson Lehman Hutton*,
929 F.2d 875 (1st Cir. 1991)....................................................................................10

*Swack v. Lehman Bros., Inc.*,
2005 U.S. Dist. LEXIS 42588 (D. Mass. Aug. 17, 2005) .............................................7, 8

*Town of Norwood v. New England Power Co.*,
202 F.3d 408 (1st Cir. 2000)......................................................................................2

*Vallot v. Central Gulf Lines, Inc.*,
641 F.2d 347 (5th Cir. 1981) .....................................................................................2

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
Rule 12(b)(6).....................................................................................................2, 10

## MISCELLANEOUS

6 Charles Alan Wright & Arthur R. Miller,
*Federal Practice and Procedure: Civil* §1476 at 70 (2006 Supp.)..................................10

## I.    INTRODUCTION

Plaintiffs respectfully request that the Court take judicial notice of Investors Financial Services Corporation's ("Investors Financial" or the "Company") documents that are attached as Exhibits 1 through 8 to the Declaration of Jeffrey W. Lawrence in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss Consolidated Complaint and Request for Judicial Notice ("Lawrence Decl."), filed herewith.  These following eight documents are submitted to establish statements and actions taken by defendants:

1.    U.S. Securities and Exchange Commission's ("SEC") Final Rule on Management's Reports on Internal Control Over Financial Reporting and Certification of Disclosure in Exchange Act Periodic Reports [RELEASE NOS. 33-8238; 34-47986; IC-26068; File Nos. S7-40-02; S7-06-03].  Exhibit 1.

2.    Investors Financial's SEC Schedule 14/A, filed on March 11, 2003.  Exhibit 2.

3.    Investors Financial's SEC Schedule 14/A, filed on March 5, 2004.  Exhibit 3.

4.    Bloomberg-Daily Stock Prices for Investors Financial for April 10, 2001 to July 15, 2005.  Exhibit 4.

5.    Defendant Kevin J. Sheehan's SEC Form 4, filed on October 28, 2004.  Exhibit 5.

6.    Investors Financial's SEC Form 8-K, filed on January 25, 2005, with attached January 25, 2005 press release.  Exhibit 6.

7.    Investors Financial's SEC Form 8-K, filed on April 13, 2005, with attached April 13, 2005 press release.  Exhibit 7.

8.    Investors Financial's June 30, 2005 SEC Form 10-Q filed on August 9, 2005.  Exhibit 8.

## II.     THE DOCUMENTS ARE RELEVANT AND THE PROPER SUBJECT OF JUDICIAL NOTICE AT THE PLEADING STAGE

The court may take judicial notice of documents whose contents are alleged in, but not physically attached to, the complaint. *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998). *See also Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). The court may also take judicial notice of public records in considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *Town of Norwood v. New England Power Co.*, 202 F.3d 408, 412 (1st Cir. 2000); *In re Vertex Pharm., Inc., Sec. Litig.*, 357 F. Supp. 2d 343, 352 (D. Mass. 2005).

The documents offered for judicial notice are: SEC's Final Rule on Management's Reports on Internal Control Over Financial Reporting and Certification of Disclosure in Exchange Act Periodic Reports (Exhibit 1); Investors Financial's SEC filings (Exhibits 2-3, 5, 7-9) and the Company's stock prices compiled by Bloomberg (Exhibit 4). Investors Financial cannot challenge the authenticity of these documents. They should be judicially noticed. *Vertex Pharm.*, 357 F. Supp. 2d at 352.

