UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE ARCHDIOCESE OF MILWAUKEE SUPPORTING FUND, On Behalf of Plaintiff and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> INVESTORS FINANCIAL SERVICES CORP., et al., <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     CIVIL ACTION<br>NO. 05-11627-RCL<br>**(Consolidated)** |

**[PROPOSED] REPLY MEMORANDUM
OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO
<u>DISMISS THE CONSOLIDATED COMPLAINT IN ITS ENTIRETY</u>**

BINGHAM McCUTCHEN LLP

Jordan D. Hershman, Esq. (BBO #553709)
Jason D. Frank, Esq. (BBO #634985)
James P. Lucking, Esq. (BBO #650588)
William R. Harb, Esq. (BBO #657270)
150 Federal Street
Boston, MA 02110
Tel: (617) 951-8000

Attorneys for Defendants Investors
Financial Services Corp., Kevin J. Sheehan,
Michael F. Rogers, John N. Spinney, Jr.,
Karen C. Keenan, Robert D. Mancuso,
Edmund J. Maroney and John E. Henry

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................................. 1

PRELIMINARY STATEMENT ........................................................................................ 1

I.     PLAINTIFFS FAIL TO PLEAD FRAUD WITH PARTICULARITY .......................... 4

II.    PLAINTIFFS FAIL TO STATE ANY FEDERAL
       SECURITIES FRAUD CLAIMS BASED ON THE
       FORWARD-LOOKING STATEMENTS THEY CHALLENGE ................................... 5

       A.     Plaintiffs' 2005 Guidance Claims
              Must Be Dismissed Under Rule 12(b)(6). .......................................................... 5

              1.     The Company's 2005 Guidance Is Immune From
                     Liability Under The PSLRA's Safe Harbor Provision ............................. 5

                     a.     Plaintiffs Misstate The Law Applicable
                            To The PSLRA's Safe Harbor Provision........................................ 5

                     b.     IFIN's Guidance Was Accompanied
                            By Meaningful Cautionary Language............................................ 6

              2.     Section 10(b) Claims Cannot Be Based On An
                     Alleged Failure Accurately To Predict Interest Rates .............................. 8

       B.     Plaintiffs' 2005 Guidance Claims Must Be
              Dismissed Under The PSLRA And Rule 9(b)
              Because Plaintiffs Have Failed Adequately To Plead Scienter ........................... 8

              1.     Plaintiffs Fail To Plead Any Specific Facts
                     Supporting A Strong Inference That IFIN's
                     2005 Guidance Was Knowingly False When Made ................................. 9

              2.     Plaintiffs' Motive Allegations Respecting Their 2005
                     Guidance Claims Do Not Support A Strong Inference Of Scienter ....... 11

       C.     Plaintiffs' Claims Based On All Other Forward-Looking Statements
              Must Be Dismissed Under Rule 12(b)(6), The PSLRA, And Rule 9(b).............. 15

III.   PLAINTIFFS FAIL TO STATE ANY FEDERAL
       SECURITIES FRAUD CLAIMS BASED ON THE
       HISTORICAL FINANCIAL RESULTS THAT THEY CHALLENGE........................ 15

       A.     Plaintiffs Fail To Plead Any Specific
              Facts Supporting A Strong Inference That Any
              Financial Disclosure Was Knowingly False When Made ................................... 15

<u>Page</u>

B.    Plaintiffs' Motive Allegations Do Not
Support A Strong Inference Of Scienter ............................................................. 18

C.    Plaintiffs' Claims Based On
SBA Securities-Related Allegations Fail, As A Matter Of Law ....................... 19

     1.    Plaintiffs Fail To Plead Loss Causation
Respecting Their SBA Securities-Related Allegations ........................... 19

     2.    Plaintiffs Fail To Plead Specific
Facts Showing That Any Disclosure
Concerning The Company's SBA Portfolio Was False .......................... 20

     3.    Plaintiffs Fail To Plead Specific
Facts Showing That The Company's
Clerical Error Was Evidence Of Any Fraud ........................................... 23

     4.    Plaintiffs Fail To Plead Specific
Facts Showing That The Company's
SBA Securities Were Permanently Impaired ........................................... 23

CONCLUSION ............................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>                                                                                 <u>**Page(s)**</u>

<u>Asher v. Baxter Int'l, Inc.</u>, 377 F.3d 727 (7th Cir. 2004) ...................................................8

<u>Baron v. Smith</u>, 380 F.3d 49 (1st Cir. 2004) ............................................................2, 5, 7

<u>In re Boston Tech., Inc. Sec. Litig.</u>, 8 F. Supp. 2d 43 (D. Mass. 1998).............................9

<u>In re Cabletron Sys., Inc.</u>, 311 F.3d 11 (1st Cir. 2002)........................................................4

<u>Car Carriers, Inc. v. Ford Motor Co.</u>, 745 F.2d 1101 (7th Cir. 1984) .............................14

<u>In re Capstead Mortgage Corp. Sec. Litig.</u>, 258 F. Supp. 2d 533
    (N.D. Tex. 2003).........................................................................................................7

<u>In re Credit Suisse First Boston Corp.</u>, 431 F.3d 36 (1st Cir. 2005) ...................................4

<u>Dura Pharms., Inc. v. Broudo</u>, 544 U.S. 336 (2005).........................................................19

<u>EP Medsystems, Inc. v. EchoCath, Inc.</u>, 235 F.3d 865 (3d Cir. 2000)...............................8

<u>Ezra Charitable Trust v. Tyco Int'l, Ltd.</u>, 466 F.3d 1 (1st Cir. 2006)....................... passim

<u>In re First Union Corp. Sec. Litig.</u>, No. 3:99CV237-H, 2006 WL 163616
    (W.D.N.C. Jan. 20, 2006) ...........................................................................................19

<u>In re Galileo Corp. S'holders Litig.</u>, 127 F. Supp. 2d 251 (D. Mass. 2001)................16, 17

<u>Greebel v. FTP Software, Inc.</u>, 194 F.3d 185 (1st Cir. 1999)...............................................4

<u>Huddleston v. Herman & MacLean</u>, 640 F.2d 534 (5th Cir. 1981)....................................6

<u>In re Ibis Tech. Sec. Litig.</u>, 422 F. Supp. 2d 294 (D. Mass. 2006) .....................................6

<u>Livid Holdings Ltd. v. Salomon Smith Barney, Inc.</u>, 416 F.3d 940
    (9th Cir. 2005).............................................................................................................8

<u>Maldonado v. Donginuez</u>, 137 F.3d 1 (1st Cir. 1998) ........................................................3

<u>Miller v. Champion Enters., Inc.</u>, 346 F.3d 660 (6th Cir. 2003) .......................................24

<u>In re NorthPoint Commc'ns Group, Inc. Sec. Litig. & Consol. Cases</u>,
    221 F. Supp. 2d 1090 (N.D. Cal. 2002) ....................................................................10

**Cases**                                                                                    **Page(s)**

Nursing Home Pension Fund, Local 144 v. Oracle Corp., 380 F.3d 1226
(9th Cir. 2004)..................................................................................................10

In re PeopleSoft, Inc. Sec. Litig., No. C99-00472 WHA,
2000 U.S. Dist. LEXIS 10953 (N.D. Cal. May 26, 2000) ...........................................10

In re Polaroid Corp. Sec. Litig., 134 F. Supp. 2d 176 (D. Mass. 2001)............................19

Provenz v. Miller, 102 F.3d 1478 (9th Cir. 1996) ............................................13

Shaw v. Digital Equip. Corp., 82 F.3d 1194 (1st Cir. 1996) ...............................................8

Sheppard v. TCW/DW Term Trust 2000, 938 F. Supp. 171 (S.D.N.Y. 1996)...................8

In re Stone & Webster, Inc. Sec. Litig., 414 F.3d 187 (1st Cir. 2005) ...............................6

**Statutes & Rules**

Fed. R. Civ. P. 9(b) ...................................................................... passim

Fed. R. Civ. P. 12(b)(6)................................................................ passim

Fed. R. Civ. P. 15 ............................................................................24

## INTRODUCTION

Defendants Investors Financial Services Corp. ("IFIN" or the "Company"), Kevin J. Sheehan, Michael F. Rogers, John N. Spinney, Jr., Karen C. Keenan, Robert D. Mancuso, Edmund J. Maroney, and John E. Henry (collectively, the "Individual Defendants") submit this Reply Memorandum of Law in Support of their Motion to Dismiss the Consolidated Complaint (the "Amended Complaint" or "AC") in its entirety, with prejudice.

## PRELIMINARY STATEMENT

Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opposition Brief" or "OB") is most notable for the extent to which it fails to respond to the arguments and authority mandating the grant of this motion. Plaintiffs ignore the First Circuit law holding not actionable, as a matter of law, forward-looking statements like the 2005 earnings guidance at issue here. Plaintiffs fail to explain how their claims relating to IFIN's November 2004 restatement make any sense. They also do not, and cannot, identify a <u>single</u> <u>specific</u> <u>fact</u> pled in their Amended Complaint that supports a strong interference that any challenged statement was knowingly false when made. For these and other reasons discussed below, Plaintiffs' Amended Complaint should be dismissed in its entirety, with prejudice.

