UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THE ARCHDIOCESE OF MILWAUKEE SUPPORTING FUND, On Behalf of Plaintiff and All Others Similarly Situated,<br><br>　　　　　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>INVESTORS FINANCIAL SERVICES CORP., et al.,<br><br>　　　　　　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>) CIVIL ACTION<br>) NO. 05-11627-RCL<br>) **(Consolidated)**<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION
TO STRIKE CERTAIN EXHIBITS INCLUDED IN DEFENDANTS' APPENDIX**

BINGHAM McCUTCHEN LLP

Jordan D. Hershman, Esq. (BBO #553709)
Jason D. Frank, Esq. (BBO #634985)
James P. Lucking, Esq. (BBO #650588)
William R. Harb, Esq. (BBO #657270)
150 Federal Street
Boston, MA 02110
Tel:  (617) 951-8000

Attorneys for Defendants Investors
Financial Services Corp., Kevin J. Sheehan,
Michael F. Rogers, John N. Spinney, Jr.,
Karen C. Keenan, Robert D. Mancuso,
Edmund J. Maroney and John E. Henry

LITDOCS/657785.1

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................... 1

PRELIMINARY STATEMENT ............................................................................................. 1

I. ON A MOTION TO DISMISS, THE COURT MAY CONSIDER DOCUMENTS PERTINENT TO THE ACTION OR REFERENCED IN THE COMPLAINT AND MAY NOTICE OTHER PUBLIC INFORMATION ........ 4

II. THE COURT MAY CONSIDER ALL OF DEFENDANTS' SUBMISSIONS IN EVALUATING THEIR MOTION TO DISMISS ........................... 5

    A. The Court May Take Judicial Notice Of A Financial Dictionary Definition Of The Term "Yield Curve." (App. 26). ........ 6

    B. The Court May Consider Contextual Information Concerning The Market's Reaction To The Flatter-Than-Expected Yield Curve In Mid-2005 (Apps. 24 and 25) ............................... 6

    C. The Court May Take Judicial Notice Of Chairman Greenspan's Congressional Testimony (App. 23) ............................... 7

    D. The Court May Take Judicial Notice Of The Fact That Interest Rates For SBA Securities Reset Monthly Or Quarterly (App. 30) ........................ 8

    E. The Court May Take Judicial Notice Of The Risk-Free Market Rates For 3-Month Treasury Notes (App. 32) ....................... 10

    F. The Court May Take Judicial Notice Of Rule 10b5-1 Trading Plans Referenced In The Company's SEC Form 8-K (App. 33) ........................ 12

    G. The Court May Take Judicial Notice Of Form 4 Filings And A Letter To The SEC Explaining The Fact That Defendant Spinney Did Not Sell Any IFIN Stock During The Class Period (App. 35) ....... 13

CONCLUSION ....................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**            **Page(s)**

Adarand Constructors, Inc. v. Slater, 228 F.3d 1147 (10th Cir. 2000) ................................ 8

In re Advanta Corp. Sec. Litig., 180 F.3d 525 (3d Cir. 1999) ........................................... 13

Bastian v. Petren Res. Corp., 892 F.2d 680 (7th Cir. 1990) ........................................... 9, 10

Bryant v. Avado Brands, Inc., 187 F.3d 1271 (11th Cir. 1999) ....................................... 4, 5

Deck v. City of Toledo, 76 F. Supp. 2d 816 (N.D. Ohio 1999) ........................................... 10

Dingle v. Bioport Corp., 388 F.3d 209 (6th Cir. 2004) ......................................................... 8

In re Donald J. Trump Casino Sec. Litig.--Taj Mahal Litig., 7 F.3d 357
    (3d Cir. 1993) .................................................................................................................. 4

Ezra Charitable Trust v. Tyco Int'l Ltd., 466 F.3d 1 (1st Cir. 2006) .......................... 1, 3, 7

FMC Corp. v. Boesky, 727 F. Supp. 1182 (N.D. Ill. 1989) ................................................. 11

Fudge v. Penthouse Int'l. Ltd., 840 F.2d 1012 (1st Cir. 1988) ............................................. 4

Grimes v. Navigant Consulting, Inc., 185 F. Supp. 2d 906 (N.D. Ill. 2002) ..................... 11

Guerra v. Teradyne Inc., No. 01-11789, 2004 WL 1467069
    (D. Mass. Jan. 16, 2004) ............................................................................................ 3, 4

Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co., 767 F. Supp. 1269
    (S.D.N.Y. 1991) ............................................................................................................. 10

Hennessy v. Penril Datacomm Networks, Inc., 69 F.3d 1344 (7th Cir. 1995) .................... 5

Horizon Unlimited, Inc. v. Silva, No. 97-7430, 2002 WL 1896297
    (E.D. Pa. Aug. 15, 2002) .............................................................................................. 10