As with evidence generally, the matter to be judicially noticed must be relevant to the issues in the case. *See*, *e.g.*, *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1204 (11th Cir. 2004); *Vallot v. Central Gulf Lines, Inc.*, 641 F.2d 347, 351 (5th Cir. 1981). Each of the documents offered is relevant to support the allegations of accounting fraud, as follows:

1.      Exhibit 1 is the SEC's Final Rule on Management's Reports on Internal Control Over Financial Reporting and Certification of Disclosure in Exchange Act Periodic Reports ("SEC Final Rule") issued on June 5, 2003. Shortly thereafter, on August 11, 2003, Investors Financial filed its SEC Form 10-Q and Sarbanes-Oxley 302 certifications regarding managements' responsibility for establishing and maintaining internal control over financial reporting. There, defendants Kevin J. Sheehan and John N. Spinney stated: "Paragraph omitted in accordance with SEC transition

instruction contained in SEC Release 34-47986." *See* Defs' App., Ex. 3 at Exhibit 31.1 and 31.2.[1]

This document, and the Company's adoption, is relevant to show that defendants were on notice as

of August 11, 2003 of possible flaws in the Company's internal control over financial reporting.

Plaintiffs' scienter allegations are bolstered by this fact and the unexplained drastic increase in

defendants' eligible bonus compensation for 2004 that occurred in November 2003.

Specifically, the SEC Final Rule required Investors Financial to include in its annual report

for December 31, 2004 a report by management of the Company's internal control over financial

reporting. *See* Defs' App., Ex. 11 at 47.  The SEC Final Rule laid out the requirements and stated

that the internal report must include:

> [A] statement of management's responsibility for establishing and
> maintaining adequate internal control over financial reporting for the company;
> management's assessment of the effectiveness of the company's internal control over
> financial reporting as of the end of the company's most recent fiscal year; a statement
> identifying the framework used by management to evaluate the effectiveness of the
> company's internal control over financial reporting; and a statement that the
> registered public accounting firm that audited the company's financial statements
> included in the annual report has issued an attestation report on management's
> assessment of the company's internal control over financial reporting.

Exhibit 1 at 1.  The SEC Final Rule also required:

> Under the new rules, a company is required to file the registered public accounting
> firm's attestation report as part of the annual report. Furthermore, we are adding a
> requirement that management evaluate any change in the company's internal control
> over financial reporting that occurred during a fiscal quarter that has materially
> affected, or is reasonably likely to materially affect, the company's internal control
> over financial reporting. Finally, we are adopting amendments to our rules and forms
> under the Securities Exchange Act of 1934 and the Investment Company Act of 1940
> to revise the Section 302 certification requirements and to require issuers to provide
> the certifications required by Sections 302 and 906 of the Sarbanes-Oxley Act of
> 2002 as exhibits to certain periodic reports.

---

[1]    "Defs' App." refers to defendants' Appendix of Documents Submitted in Support of
Defendants' Motion to Dismiss the Consolidated Complaint.

Exhibit 1 at 1-2.

In addition, the SEC Final Rule required that Investors Financial's assessment of the effectiveness of the Company's internal control over financial reporting to include "any 'material weaknesses' in the company's internal control over financial reporting identified by management" and Investors Financial "is not permitted to conclude that the company's internal control over financial reporting is effective if there are one or more material weaknesses in the company's internal control over financial reporting." Exhibit 1 at 12-13. The SEC Final Rule stated that the:

> terms "material weakness" and "significant deficiency" both represent deficiencies in the design or operation of internal control that could adversely affect a company's ability to record, process, summarize and report financial data consistent with the assertions of management in the company's financial statements, with a "material weakness" constituting a greater deficiency than a "significant deficiency." ***Because of this relationship, it is our judgment that an aggregation of significant deficiencies could constitute a material weakness in a company's internal control over financial reporting***.

Exhibit 1 n.73 (emphasis added).

2.      Exhibits 2 and 3 are Investors Financial's March 11, 2003 and March 5, 2004 SEC Schedule 14/As (proxies) that announced its April 15, 2003 and April 13, 2004 shareholder meetings and provided a Report on Compensation Committee on Executive Compensation. Comparing the March 11, 2003 proxy to the March 5, 2004 proxy reveals that shortly after the SEC Final Rule, defendants drastically increased their eligible bonuses from 100-125% up to 265% of their annual base pay if the 2004 generally accepted accounting principles ("GAAP") earnings per share *equaled* the minimum target, and increased the eligible bonuses from 225% to 325% of their annual base pay if the GAAP 2004 earnings *exceeded* the minimum target. Both of these SEC filings are referenced

in the Complaint[2] and are the basis of plaintiffs' motive allegations regarding defendants' bonuses.