On July 14, 2005, IFIN announced that it expected its diluted earnings per share ("EPS") for fiscal 2005 to increase 10%, instead of 25%, as it had previously predicted. AC ¶¶ 223-24. IFIN attributed that earnings miss to historically anomalous interest rate activity in 2005. Id. Specifically, while IFIN and others had expected some flattening of the yield curve in 2005,[1] the yield curve ultimately flattened in 2005 considerably more than IFIN had previously expected it would, which led the Company to experience "smaller than expected reinvestment spreads" that year. Id. Notably, IFIN was not alone in estimating incorrectly the degree to which the yield curve would flatten in 2005.[2] Some of the world's largest financial institutions were blind-sided

---

[1] The "yield curve" describes the relationship between short-term and long-term interest rates. Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Moving Brief" or "MB") at 4.

[2] Plaintiffs argue that a flattening of the yield curve was "baked into [IFIN's] guidance for 2005." OB 9. Plaintiffs ignore the fact that IFIN management could only "bake into" its guidance **their own**

1

by the very same interest rate activity that year.  For example, the same week that IFIN made its July 2005 announcement, both Citigroup and Bank of America publicly announced that the yield curve had flattened beyond their expectations as well.  MB 2.[3]  Less than three weeks after IFIN announced its EPS miss, the plaintiffs class action bar filed a flurry of knee-jerk strike suits, essentially alleging that Defendants committed fraud by failing accurately to predict the historically anomalous movement of interest rates in 2005.

In their Opposition Brief, Plaintiffs fail to address the First Circuit law holding that forward-looking statements, like IFIN's 2005 guidance, are immune from liability under the safe harbor provisions of the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  Baron v. Smith, 380 F.3d 49 (1st Cir. 2004).  Plaintiffs ignore Baron, which controls on that point.  Likewise, Plaintiffs  ignore the caselaw holding that an alleged failure accurately to predict interest rates cannot support a securities fraud claim.  Plaintiffs also offer no answer to the fact that IFIN expressly warned investors about the risks posed by future "changes in interest rates" and "changes in the relationship between long term and short term interest rates."  MB 8; see, e.g., App. 21.  Those very risks, which ultimately caused the stock drop at issue, are disclosed in the press release on which Plaintiffs base their claims.

Plaintiffs' restatement-related claims fare no better.  To begin, Plaintiffs fail to explain how their belatedly concocted restatement claims make any sense.[4]  Ordinarily, Plaintiffs argue

---

best **estimate** of the degree to which the yield curve would flatten in 2005, which was ultimately incorrect.

[3] Plaintiffs do not dispute the judicially noticeable fact that interest rates moved in historically anomalous ways in 2005, which confounded experts such as Federal Reserve Chairman Alan Greenspan and large financial institutions such as the Bank of America and Citibank.  Instead, Plaintiffs seek to prevent the Court from acknowledging that commonly known fact, through their motion to strike certain exhibits that Defendants submitted to the Court in an Appendix accompanying their Motion to Dismiss.  As Defendants establish in their opposition to Plaintiffs' motion to strike, this Court may, and indeed should, consider that fundamental background fact, as it places the challenged statements into context.  Cf. Ezra Charitable Trust v. Tyco Int'l, Ltd., 466 F.3d 1, 7, 10-11 (1st Cir. 2006) (acknowledging that context is relevant in assessing securities fraud claims).

[4] As Defendants noted in their Moving Brief, Plaintiffs changed their story in their Amended Complaint, adding fraud claims relating to IFIN's November 2004 restatement that do not appear in any of the original Complaints.  Although Plaintiffs argue that these particular Lead Plaintiffs had never filed a complaint in this action previously, they ignore the fact that this is a consolidated class action.  This

that a restatement supports fraud allegations because the restated financial results are materially **lower** than the previously reported results. Here, as Plaintiffs do not contest, IFIN's restated financial results are actually **higher** for some of the restated financial quarters; not materially different for **most** of the restated financial quarters; and only materially lower in the year 2001, four years before IFIN restated its results. App. 11 at 21. Plaintiffs fail to explain what fraudulent motive Defendants could possibly have had for deliberately **understating** IFIN's financial results. Plaintiffs also do not explain how the disparate impact of IFIN's restatement is consistent with any rational theory of fraud.[5]

Given that Plaintiffs' restatement allegations make no sense, it is not surprising that the Amended Complaint lacks any specific facts supporting any inference -- let alone a strong inference -- that any IFIN financial disclosure, for any financial period, was knowingly false when made. In their Opposition Brief, Plaintiffs are thus left to resort to the lengthy, convoluted, and largely incomprehensible argument that Defendants somehow must have known that IFIN was employing an incorrect accounting treatment. Allegations regarding what Defendants allegedly "must have known" cannot support any inference of scienter, as a matter of law. Maldonado v. Dominguez, 137 F.3d 1, 10 (1st Cir. 1998).

Finally, and curiously, Plaintiffs devote much of their Opposition Brief to an attack on IFIN's accounting for its Small Business Association ("SBA") securities. That argument is a non-starter for several reasons. First, Plaintiffs have failed adequately to plead loss causation respecting their SBA security claims. Second, the Amended Complaint lacks any specific facts

---

Court is not required to ignore the original complaints that Lead Plaintiffs have consolidated into their "Consolidated Complaint." Plaintiffs reversed their story regarding IFIN's 2004 restatement -- which occurred nine months before the stock drop at issue -- for the obvious purpose of seeking to capture within the purported class period that stock trading by the individual defendants that took place in the additional two year and six month period not included in original Complaint.

[5] Highlighting the disparate impact of IFIN's restatement, Plaintiffs concede in their Opposition Brief: "The restated quarters actually reflect rather that first quarter of 2004 net interest income was **overstated** by $1.578 million and second quarter 2004 net interest income was **understated** by $1.502 million." OB 6 (emphasis added). Plaintiffs provide no explanation for why Defendants would deliberately use an accounting treatment that caused its financial results to be **overstated** by $1.5 million one quarter and **understated** by virtually the same amount the next quarter. None exists.

supporting the conclusory allegation that IFIN violated GAAP respecting its accounting for its SBA securities during any financial quarter or year, let alone that any Defendant had any knowledge of any such GAAP violation.[6]  For these and other reasons discussed below, the Amended Complaint should be dismissed in its entirety, with prejudice.

## I.    PLAINTIFFS FAIL TO PLEAD FRAUD WITH PARTICULARITY.

Contrary to Plaintiffs' misstatement of the pleading standards applicable to their Amended Complaint, the law in this Circuit is clear:

> Under the PSLRA, the complaint must first provide **detailed pleading** about **each** of the statements challenged, including factual allegations illustrating precisely why **the** challenged statement is misleading.  Greebel v. FTP Software, Inc., 194 F.3d 185, 193-94 (1st Cir. 1999).  The PSLRA also requires the complaint to plead **particular facts that give rise to a strong (rather than merely reasonable) inference of scienter**.  **This alters the usual Rule 12(b)(6) standard**, in that while the "court continues to give all reasonable inferences to plaintiffs, those inferences supporting scienter must be strong ones." In re Cabletron Sys., Inc., 311 F.3d 11, 28 (1st Cir. 2002).

Ezra Charitable Trust v. Tyco Int'l, Ltd., 466 F.3d 1, 6 (1st Cir. 2006) ("Tyco") (internal citations omitted) (emphasis added); see also Greebel v. FTP Software, Inc., 194 F.3d 185, 195-96 & n.9 (1st Cir. 1999) (PSLRA changed standard of review under Fed. R. Civ. P. 12(b)(6) as set forth in Conley v. Gibson).  Moreover, contrary to Plaintiffs' suggestion, see OB 12, plaintiffs alleging securities claims are not entitled to all inferences, where there are equally strong inferences that may be drawn in favor of Defendants.  "Scienter allegations do not pass the 'strong inference' test when, viewed in light of the complaint as a whole, there are **legitimate explanations for the behavior that are equally convincing**." In re Credit Suisse First Boston Corp., 431 F.3d 36, 45 (1st Cir. 2005) ("CSFB") (emphasis added).  Indeed, where there are "dueling inferences" and an inference that favors defendants is "at least as strong as" an

---

[6] Many of Plaintiffs' allegations in their Opposition Brief lack any citation to the Amended Complaint, as those allegations do not appear in the Amended Complaint.

inference favoring plaintiffs, that circumstance "dooms plaintiffs' claims." See Tyco, 466 F.3d at 11.

In this case, Plaintiffs have failed to satisfy these pleading standards. Plaintiffs plead no specific facts whatsoever that support any inference, let alone a strong inference, that any Defendant acted with the requisite scienter. Nor does the Amended Complaint contain "detailed pleading" about "each" challenged statement, illustrating "precisely why **the** challenged statement is misleading." Tyco, 466 F.3d at 6 (emphasis added). That is particularly true with respect to Plaintiffs' SBA-related allegations, which they make the focus of their Opposition Brief. Neither that brief nor, more importantly, the Amended Complaint explains how **any one specific disclosure** relating to SBA loans, for **any specific financial period**, was false, by how much, and why. Likewise, the Amended Complaint fails to plead **any specific facts** supporting scienter allegations against any Defendant respecting any **specific** disclosure for any financial period -- about SBA loans or any other matter. That failure is fatal to Plaintiffs' case.