Ieradi v. Mylan Labs., Inc., 230 F.3d 594 (3d Cir. 2000) ................................................... 10

Joiner v. General Elec. Co., 864 F. Supp. 1310 (N.D. Ga. 1994) ........................................ 6

Kramer v. Time Warner Inc., 937 F.2d 767 (2d Cir. 1991) .......................................... 4, 5, 7

Lovelace v. Software Spectrum Inc., 78 F.3d 1015 (5th Cir. 1996) ..................................... 4

**Page(s)**

Lumber, Prod. and Indus. Workers Log Scalers Local 2058 v. United States,
    580 F. Supp. 279 (D. Or. 1984) ...................................................................................10

Maldonado v. Dominguez, 137 F.3d 1 (1st Cir. 1998) ......................................................13

Mid-Fla Coin Exch. Inc. v. Griffin, 529 F. Supp. 1006 (M.D. Fla. 1981).........................10

In re NAHC Inc. Sec. Litig., 306 F.3d 1314 (3d Cir. 2002) ..............................................10

In re Netflix, Inc., Sec. Litig., No. C04-2978-FMS, 2005 WL 1562858
    (N.D. Cal. June 28, 2005) ..........................................................................................12

In re Network Equip. Tech., Inc., Litig., 762 F. Supp. 1359 (N.D. Cal. 1991) ...................5

Northlake Mktg. & Supply, Inc. v. Glaverbel, 72 F. Supp. 2d 893 (N.D. Ill. 1999) .........10

Parries v. Gateway 2000, Inc., 122 F.3d 539 (8th Cir. 1997) ..............................................4

In re Polaroid Corp. Sec. Litig., 134 F. Supp. 2d 176 (D. Mass. 2001)...............................4

Romani v. Shearson Lehman Hutton, 929 F.2d 875 (1st Cir. 1991) ...................................4

Shaw v. Digital Equip. Corp., 82 F.3d 1194 (1st Cir. 1996) ...........................................4, 5

In re Stone & Webster, Inc. Sec. Litig., 253 F. Supp. 2d 102 (D. Mass. 2003) ..............3, 4

In re Stone & Webster, Inc. Sec. Litig., 414 F.3d 187 (1st Cir. 2005) ................................3

In re Verifone Sec. Litig., 784 F. Supp. 1471 (N.D. Cal. 1992)........................................11

Volunteer State Bank v. Nat'l Bank of Commerce, 684 F. Supp. 964
    (M.D. Tenn. 1988) .....................................................................................................10

Wietschner v. Monterey Pasta Co., 294 F. Supp. 2d 1102 (N.D. Cal. 2003) ....................12

Wilshire Westwood Assoc. v. Atlantic Richfield Corp., 881 F.2d 801
    (9th Cir. 1989).............................................................................................................6

Windows User, Inc. v. Reed Bus. Publ'g, Ltd., 795 F. Supp. 103 (S.D.N.Y. 1992).........10

**Statutes & Rules**

17 C.F.R. § 240.10b5-1................................................................................................12

Fed. R. Evid. 201 .................................................................................................4, 5, 6

# INTRODUCTION

Defendants Investors Financial Services Corp. ("IFIN" or the "Company"), Kevin J. Sheehan, Michael F. Rogers, John N. Spinney, Jr., Karen C. Keenan, Robert D. Mancuso, Edmund J. Maroney, and John E. Henry (collectively, the "Individual Defendants") respectfully submit this Memorandum of Law in Opposition to Plaintiffs' Motion to Strike Certain Exhibits Included in Defendants' Appendix.

# PRELIMINARY STATEMENT

Plaintiffs have requested that this Court strike eight exhibits that Defendants submitted in support of their Motion to Dismiss. See Plaintiffs' Memorandum of Law in Support of Their Motion to Strike Certain Exhibits Included in Defendants' Appendix ("Pl. Mot. to Strike"). Plaintiffs argue that, by submitting these eight exhibits, Defendants have "ask[ed] this Court to determine certain substantive factual issues in [their] favor" and that Defendants can prevail only by "introducing their version of the facts." Pl. Mot. to Strike at 1. Plaintiffs are wrong.

As set forth in greater detail in Defendants' moving and reply briefs supporting their Motion to Dismiss, the Amended Complaint fails adequately to state any claim under federal securities law. In order to state a claim for federal securities fraud, a plaintiff adequately must allege one or more actionable misrepresentations or omissions of material fact, as well as specific facts that give rise to a strong inference of scienter. Ezra Charitable Trust v. Tyco Int'l Ltd., 466 F.3d 1, 5-6 (1st Cir. 2006). Under Federal Rules of Civil Procedure 12(b)(6) and 9(b), the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and the governing First Circuit cases on point, Plaintiffs' Amended Complaint fails to meet the strict pleading requirements of the PSLRA and Rule 9(b). For this -- which does not depend in any way on any document that is the subject of Plaintiffs' Motion to Strike -- Defendants' Motion to Dismiss should be granted.