¶234.[3] *See Beddall*, 137 F.3d at 17, citing *Branch*, 14 F.3d at 454 ("documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss").

These documents are relevant to confirm and corroborate plaintiffs' scienter allegations and to show that defendants took full advantage of the undisclosed information. ¶¶231-34. Specifically, defendants knew that as a result of restating their financial statements and changing to the retrospective method, net interest income losses experienced in 2001 and 2002 that were pushed forward would be restated and pushed back (net interest income restated by $8.4 million in 2001 and $2.3 million in 2002) thereby creating record earnings and bonuses for 2004. *See In re Wells Fargo Sec. Litig.*, 12 F.3d 922, 931 (9th Cir. 1993) (because defendants "stood to receive more compensation because of the alleged non-disclosure" it raises an inference of scienter) (internal quotations omitted); *See also In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 185 (S.D.N.Y. 2003).

(a)     Investors Financial's March 11, 2003 proxy disclosed the following in its Report on Compensation Committee on Executive Compensation that set the terms for the 2003 Executive Compensation Plan:

> In November 2002, the Compensation Committee set the terms for the 2003 Executive Compensation Plan, and recommended those terms to the full Board for approval. The full Board approved the 2003 Executive Compensation Plan at their November 2002 regular meeting. This plan established (i) base salaries for 2003; (ii) proposed option grant levels for 2003; (iii) target levels for operating earnings per

---

[2]     "Complaint" refers to the Lead Plaintiffs' [Corrected] Consolidated Complaint for Violation of the Federal Securities Laws, filed February 3, 2006.

[3]     All paragraph ("¶__") references refer to the Complaint.

share for 2003 and bonus amounts payable to executive officers under the Senior
Executive Bonus Plan, based on achieving such targets and (iv) sales commission
parameters for Mr. Mancuso. ***If 2003 operating earnings per share equal the
minimum target, certain executive officers will receive bonuses ranging from
100% to 125% of their annual base pay, depending on their positions, with the
Chief Executive Officer and the President each receiving 125% of their respective
annual base pay. If 2003 operating earnings per share exceed the minimum target
level, additional bonus amounts are available to the executive officers under the
bonus plan, up to a maximum amount equal to 225% of their respective annual
base pay***. The actual level of bonus earned is based upon achievement of specific
predetermined performance targets established by the Compensation Committee. No
bonuses will be payable to executive officers if 2003 operating earnings per share are
less than or equal to 2002 operating earnings per share.

Exhibit 2 at 16 (emphasis added).

> (b)     Investors Financial's March 5, 2004 proxy disclosed the following in its

Report on Compensation Committee on Executive Compensation that set the terms for the 2004

Executive Compensation Plan:

In November 2003, the Compensation Committee set the terms for the 2004
Executive Compensation Plan, and recommended those terms to the full Board for
approval. The full Board approved the 2004 Executive Compensation Plan at their
November 2003 regular meeting. This plan established (i) base salaries for 2004; (ii)
proposed option grant levels for 2004; (iii) target levels for operating earnings per
share for 2004 and bonus amounts payable to executive officers under the Senior
Executive Bonus Plan, based on achieving such targets and (iv) sales commission
parameters for Mr. Mancuso. ***If 2004 GAAP (Generally Accepted Accounting
Principles) earnings per share equal the minimum target, certain executive officers
will receive bonuses ranging up to 265% of their annual base pay, depending on
their positions, with the Chief Executive Officer and the President each receiving
265% of their respective annual base pay. If 2004 GAAP earnings per share
exceed the minimum target level, additional bonus amounts are available to the
executive officers under the bonus plan, up to a maximum amount equal to 325%
of their respective annual base pay.*** The actual level of bonus earned is based upon
achievement of specific predetermined performance targets established by the
Compensation Committee. No bonuses will be payable to executive officers if 2004
GAAP earnings per share are less than or equal to 2003 GAAP earnings per share.