## II.    PLAINTIFFS FAIL TO STATE ANY FEDERAL SECURITIES FRAUD CLAIMS BASED ON THE FORWARD-LOOKING STATEMENTS THEY CHALLENGE.

### A.    Plaintiffs' 2005 Guidance Claims Must be Dismissed Under Rule 12(b)(6).

#### 1.    The Company's 2005 Guidance Is Immune From Liability Under The PSLRA's Safe Harbor Provision.

##### a.    Plaintiffs Misstate The Law Applicable To The PSLRA's Safe Harbor Provision.

Under the PSLRA, a forward-looking statement is not actionable, as a matter of law, if it is identified as such and accompanied by meaningful cautionary language. Baron v. Smith, 380 F.3d 49, 53-54 (1st Cir. 2004) (affirming grant of motion to dismiss securities fraud claims under PSLRA's safe harbor provision). Baron controls on this point, and Plaintiffs utterly ignore Baron. In their Opposition Brief, Plaintiffs suggest that a forward-looking statement does not receive safe harbor protection if it is knowingly false. OB 31. As the First Circuit has held, a forward-looking statement receives safe harbor protection if it is accompanied by meaningful

5

cautionary language, regardless of the defendant's state of mind. In re Stone & Webster, Inc. Sec. Litig., 414 F.3d 187, 212 (1st Cir. 2005) ("the maker of knowingly false . . . forward-looking statements . . . escapes liability for fraud if the statement is identified as a forward-looking statement and [was] accompanied by meaningful cautionary statements") (citations omitted). Indeed, contrary to Plaintiffs' suggestion (OB 31), this Court's decision in Ibis is consistent with this controlling authority. In re Ibis Tech. Sec. Litig., 422 F. Supp. 2d 294, 310 (D. Mass. 2006) ("if a [forward-looking] statement is accompanied by meaningful cautionary language, **the defendants' state of mind is irrelevant**.") (emphasis added) (citations omitted).

### b. IFIN's Guidance Was Accompanied By Meaningful Cautionary Language.

In their Opposition Brief, Plaintiffs argue that the cautionary language accompanying IFIN's 2005 guidance was somehow inadequate. OB 31-34. In fact, and as Plaintiffs ignore, IFIN warned investors about the **exact risks** that materialized. Under such circumstances, there can be no dispute as to whether the accompanying risk disclosures constituted meaningful cautionary language, as a matter of law.

Although Plaintiffs complain that IFIN failed to warn investors regarding the risk of loan prepayments on its SBA securities, IFIN's risk factor disclosures plainly belie that contention. App. 4 at 43, 5 at 47.[7] As Plaintiffs themselves allege, SBA securities are variable rate securities. See AC ¶ 51 n.5; see, e.g., App. 5 at 46 ("[The] SBA securities we hold are variable rate securities . . . ."). IFIN repeatedly warned that its variable rate securities were subject to the risk of increased prepayments, which actually had occurred in prior periods. For example, IFIN's Forms 10-K and 10-K/A for the year ended December 31, 2003, expressly warn:

> If interest rates were to rise during 2004, we would expect slower prepayments and our overall yield to increase **as our variable rate securities reprice. Conversely, if interest rates were to decline in 2004, we would expect that**

---

[7] Similarly, Plaintiffs' contention that the Company misled investors by only providing warnings concerning events that had already occurred, citing Huddleston v. Herman & MacLean, 640 F.2d 534, 544 (5th Cir. 1981), is also undermined by IFIN's routine disclosure of the occurrence of prepayments and the actual amounts of loan prepayments each quarter. See infra 10.

**prepayments would accelerate and be comparative to the activity in 2003,** with the cash flows from these prepayments being reinvested in lower-yielding assets of equal quality and risk.

App. 4 at 43, 5 at 47 (emphasis added). IFIN's Form 10-Q for the quarter ended September 30, 2004 and its 2004 Form 10-K, filed on February 28, 2005, contained virtually identical warnings. App. 10 at 46, 11 at 37-38. Contrary to Plaintiffs' unsupported allegations, the Company repeatedly cautioned investors of the risk of prepayments on its SBA securities caused by declining interest rates. See In re Capstead Mortgage Corp. Sec. Litig., 258 F. Supp. 2d 533, 555 (N.D. Tex. 2003) (dismissing, with prejudice, complaint alleging that defendant failed to disclose prepayment risk where defendant disclosed in SEC filings that falling interest rate would result in higher prepayments on its securities).

Moreover, IFIN plainly disclosed the risk of interest rate fluctuations. See App. 21. As it stated in the press release disclosing its 2005 guidance:

> This news release contains forward-looking statements . . . subject to risks and uncertainties that could cause actual results to differ materially from those in the forward-looking statements. Such risks and uncertainties include the performance of global financial markets, **changes in interest rates, changes in the relationship between long-term and short-term interest rates**, . . .

Id. (emphasis added). As Plaintiffs admit, prepayment rates are tied directly to changes in the prevailing interest rates, i.e., prepayments increase when interest rates drop. OB 23 n.17.

Finally, Plaintiffs' argument that the adequacy of Defendants' risk disclosures cannot be decided as a matter of law at the pleading stage is contrary to controlling law in this Circuit. See Baron, 380 F.3d at 53-54 (affirming dismissal of securities claims, as a matter of law, where, as here, forward-looking statements were accompanied by meaningful cautionary language). See also Tyco, 466 F.3d at 8 (affirming dismissal where, as here, defendant company warned of exact risk that ultimately materialized).[8] For that reason, the cases cited by Plaintiffs on this

---

[8] Plaintiffs offer no response to the case law providing that, under the PSLRA, the safe harbor applies even if the Company did not disclose the exact risk that ultimately materialized, so long as the disclosure constitutes meaningful cautionary language. See MB 8 n.7 (citing case law).

7

point -- some of which conflict with the law in this Circuit -- are readily distinguishable.[9]  In sum, Plaintiffs' claims based on IFIN's 2005 guidance must be dismissed pursuant to the PSLRA's safe harbor for forward-looking statements, as a matter of law.

### 2.    Section 10(b) Claims Cannot Be Based On An Alleged Failure Accurately To Predict Interest Rates.

In their Opposition Brief, Plaintiffs make no effort to respond to the argument that their guidance claims must also be dismissed because a Section 10(b) claim cannot be based on a failure accurately to predict interest rates.  MB 9 (citing Sheppard v. TCW/DW Term Trust 2000, 938 F. Supp. 171, 178 (S.D.N.Y. 1996) ("Failure to predict a rise in interest rates does not constitute fraud and cannot be the basis for alleging misrepresentations or omissions of material facts.")).  As explained above and in IFIN's Moving Brief, IFIN reduced its earnings growth estimate because interest rates in 2005 moved in historically anomalous ways, leading to a flatter-than-expected yield curve.  As Plaintiffs do not contest, IFIN cannot be held liable for failing accurately to predict the extent to which the yield curve would flatten in 2005.

### B.    Plaintiffs' 2005 Guidance Claims Must Be Dismissed Under The PSLRA And Rule 9(b) Because Plaintiffs Have Failed Adequately To Plead Scienter.

Plaintiffs' 2005 guidance claims also must be dismissed for the separate and independent reason that Plaintiffs fail to plead specific facts giving rise to **any** inference, let alone a strong inference, that any Defendant had "actual knowledge" that IFIN's earnings projections were false or misleading.  Moreover, Plaintiffs' motive allegations fail as a matter of law.

---

[9] See Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946-48 (9th Cir. 2005) (reversing dismissal under "bespeaks caution" doctrine where disclosure was susceptible to more than one meaning); Asher v. Baxter Int'l, Inc., 377 F.3d 727, 734 (7th Cir. 2004) (reversing dismissal under PSLRA's safe harbor where cautionary language mentioned none of risks that came to pass and record did not support that cautionary language included important risks); EP Medsystems, Inc. v. EchoCath, Inc., 235 F.3d 865, 877 (3d Cir. 2000) (adequacy of warnings could not be decided on pleadings in face of defendants' repeated assurance that neutralized warnings); Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1214 (1st Cir. 1996) (reversing, in part, dismissal based on bespeaks caution doctrine where statement was not forward-looking, but rather contained representations of present fact).