In other words, the facts, as alleged by Plaintiffs, fail to state a claim under the governing law. Perhaps for that reason, or in the hope of distracting the Court's attention from the weakness of their own claims, Plaintiffs have distorted the circumstances that gave rise to this

1

litigation. Defendants have submitted to the Court documents that the Court may consider for background purposes only, in order to place into context the distortions that Plaintiffs have made regarding IFIN's July 2005 guidance revision, certain Individual Defendants' stock sales, and the purported "impairment" of the Company's Small Business Association ("SBA") securities. Plaintiffs plainly would prefer that the Court be kept in the dark regarding the truth, and the extent to which Plaintiffs have distorted the truth, respecting these background matters.

In any event, all of the documents that are the subject of Plaintiffs' Motion to Strike are properly before this Court because: (1) they were referenced in or relied upon by the Amended Complaint; (2) this Court properly may take judicial notice of the documents; or (3) the documents constitute background information that this Court may consider, without affording the facts therein evidentiary value.

In moving to strike Defendants' exhibits, Plaintiffs are attempting to conceal the baseless nature of their claims and obscure the financial accounting issues before the Court. For example, Plaintiffs have moved to strike a financial dictionary definition of the term "yield curve." An understanding of that term is crucial to the Court's understanding of Plaintiffs' allegations in this case. In July 2005, IFIN reported that a flatter-than-expected yield curve was the reason for its guidance revision. Numerous allegations made by Plaintiffs focus on what Defendants knew about the yield curve and when. See AC ¶¶ 13, 215, 221-224. For this reason, in support of their Motion to Dismiss, Defendants explained to the Court the meaning of the financial term, "yield curve," and submitted an excerpt from a financial dictionary defining that term. Of course, courts routinely take judicial notice of dictionary definitions. See infra 6-7. Incredibly, Plaintiffs seek to exclude that excerpt, even though Plaintiffs do not appear to dispute the accuracy of that definition.

By way of further example, Plaintiffs also ask this Court to strike certain of the Company's SEC filings concerning stock sales that Plaintiffs allege support their scienter allegations. Plaintiffs seek to exclude such documents even though courts often take judicial notice of relevant documents that are required to be filed with the SEC. See, e.g., Guerra v.

Teradyne Inc., No. 01-11789, 2004 WL 1467069, at *2 (D. Mass. Jan. 16, 2004) (taking judicial notice of Forms 4 and 5 filed with SEC noting "[i]t is clear that the court may take judicial notice of these SEC filings"); In re Stone & Webster, Inc. Sec. Litig., 253 F. Supp. 2d 102, 128 nn.10 & 11 (D. Mass. 2003) (ruling that court may consider documents required to be filed, and actually filed, with the SEC), rev'd in part on other grounds, In re Stone & Webster, Inc. Sec. Litig., 414 F.3d 187 (1st Cir. 2005).  The Company's SEC filings provide the Court with important context in evaluating Plaintiffs' "insider trading" allegations.

Through their attempts to prevent this Court from considering background information relevant to their fraud allegations, Plaintiffs' strategy becomes clear:  focus the Court myopically on their misleading fraud allegations and prevent the Court from considering the contextual circumstances in which the alleged fraud took place.  After all, observing the greater context in which IFIN's alleged fraud occurred, such as the rapidly flattening yield curve, the market's reaction thereto, and other indisputable market sector information, reveals the lack of merit to Plaintiffs' allegations.  As the United States Court of Appeals for the First Circuit recently made clear, courts should consider the contextual circumstances in evaluating whether plaintiffs' allegations satisfy the strictures of Rule 9(b) and the PSLRA.  Tyco Int'l Ltd., 466 F.3d at 7, 10-11 (affirming grant of motion to dismiss and holding that circumstances in which alleged fraud took place militated against a strong inference that defendants acted with scienter).  Here, as in Tyco, considering the context in which Plaintiffs' alleged fraud occurred can only serve to assist the Court in assessing whether Plaintiffs have met their pleading burden under Rule 9(b) and the PLSRA.

As discussed below, Plaintiffs' arguments respecting all of the documents that they move to strike are unavailing.  Accordingly, Plaintiffs' Motion to Strike should be denied in its entirety.