Exhibit 3 at 16-17 (emphasis added).

> 3.      Exhibit 4 is a chart of Bloomberg Daily Stock Prices for Investors Financial from

April 10, 2001 to July 15, 2005, and Exhibit 5 is Sheehan's SEC Form 4 filed on October 28, 2004.

These documents are relevant to show that defendant Sheehan's option grant of 19,921 shares occurred at exactly the lowest point in the stock after Investors Financial disclosed that it was restating it financials, but did not disclose its material non-public financial results.[4]  *See Wells Fargo*, 12 F.3d at 931 (because defendants "stood to receive more compensation because of the alleged non-disclosure" it raises an inference of scienter) (internal quotations omitted); *See also Vivendi Universal*, 381 F. Supp. 2d at 185.  *See also In re Cytyc Corp. Sec. Litig.*, Civil Action No. 02-12399-NMG, 2005 U.S. Dist. LEXIS 6166 (D. Mass. Mar. 1, 2005) (appropriate to take judicial notice of stock price data on motion to dismiss).

4.        Exhibits 6 and 7 are Investors Financial's January 25, 2005 and April 13, 2005 SEC Form 8-K filings with attached January 25, 2005 and April 13, 2005 earnings press releases.  Both SEC Form 8-K filings and press releases are referenced in the Complaint and are capable of being judicially noticed.  ¶¶214, 220.  *Beddall*, 137 F.3d at 17; *Swack v. Lehman Bros., Inc.*, Civil Action No. 03-10907-NMG, 2005 U.S. Dist. LEXIS 42588 (D. Mass. Aug. 17, 2005) (documents incorporated into the complaint may be judicially noticed).  These documents are relevant to show defendants' 2005 earnings guidance is not subject to safe harbor protection because it was not accompanied by meaningful cautionary language.  Specifically, defendants' cautionary language given in the Company's November 15, 2004 conference call that its guidance was subject to "***SBAs running at industry prepayment speed***" was not incorporated into the guidance given in the Company's January 25, 2005, and April 13, 2005 press releases.  ¶205.  Therefore, defendants' cautionary language was not meaningful and is not subject to safe harbor protection.

---

[4]        Investors Financial reported Item 2.02 Results of Operations and Financial Condition on November 15, 2004.  By definition an Item 2.02 is a disclosure of "material non-public information."  *See* Exhibits 6 and 7.

(a)    Investors Financial's January 25, 2005 press release contained the following

language regarding its cautionary warnings:

> This news release contains forward-looking statements (statements that are not
> historical facts). These statements, such as the Company's statements regarding its
> ability to grow diluted earnings per share for the year ending December 31, 2005 are
> based upon assumptions and estimates that might not be realized and are subject to
> risks and uncertainties that could cause actual results to differ materially from those
> in the forward looking statements. Such risks and uncertainties include the
> performance of global financial markets, changes in interest rates, changes in the
> relationship between long-term and short-term interest rates, regulatory actions
> affecting the Company's clients, the Company's ability to manage the conversion of
> new business, and the Company's ability to continue to manage its costs, including
> the costs of compliance with increasing regulatory requirements.

Exhibit 6.

(b)    Investors Financial's April 13, 2005 press release contained the following

language regarding its cautionary warnings:

> This news release contains forward-looking statements (statements that are not
> historical facts) made under the safe harbor provisions of Section 21E of the
> Securities Exchange Act of 1934. These statements, such as the Company's
> statements regarding its pipeline and ability to grow diluted earnings per share for the
> year ending December 31, 2005 are based upon assumptions and estimates that might
> not be realized and are subject to risks and uncertainties that could cause actual
> results to differ materially from those in the forward looking statements.  Such risks
> and uncertainties include the timing of new sales, the performance of global financial
> markets, changes in interest rates, changes in the relationship between long-term and
> short-term interest rates, regulatory actions affecting the Company's clients, the
> Company's ability to manage the conversion of new business, and the Company's
> ability to continue to manage its costs, including the costs of compliance with
> increasing regulatory requirements.