      **1.**      **Plaintiffs Fail To Plead Any Specific Facts**
              **Supporting A Strong Inference That IFIN's**
              <u>**2005 Guidance Was Knowingly False When Made.**</u>

In Plaintiffs' Opposition Brief, they fail to point to **<u>any</u> <u>specific</u> <u>fact</u>** in their Amended Complaint supporting a strong inference that any Defendant had "actual knowledge" that IFIN's 2005 guidance was false when made. This Court can pull a fine-tooth comb through the Opposition Brief and it will not find a reference to **<u>one</u> <u>specific</u> <u>fact</u>** supporting a strong inference of scienter against any Defendant respecting IFIN's 2005 guidance: not one specific document, or meeting, or conversation supporting any inference that **<u>any</u>** Defendant allegedly knew that IFIN's 2005 guidance lacked a good faith basis when issued. The Amended Complaint is devoid of any such allegations.[10]

Accordingly, Plaintiffs are left to resort solely to a hopelessly convoluted argument that the Defendants somehow **<u>must</u> <u>have</u> <u>known</u>** that the guidance was false when made. In this Circuit, allegations about what any defendant "must have known" cannot give rise to a strong inference of scienter, as a matter of law. <u>In re Boston Tech., Inc. Sec. Litig.</u>, 8 F. Supp. 2d 43, 53 (D. Mass. 1998) ("[T]here is no liability where a plaintiff's claim rests on the assumption that defendants 'must have known of the severity of their problems earlier because conditions became so bad later on.'") (citations omitted). For example, Plaintiffs allege that "defendants do not, and cannot, argue that they have no knowledge of prepayments," because "CW1 stated that SBA prepayments occurred in 2002-2003 . . . ." OB 31-32. From these vague allegations that some portion of the Company's SBA portfolio experienced prepayments in **<u>2002</u>** and **<u>2003</u>**, Plaintiffs ask this Court to draw the inference that the Defendants must have known that the Company's **<u>2005</u>** guidance, issued in **<u>December 2004</u>**, was false when made. That requested inference is not even reasonable, let alone strong.

---

[10] As discussed below, the same is true respecting Plaintiffs' allegations regarding the Company's guidance or financial results for any financial period at issue. <u>See</u> <u>infra</u> passim.

Further, Plaintiffs' suggestion that Defendants acted with scienter based on their repeated allegation that Defendants had "actual knowledge of prepayments" is a non-sequitur.  As the Amended Complaint acknowledges, IFIN executives did not conceal that they had knowledge of prepayments; they plainly disclosed that loans were routinely prepaid at rates that varied based on prevailing market conditions.  See AC ¶ 205 ("Included in our guidance is and has always been a forecast of SBAs running at industry prepayment speeds.").  In fact, IFIN regularly disclosed both:  (1) the risk of increased prepayments (see supra 6-8); and (2) the actual amount of loan prepayments each quarter.  Specifically, IFIN disclosed "paydowns," i.e., loan prepayments, on its cash flow statements during every financial reporting period in question.  See, e.g., App. 4 at 6, 10 at 10, and 11 at F-6.  Not only did IFIN disclose the amount of prepayments, but also it expressly mentioned that it had experienced prepayments in its SEC filings.[11]  For example, IFIN included the following disclosure in its 2003 Form 10-K/A:

> The decline in the yield is primarily due to the decline in the overall interest rate environment.  As interest rates declined throughout the year, **we experienced a higher level of prepayments**, resulting in increased principal cash payments . . . .  **In addition the accelerated prepayments caused us to recognize at a faster rate the premium amortization associated with the affected securities** . . . .  A significant portion of our investment portfolio is variable rate in nature.  If interest rates were to rise during 2004, we would expect slower prepayments and our overall yield to increase as our variable rate securities reprice.  **Conversely, if interest rates were to decline in 2004, we would expect that prepayments would accelerate and be comparative to the activity in 2003** . . . .

See App. 5 at 47; see also App. 4 at 43; App. 11 at 37-38.

---

[11] Given the fact that Defendants plainly disclosed the allegedly concealed information about loan prepayments, the cases Plaintiffs cite to support their scienter allegations, even if they reflected the law in the First Circuit -- which they do not, are inapposite.  Nursing Home Pension Fund, Local 144 v. Oracle Corp., 380 F.3d 1226, 1232 (9th Cir. 2004) (inferring scienter where, inter alia, individual defendant's insider trading was suspiciously "inconsistent with his prior trading history," and defendant personally admitted heavy involvement with business transactions at issue) (OB 21); In re NorthPoint Commc'ns Groups, Inc. Sec. Litig. & Consol. Cases, 221 F. Supp. 2d 1090, 1104 (N.D. Cal. 2002) (inferring scienter from, inter alia, specific facts contained in excerpts of internal corporate reports, which were attached to complaint and provided to plaintiffs by one of 21 confidential witnesses); In re PeopleSoft, Inc. Sec. Litig., No. C99-00472 WHA, 2000 U.S. Dist. LEXIS 10953, at *10-11 (N.D. Cal. May 26, 2000) (inferring scienter from, inter alia, specific facts concerning product defects brought to top management's attention by field representatives) (OB 22).

Plaintiffs do not contest the accuracy of any of these disclosures. Furthermore, these publicly reported loan prepayments did not prevent IFIN from experiencing growth in excess of 25% during 2001, 2002, 2003 or 2004. Thus, Plaintiffs' confusing allegations about loan prepayments do not support any inference of scienter respecting their 2005 guidance claims (or, as discussed below, any of their other claims).

**2.     Plaintiffs' Motive Allegations Respecting Their 2005
Guidance Claims Do Not Support A Strong Inference Of Scienter.**

As Plaintiffs do not contest, they cannot satisfy their obligation to plead a strong inference of scienter by alleging "motive and opportunity" allegations alone, which is fatal to their case here. MB 13. In addition, their "motive and opportunity" allegations are also deficient.

First, Plaintiffs have no answer to the wealth of authority establishing that insider trading allegations do not support any inference of scienter where, as here:

- plaintiffs do not attempt to show that the stock sales at issue were suspicious or unusual (MB 14-15);

- the company's CFO did not sell any shares during the putative class period (MB 15);

- only some of the individual defendants actually traded company stock during the period at issue (MB 15);

- the individual defendants who did trade during the period at issue only sold a small percentage of their holdings of stock and exercisable options (MB 15-17);

- the individual defendants actually retained most of their stock and exercisable options (MB 15-16);

- the amount of sales made following the disclosure at issue was consistent with the amount of sales made in prior periods (MB 17);

- the company's CFO actually purchased shares during the putative class period (MB 17);

- plaintiffs have identified a lengthy proposed class period, spanning many years  (MB 17 n.13); and

- one of the individual defendants sold shares within three months of her retirement (MB 18 n.15).

Second, instead of addressing the actual timing and amount of the Individual Defendants' sales as compared to the amount and timing of sales made in prior periods, Plaintiffs simply make unsupported, conclusory assertions that Defendants stock sales were "extraordinary and suspicious," identifying the timing and amount of sales devoid of context. OB 23. This Court, however, is free to "disregard bald assertions, unsupportable conclusions, and opprobrious epithets." Tyco, 466 F.3d at 6 (quoting CSFB, 431 F.3d at 45).

Third, Plaintiffs attempt to increase the significance of the Individual Defendants' stock sales by evaluating them only as a percentage of their **stock** holdings, and not as a percentage of their total holdings of **both stock and exercisable options**. OB 24. When considering insider trading allegations, courts properly take into account both stock and exercisable options, see MB 14 n.10, and Plaintiffs have no response to this case law.

Fourth, Plaintiffs concede that their allegations setting forth the amount of Mr. Mancuso's, Mr. Maroney's and Mr. Henry's retained holdings of stock and exercisable options as of the end of the purported class period were incorrect. OB 25 n.19 (the "computation of their stock sales as a percentage of their shares and options was in error"). Having admitted this error, Plaintiffs make another. As set forth in Defendants' Moving Brief, Mr. Spinney, IFIN's CFO, **did not sell any Company stock** during the putative class period. See MB 15. Pointing to the SEC filings that reflect that fact, in their Opposition Brief, Plaintiffs assert that Mr. Spinney sold 200 shares of IFIN stock. OB 24 n.18. In fact, as the record indicates, and as more fully explained in Defendants' Opposition to Plaintiffs' Motion to Strike, the Form 4 on which Plaintiffs rely was a mistake and the letter sent by the Company to the SEC explained that it was a mistake. In any event, even if that had not been a mistake, such a miniscule sale of stock would represent **less than two-tenths of one percent** (i.e., approximately 0.19%) of Mr. Spinney's holdings of shares and exercisable options during the class period, thus undermining

any inference of scienter.[12]   Further, as Plaintiffs acknowledge, the incorrectly reported sale of 200 shares was in 2002, (see OB 24 n.18), two years before the 2005 guidance that Plaintiffs attack as a misrepresentation.

Fifth, Plaintiffs' only attempt to address the fact that Mr. Spinney actually bought, and did not sell, stock is to speculate that somehow those **purchases** give rise to an inference of scienter.   OB 24 n.18.   See id.   In fact, such purchases undermine any inference of scienter, as a matter of law.   MB 17-18.   Further, Plaintiffs simply ignore the fact that Mr. Rogers, who allegedly "controlled Investors Financial" in a "dictatorship of two partners" (AC ¶ 257), sold only **4.86%** of his stock and exercisable options during the entire four-plus year class period. See MB 18.[13]   In short, Plaintiffs' allegations regarding stock trading by certain of the Defendants do not support any inference of scienter.