I. **ON A MOTION TO DISMISS, THE COURT MAY CONSIDER DOCUMENTS PERTINENT TO THE ACTION OR REFERENCED IN THE COMPLAINT AND MAY NOTICE OTHER PUBLIC INFORMATION.**

In their Motion to Strike, Plaintiffs appear to suggest that the Court may only take judicial notice of matters referenced in the complaint. See Pl. Mot. to Strike at 4-8. In fact, Plaintiffs are conflating two separate doctrines. First, "[i]n evaluating a motion to dismiss, the Court may consider documents pertinent to the action and/or referenced in the complaint." In re Polaroid Corp. Sec. Litig., 134 F. Supp. 2d 176,182 (D. Mass. 2001).[1] See also Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996); Romani v. Shearson Lehman Hutton, 929 F.2d 875, 879 n.3 (1st Cir. 1991) (citing Fudge v. Penthouse Int'l. Ltd., 840 F.2d 1012, 1015 (1st Cir. 1988), cert. denied, 488 U.S. 821 (1988)). Courts routinely look to these documents on a motion to dismiss because "the main problem of looking to documents outside the complaint -- lack of notice to plaintiff -- is dissipated '[w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.'" Shaw, 82 F.3d at 1220 (citation omitted).

Second, consistent with Federal Rule of Evidence 201, a court may take judicial notice of facts "not subject to reasonable dispute" that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Pursuant to Rule 201, courts take judicial notice of many facts in deciding motions to dismiss filed in securities fraud actions. For example, as mentioned above, courts often take notice of relevant documents that are required to be filed and are actually filed with the SEC. See, e.g., Guerra, 2004 WL 1467069, at *2; In re Stone & Webster, Inc. Sec. Litig., 253 F. Supp. 2d at 128 nn.10 & 11. Taking judicial notice of documents pertinent to the complaint and relevant SEC filings furthers an important goal of the PSLRA -- "curbing abusive securities litigation." See, e.g.,

---

[1] Plaintiffs cite to a number of cases where courts took notice of documents similar to the ones at issue here. Bryant v. Avado Brands. Inc., 187 F.3d 1271, 1275-76 & n.5 (11th Cir. 1999) (reversing district court's order on motion to dismiss striking documents filed with the SEC including Forms 4); Parries v. Gateway 2000, Inc., 122 F.3d 539, 546 n.9 (8th Cir. 1997) (affirming district court's taking of judicial notice of prospectus filed with the SEC); Lovelace v. Software Spectrum Inc., 78 F.3d 1015, 1018 (5th Cir. 1996) (taking judicial notice of SEC filings); In re Donald J. Trump Casino Sec. Litig.--Taj Mahal Litig., 7 F.3d 357, 368 n.9 (3d Cir. 1993) (affirming district court's taking of judicial notice of prospectus filed with the SEC); Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991) (taking judicial notice of SEC filings).

Bryant v. Avado Brands. Inc., 187 F.3d 1271, 1278 (11th Cir. 1999) (cited by Plaintiffs). In Bryant, the court noted that taking judicial notice of SEC filings at the motion to dismiss stage permits "the dismissal of frivolous cases at the earliest feasible stage of the litigation." Id.

Finally, a court may also consider background material, without placing any evidentiary reliance on its contents, and not run "afoul of the rule that a district court must confine itself to the four corners of the complaint when deciding a motion to dismiss under Rule 12(b)(6)." Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).[2]

## II. THE COURT MAY CONSIDER ALL OF DEFENDANTS' SUBMISSIONS IN EVALUATING THEIR MOTION TO DISMISS.

Many of the exhibits Plaintiffs have challenged are integral to or explicitly relied on by the Amended Complaint. See Shaw, 82 F.3d at 1220. Other exhibits challenged by Plaintiffs are proper subjects for judicial notice, as they are SEC filings that are "not subject to reasonable dispute" and are "capable of accurate and ready determination." See Fed. R. Evid. 201. Finally, Defendants submitted for the Court's consideration Congressional testimony from former Chairman Alan Greenspan and excerpts of interviews with the CFOs of both Citigroup and Bank of America concerning the flatter-than-expected yield curve as background information only, merely to demonstrate the context in which the challenged statements were made (i.e., a time period in which interest rates were moving in historically anomalous ways that confounded the marketplace). See Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss ("Moving Brief" or "MB") at 2-3. The Court properly may consider this information on a motion to dismiss. Kramer, 937 F.2d at 773. Accordingly, this Court properly may consider all eight exhibits that Plaintiffs move to strike.

---

[2] Plaintiffs' cases either support Defendants or are distinguishable. See Hennessy v. Penril Datacomm Networks, Inc., 69 F.3d 1344, 1354-55 (7th Cir. 1995) (refusing to take judicial notice of Form 10-K for the fact that the company employed 398 workers, reasoning that the form related to business units not involved in the lawsuit, rendering the facts in question "not capable of accurate and ready determination by resort to the 10-K."). In re Network Equip. Tech., Inc., Litig., 762 F. Supp. 1359, 1363 (N.D. Cal. 1991), has little, if any, precedential value, as it was decided before Kramer, which "was the first reported case to employ judicial notice . . . in order to consider SEC filings at the motion to dismiss stage." Bryant, 187 F.3d at 1280 n.14.