Exhibit 7.

5.    Exhibit 8 is Investors Financial's June 30, 2005 SEC Form 10-Q, filed on August 9,

2005.  The June 30, 2005 SEC Form 10-Q is referenced in Compliant and is capable of being

judicially noticed.  ¶¶14, 51 n.5, 71 n.6, 228, 244.  *Swack*, 2005 U.S. Dist. LEXIS 42588 (documents

incorporated into the complaint may be judicially noticed).

In addition, to telling the market continuously during the class period that a flat or flattening yield curve was "baked" into the Company's guidance, defendants did not provide cautionary warnings that a flat or flattening yield curve could adversely affect their financial results. In fact, the first time that they mention the flattening yield curve as a potential risk was after the class period when defendants filed their June 30, 2005 SEC Form 10-Q on August 9, 2005. The June 30, 2005 SEC Form 10-Q contained the following language regarding cautionary warnings:

> **Certain Factors That May Affect Future Results**
>
> *       *       *
>
> *Our operating results are subject to fluctuations in interest rates and the securities markets.*
>
> A significant portion of our fees is based on the market value of the assets we process. Accordingly, our operating results are subject to fluctuations in interest rates and securities markets as these fluctuations affect the market value of assets processed. Current market conditions, including the recent volatility in the equity markets, can have a material effect on our asset-based fees. While reductions in asset servicing fees may be offset by increases in other sources of revenue, a sustained downward movement of the broad equity markets will likely have an adverse impact on our earnings.
>
> Our growth depends in part on the ability of our clients to generate fund flows by selling their investment products to new and existing investors. Fluctuations in interest rates or the securities markets can lead to investors seeking alternatives to the investment offerings of our clients, which could result in a lesser amount of assets processed and correspondingly lower fees. For example, if the value of equity assets held by our clients were to increase or decrease by 10%, we estimate currently that this, by itself, would cause a corresponding change of approximately 3% in our earnings per share. If the value of fixed-income assets held by our clients were to increase or decrease by 10%, we estimate currently that this, by itself, would cause a corresponding change of approximately 2% in our earnings per share.
>
> Our net interest income is earned by investing depositors' funds in our investment portfolio and, in small part, by making loans. A rising interest rate environment, such as we are now experiencing, generally causes downward pressure on net interest income. Changes in the relationship between short-term and long-term interest rates, referred to as the yield curve, could also adversely affect the market value of, or the earnings produced by, our investment and loan portfolios, and thus could adversely affect our operating results. ***The current flattening yield curve, where short-term rates have increased while long-term rates have failed to increase, has resulted in a***

- 9 -

*decrease in our net interest margin that may continue to have a material impact on our net interest income*.

Exhibit 8 at 22 (emphasis added).

In sum, these documents are relevant to support the arguments in plaintiffs' opposition to the motion to dismiss that defendants' well timed increase in their bonus structure and "spring-loading" their option grants, together with other evidence alleged in the Complaint, support reasonable and strong inferences of defendants' scienter.

### III.    THE CONTENT OF THE JUDICIALLY NOTICED DOCUMENTS SHOULD BE INCORPORATED IN THE COMPLAINT AND CONSTRUED IN PLAINTIFFS' FAVOR

In addition to taking judicial notice, case law in this Circuit and elsewhere recognizes that the Court may consider new and additional documents and their contents as incorporated in the pending complaint. *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 879 (1st Cir. 1991); *Branch*, 14 F.3d at 454; *In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077 (N.D. Cal. 2001); *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000). The rationale is that it is "more practical" to consider the new documents to resolve the pending Fed. R. Civ. P. 12(b)(6) motion "than to require an amendment to the complaint." *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 386-87 nn.44, 46 (D. Md. 2004); *see also* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* §1476 at 70 (2006 Supp.).