As for Plaintiffs' bonus compensation allegations, Plaintiffs still fail to explain how incentive-based bonuses could possibly serve as a motive for artificially inflating the Company's earnings **projections**.   While Plaintiffs have alleged that bonus compensation was tied to **financial performance**, AC ¶ 232, nowhere do Plaintiffs allege that the Individual Defendants' compensation was in any way tied to its earnings **projections**.   The bonus structure would thus not provide to IFIN executives any motive for deliberately misstating 2005 **guidance**.

---

[12] Plaintiffs' reliance on Provenz v. Miller, 102 F.3d 1478 (9th Cir. 1996) is misplaced given the allegations and procedural posture of this case.   In that pre-PSLRA decision, the Ninth Circuit reversed, in part, the grant of summary judgment, observing that executive stock trading was suspicious and unusual, the defendant company had violated its own internal revenue recognition policies, the company had concealed information from its outside auditors, and the CFO was "personally involved in" approving the recognition of revenue at issue.   Id. at 1490-91.   Plaintiffs allege no such facts here.

[13] Plaintiffs' argument that Rule 10b5-1 trading plans cannot be considered on a motion to dismiss because Rule 10b5-1 establishes an affirmative defense for insider trading (OB 26 n.20) is based on a misunderstanding of Plaintiffs' claims.   Here, Plaintiffs have not asserted claims against the Individual Defendants for engaging in insider trading.   Rather, Plaintiffs have alleged that Defendants knowingly made false statements in violation of Section 10(b) of the 1934 Act.   In an attempt to buttress their allegations of scienter, Plaintiffs have included allegations (not claims) of insider trading.   In their Motion to Dismiss, Defendants have pointed to the existence of Rule 10b5-1 trading plans as judicially noticeable facts that undermine any inference of scienter based on trades made in accordance with those plans.   For this reason, Plaintiffs' attempts to distinguish In re Netflix, Inc., Sec. Litig., No. C04-2978-FMS, 2005 WL 1562858 (N.D. Cal. June 28, 2005) and Wietschner v. Monterey Pasta Co., 294 F. Supp. 2d 1102 (N.D. Cal. 2003) are misplaced.

13

Unable to identify any allegations in their Amended Complaint that constitute a legally cognizable motive, Plaintiffs manufacture new allegations, which appear nowhere in their Amended Complaint, regarding stock option "spring-loading" and an alleged bonus plan restructuring. OB 24-25, 27-28. As a threshold matter, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984). In any event, Plaintiffs' new motive allegations are weightless. Plaintiffs allege that IFIN issued stock options in November 2004 because management supposedly (somehow) knew that the Company's stock price was likely to increase thereafter (although Plaintiffs fail to explain how any Defendant could have known that information). Plaintiffs' suggestion that there was something unusual or suspicious about IFIN's grant of stock options in November 2004 is undermined by the following fact. As the Company's SEC filings reflect, from 1996 to 2004 IFIN issued stock options every year in the month of November.[14]

Similarly, Plaintiffs' new bonus plan restructuring allegations do not support any inference of scienter. Plaintiffs allege that, following the SEC's issuance of a new rule effective August 14, 2003, Defendants restructured IFIN's 2004 bonus plan to profit from an anticipated restatement of IFIN's 2004 earnings per share ("EPS"). OB 27-28. Allegations regarding 2004 bonuses based on **2004 financial results** cannot possibly support any motive for Defendants to misstate the Company's **2005 guidance**. Further, that allegation also makes no sense because, after the restatement, IFIN's 2004 EPS did not change by **a penny**, and thus any bonuses based on 2004 EPS would not have changed. See MB 26 (pre-restatement and post-restatement EPS for 2004 was $2.09). Thus, Plaintiffs' new motive allegations would add nothing to their case, even if they had appeared in the Amended Complaint.

---

[14] IFIN's proxy statements disclose the issuance of stock options in November of each year since 1996, which proxy statements are identified as Forms 14 and publicly available at www.sec.gov.

### C.    Plaintiffs' Claims Based On All Other Forward-Looking Statements Must Be Dismissed Under Rule 12(b)(6), The PSLRA, And Rule 9(b).

As outlined in Defendants' Moving Brief, although the essence of Plaintiffs' guidance claim focuses on the Company's 2005 earnings guidance, Plaintiffs also allege in their Amended Complaint that the Company's 25% earnings guidance for the years 2002, 2003, and 2004 was purposefully false and misleading because IFIN failed to disclose that it had accounted for its interest income by using the prospective method. See MB 19. Plaintiffs' claims must be dismissed for the simple reason that IFIN exceeded its 25% earnings growth projections in 2002, 2003, and 2004 **irrespective** of whether it was using the prospective or retrospective method of accounting. See MB 20. Those claims must also be dismissed for the same reasons that their 2005 guidance claims fail. See id.

Plaintiffs do not, because they cannot, offer any valid response to these arguments. Plaintiffs' claims based on other forward-looking statements must therefore be dismissed as well.

## III.    PLAINTIFFS FAIL TO STATE ANY FEDERAL SECURITIES FRAUD CLAIMS BASED ON THE HISTORICAL FINANCIAL RESULTS THAT THEY CHALLENGE.

### A.    Plaintiffs Fail To Plead Any Specific Facts Supporting A Strong Inference That Any Financial Disclosure Was Knowingly False When Made.

The Opposition Brief fails to identify a **single specific fact** pled in the Amended Complaint supporting a strong inference that any Defendant knew that any challenged financial disclosure was false when made. Plaintiffs do not point to one **specific** document, or meeting, or communication suggesting that any IFIN executive knew that any specific financial disclosure, for any particular quarter or year, was false when made. Instead, the Amended Complaint seeks to plead scienter solely by alleging that: (1) the restatement occurred; (2) one of the Individual Defendants, the Company's CFO, was a partner at the accounting firm KPMG, LLP; and (3) four of the Individual Defendants allegedly attended twice monthly meetings of IFIN's Asset and Liability Committee. None of those allegations, either individually, or taken in aggregate, support any inference, let alone a strong inference, of scienter. MB 21-26; see also Tyco, 466

F.3d at 9 (affirming dismissal of securities fraud claims where plaintiffs failed to plead specific facts indicating that CEO and CFO were "directly involved in detailed accounting matters or had knowledge of their falsity").

The First Circuit's recent decision in <u>Tyco</u> is instructive.  In <u>Tyco</u>, plaintiffs brought Section 10(b) and 20(a) claims against Tyco, its CEO, CFO and outside auditors, after Tyco disclosed the need to restate between $265 million and $325 million of previously recognized revenue by a Tyco subsidiary, ADT, and the firing of ADT's president and other senior managers.  <u>Tyco</u>, 466 F.3d at 4-5.  The plaintiffs there alleged that Tyco's CEO and CFO knew that this revenue was improperly recognized, basing their scienter allegations on, <u>inter alia</u>, the significant GAAP violation and defendants' motive to keep Tyco viable to preserve their lucrative jobs, which were accompanied by large salaries, bonuses, and stock options.  <u>Id.</u> at 5.

Affirming the dismissal of plaintiffs' claims, the First Circuit first scrutinized the SEC filings at issue, identifying the fact that Tyco had warned investors of the exact risks that ultimately came to pass, much as IFIN did here.  <u>Id.</u> at 8-9.  Turning to Plaintiffs' scienter allegations, it found those defective as well.  With respect to GAAP violations, the Court found that "there is nothing in the complaint supporting an inference that [the CEO or CFO] were directly involved in these detailed accounting matters or had knowledge of their alleged falsity," which is exactly the case here.  <u>Id.</u> at 9.

This Court's decision in <u>Galileo</u> also is on point, and Plaintiffs have no response to that authority.  In <u>Galileo</u>, plaintiffs brought Section 10(b) claims against defendants in connection with the defendant company's announcement of accounting errors and charges that triggered a <u>64% stock drop</u> in its stock price.  <u>In re Galileo Corp. S'holders Litig.</u>, 127 F. Supp. 2d 251, 258 (D. Mass. 2001).  In addition, defendants <u>violated</u> the defendant company's own <u>revenue recognition policy</u> forcing the company to restate its financial results for Q2 1998.  <u>Id.</u> at 259. The defendant company's <u>CEO and CFO were fired</u> when the GAAP violations were discovered. <u>Id.</u>  In granting the defendants' motion to dismiss for failure adequately to allege scienter, this Court stressed:  "What is **<u>missing</u>** from these allegations, in sum, is the kind of **<u>essential detail</u>**

necessary to give rise to a <u>strong</u> inference that, to the extent [CFO] participated in the preparation of the forms 10-Q . . . he acted with intent to deceive or he acted recklessly in recognizing revenues from sales to Imagyn." <u>Id.</u> at 263-64 (emphasis added).