## A. The Court May Take Judicial Notice Of A Financial Dictionary Definition Of The Term "Yield Curve." (App. 26).

This putative class action was triggered by defendant IFIN's disclosure in mid-2005 that it was revising its previously issued earnings guidance, in view of, inter alia, the flatter than expected yield curve. In their Moving Brief, Defendants cited a financial dictionary, Barron's Finance & Investment Handbook (App. 26), to provide the Court with a definition of the term "yield curve." Plaintiffs do not challenge the accuracy of that definition. They instead ask this Court to strike the definition from Defendants' Moving Brief solely on the grounds that it was "not referenced or relied upon in the Complaint." Pl. Mot. to Strike at 5.

It would appear that Plaintiffs wish to obscure, rather than clarify, the issues before this Court. An understanding of the term "yield curve" plainly is integral to an understanding of Plaintiffs' allegations. Plaintiffs may hope that confusion over complex accounting matters will assist their efforts to survive Defendants' motion to dismiss.

As noted above, however, a court may take judicial notice of facts "not subject to reasonable dispute" that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. For this reason, courts routinely take judicial notice of dictionary definitions. See, e.g., Wilshire Westwood Assoc. v. Atlantic Richfield Corp., 881 F.2d 801, 803 (9th Cir. 1989) (taking judicial notice of the definitions of "fraction" and "petroleum"); Joiner v. General Elec. Co., 864 F. Supp. 1310, 1315 n.7 (N.D. Ga. 1994) (taking judicial notice of the definition of "adipose tissue"). Given that Plaintiffs do not challenge the accuracy of the yield curve definition contained in Barron's Finance & Investment Handbook, this Court properly may take notice of the definition cited in Defendants' Moving Brief.

## B. The Court May Consider Contextual Information Concerning The Market's Reaction To The Flatter-Than-Expected Yield Curve In Mid-2005 (Apps. 24 and 25).

As noted above, this case was filed promptly following IFIN's disclosure in mid-2005 that it was revising its previously issued earnings guidance, in view of, inter alia, the flatter than

expected yield curve. In their Moving Brief, Defendants cited a comment by Citigroup's CFO, made just five days after IFIN's disclosure. Specifically, Citigroup's CFO publicly stated in explaining Citigroup's Q2 05 results: "Our guys in the trading side were not expecting the yield curve to flatten the way it has." App. 24. Defendants also cited a comment by Bank of America's CFO that same day. He stated that Bank of America's earnings were adversely affected by the yield curve, which he observed had "flattened beyond expectations." App. 25. These public statements were submitted as background material only, and the Court may refer to them without placing any evidentiary weight on their contents. See Kramer, 937 F.2d at 773; MB 2. As the First Circuit recently stressed in Tyco, courts should consider the contextual circumstances in evaluating whether plaintiffs' allegations satisfy the strict pleading requirements of Rule 9(b) and the PSLRA. Tyco Int'l Ltd., 466 F.3d at 7, 10-11 (affirming grant of motion to dismiss and holding that circumstances in which alleged fraud took place militated against a strong inference that defendants acted with scienter).

More specifically, Defendants are not asking the Court to make a factual determination as to whether Citigroup or Bank of America truly was surprised by the flattening yield curve. Those issues are not before the Court on Defendants' Motion to Dismiss. Rather, the Court is permitted simply to take notice that other market participants, including some of the most sophisticated financial institutions in the world, were publicly expressing surprise at the degree to which the yield curve had flattened in 2005. It is this context, among other things, that undermines any inference of scienter that Plaintiffs ask this Court to draw. As in Tyco, the context of the alleged fraud scheme undermines any inference that fraud took place here.

### C. The Court May Take Judicial Notice Of Chairman Greenspan's Congressional Testimony (App. 23).

Given the importance of understanding context to determining the inferences of fraud to be drawn from complaint allegations, this Court also properly may take judicial notice of the Federal Reserve Board Chairman's Congressional testimony earlier in 2005. In their Moving Brief, Defendants cited testimony by former Chairman Alan Greenspan that the worldwide

flattening of the yield curve in 2005 was a "**short-term aberration**" and a "**conundrum**." App. 23 (emphasis added). Chairman Greenspan's testimony was part of the Federal Reserve Board's semiannual Monetary Policy Report to the Congress. Courts regularly take judicial notice of Congressional testimony. See, e.g., Dingle v. Bioport Corp., 388 F.3d 209, 211 (6th Cir. 2004) (noting that "[t]he district judge took judicial notice of congressional testimony" and affirming dismissal of complaint); Adarand Constructors, Inc. v. Slater, 228 F.3d 1147, 1168 n.12 (10th Cir. 2000) ("In the discussion that follows, we take judicial notice of the content of hearings and testimony before the congressional committees and subcommittees cited by the government.").