Such documents, when incorporated as support for the Complaint, must be construed in the light most favorable to plaintiffs. *In re Cabletron Sys.*, 311 F.3d 11, 22 (1st Cir. 2002); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-90 (9th Cir. 2001); *Int'l Audiotext Network v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995); *In re Cree, Inc. Sec. Litig.*, 333 F. Supp. 2d 461, 470 (M.D.N.C. 2004). Any attempt by defendants to use such documents to inject disputed facts is impermissible at the motion to dismiss stage. Factual challenges to a plaintiff's complaint have no bearing on the legal

sufficiency of the allegations.  Rule 12(b)(6); *see also Lee*, 250 F.3d at 688; *Republican Party v.*

*Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  It would be in error to assume "the existence of facts that

favor defendants based on evidence outside plaintiffs' pleadings."  *Lee*, 250 F.3d at 688; *Adams v.*

*Kinder-Morgan, Inc.*, 340 F.3d 1083, 1101 (10th Cir. 2003) ("The PSLRA did not, however, purport

to move up the trial to the pleadings stage.").

## IV.     CONCLUSION

For the foregoing reasons, the Court should take judicial notice of Exhibits 1-8 and consider

them as incorporated in the Complaint.

DATED:  September 19, 2006                     Respectfully submitted,

                                                LERACH COUGHLIN STOIA GELLER
                                                  RUDMAN & ROBBINS LLP
                                                JEFFREY W. LAWRENCE
                                                JAMES W. OLIVER


                                                        /s/ Jeffrey W. Lawrence
                                                   JEFFREY W. LAWRENCE (BBO #289140)

                                                100 Pine Street, Suite 2600
                                                San Francisco, CA  94111
                                                Telephone:  415/288-4545
                                                415/288-4534 (fax)

                                                Lead Counsel for Plaintiffs

                                                KRAKOW & SOURIS, LLC
                                                AARON D. KRAKOW (BBO No. 544424)
                                                CHRISTOPHER N. SOURIS (BBO No. 556343)
                                                225 Friend Street
                                                Boston, MA  02114
                                                Telephone:  617/723-8440
                                                617/723-8443 (fax)

                                                Liaison Counsel

CAVANAGH & O'HARA
WILLIAM K. CAVANAGH, JR.
407 East Adams Street
Springfield, IL  62701
Telephone:  217/544-1771
217/544-9894 (fax)

SUGARMAN & SUSSKIND
ROBERT SUGARMAN
2801 Ponce De Leon Blvd., Suite 750
Coral Gables, FL  33314
Telephone:  305/529-2801
305/447-8115 (fax)

Additional Counsel for Plaintiffs

T:\CasesSF\InvestorsFinancialServices\REQ00034937.doc

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 19, 2006, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail

addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have

mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF

participants indicated on the attached Manual Notice List.

/s/ Jeffrey W. Lawrence
JEFFREY W. LAWRENCE (BBO #289140)

LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail:  jeffreyl@lerachlaw.com

# Mailing Information for a Case 1:05-cv-11627-RCL

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Pavel Bespalko**
  pavel@bespalko.com

- **Joel Z. Eigerman**
  joel@eigerman.com

- **Jason D. Frank**
  jason.frank@bingham.com

- **William R. Harb**
  william.Harb@bingham.com

- **Jordan D. Hershman**
  jordan.hershman@bingham.com

- **Theodore M. Hess-Mahan**
  ted@shulaw.com

- **Alan L. Kovacs**
  alankovacs@yahoo.com

- **Jeffrey W. Lawrence**
  jeffreyl@lcsr.com

- **James Paul Lucking**
  james.lucking@Bingham.com

- **James W. Oliver**
  jimo@lerachlaw.com e_file_sf@lerachlaw.com;e_file_sd@lerachlaw.com

- **David Pastor**
  dpastor@gilmanpastor.com rdambrosio@gilmanpastor.com

- **Thomas G. Shapiro**
  tshapiro@shulaw.com sgeresy@shulaw.com

- **Christopher N. Souris**
  csouris@krakowsouris.com

- **Marc A. Topaz**
  ecf_filings@sbclasslaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)