The fraud Plaintiffs allege here does not approach the level of alleged wrongdoing that this Court held insufficient to support a strong inference of scienter in <u>Galileo</u>. First, here, in contrast to the fraud alleged in <u>Galileo</u>, Plaintiffs merely allege that IFIN improperly used one accounting method recognized by FAS 91 -- the prospective method -- over another -- the retrospective method. <u>See</u> AC, Ex. A. Second, IFIN's restatement resulted in a cumulative adjustment to affected periods of only $6.2 million, which is less than **<u>0.4%</u>** of the **<u>$1.6 billion</u>** total net operating revenue that IFIN reported from 2001 to 2004.

Tellingly, Plaintiffs fail entirely to respond to the scienter arguments in Defendants' Moving Brief. Instead, they simply regurgitate the same faulty allegations that are strewn throughout their Amended Complaint. Although legally impermissible, Plaintiffs have also including in their Opposition Brief new scienter allegations that are equally flawed. Plaintiffs argue that Defendants somehow **<u>must</u> <u>have</u> <u>known</u>** that IFIN was accounting improperly for its debt securities because they: (1) had actual knowledge of prepayments, OB 16-18; and (2) had categorized their debt securities as "held-to-maturity," and therefore not high risk securities. OB 19.

These new allegations cannot support any inference of scienter for several reasons. First, neither of those allegations appears in Plaintiffs' Amended Complaint. For this reason alone, they cannot support any inference of scienter. Second, allegations regarding what a defendant "must have known" cannot support any inference of scienter. <u>See</u> supra 9-10. Third, Plaintiffs' new allegations lack any basis in GAAP, related accounting literature, or case law. With respect to Plaintiffs' "actual knowledge of prepayments" allegation, Plaintiffs nowhere explain how the mere fact that prepayments have been made requires the application of the retrospective method

17

under FAS 91.[15]  Indeed, Plaintiffs provide no facts to support that proposition because they cannot, as no accounting rule and no accounting literature supports that proposition.

Plaintiffs' "held-to-maturity" allegation fares no better.  Not only is this argument based on allegations that appear nowhere in the Amended Complaint, but it too is untethered to any actual law or accounting rule.  Nowhere in Paragraph 19 of FAS 91 does it state the an entity must use the retrospective method to account for securities that are "low risk," nor is this Court required to ignore applicable accounting rules in favor of Plaintiffs' bald assertion.  See supra 12.

In short, Plaintiffs fail to plead any specific facts giving rise to any inference, let alone a strong inference, of scienter respecting their Financial Disclosure Claims.

### B.    Plaintiffs' Motive Allegations Do Not Support A Strong Inference Of Scienter.

For the reasons discussed above, Plaintiffs' motive allegations relating to the Individual Defendants' stock trading and bonus compensation do not support any inference of scienter.  As explained in Defendants' Moving Brief, Defendants' insider trading and bonus allegations also cannot support an inference of scienter as applied to Plaintiffs' Financial Disclosure Claims for the additional reason that they are illogical.  Plaintiffs' bonus-based allegations and insider trading allegations make no sense because IFIN's accounting adjustment actually resulted in IFIN revising upward its earnings for 2003 and 2004.  In addition, Plaintiffs' allegation that Defendants were motivated to artificially inflate financial results to achieve 25% growth in EPS year over year is nonsensical because IFIN achieved at least 25% growth in EPS irrespective of whether it used the prospective or retrospective methods to account for its net interest income. MB 25-26.  Plaintiffs provide no credible response to these points. OB 27-29.

Instead, Plaintiffs concoct in their brief a new theory that finds no support in either the Amended Complaint or the facts.  Plaintiffs now argue that IFIN's restatement allowed

---

[15] As explained in Defendants' Moving Brief, whether FAS 91 requires the application of the retrospective method depends on the evaluation of a number of factors, and the application of subjective judgment to these factors and the specific characteristics of the particular securities in question.  MB 27-30.

Defendants to "have their cake," and "eat it too," as if IFIN deliberately restated its financial results for four years in order to enable IFIN executives to achieve higher bonuses in 2004. As noted above, however, bonuses based on 2004 financial results would not have increased due to IFIN's restatement, because IFIN's pre-restatement and post-restatement EPS for 2004 was **the same**: $2.09 per share. See supra 14. These facts, which the Amended Complaint does not dispute, are utterly inconsistent with Plaintiffs' new contention. See Tyco Int'l Ltd., 466 F.3d at 10-11 (affirming dismissal of securities fraud claims where tenuous nature of alleged motive to commit fraud did not support strong inference of scienter). Thus, even if they appeared in the Amended Complaint, Plaintiffs' new allegations also would not support any inference of scienter.

### C. Plaintiffs' Claims Based On SBA-Securities Related Allegations Fail, As A Matter Of Law.

#### 1. Plaintiffs Fail To Plead Loss Causation Respecting Their SBA Securities-Related Allegations.

As a threshold matter, none of Plaintiffs' SBA-related allegations can support a Section 10(b) claim because Plaintiffs have failed adequately to plead loss causation. In 2005, the United States Supreme Court, in Dura Pharms., Inc. v. Broudo, 544 U.S. 336 (2005), resolved a circuit split regarding what plaintiffs in securities fraud actions must plead and prove to establish loss causation. As the Supreme Court held, Plaintiffs must plead that **the allegedly concealed facts** have become "generally known" and that, as a result of such disclosure, the defendant company's share price depreciated. Dura, 544 U.S. at 344. Since Dura, courts in at least 30 cases have dismissed securities claims for failure adequately to allege loss causation. See Exhibit A hereto. As the court stated in In re Polaroid Corp. Sec. Litig., "there [is] no loss causation where the concealments were 'latent faults that never manifested themselves." 134 F. Supp. 2d 176, 188 (D. Mass. 2001). Further, as it is an element of their Section 10(b) securities fraud claim, Plaintiffs must allege loss causation with particularity under Rule 9(b). In re First Union Corp. Sec. Litig., No. 3:99CV237-H, 2006 WL 163616, at *5-6 (W.D.N.C. Jan. 20, 2006).

Plaintiffs do not, and cannot, contest this law.  Dura controls.  Furthermore, Plaintiffs have failed to allege that any allegedly concealed facts concerning how IFIN accounts for its SBA securities became "generally known" and thus triggered a drop in IFIN's stock price during the putative class period.  The  Amended Complaint does not identify any stock drop that was allegedly triggered by the market learning anything about either:  (1) IFIN's accounting for its SBA securities under FAS 91; (2) the occurrence of prepayments on IFIN's SBA securities; or (3) IFIN's prepayment policy.  Indeed, even if IFIN had inaccurately accounted for its SBA securities -- which it did not -- any artificial inflation in IFIN's stock price that might have resulted from any such misstatements would have remained in IFIN's stock price through to the present date, because there has not been any disclosure respecting those issues triggering any decline in stock price.  Dura, 544 U.S.at 342.  That uncontradicted fact precludes Plaintiffs from pleading loss causation as to their SBA security claims, which dictates the dismissal of those claims.[16]

> **2.      Plaintiffs Fail To Plead Specific Facts
> Showing That Any Disclosure Concerning
> The Company's SBA Portfolio Was False.**

When IFIN restated its financial results in late 2004, it did not restate its accounting for its SBA securities; it concluded that the relevant accounting rules did not require any change to the accounting for its SBA securities for any financial period.  AC ¶ 205.  In their Opposition Brief, as in their Amended Complaint, Plaintiffs conclusorily allege, without the benefit of any specific facts, that IFIN was required to use the retrospective method under FAS 91, ¶ 19 -- instead of the prospective method -- to account for its SBA securities.  OB 17-18.

Plaintiffs ignore the relevant law on this point, which is uniform and clear:  to base a claim for securities fraud on an alleged violation of GAAP, a plaintiff must plead specific facts demonstrating that the defendant violated the GAAP provision on which a plaintiff relies.  MB 27 (citing Greebel v. FTP Software, Inc., In re K-Tel Int'l, Inc. Sec. Litig., and In re Capstead

---

[16] While loss causation must be pled with particularity as required by Rule 9(b), Plaintiffs' loss causation claims also fail under a more lenient Rule 8 pleading standard.

Mortgage Corp. Sec. Litig.).  However, Plaintiffs ignore this law in their Opposition Brief.  They do not even discuss the conditions in Paragraph 19 of FAS 91, and, in turn, the multiple factors in Paragraph 51 of the FASB Implementation Guide on FAS 91, that determine whether an entity should use the retrospective method to account for is securities.  See MB 27-30.  Nor do they explain how, or by how much, any specific financial disclosure respecting SBA securities, for any financial period, was allegedly false.  These gaping holes in their pleading defeat their claims.

Moreover, as explained above, Plaintiffs' home-cooked tests for determining whether a company should apply the retrospective method have no support in GAAP, related accounting literature, or case law.  See supra 17-18.  In their Opposition Brief, Plaintiffs also include additional new allegations.  Putting aside the fact that these new allegations are not properly before the Court, neither supports Plaintiffs' allegation that IFIN improperly accounted for its SBA securities.