In their Motion to Strike, Plaintiffs do not call into question the reliability or authenticity of Chairman Greenspan's testimony. Instead, Plaintiffs argue that the testimony should be stricken because "Mr. Greenspan's comments are not integral to any of plaintiffs' allegations." Pl. Mot. to Strike at 5. However, Plaintiffs' guidance claims rest on their conclusory and baseless allegation that IFIN lowered its 2005 guidance for some reason other than, as IFIN reported, the flatter-than-expected yield curve. Background information concerning the flattening yield curve in 2005 is directly relevant to Plaintiffs' allegations. This Court can, therefore, take judicial notice of Chairman Greenspan's remarks to better understand the context in which the challenged statements were made.

### D. The Court May Take Judicial Notice Of The Fact That Interest Rates For SBA Securities Reset Monthly Or Quarterly (App. 30).

Plaintiffs argue that the Bloomberg SBA pool data included in Exhibit 30 demonstrating that the interest rates for SBA securities are reset monthly or quarterly must be stricken because it "is not referenced or relied upon in the Complaint." Pl. Mot. to Strike at 7. Plaintiffs, however, alleged in their Amended Complaint that IFIN's SBA securities were impaired based on a comparison of SBA securities to 7-year and 10-year U.S. Treasury notes. AC ¶¶ 57-58. As Defendants explained in their Motion to Dismiss, Plaintiffs argument was misleading because SBA securities should be compared to 3-month U.S. treasury notes, since SBA securities reset interest rates monthly or quarterly. MB 31-33. This Court may take judicial notice of the fact

that SBA securities interest rates reset monthly or quarterly, as reflected in SBA pool data, for two reasons. Contrary to Plaintiffs' argument, the SBA pool data was, in fact, incorporated by reference in the Amended Complaint, and even were it not, SBA pool data may be judicially noticed by this Court.

First, this Court may consider the fact that SBA securities adjust interest rates monthly or quarterly because Plaintiffs themselves have alleged in their Amended Complaint that SBA securities are "variable rate" securities (AC ¶ 51 n.5). Having themselves alleged that SBA securities are "variable rate" securities, i.e., their interest rates adjust periodically, Plaintiffs cannot seriously contend that they have not referenced the variability of SBA securities in the Amended Complaint. Nor can they seriously argue that the issue of variability is not integral to their arguments, as they compare SBA securities to 7-year and 10-year U.S. Treasury notes. AC ¶¶ 57-58. This Court also may consider the fact that SBA securities reset monthly or quarter because Plaintiffs themselves reference SBA pool data in the Amended Complaint. The Amended Complaint explicitly relied upon Bloomberg SBA pool data by noting that "[a]ll SBA pool data is available on *Bloomberg*" and by expressly incorporating Bloomberg SBA pool data into allegations in the Amended Complaint. AC ¶ 51 (emphasis in original). It is this data, incorporated by reference in the Amended Complaint, which establishes that SBA securities "[a]djust either monthly or quarterly." See AC ¶ 48 n.4; App. 33 at 7 (Coastal Securities Presentation) (emphasis added); see also App. 30. For these reasons alone, this Court may properly consider the SBA pool data contained in Exhibit 30, which was submitted for the sole purpose of establishing that SBA securities reset "monthly or quarterly," and are therefore not comparable to 7-year and 10-year U.S. Treasury notes, as Plaintiffs would have this Court believe.

Second, the fact that the interest rates for SBA securities are reset monthly or quarterly is capable of being judicially noticed by this Court. The fact that SBA securities are variable rate securities that reset monthly or quarterly is commonly known, or readily knowable, and not subject to reasonable dispute. See Bastian v. Petren Res. Corp., 892 F.2d 680, 684 (7th Cir.

1990) (taking judicial notice of facts beyond reasonable dispute). For these reasons, this Court may take judicial notice of Exhibit 30 and the fact that the interest rates for SBA securities reset monthly or quarterly.

  **E. The Court May Take Judicial Notice Of The Risk-Free Market Rates For 3-Month Treasury Notes (App. 32).**

  As noted above, in their Amended Complaint, Plaintiffs sought to compare IFIN's SBA securities with 7-year and 10-year U.S. Treasury notes, in an effort to allege that the Company's SBA securities were impaired. AC ¶¶ 57-58. As Defendants explained in the Moving Brief, that effort was misleading, as the interest rates of SBA securities are comparable to interest rates of 3-month treasury notes. MB 31-33. Courts may take judicial notice of interest rates, such as the historical interest rates for three-month treasury notes submitted in Exhibit 32. See Horizon Unlimited, Inc. v. Silva, No. 97-7430, 2002 WL 1896297, at *5 (E.D. Pa. Aug. 15, 2002) (taking judicial notice of interest rates); Northlake Mktg. & Supply, Inc. v. Glaverbel, 72 F. Supp. 2d 893, 903 (N.D. Ill. 1999) (same); Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co., 767 F. Supp. 1269, 1280 (S.D.N.Y. 1991) (same). The practice of taking judicial notice of interest rate information is consistent with the wealth of authority taking notice of commonly known, or readily knowable, market sector information. See Bastian, 892 F.2d at 684 (taking notice of 1981 peak in oil prices and subsequent decline resulting in the plummeting profitability of drilling for oil and gas in the United States).[3] Moreover, noticing interest rates is little different than noticing stock prices, which courts commonly do.[4]