First, Plaintiffs conclusorily assert that IFIN was required to use the retrospective method under FAS 91, ¶ 19 to account for its SBA securities because IFIN stated that its earnings guidance was "subject to 'a forecast of SBAs running at industry prepayment speeds.'" OB 7, 20.  As an initial matter, Plaintiffs allege no facts to support that proposition.  Moreover, that proposition has no support in the governing accounting rule, i.e., FAS 91, ¶ 19.  See MB 27-30.  Nowhere do Plaintiffs allege any specific facts regarding IFIN's SBA securities or whether IFIN could reasonably estimate the timing and amount of prepayments and, in turn, any specific facts indicating that IFIN experienced any difference between estimated prepayments and actual prepayments received.  FAS No. 91, ¶ 19.  For this reason alone, Plaintiffs' SBA-related claims must be dismissed.

Recognizing that they cannot cite any specific facts demonstrating that IFIN was required to use the retrospective method to account for its SBA securities, the best Plaintiffs can do is distort an article drafted by three accountants from Deloitte & Touche LLP.  OB 20 (quoting Sunil Gangwani, Allen S. Thomas & James Mountain, Accounting for Investments in MBS and

ABS, in Speaking of Securitization: Accounting, Tax, Regulatory and Other Developments Affecting Transfers and Servicing of Financial Assets, Vol. 5, Issue 1, at 10 (2000)). In fact, the section of the article that Plaintiffs quote concerns adjustable rate mortgage-backed securities, not SBA securities. See id. Furthermore, even if the portion of the article Plaintiffs quote referred to SBA securities -- and it does not -- Plaintiffs would still be required to allege specific facts to support the allegation that IFIN's SBA portfolio met the criteria set forth in Paragraph 19 of FAS 91, which they have not done. See MB 27-30.[17]

Second, Plaintiffs allege in their Opposition Brief, for the first time, that IFIN knew that it "had not written off or amortized the appropriate amount of premium when $619 million of the SBA securities were prepaid as of December 2003." OB 16-18. Even if Plaintiffs were permitted to amend the allegations in their Amended Complaint by way of their Opposition Brief -- which they are not -- their revised allegations regarding IFIN's accounting of its SBA securities under FAS 91, ¶ 19 nonetheless fail. There is no support in IFIN's financial reports for the predicate allegation that "$619 million of the SBA securities were pre-paid as of December 2003." OB 16-17. Furthermore, and even more crucially, Plaintiffs' new SBA-related allegations presuppose that IFIN was required to use the retrospective method under FAS 91, ¶ 19 to account for its SBA securities. As discussed above, the Amended Complaint lacks any facts to support that conclusory assertion. See supra 20-21.

For all of these reasons, Plaintiffs' conclusory arguments regarding SBA securities fail to support any claim.

---

[17] Plaintiffs' reliance on one other piece of accounting literature only serves to confirm that the retrospective method should not be used unless "the requirements of paragraph 19 [of FAS No. 91] are met." See OB n.15 (citing Accounting Research Manager Interpretations and Examples/03. Financial Assets -- Receivables, Loans, and Securities Loan Fees and Costs -- Interpretations of FASB Statement No. 91 (FI 6060 192))

3.     **Plaintiffs Fail To Plead Specific Facts Showing That The Company's Clerical Error Was Evidence Of Any Fraud.**

As Defendants highlight in their Moving Brief, Plaintiffs' Amended Complaint is devoid of any specific facts supporting Plaintiffs' allegation that the correction of a clerical error in IFIN's 2003 10-K was an attempt to conceal the effect that prepayments were having on the effective yield for IFIN's SBA securities.  AC ¶ 210.  Plaintiffs attempt to mend this defect by unveiling for the first time in their Opposition Brief allegations that appear nowhere in their Amended Complaint.  Compare AC ¶¶ 205, 210 with OB 7.  Specifically, Plaintiffs now allege that IFIN's statement that its revision was due to a clerical error was false because it "failed to disclose that when the $619 million in SBA securities prepaid as of December 2003, defendants did not write off or amortize the appropriate amount of premium when applying the interest method to keep a 'constant effective yield,' which was required by FAS 91 and thus, materially overstated [IFIN's] net interest income."  OB 6-7.

This new, and thus impermissible, allegation is unintelligible as drafted.  At bottom, Plaintiffs fail to identify any specific fact indicating that IFIN's correction of the contractual maturity table in its 2003 10-K was done for any reason other than that stated:  i.e., to correct a simple clerical oversight that had no effect upon the actual amount of income that IFIN reported in its financial results.  See MB 30-31; see also Tyco, 466 F.3d at 9 (plaintiffs failed to plead specific facts supporting allegation that company issued false statements concerning the reason for company's restatement).  Thus, Plaintiffs' allegations on this point add nothing to this case.

4.     **Plaintiffs Fail To Plead Specific Facts Showing That The Company's SBA Securities Were Permanently Impaired.**

As Defendants' Moving Brief demonstrated, IFIN's SBA securities never fell below the applicable risk free interest rate and, therefore, IFIN's SBA securities were never impaired, temporarily or otherwise.  MB 31-33.  In their Opposition Brief, Plaintiffs offer no response, but rather  repeat their conclusory impairment allegation, which remains defectively pled.  OB 32. For all of these reasons, Plaintiffs fail to state a claim regarding IFIN's SBA securities.

## CONCLUSION

For all of the foregoing reasons, the Amended Complaint should be dismissed, with prejudice. MB 35. Plaintiffs' request that they be granted leave to amend is not properly asserted by way of an opposition brief, and the PSLRA restricts substantially a plaintiff's right to amend under Fed. R. Civ. P. 15. See, e.g., Miller v. Champion Enters., Inc., 346 F.3d 660, 692 (6th Cir. 2003) ("[W]e think it is correct to interpret the PSLRA as restricting the ability of plaintiffs to amend their complaint, and thus as limiting the scope of Rule 15(a) of the Federal Rules of Civil Procedure.").

Respectfully Submitted,

**INVESTORS FINANCIAL SERVICES CORP., KEVIN J. SHEEHAN, MICHAEL F. ROGERS, JOHN N. SPINNEY, JR., KAREN C. KEENAN, ROBERT D. MANCUSO, EDMUND J. MARONEY AND JOHN E. HENRY**

By their attorneys,

_____

Jordan D. Hershman, BBO #553709
Jason D. Frank, BBO #634985
James P. Lucking, BBO #650588
William R. Harb, BBO #657270
**BINGHAM McCUTCHEN LLP**
150 Federal Street
Boston, MA  02110-1726
(617) 951-8000

Dated: November 17, 2006

# EXHIBIT A

**EXHIBIT A**

Amron v. Morgan Stanley Inv. Advisors, Inc., 464 F.3d338, 343-44 (2d Cir. 2006) (following Dura, and dismissing fraud claims for failure to plead loss causation).

Bennett v. H&R Block Fin. Advisors, Inc., No. 04-4848, 2005 WL 2811757, at *3-4 (N.D. Cal Oct. 27, 2005) (same).

Catton v. Def. Tech. Sys., Inc., No. 05 Civ. 6954, 2006 WL 27470, at *9-10 (S.D.N.Y. Jan. 3, 2006) (same).

Collier v. Aksys Ltd., No. 3:04CV1232, 2005 WL 1949868, at *10-16 (D. Conn. Aug. 15, 2005) (same).

Davidco Investors, LLC v. Anchor Glass Container Corp., No. 8:04CV2561T-24EAJ, 2006 WL 547989, at *8-9 (M.D. Fla. Mar. 6, 2006) (same).

In re Acterna Corp. Sec. Litig., 378 F. Supp. 2d 561, 584-86 (D. Md. 2005) (same).

In re Avista Corp. Sec. Litig., 415 F. Supp. 2d 1214, 1219-21 (E.D. Wash. 2005) (same).

In re Compuware Sec. Litig., 386 F. Supp. 2d 913, 918-19 (E.D. Mich. 2005) (same).

In re First Union Corp. Sec. Litig., No. 3:99CV237-H, 2006 WL 163616, at *5-6 (W.D.N.C. Jan. 20, 2006) (same).

In re Gilead Scis. Sec. Litig., No. 03-4999, 2005 WL 2649200, at *7-9 (N.D. Cal. 2005) (same).

In re Glaxo Smithkline PLC Sec. Litig., No. 05 Civ. 3751, 2006 WL 2871968, at *13-14 (S.D.N.Y. Oct. 6, 2006) (same).

In re Ramp Corp. Sec. Litig., No. 05 Civ. 6521, 2006 WL 2037913, at *9-11 (S.D.N.Y. July 21, 2006) (same).

In re Sara Lee Corp Sec. Litig., No. 03 C 2302, 2006 WL 1980199, at *7-8 (N.D. Ill. July 10, 2006) (same).

In re Sawtek, Inc. Sec. Litig., No. 603CV294ORL31DAB, 2005 WL 2465041, at *11-12 (M.D. Fla. Oct. 6, 2005) (same).

In re Swift Transp. Co., Inc., No. 04-2435PHX-NVW, 2006 WL 1805578, at *4-5 (D. Ariz. Mar. 29, 2006) (same).