---

  [3] See also Deck v. City of Toledo, 76 F. Supp. 2d 816, 819 n.1 (N.D. Ohio 1999) (court takes judicial notice that Toledo construction season begins late in year); Windows User, Inc. v. Reed Bus. Publ'g, Ltd., 795 F. Supp. 103, 109-10 (S.D.N.Y. 1992) (court takes "judicial notice of the fact that in the field of computers, technology progresses at an extremely rapid pace"); Volunteer State Bank v. National Bank of Commerce, 684 F. Supp. 964, 967 (M.D. Tenn. 1988) (court takes judicial notice of dramatic changes that have occurred in the financial industry, and in particular, "of the expanded powers and competitive advertising of thrift institutions in their successful attempt to engage in the 'banking business.'"); Lumber, Prod. & Indus. Workers Log Scalers Local 2058 v. United States, 580 F. Supp. 279, 282 (D. Or. 1984) (court takes "judicial notice that the Northwest wood products industry has been in recession since approximately 1980"); Mid-Fla Coin Exch. Inc. v. Griffin, 529 F. Supp. 1006, 1018 (M.D. Fla. 1981) (court takes "judicial notice of the instability of the world gold market, where a single political or economic event can cause the price of an ounce of gold to either soar or plummet").

  [4] See In re NAHC Inc. Sec. Litig., 306 F.3d 1314, 1331 (3d Cir. 2002) (taking judicial notice of stock prices); Ieradi v. Mylan Labs., Inc., 230 F.3d 594, 600 n.3 (3d Cir. 2000) (taking judicial notice of stock prices on

Plaintiffs argue that the Court should not judicially notice the historical interest rates for three-month treasury notes because they are not referenced or relied upon in the Amended Complaint. According to Plaintiffs, the Court "must presume the truth of the Complaint's allegations and give plaintiffs the benefit of all reasonable inferences to be drawn from the allegations." Pl. Mot. to Strike at 6-7. As an initial matter, the fact that the Amended Complaint does not specifically reference the interest rates for three-month treasury notes does not bear in any way on whether those interest rates are capable of being judicially noticed by the Court. As noted immediately above, historical interest rates are commonly known and readily knowable facts that courts can, and in fact do, judicially notice.

Moreover, the historical interest rates for three-month treasury notes are integral to the allegations in the Amended Complaint. Plaintiffs have predicated their impairment claim on the allegation that the effective yield for IFIN's SBA securities fell below the "effective yield for similar securities." AC ¶ 58 (emphasis added). In their Amended Complaint, however, Plaintiffs compare the effective yields on IFIN's SBA securities to the effective yields for fixed-rate 7 and 10-year treasury notes -- securities that are not "similar" to SBA securities. AC ¶ 57. Given that SBA securities adjust either monthly or quarterly, comparing the effective yield for IFIN's SBA securities to -- contrary to Plaintiffs' unsupported and unsupportable allegation -- the effective yields for similar securities, i.e., three-month treasury notes, demonstrates that the effective yields on IFIN's SBA securities never fell below the risk free rate for similar securities. App. 32.

For these reasons, this Court may take judicial notice of Exhibit 32 and the historical interest rates for three-month treasury notes.

---

motion to dismiss); In re Verifone Sec. Litig., 784 F. Supp. 1471, 1475 n.2 (N.D. Cal. 1992) aff'd, 11 F.3d 865 (9th Cir. 1993) (dismissing complaint and taking judicial notice of daily closing prices as reported by Dow Jones); Grimes v. Navigant Consulting. Inc., 185 F. Supp. 2d 906, 913 (N.D. Ill. 2002) (taking judicial notice of stock price of public company on a motion to dismiss); FMC Corp. v. Boesky, 727 F. Supp. 1182, 1196 n 17 (N.D. Ill. 1989) ("The court . . . may take judicial notice of stock prices pursuant to Federal Rule of Evidence 201(f) when ruling on . . . motion [to dismiss].").

### F. The Court May Take Judicial Notice Of Rule 10b5-1 Trading Plans Referenced In The Company's SEC Form 8-K (App. 33).

As the Company's SEC filings evidence, the vast majority of the trades that Plaintiffs allege give rise to an inference of scienter actually were made pursuant to pre-existing Rule 10b5-1 trading plans. App. 33. Pursuant to SEC Rule 10b5-1, a person's trading is not "on the basis of" material non-public information if the person adopted, and sold their securities pursuant to, a written trading plan consistent with the terms of Rule 10b5-1. See MB 16 n.12. In their Motion to Strike, Plaintiffs argued that the Court may not consider Rule 10b5-1 trading plans on a motion to dismiss because such trading plans are an affirmative defense under 17 C.F.R. § 240.10b5-1. Pl. Mot. to Strike at 7. Plaintiffs' argument misconstrues the claims in this case.