In re Teco Energy, Inc. Sec. Litig., No. 8:04-CV-1948-T-27EAJ, 2006 WL 845161, at *2-5 (M.D. Fla. Mar. 30, 2006) (same).

In re Tellium, Inc. Sec. Litig., No. 02CV5878FLW, 2005 WL 1677467, at *26-27 (D.N.J. June 30, 2005) (same).

In re Tellium, Inc. Sec. Litig., No. 02CV5878FLW, 2005 WL 2090254, at *2-4 (D.N.J. Aug. 26, 2005) (same).

In re The First Union Corp. Sec. Litig., No. 3:99CV237-H, 2006 WL 163616, *4-6 (W.D.N.C. Jan. 20, 2006) (same).

Joffee v. Lehman Bros., Inc., 410 F. Supp. 2d 187, 190-91 (S.D.N.Y. 2006) (same).

Leykin v. AT&T Corp., 423 F. Supp. 2d 229, 243-44 (S.D.N.Y. 2006) (same).

Morgan v. AXT, Inc., No. 04-4362, 05-5106, 2005 WL 2347125, at *16 (N.D. Cal. Sept. 23, 2005) (same).

Payne v. Deluca, 433 F. Supp. 2d 547, 606-11 (W.D. Pa. 2006) (same).

Powell v. Idacorp, Inc., No. 04-249-S-EJL, 2006 WL 851116, at *2-3 (D. Idaho Mar. 29, 2006) (same).

Reding v. Goldman Sachs & Co., 382 F. Supp. 2d 1112, 1125-27 (E.D. Mo. 2005) (same).

Romero v. US Unwired, Inc., No. 04-2312, 04-2436, 2006 WL 2366342, at *7-9 (E.D. La. Aug. 11, 2006) (same).

Salomon Smith Barney Mut. Funds Fees Litig., 441 F. Supp. 2d 579, 588-91 (S.D.N.Y. 2006) (same).

Schaaf v. Residential Funding Corp., No. 05-1319, 2006 WL 2506974, at *14-15 (D. Minn. Aug. 29, 2006) (same).

Schleicher v. Wendt, No. 1:02CV1332DFHTAB, 2005 WL 165871, at *2-5 (S.D. Ind. July 14, 2005) (same).

Verona Partners, LLC v. Tenet Capital Partners Convertible Opportunities Fund LP, No 05-5369, 2006 WL 2669035, at *13-14 (N.D. Cal. Sept. 18, 2006) (same).

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THE ARCHDIOCESE OF MILWAUKEE
SUPPORTING FUND, On Behalf of Plaintiff
and All Others Similarly Situated,

         Plaintiffs,

   v.

INVESTORS FINANCIAL SERVICES
CORP., et al.,

         Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION
NO. 05-11627-RCL
**(Consolidated)**

**ASSENTED-TO MOTION FOR LEAVE TO FILE
A REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE CONSOLIDATED COMPLAINT IN ITS ENTIRETY**

  Pursuant to this Court's September 27, 2005 Order, Defendants Investors Financial

Services Corporation, Kevin J. Sheehan, Michael F. Rogers, John N. Spinney, Jr., Robert D.

Mancuso, Karen C. Keenan, and John E. Henry (collectively "Defendants") hereby move

respectfully for leave to file a reply memorandum of law in support of their Motion to Dismiss

The Consolidated Complaint In Its Entirety (the "Motion to Dismiss").  A copy of the proposed

reply memorandum Defendants seek leave to file is submitted herewith.  In support of this

motion, Defendants state as follows:

  1.  Defendants request leave to file their proposed reply memorandum of law ("Reply

Brief") for three reasons.  First, after Defendants filed their Motion to Dismiss, the First Circuit

issued an opinion affirming the dismissal of claims under Sections 10(b) and 20(a) of the

Securities and Exchange Act of 1934, based on alleged GAAP violations.  Defendants would like

an opportunity to brief this opinion because it bears directly on Plaintiffs' allegations in this case.

Second, in their Opposition to Defendants' Motion to Dismiss ("Opposition Brief" or "OB"),

Plaintiffs include many new allegations, which appear nowhere in their Consolidated Complaint

For Violations Of The Federal Securities Laws ("Amended Complaint").  Defendants also would like an opportunity to address these new allegations.

2.  More specifically, on September 27, 2006, after Defendants submitted their Motion to Dismiss Plaintiffs' Amended Complaint in this action, the United States Court of Appeals for the First Circuit issued its opinion in <u>Ezra Charitable Trust v. Tyco Int'l , Ltd.</u>, affirming the dismissal of Section 10(b) and Section 20(a) claims against, <u>inter alia</u>, the CEO and CFO of Tyco International Ltd. in connection with alleged GAAP violations.  466 F.3d 1 (1st Cir. 2006).  The First Circuit's opinion in <u>Tyco</u> further clarifies the pleading standard that a plaintiff must meet to satisfy the strictures of Rule 9(b) and the PSLRA.  Further, <u>Tyco</u> offers additional guidance to courts for assessing whether a plaintiff alleging violations of the securities laws has plead facts sufficient to give rise to a strong inference of scienter.

3.  In particular, in assessing whether a plaintiff has plead specific facts sufficient to give rise to a strong inference of scienter, the First Circuit in <u>Tyco</u> stressed the importance of analyzing competing inferences and the context in which the alleged fraud took place.  <u>Tyco Int'l Ltd.</u>, 466 F.3d at 7, 8-11 (citing <u>In re Credit Suisse First Boston Corp.</u>, 431 F.3d 36 (1st Cir. 2005)).  First, the First Circuit reaffirmed that scienter allegations do not pass the strong inference test when there are legitimate explanations for allegedly fraudulent behavior that are equally convincing.  <u>Id.</u> at 6.  That is, where the facts alleged in the complaint give rise to a competing inference that is at least as strong as the inference that a plaintiff asks the court to draw, the plaintiff has not plead specific facts sufficient to give rise to the requisite strong inference of scienter under Rule 9(b) and the PSLRA.  <u>Id.</u> at 11.  Second, the First Circuit stressed the importance of considering the contextual circumstances in which the alleged fraud took place in evaluating whether plaintiffs' allegations meet the pleading requirements of Rule 9(b) and the PSLRA.  <u>Id.</u> at 7.

4.  The First Circuit's ruling in <u>Tyco</u> represents controlling authority that is particularly relevant here.  Defendants' Reply Brief represents the first opportunity that Defendants have had to brief the <u>Tyco</u> decision for the Court and to point out, in particular, the many ways in which it supports Defendants' arguments mandating dismissal of this case, as a matter of law.

5.  Further, as noted above, in their Opposition Brief, Plaintiffs attempt to establish scienter by manufacturing new allegations, which appear nowhere in their Amended Complaint,

regarding stock option "spring loading" and an alleged bonus plan restructuring.  OB 24-25, 27-28.  Defendants have not yet had an opportunity to address these new allegations.

6.  Putting aside the fact that these allegations appear nowhere in Plaintiffs' Amended Complaint and must, therefore, be given no weight in considering Defendants' Motion to Dismiss, the new allegations lack any factual basis.  As discussed in Defendants' Reply Brief, IFIN's filings with the SEC reflect that IFIN issues stock options every year in the month of November.  Accordingly, IFIN's issuance of options in November 2004 in no way supports Plaintiffs' new stock option "spring-loading" allegation.  Similarly, Plaintiffs' new bonus plan restructuring allegations do not support any inference of scienter.  Plaintiffs allege that, following the SEC's issuance of a new rule effective August 14, 2003, Defendants restructured IFIN's bonus plan to profit from an anticipated restatement of IFIN's 2004 earnings per share ("EPS") OB 27-28.  As discussed in Defendants' Reply Brief, this allegation is simply nonsensical given that IFIN's 2004 EPS did not even increase by one penny after the restatement.

7.  Lead Plaintiffs assent to the relief requested by this motion.

WHEREFORE, Defendants hereby request that this Court grant them leave to file their [Proposed] Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Consolidated Complaint In Its Entirety.

Respectfully Submitted,

**INVESTORS FINANCIAL SERVICES
CORP., KEVIN J. SHEEHAN,
MICHAEL F. ROGERS, JOHN N.
SPINNEY, JR., KAREN C. KEENAN,
ROBERT D. MANCUSO, EDMUND J.
MARONEY AND JOHN E. HENRY**

By their attorneys,


/s/ Jordan D. Hershman
Jordan D. Hershman, BBO #553709
Jason D. Frank, BBO #634985
James P. Lucking, BBO #650588
William R. Harb, BBO #657270
**BINGHAM McCUTCHEN LLP**
150 Federal Street
Boston, MA  02110-1726
(617) 951-8000

November 17, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 17, 2006.


/s/ Jordan D. Hershman


## LOCAL RULE 7.1 CERTIFICATION


I, Jason D. Frank, hereby certify that counsel for the Defendants have conferred with counsel for the Lead Plaintiffs and have attempted in good faith to resolve or narrow the issues presented by this motion.  As set forth above, Lead Plaintiffs assent to the relief requested by this motion.


/s/ Jason D. Frank
Jason D. Frank