The Amended Complaint does not contain any claim for insider trading. Rather, Plaintiffs' claims are based on alleged misrepresentations in violation of Section 10(b) of the 1934 Act. Plaintiffs included allegations regarding stock sales by Defendants only in an effort to satisfy the requirement that they plead specific facts giving rise to a strong inference that those alleged misstatements were made with the requisite scienter. Thus, Defendants are not submitting the judicially noticeable fact that these sales were made pursuant to Rule 10b5-1 trading plans as an affirmative defense -- Plaintiffs have not asserted insider trading claims. Rather, the mere existence of these trading plans undermines the inference of scienter Plaintiffs ask this Court to draw.

Indeed, for this reason, courts have held that Rule 10b5-1 trading plans bear directly on scienter in deciding motions to dismiss in this context. See In re Netflix, Inc., Sec. Litig., No. C04-2978-FMS, 2005 WL 1562858, at *8 (N.D. Cal. June 28, 2005) (granting motion to dismiss, and finding no strong inference of scienter where defendants' sales were made pursuant to Rule 10b5-1 plan); Wietschner v. Monterey Pasta Co., 294 F. Supp. 2d 1102, 1117 (N.D. Cal. 2003) (same). Accordingly, this Court may take judicial notice of the Rule 10b5-1 trading plans referenced in the Company's SEC Form 8-K.

> **G.     The Court May Take Judicial Notice Of Form 4 Filings
> And A Letter To The SEC Explaining The Fact That Defendant
> <u>Spinney Did Not Sell Any IFIN Stock During The Class Period (App. 35).</u>**

As Defendants explained in their Moving Brief, during the entire four-plus year class period, IFIN's CFO, John Spinney, did not sell a single share of IFIN stock. In their Amended Complaint, Plaintiffs had claimed that he sold 200 shares. In fact, IFIN's Forms 4 and the related letter to the SEC dated December 6, 2002 demonstrate that Defendant Spinney did not sell any of his Company stock during the class period and, in fact, bought 10,150 shares. <u>See</u> MB 17. The fact that Mr. Spinney retained his stock and bought stock while, according to Plaintiffs, the Company was issuing its allegedly inflated earnings guidance, simply cannot be harmonized with Plaintiffs' unsupported accusation of fraud. <u>See</u> <u>In re Advanta Corp. Sec. Litig.</u>, 180 F.3d 525, 541 (3d Cir. 1999) ("Far from supporting a 'strong inference' that defendants had a motive to capitalize on artificially inflated stock prices, [retained holdings] suggest they had every incentive to keep Advanta profitable."). The First Circuit itself has noted that substantial losses of individual defendants undermine any inference of scienter. <u>See</u> <u>Maldonado v. Dominguez</u>, 137 F.3d 1, 12 n.9 (1st Cir. 1998) (noting that individual defendants' losses of $1.5 million undermined any inference of scienter). Plaintiffs make no mention of <u>Maldonado</u> in their Motion to Strike. Under controlling First Circuit law, the Court should consider the fact that Mr. Spinney retained his IFIN stock when determining the sufficiency of Plaintiffs' allegations of scienter. <u>See</u> <u>id.</u>

Moreover, although Plaintiffs persist with their allegation that Mr. Spinney sold 200 shares of IFIN stock in August 2002 (which, in any event, would have represented only **0.19%** of his IFIN holdings) (AC ¶ 236), the actual documents included in Defendants' Appendix evidence that no such sale occurred. <u>See</u> App. 35. They show that, the very next day after a mistaken filing was made with the SEC in 2002, IFIN notified the SEC of the mistake, making clear that Mr. Spinney did not sell any IFIN stock. This Court may take judicial notice of SEC filings. <u>See</u> <u>supra</u> at 3.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion to Strike in its entirety.

Respectfully Submitted,

**INVESTORS FINANCIAL SERVICES CORP., KEVIN J. SHEEHAN, MICHAEL F. ROGERS, JOHN N. SPINNEY, JR., KAREN C. KEENAN, ROBERT D. MANCUSO, EDMUND J. MARONEY AND JOHN E. HENRY**

By their attorneys,

/s/ Jordan D. Hershman
Jordan D. Hershman, BBO #553709
Jason D. Frank, BBO #634985
James P. Lucking, BBO #650588
William R. Harb, BBO #657270
**BINGHAM McCUTCHEN LLP**
150 Federal Street
Boston, MA  02110-1726
(617) 951-8000

Dated: November 17, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 17, 2006.

/s/ Jordan D. Hershman