UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE ARCHDIOCESE OF MILWAUKEE SUPPORTING FUND, On Behalf of Plaintiff and All Others Similarly Situated,<br><br>                                   Plaintiffs,<br><br>            v.<br><br>INVESTORS FINANCIAL SERVICES CORP., et al.,<br><br>                                   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION
NO. 05-11627-RCL
**(Consolidated)**

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS THE
## FIRST AMENDED CONSOLIDATED COMPLAINT IN ITS ENTIRETY

BINGHAM McCUTCHEN LLP

Jordan D. Hershman, Esq. (BBO #553709)
Jason D. Frank, Esq. (BBO #634985)
James P. Lucking, Esq. (BBO #650588)
William R. Harb, Esq. (BBO #657270)
150 Federal Street
Boston, MA 02110
Tel:  (617) 951-8000

Attorneys for Defendants Investors
Financial Services Corp., Kevin J. Sheehan,
Michael F. Rogers, John N. Spinney, Jr.,
Karen C. Keenan, Robert D. Mancuso,
Edmund J. Maroney and John E. Henry

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................1

PRELIMINARY STATEMENT ..........................................................................1

FACTS .................................................................................................................3

ARGUMENT........................................................................................................8

I.     PLAINTIFFS FAIL TO PLEAD FRAUD WITH PARTICULARITY ................8

II.    PLAINTIFFS FAIL TO STATE ANY FEDERAL SECURITIES FRAUD
       CLAIMS BASED ON THE  FORWARD-LOOKING STATEMENTS
       THEY CHALLENGE.............................................................................................9

       A.     Plaintiffs' Forward-Looking Statement Claims Must Be Dismissed
              Under The Law Of The Case Doctrine........................................................9

       B.     Plaintiffs' Forward-Looking Statement Claims Based On The
              Company's 2005 Earnings  Guidance Must Be Dismissed Under
              Rule 12(b)(6) ...........................................................................................10

              1.     The Challenged Forward-Looking Statement Is Immune
                     From Liability  Under The PSLRA's Safe Harbor Provision ......11

              2.     Section 10(b) Claims Cannot Be Based On An Alleged
                     Failure Accurately To Predict Interest Rates...............................12

       C.     Plaintiffs' Forward-Looking Statement Claims Based On The
              Company's 2005 Earnings Guidance Must Be Dismissed Under
              The PSLRA And Rule 9(b) Because Plaintiffs Have Failed
              Adequately To Plead Scienter ....................................................................13

              1.     Plaintiffs Must Plead Specific Facts Giving Rise To A
                     Strong Inference Of Actual Knowledge ......................................13

              2.     Plaintiffs Have Failed To Plead Specific Facts Giving Rise
                     To A Strong Inference Of Actual Knowledge..............................14

                     a.     Plaintiffs Fail To Plead Any Specific Facts
                            Supporting A Strong Inference That IFIN's 2005
                            Guidance Was Knowingly False When Made.................14

                     b.     Plaintiffs' Motive Allegations With Respect To
                            Their 2005 Guidance Claims Do Not Support A
                            Strong Inference Of Scienter ...........................................16

                            (1)     Plaintiffs' Allegations Concerning
                                    Defendants' Trading Do Not Give Rise To
                                    A Strong Inference Of Scienter ...........................17

                            (2)     Plaintiffs' Allegations Concerning
                                    Defendants' Bonus Plans Do Not Give Rise
                                    To A Strong Inference Of Scienter......................22

       D.     Plaintiffs' Claims Based On IFIN's 2004 Guidance Also Must  Be
              Dismissed Under Rule 12(b)(6), The PSLRA, And Rule 9(b)................23

**TABLE OF CONTENTS**
(continued)

**Page**

III.    PLAINTIFFS FAIL TO STATE ANY FEDERAL SECURITIES FRAUD
CLAIMS BASED ON THE HISTORICAL FINANCIAL RESULTS
THAT THEY CHALLENGE ...................................................................24

A.    Plaintiffs' Financial Disclosure Claims Relating To IFIN's
Restatement Of Its Historical Financial Results Must Be Dismissed ......25

1.    IFIN's Restatement-Related Claims Must Be Dismissed
Under The Law Of The Case Doctrine..........................................25

2.    Plaintiffs' Restatement-Related Claims Must  Be Dismissed
Under The PSLRA And Rule 9(b) ...............................................27

a.    IFIN's Restatement Does Not  Support Any
Inference Of Scienter.........................................................28

b.    Plaintiffs' "Status" And "Access" Allegations
Cannot Support Any Inference Of Scienter......................29

c.    Plaintiffs' Motive Allegations Do Not Support Any
Inference Of Scienter.........................................................31

B.    Plaintiffs' Financial Disclosure Claims Relating To IFIN's SBA
Securities Must Be Dismissed. .................................................................32

1.    Plaintiffs' SBA Security-Related Claims Must Be
Dismissed Under The Law Of The Case Doctrine .......................32

2.    Plaintiffs' SBA Security-Related Claims Must Be
Dismissed Under The PSLRA And Rule 9(b).............................33

a.    Plaintiffs Fail To Plead Loss Causation Respecting
Their SBA Security-Related Allegations ..........................33

b.    Plaintiffs Fail To Plead Specific Facts Regarding
The Company's SBA Securities That Render Any
Financial Disclosure False Or Misleading.......................36

(1)    Plaintiffs Fail To Plead Specific Facts
Showing That The Company Misclassified
Its SBA Securities Or "Certain" Of Its MBS
Securities As HTM ...............................................36

(2)    Plaintiffs Fail To Plead Specific Facts
Showing That The Company Was Required
To Write Down The Value Of Its SBA
Portfolio................................................................40

c.    Plaintiffs Fail Adequately To Plead Scienter
Respecting Their SBA Security-Related Allegations.......41

C.    Plaintiffs' Claims Based On An Alleged Failure To Disclose
Prepayment Risk Must Be Dismissed Under The Law Of The Case
Doctrine And Rule 12(b)(6). ....................................................................41

## TABLE OF CONTENTS
(continued)

**Page**

IV. PLAINTIFFS' SECTION 20(a) "CONTROL PERSON" CLAIMS  MUST BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED  TO ALLEGE A PRIMARY VIOLATION OF THE SECURITIES LAWS.............42

CONCLUSION .....................................................................................................................43

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

Abrams v. Baker Hughes, Inc.,
   292 F.3d 424 (5th Cir. 2002) ........................................................................................27

ACA Fin. Guaranty Corp. v. Advest Inc.,
   --- F.3d ---, 2008 WL 104099 (1st Cir. January 10, 2008) ...............................13, 14

In re Advanta Corp. Sec. Litig.,
   180 F.3d 525 (3d Cir. 1999) ...........................................................................13, 19, 20

Aldridge v. A.T. Cross Corp.,
   284 F.3d 72 (1st Cir. 2002) ............................................................................................22

Baron v. Smith,
   380 F.3d 49 (1st Cir. 2004) ............................................................................................11

In re Boston Tech., Inc. Sec. Litig.,
   8 F. Supp. 2d 43 (D. Mass. 1998) .................................................................................14

In re CDNOW Sec. Litig.,
   138 F. Supp. 2d 624 (E.D. Pa. 2001) ...........................................................................31

In re Cabletron Sys., Inc.,
   311 F.3d 11 (1st Cir. 2002) ............................................................................................15

In re Capstead Mortgage Corp. Sec. Litig.,
   258 F. Supp. 2d 533 (N.D. Tex. 2003) ..................................................................passim

Carney v. Cambridge Tech. Partners,
   135 F. Supp. 2d 235 (D. Mass. 2001) ...................................................................passim

In re Century Bus. Serv. Sec. Litig.,
   No. 1:99CV02200, 2002 WL 32254513 (N.D. Ohio June 27, 2002)......................21

Colby v. Hologic, Inc.,
   817 F. Supp. 204 (D. Mass 1993) .................................................................................43

In re Credit Acceptance Corp. Sec. Litig.,
   50 F. Supp. 2d 662 (E.D. Mich. 1999) ...................................................................18, 19

In re Cytyc Corp. Sec. Litig.,
   No. 02-12399, 2005 WL 3801468 (D. Mass. Mar. 2, 2005) ....................................11

D.E.&J Ltd. P'ship v. Conaway,
   284 F. Supp. 2d 719 (E.D. Mich. 2003) ........................................................................4

Denny v. Barber,
   576 F.2d 465 (2d Cir. 1978) ..........................................................................................12

Dura Pharms., Inc. v. Broudo,
   544 U.S. 336 (2005) ..........................................................................................32, 33, 34

A/72334322.3/3002803-0000315453

In re E.spire Commc'ns, Inc. Sec. Litig.,
    127 F. Supp. 2d 734 (D. Md. 2001) ...................................................................... 19

Ezra Charitable Trust v. Tyco Int'l, Ltd.,
    466 F.3d 1 (1st Cir. 2006) ................................................................................... 27

In re First Union Corp. Sec. Litig.,
    128 F. Supp. 2d 871 (W.D.N.C. 2001) ............................................................... 18

In re First Union Corp. Sec. Litig.,
    No. 3:99CV237-H, 2006 WL 163616 (W.D.N.C. Jan. 20, 2006) ........................ 33

Fitzer v. Sec. Dynamics Techs.,
    119 F. Supp. 2d 12 (D. Mass. 2000) ................................................................... 15

In re Galileo Corp. S'holders Litig.,
    127 F. Supp. 2d 251 (D. Mass. 2001) ........................................................... passim

Greebel v. FTP Software, Inc.,
    194 F.3d 185 (1st Cir. 1999) ........................................................................ passim

Guerra v. Teradyne, Inc.,
    No. 01-11789, 2004 WL 1467065 (D. Mass. Jan. 16, 2004) .............................. 30

In re Hypercom Corp. Sec. Litig.,
    No. CV-05-0455-PHX, 2006 WL 726791 (D. Ariz. Mar. 9, 2006) ...................... 28

In re K-Tel Int'l, Inc., Sec. Litig.,
    300 F.3d 881 (8th Cir. 2002) ................................................................... 21, 36, 39

Kalnit v. Eichler,
    264 F.3d 131 (2d Cir. 2001) ............................................................................... 31

Kramer v. Time Warner Inc.,
    937 F.2d 767 (2d Cir. 1991) ................................................................................. 4

Limantour v. Cray, Inc.,
    No. CO5-943Z, 2006 WL 1169791 (W.D. Wash. Apr. 28, 2006) ....................... 17

Lirette v. Shiva Corp.,
    27 F. Supp. 2d 268 (D. Mass. 1998) ............................................................ 29, 30

Maldonado v. Dominguez,
    137 F.3d 1 (1st Cir. 1998) ................................................................................... 19

Nathenson v. Zonagen Inc.,
    267 F.3d 400 (5th Cir. 2001) .............................................................................. 18

In re Netflix, Inc., Sec. Litig.,
    No. C04-2978-FMS, 2005 WL 1562858 (N.D. Cal. June 28, 2005) ................... 19

In re Peritus Software Servs., Inc., Sec. Litig.,
    52 F. Supp. 2d 211 (D. Mass. 1999) ................................................................... 29

**Page**

In re Polaroid Corp. Sec. Litig.,
134 F. Supp. 2d 176 (D. Mass. 2001)................................................................33, 35

Rombach v. Chang,
355 F.3d 164 (2d Cir. 2004) ...................................................................................21

In re Segue Software, Inc. Sec. Litig.,
106 F. Supp. 2d 161 (D. Mass. 2000).......................................................................27

Sheppard v. TCW/DW Term Trust 2000,
938 F. Supp. 171 (S.D.N.Y. 1996) ...........................................................................12

In re Silicon Graphics Inc.,
183 F.3d 970 (9th Cir. 1999) ...................................................................................17

In re Splash Tech. Holdings, Inc. Sec. Litig.,
160 F. Supp. 2d 1059 (N.D. Cal. 2001)......................................................................9

Stavros v. Exelon Corp.,
266 F. Supp. 2d 833 (N.D. Ill. 2003) ........................................................................13

In re Stratus Computer, Inc. Sec. Litig.,
No. 89-2075-Z, 1992 WL 73555 (D. Mass. Mar. 27, 1992) ......................................8

Suna v. Bailey Corp.,
107 F.3d 64 (1st Cir. 1997).....................................................................................42

In re Syncor Int'l Corp. Sec. Litig.,
327 F. Supp. 2d 1149 (C.D. Cal. 2004) .....................................................................20

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
127 S.Ct. 2499 (2007).....................................................................................2, 3, 13

United States v. Moran,
393 F.3d 1 (1st Cir. 2004).......................................................................................24

United States v. Rivera-Martinez,
931 F.2d 148 (1st Cir. 1991)......................................................................................9

In re Vantive Corp. Sec. Litig.,
110 F. Supp. 2d 1209 (N.D. Cal. 2000) .....................................................................19

In re Vantive Corp. Sec. Litig.,
283 F.3d 1079 (9th Cir. 2002) ............................................................................19, 20

In re Westinghouse Sec. Litig.,
90 F.3d 696 (3d Cir. 1996) ......................................................................................27

White v. Murtha,
377 F.2d 428 (5th Cir. 1967) ...................................................................................10

Wietschner v. Monterey Pasta Co.,
294 F. Supp. 2d 1102 (N.D. Cal. 2003) .....................................................................19

-v-

Yellen v. Hake,
   No. 4:05-cv-00388, 2006 WL 1881205 (S.D. Iowa July 7, 2006) ......................................... 12

## Statutes & Rules

15 U.S.C. § 78u-4(b)(1) ............................................................................................................. 8

15 U.S.C. § 78u-5(c)(1) ........................................................................................................... 11

15 U.S.C. §78u-5(c)(1)(B)(ii) ................................................................................................. 13

17 C.F.R. 240.10b5-1 .............................................................................................................. 19

## Legislative History

H.R. Conf. Rep. No. 104-369 (1995) ....................................................................................... 11

**INTRODUCTION**

Pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, Defendants Investors Financial Services Corp. ("IFIN" or the "Company"), Kevin J. Sheehan, Michael F. Rogers, John N. Spinney, Jr., Karen C. Keenan, Robert D. Mancuso, Edmund J. Maroney, and John E. Henry (collectively, the "Individual Defendants") submit this Memorandum of Law in Support of their Motion to Dismiss the First Amended Consolidated Complaint (the "Amended Complaint" or "FAC") in its entirety, with prejudice.

**PRELIMINARY STATEMENT**

Congress enacted the Private Securities Litigation Reform Act of 1995 (the "PSLRA") "to curb abuse in private securities lawsuits, particularly the filing of strike suits." Greebel v. FTP Software, Inc., 194 F.3d 185, 191 (1st Cir. 1999). This litigation is exactly the type of securities "strike suit" that the PSLRA was designed to prevent.

Indeed, this Court dismissed the prior iteration of the complaint in this case, upon the recommendation of Magistrate Judge Dein. See Dkt. 62. More specifically, on July 31, 2007, Magistrate Judge Dein issued a 57-page Report and Recommendation on Defendants' Motion to Dismiss Plaintiffs' Consolidated Complaint (the "Report"), in which she recommended the dismissal of this case, without prejudice. She summarized the findings that dictated the dismissal of Plaintiffs' Section 10(b) claims as follows:

> In particular, but without limitation, this court finds that earnings projections either were not false in that, even as restated, the Company met projections, or constitute forward-looking statements which are protected by the safe harbor provisions of the PSLRA. In addition, the Plaintiffs have failed to allege sufficient facts to support their claim that the Defendants acted with the requisite state of mind when they made statements regarding Investors Financial's historical financial results. This court also finds that the claims relating to the Company's SBA loan portfolio must fail since the Plaintiffs have failed to plead loss causation.

Report at 3-4.

Plaintiffs' most recent amended complaint fails to cure these fatal defects, and it should be dismissed for that reason alone. Plaintiffs continue to challenge as misrepresentations forward-looking statements that either proved to be correct or were subject to the PSLRA's safe

harbor. Plaintiffs' claims based on IFIN's restated financial results remain defective for failure adequately to plead scienter. Likewise, Plaintiffs' claims relating to the manner in which IFIN accounted for its Small Business Association ("SBA") securities remain deficient for, inter alia, failure adequately to plead loss causation.

In short, Plaintiffs have not added anything to their latest Complaint that remedies the defects on which the Court based its dismissal of their last Complaint. They have not added any new alleged misrepresentations. They have not added any new specific facts to strengthen their legally inadequate scienter allegations. The only change of substance that they have made addresses an issue that the Court did not even previously reach. As noted above, Magistrate Judge Dein recommended the dismissal of Plaintiffs' SBA securities-related claims on loss causation grounds; the Court did not even reach the issue whether Plaintiffs had adequately pled any GAAP violation relating to IFIN's accounting for its SBA securities, let alone whether any Defendant engaged in accounting fraud concerning IFIN's SBA securities. Plaintiffs have made one minor revision in their fictitious tale of fraud. They now assert that IFIN incorrectly, and fraudulently, accounted for its SBA securities as "Held-to-Maturity" ("HTM") securities. Here, the Court again need not reach the issue whether IFIN accounted incorrectly, let alone fraudulently, for its SBA securities, as those claims continue to fail on loss causation grounds. That said, as discussed below, Plaintiffs' few new allegations also fail to meet the particularity and scienter requirements of the PSLRA and Rule 9 (b). See infra 35-41.

When Magistrate Judge Dein issued her report, she contemporaneously took judicial notice of numerous facts that placed Plaintiffs' claims in context. A brief discussion of the context out of which this case arose will be helpful to this Court's understanding of the many reasons dictating the dismissal of the claims set forth in the lengthy Consolidated Complaint. This context is particularly important given the Supreme Court's recent instruction that, in considering whether plaintiffs in securities cases have pled sufficient facts giving rise to a strong inference of scienter, courts "must take into account plausible opposing inferences." See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S.Ct. 2499, 2509 (2007) ("[C]ourts must consider the

complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

## FACTS

Based in Boston, Massachusetts, IFIN offers a broad range of services to financial asset managers, and it also manages a portfolio of financial assets that it holds for its own account, rendering its financial results dependent, in part, on the movements of short-term and long-term interest rates.[1]  For each of the fiscal years 2001 through 2004, IFIN regularly forecast 25% annual growth in its diluted earnings per share ("EPS").  CC ¶ 3.[2]  In each of those years, IFIN met or exceeded its 25% earnings growth guidance.  App. 5 at 27, 6 at 22, 7 at 26-27.[3]

On July 14, 2005, after IFIN closed its second quarter ("Q2 05"), the Company announced a revision to its prior guidance for fiscal 2005.  It stated that it expected an annual increase in diluted EPS of approximately 10% -- not 25% -- principally due to unanticipated and historically anomalous interest rate activity.  FAC ¶¶ 200-201; App. 15.  The Company explained that the "key factors" giving rise to the revised guidance included, among others, "a flatter than expected yield curve" and "narrower than expected reinvestment spreads."  Id.[4]  IFIN's stock price dropped approximately 18% that day following its announcement.  FAC ¶ 17.

---

[1] FAC ¶¶ 2, 22, 24; Defendants' App. 9.  The Appendix filed herewith contains, inter alia, complete copies of documents that this Court judicially noticed pursuant to its Order dated July 31, 2007 (Dkt. 61).

[2] See also App. 10; App. 11; App. 12.

[3] See App. 4 at 24.

[4] The "yield curve" describes the relationship between interest rates and the maturity of fixed-income securities (e.g., U.S. treasury notes).  A typical yield curve reflects those circumstances where shorter-term securities (e.g., three-month treasury notes) have a lower yield (i.e., interest rate) compared with longer maturity securities (e.g., ten-year treasury notes).  The yield curve is considered "positive" when it ascends (i.e., short term interest rates are lower than long-term rates), "flat" when short-term and long-term rates are the same, and "negative" or "inverted" when short-term rates are higher than long-term rates.  See App. 19 (Barron's Finance & Investment Handbook at 706-07 (5th ed. 1998)).

Beginning on August 4, 2005 and thereafter, the plaintiffs' class action bar filed a flurry of knee-jerk complaints in this Court, essentially alleging that the Defendants committed fraud by failing accurately to predict the historically anomalous movement of interest rates in 2005. It is common knowledge, however, that the largest financial institutions in the world were blindsided by the same interest rate movements that caused IFIN to revise its 2005 guidance. For example, on July 19, 2005, just five days after IFIN's announcement, Citigroup's CFO publicly stated in explaining Citigroup's Q2 05 results: "**Our guys in the trading side were not expecting the yield curve to flatten the way it has**." App. 17 (FDCH Business Transcripts, <u>Citigroup - CFO Interview</u>, By Maria Bartiromo, July 19, 2005) (emphasis added). Similarly, that same day, Marc Oken, the CFO of Bank of America, stated that Bank of America's earnings were adversely affected by the yield curve, which he observed had "**flattened beyond expectations**." App. 18 (American Banker (USA), <u>B of A to Slow Its Corporate Expansion</u>, By Paul Davis, July 19, 2005) (emphasis added).[5]

No less an authority than Alan Greenspan, then-Chairman of the Federal Reserve Board, observed in early 2005 that, in contrast with "most experience," long-term interest rates had been trending lower, even as short-term interest rates had increased. App. 16 (Congressional Testimony of Alan Greenspan, Feb. 16, 2005).[6] Former Chairman Greenspan characterized the worldwide flattening of the yield curve, <u>i.e.</u>, the rise in short-term rates coupled with the decline in long-term rates, as a "**short-term aberration**" and a "**conundrum**." <u>Id.</u> (emphasis added).

---

[5] Although Magistrate Judge Dein declined to take judicial notice of the public announcements set forth in App. 17 and 18, Defendants refer to the public statements of other issuers solely for background purposes and do not seek judicial notice of these facts. The Court may consider background material, without placing any evidentiary reliance on its contents, and not run "afoul of the rule that a district court must confine itself to the four corners of the complaint when deciding a motion to dismiss under Rule 12(b)(6)." <u>Kramer v. Time Warner Inc.</u>, 937 F.2d 767, 773 (2d Cir. 1991).

[6] Although Magistrate Judge Dein declined to take judicial notice of Mr. Greenspan's testimony, this Court may take judicial notice of the market phenomena to which he referred. <u>See D.E.&J Ltd. P'ship v. Conaway</u>, 284 F. Supp. 2d 719, 749 n.26 (E.D. Mich. 2003) (citation omitted).

Lacking a crystal ball, however, Mr. Greenspan, and all of Wall Street, failed accurately to predict that the flattening yield curve would compress even further in 2005. In short, IFIN was hardly alone in predicting, incorrectly, the vexing movement of interest rates in 2005.

On February 3, 2006, six months after filing their first complaint, Plaintiffs filed a hopelessly prolix 142-page, 263-paragraph Consolidated Complaint, which was most notable for the fact that it told a whole new story. In an obvious effort to capture within the purported class period stock trades made by IFIN personnel going as far back as 2001, Plaintiffs more than doubled the length of the purported class period, extending the original 1 year and 9 months proposed class period to 4 years and 3 months. To do so, however, Plaintiffs were forced to concoct an illogical theory of fraud that required them to reverse field on certain allegations contained in their original complaint. More specifically, Plaintiffs entirely changed their allegations about a restatement of financial results that IFIN first announced **nine months** before the stock price decline that triggered this suit.

In the original complaint, Plaintiffs characterized IFIN's restatement in November 2004 as a "red herring" designed to "distract" the investment community from the impact of the flattening yield curve. See Dkt. 1 at p. 3. They did not allege that the restatement itself was the result of any earlier fraud. Id. In the Consolidated Complaint, Plaintiffs reversed course, claiming that the restatement itself was the product of a fraudulent scheme, which was supposedly formed almost five years earlier. Reversing their "red herring" allegations, Plaintiffs alleged in the Consolidated Complaint that it was the Company's July 14, 2005 announcement revising its guidance that was "simply a red-herring," supposedly designed to distract the investment community from accounting issues associated with the Company's November 2004 restatement. CC ¶ 13. On this basis, Plaintiffs challenged the financial results that IFIN reported in every quarterly and annual filing that it issued between April 10, 2001 and July 14, 2005.

Given the 180-degree turn that Plaintiffs took on their restatement allegations, it was hardly surprising that their newly minted fraud claims simply made no sense. Ordinarily, class action plaintiffs point to financial restatements as supposed evidence of a fraud scheme because

the restated financial results are substantially **lower** than the financial results that the defendant company had previously reported. Plaintiffs thus typically allege that the defendant company allegedly "cooked its books" in order artificially to **inflate** its financial results. Here, IFIN's restated financial results are actually **higher** for some of the restated financial quarters; not materially different for most of the restated financial quarters; and only materially lower in the year 2001, four years before IFIN restated its results. As Magistrate Judge Dein observed, these facts undermine Plaintiffs' claims. See Report at 18, 40 & 45.

Moreover, although Plaintiffs, in their Consolidated Complaint, alleged that IFIN was only able to meet or exceed, year after year, its **25%** annual earnings growth targets by employing improper accounting (CC ¶ 5), that contention was belied by the simple fact that IFIN did not need to engage in the fictitious fraud scheme alleged in order to achieve those results. As Magistrate Judge Dein found, even as restated, IFIN's diluted EPS grew by **25% or more** in each year that it restated: **25.9%** in 2001, **50.0%** in 2002, **36.3%** in 2003, and **50.4%** in 2004. See Report at 23 (citing App. 9 at 21).

Further, while Plaintiffs alleged in their Consolidated Complaint that for fiscal years 2001, 2002, 2003 and 2004 the Company made cumulative net interest income adjustments of $6.2 million (CC ¶ 242), Plaintiffs did not mention that, during those adjusted periods, IFIN had reported total net operating revenue of approximately **$1.6 billion**. App. 8, 9. Thus, the cumulative adjustment of $6.2 million was **less than 0.4%** of IFIN's total net operating revenue during those periods. A simple bar chart contrasting IFIN's pre- and post-restatement diluted EPS illustrates not only how well the Company was performing during the putative class period, but also how immaterial the restatement was to the Company's earnings for 2001 through 2004.



See App. 9 at 21.

Unable to allege credibly that either the Company's 2005 revision to its guidance or its 2004 restatement constituted violations of the federal securities laws, Plaintiffs endeavored in their Consolidated Complaint to knit the two events together in an effort to transform a simple revised guidance case into some sort of accounting fraud scandal. As Magistrate Judge Dein found, however, Plaintiffs' claims, as set forth in Plaintiffs' Consolidated Complaint, were subject to dismissal on a number of grounds.

The grounds for dismissing the Amended Complaint have not changed. Plaintiffs continue to base their claims on forward-looking statements that Magistrate Judge Dein previously held were subject to the PSLRA's safe harbor for forward-looking statements. See Report at 34-38.[7] Similarly, Plaintiffs continue to base their claims on statements concerning IFIN's historical financial results, yet they have offered no specific facts that support a strong

---

[7] With one exception, Plaintiffs no longer challenge forward-looking statements relating to pre-2005 financial periods, which Magistrate Judge Dein found were not actionable because they ultimately proved to be correct. Plaintiffs, however, do challenge IFIN's 2004 earnings guidance, alleging that IFIN's historical financial results were misstated for that year, and therefore that guidance was not correct. FAC ¶ 168(b). As this challenge is based on Plaintiffs' SBA-related allegations, it is defective for all the reasons set forth in Section III, below.

inference that any Defendant acted with the requisite state of mind. Rather, Plaintiffs rely on the same status and access allegations and the same stock trading and bonus allegations that Magistrate Judge Dein found gave rise to no inference -- and even undermined any inference -- of scienter. See Report at 45-47, 47-51. Finally, although Magistrate Judge Dein recommended the dismissal of SBA-related claims on the grounds that Plaintiffs failed to plead loss causation, Plaintiffs offer no new factual allegations to cure that failure. Accordingly, and for the reasons set forth below, Plaintiffs' claims cannot survive this -- second -- motion to dismiss.

## ARGUMENT

### I.    PLAINTIFFS FAIL TO PLEAD FRAUD WITH PARTICULARITY.

As this Court has observed, the PSLRA's pleading requirements are "strict and rigorous," requiring Plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which the belief is formed." Carney v. Cambridge Tech. Partners, 135 F. Supp. 2d 235, 240-41 (D. Mass. 2001) (citing 15 U.S.C. § 78u-4(b)(1)) (emphasis added). Plaintiffs' Consolidated Complaint was 142 pages long, and it seemed designed to confuse and obscure. Indeed, in her Report, Magistrate Judge Dein found that "[t]he analysis of the Plaintiffs' claims has been made more difficult by the diffuse nature of the allegations, the lack of specificity, or of a comprehensive theory, in the Complaint . . . ." Report at 3, n.1.

Like the Consolidated Complaint, Plaintiffs' 155-page Amended Complaint also appears designed to confuse and obscure, as it quotes dozens of press releases, conference call transcripts, and SEC filings and identifies the supposed "fraudulent" aspects of these many statements simply by cutting and pasting nearly identical, boilerplate allegations thereafter. See, e.g., FAC ¶¶ 136-151. As before, Plaintiffs make no effort to particularize the role of the Individual Defendants in any alleged fraud, as they must. See In re Stratus Computer, Inc. Sec. Litig., No. 89-2075-Z, 1992 WL 73555, *7-8 (D. Mass. Mar. 27, 1992) (dismissing complaint that "only discusses the defendants in collective terminology, making no reference to any

particular act of any particular defendant"). Having failed to plead their claims with particularity, all of Plaintiffs' claims must be dismissed under the PSLRA and Rule 9(b). See In re Splash Tech. Holdings, Inc. Sec. Litig., 160 F. Supp. 2d 1059, 1073-1075 (N.D. Cal. 2001) (dismissing with prejudice securities fraud claims contained in 124-page "puzzle style pleading"). Further, set forth below, first, are the additional reasons that Plaintiffs' claims respecting IFIN's forward-looking statements must be dismissed. See infra 9-24. Second, Defendants address the additional reasons that Plaintiffs' claims respecting IFIN's historical financial disclosures must be dismissed. See infra 24-42.

## II. PLAINTIFFS FAIL TO STATE ANY FEDERAL SECURITIES FRAUD CLAIMS BASED ON THE FORWARD-LOOKING STATEMENTS THEY CHALLENGE.

As discussed above, this case arose out of the stock price drop that followed the Company's mid-2005 public disclosure revising its prior earnings guidance for that year. As explained below, Plaintiffs' claims based on the Company's 2005 earnings guidance must be dismissed under the law of the case doctrine. Pursuant to Rule 12(b)(6), this Court previously dismissed claims predicated on the 2005 earnings guidance because it was a forward-looking statement accompanied by meaningful cautionary language warning investors of the risks posed by fluctuating interest rates. Further, Section 10(b) claims cannot be based on an alleged failure accurately to predict interest rates. Moreover, these claims must be dismissed under the PSLRA and Rule 9(b) because Plaintiffs have failed to plead any specific facts that give rise to a strong inference that the Company issued its guidance with actual knowledge of its falsity. Plaintiffs' claims based on IFIN's 2004 guidance is defective for these same reasons. Those claims also are defective for all of the reasons set forth in Section III, below.

### A. Plaintiffs' Forward-Looking Statement Claims Must Be Dismissed Under The Law Of The Case Doctrine.

The doctrine of the law of the case requires courts to respect prior orders in the same case absent "exceptional circumstances," such as substantially different new evidence or a change in controlling authority. United States v. Rivera-Martinez, 931 F.2d 148, 151 (1st Cir. 1991) (citing

White v. Murtha, 377 F.2d 428, 432 (5th Cir. 1967)).  Under this doctrine, this Court does not need to revisit issues that is has adjudicated previously.  For this reason, this Court does not need to revisit whether IFIN's 2005 guidance is subject to the PSLRA's safe harbor for forward-looking statements -- this Court already has adjudicated that issue.

Specifically, Magistrate Judge Dein recommended the dismissal of Plaintiffs' forward-looking statement claims based on the Company's 2005 guidance because that guidance was protected by the PSLRA's safe harbor provision.  See Report at 34.  Indeed, Magistrate Judge Dein stated unequivocally that the Company's 2005 guidance "is not actionable . . . because it is protected by the PSLRA's safe harbor provision."  Id.  Despite the clear language of Magistrate Judge Dein's Report, Plaintiffs, in their Amended Complaint, once again allege that IFIN's 2005 guidance of 25% growth in EPS was "false and misleading." FAC ¶ 184.

None of Plaintiffs' amended allegations present any new issues relevant to the adjudication of that issue.  See FAC ¶ 323.  Plaintiffs' conclusory assertion that the PSLRA's safe harbor does not apply directly contradicts Magistrate Judge Dein's earlier ruling, as adopted by this Court.  See Report at 34-38.  Similarly, Plaintiffs' additional allegation that the safe harbor cannot apply based on their conclusory statement that the forward-looking statements were made with actual knowledge of their falsity is directly contrary to controlling law, as Magistrate Judge Dein recognized.  See Report at 34-35.  In short, having identified no new facts or change in controlling authority, Plaintiffs' claims based on IFIN's 2005 guidance should be dismissed under the doctrine of the law of the case.

Even if the law of the case doctrine did not apply to this case -- which it does -- Plaintiffs' forward-looking statement claims warrant dismissal for all of the reasons stated in Magistrate Judge Dein's Report and below.

      **B.**     **Plaintiffs' Forward-Looking Statement Claims Based On The Company's 2005 Earnings Guidance Must Be Dismissed Under Rule 12(b)(6).**

Plaintiffs' claims concerning the Company's 2005 earnings guidance must be dismissed because the statement at issue was a forward-looking statement accompanied by meaningful

cautionary language, and is therefore immune from liability under the PSLRA's safe harbor provision. Moreover, as explained more fully below, Section 10(b) claims cannot be based on a mere failure accurately to predict interest rates.

**1.  The Challenged Forward-Looking Statement Is Immune From Liability Under The PSLRA's Safe Harbor Provision.**

Under the PSLRA's safe harbor provision, forward-looking statements, such as earnings estimates, are not actionable under Section 10(b) if they are accompanied by "meaningful cautionary statements identifying important factors that could cause actual results to differ materially" from those predicted. 15 U.S.C. § 78u-5(c)(1), 78u-5(i)(1)(A); see also Baron v. Smith, 380 F.3d 49, 53-54 (1st Cir. 2004) (affirming dismissal of securities claims under PSLRA's safe harbor). In the First Circuit, courts routinely apply the PSLRA's safe harbor, holding that cautionary language shields a defendant company from liability for its routine financial projections. See, e.g., Baron, 380 F.3d at 53-54; see also Carney, 135 F. Supp. 2d at 245-56 (granting motion to dismiss Section 10(b) claims under PSLRA's safe harbor).[8]

Here, Defendants cannot be held liable for the Company's 2005 earnings guidance, as that guidance is immune from liability under the PSLRA's safe harbor. There can be no dispute that the Company's guidance in 2004 respecting its expected diluted EPS for 2005 was a forward-looking statement, and identified as such. See App. 14. In addition, the Company's 2005 earnings guidance was accompanied by "meaningful cautionary language" in the form of a list of potential risks and uncertainties that could cause IFIN's future results to differ materially from the Company's 2005 guidance. Id. That list disclosed the risk of a change in the yield

---

[8] To obtain the protections of the PSLRA's safe harbor, companies do not have to predict the future accurately, but rather they must disclose risks important to their projections. See In re Cytyc Corp. Sec. Litig., No. 02-12399, 2005 WL 3801468, at *21 (D. Mass. Mar. 2, 2005) (citing H.R. Conf. Rep. No. 104-369 at 44 (1995)). Of course, where companies accurately warn investors of a risk that materializes, courts dismiss claims predicated on the company's projection. See, e.g., In re Capstead Mortgage Corp. Sec. Litig., 258 F. Supp. 2d 533, 555 (N.D. Tex. 2003) (dismissing claims, holding that company "adequately warned investors of exactly the [interest rate] risks Plaintiffs contend were not disclosed").

curve, i.e., the relationship between long-term and short-term interest rates, which is exactly the risk that ultimately negatively impacted the Company's financial results:

> This news release contains **forward-looking statements** (statements that are not historical facts). These statements, **such as the Company's statements regarding its current and long term earnings guidance**, are based upon assumptions and estimates that might not be realized and are **subject to risks and uncertainties that could cause actual results to differ materially from those in the forward-looking statements**. Such risks and uncertainties include the performance of global financial markets, **changes in interest rates, changes in the relationship between long-term and short-term interest rates**, . . .

Id. (emphasis added). Moreover, the SEC filings that IFIN incorporated by reference in its press release also warned investors that its operating results were subject to fluctuations in interest rates, which could "adversely affect . . . the earnings produced by [IFIN's] investment and loan portfolios, and thus could adversely affect [IFIN's] operating results." App. 4, 8. See Yellen v. Hake, No. 4:05-cv-00388, 2006 WL 1881205 (S.D. Iowa July 7, 2006) (dismissing claims where press release incorporated by reference warnings in annual report).

Given these indisputable facts, Plaintiffs' claims based on the Company's 2005 earnings guidance must be dismissed. As Magistrate Judge Dein found in her Report, that guidance constituted a forward-looking statement, was identified as such, and was accompanied by meaningful cautionary language. See Report at 34-38. Accordingly, the PSLRA's safe harbor does not permit the statement to form the basis of a Section 10(b) claim.

### 2. Section 10(b) Claims Cannot Be Based On An Alleged Failure Accurately To Predict Interest Rates.

Plaintiffs' guidance claims also must be dismissed because a Section 10(b) claim cannot be based on a failure to predict future events. See Denny v. Barber, 576 F.2d 465, 470 (2d Cir. 1978) ("[F]ailure to [have greater clairvoyance] does not constitute fraud."). More specifically, Section 10(b) claims cannot be based on a failure accurately to predict interest rates. Sheppard v. TCW/DW Term Trust 2000, 938 F. Supp. 171, 178 (S.D.N.Y. 1996) ("Failure to predict a rise in interest rates does not constitute fraud and cannot be the basis for alleging misrepresentations . . . ."). As explained above, IFIN reduced its 2005 earnings growth estimate because interest rates in 2005 moved in historically anomalous ways, which confounded IFIN and all of Wall

Street.  See supra 4-5.  Thus, at its core, this case is about IFIN's failure in December 2004 accurately to predict the extent to which the yield curve would flatten in 2005.  Although IFIN's guidance presumed a flattening of the yield curve in 2005 (FAC ¶ 186), the yield curve ultimately flattened to a far greater degree than IFIN, or the market at large, expected.  IFIN cannot be held liable for failing accurately to predict future interest rate movements.

       **C.**      **Plaintiffs' Forward-Looking Statement Claims Based On The Company's 2005 Earnings Guidance Must Be Dismissed Under The PSLRA And Rule 9(b) Because Plaintiffs Have Failed Adequately To Plead Scienter.**

           **1.**      **Plaintiffs Must Plead Specific Facts Giving Rise To A Strong Inference Of Actual Knowledge.**

Plaintiffs' 2005 guidance claims also must be dismissed because Plaintiffs fail to plead any specific facts giving rise to a strong inference that the Company issued its 25% earnings guidance with actual knowledge that the guidance was false or misleading.  Pursuant to both the PSLRA and Rule 9(b), the Amended Complaint "must, 'with respect to each act or omission alleged to [constitute securities fraud], state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'"  In re Galileo Corp. S'holders Litig., 127 F. Supp. 2d 251, 260 (D. Mass. 2001) (alteration in original) (emphasis added).  In a case predicated on a forward-looking statement, the required state of mind is "actual knowledge."  15 U.S.C. §78 u-5(c)(1)(B)(ii); Greebel, 194 F.3d at 201 (safe harbor precludes liability for forward-looking statement unless maker of statement had actual knowledge it was false or misleading).  Section 10(b) claims must be dismissed where, as here, plaintiffs fail to plead with particularity facts giving rise to a strong inference that the defendant made the forward-looking statement with actual knowledge of its falsity.  See, e.g., In re Advanta Corp. Sec. Litig., 180 F.3d 525, 535-36 (3d Cir. 1999); Stavros v. Exelon Corp., 266 F. Supp. 2d 833, 847 (N.D. Ill. 2003).  As Magistrate Judge Dein noted, quoting the Supreme Court's recent Tellabs decision: "To qualify as 'strong' . . . an inference of scienter must be more than merely plausible or reasonable -- it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  Report at 40 (quoting Tellabs, Inc., 127 S.Ct. at 2510); see also ACA

Fin. Guaranty Corp. v. Advest Inc., --- F.3d ---, 2008 WL 104099 (1st Cir. January 10, 2008) (affirming dismissal of securities fraud claims).

**2.    Plaintiffs Have Failed To Plead Specific Facts<br>Giving Rise To A Strong Inference Of Actual Knowledge.**

Plaintiffs' Section 10(b) claims must be dismissed with respect to IFIN's 2005 earnings guidance because the Amended Complaint fails to satisfy this scienter standard. First, Plaintiffs have failed to plead specific facts giving rise to **any** inference, let alone a strong inference, that any Defendant had "actual knowledge" that IFIN's 2005 guidance was false or misleading. Second, Plaintiffs' motive allegations concerning the Individual Defendants' sales of stock and the Company's bonus plan do not support any inference of scienter, as a matter of law.

**a.    Plaintiffs Fail To Plead Any Specific Facts<br>Supporting A Strong Inference That IFIN's<br>2005 Guidance Was Knowingly False When Made.**

Plaintiffs attempting to establish scienter "typically identify internal reports, memoranda or the like and allege both the contents of those documents and defendant's possession of them at the relevant time." In re Boston Tech., Inc. Sec. Litig., 8 F. Supp. 2d 43, 57 (D. Mass. 1998) (granting motion to dismiss securities fraud complaint). Securities fraud complaints that fail to identify such documents or other contemporaneous facts tending to show that the defendants knew the statements in question were false when made are subject to dismissal. Id.; see also Carney, 135 F. Supp. 2d at 251-52 (dismissing claims where plaintiffs failed to plead specific facts indicating discrepancy between internal company information and public statements).

Here, as in Boston Technology and Carney, Plaintiffs have not pled a single specific contemporaneous fact supporting any inference -- let alone a strong inference -- that any Defendant knowingly misrepresented the Company's expected financial results for 2005. For example, the Amended Complaint is devoid of a single specific fact to support the assertion that, as of December 16, 2004, any Defendant knew: (1) the precise extent to which the yield curve would flatten in 2005; or (2) that the Company's estimates of earnings growth for 2005 would not meet or exceed 25%, which it had for many years. See supra 3.

The best Plaintiffs can do is essentially allege that the Company "must have known" how interest rates would behave in 2005 because, in 2004, Company officers claimed to have "baked" an expected flattening of the yield curve into the Company's earnings projections.  FAC ¶ 186. As noted above, however, lacking clairvoyance, IFIN could only "bake" into its guidance its own best estimate of the degree to which the yield curve would flatten in 2005.  That estimate, like similar estimates made by major financial institutions, proved incorrect.

As discussed above, in 2005 the yield curve flattened to a far greater extent than market participants expected.  See supra 3-5.  Indeed, the most sophisticated financial institutions in the world were stating in mid-2005 that they did not anticipate the extent to which the yield curve would flatten in 2005.  Id.  These disclosures are directly at odds with Plaintiffs' conclusory allegations that Defendants somehow had actual knowledge in December 2004 regarding the extent to which the yield curve would continue to flatten in 2005.  The Amended Complaint lacks a single specific fact to support that conclusory, and absurd, allegation.[9]

Plaintiffs ask this Court to draw a strong inference of scienter based on alleged statements of a confidential witness referred to as "CW1."  FAC ¶ 204.  Courts in the First Circuit carefully scrutinize statements attributed to confidential witnesses, evaluating, among other things, "the level of detail provided by the confidential sources, the corroborative nature of the other facts alleged (including from other sources), the coherence and plausibility of the allegations, the number of sources, the reliability of the sources, and similar indicia."  In re Cabletron Sys., Inc., 311 F.3d 11, 29-30 (1st Cir. 2002).  Where the confidential witness relied upon is not alleged to have been in a position to know the information for which that witness is cited, statements of that

---

[9] Moreover, Plaintiffs' allegations ignore the context in which the Company issued its 2005 guidance.  On December 16, 2004, the Company was nearing the close of one of the most successful periods of growth in its history.  As stated above, its 2004 earnings were over **50%** higher than its 2003 earnings, which had grown **36%** over the prior year.  See infra 23.  In this context, it is hardly surprising that IFIN was comfortable projecting 25% year-over-year growth.

witness cannot support any inference of scienter. <u>Fitzer v. Sec. Dynamics Techs.</u>, 119 F. Supp. 2d 12, 22 (D. Mass. 2000).

As an initial matter, Plaintiffs have failed to allege that CW1 actually was employed by IFIN in December 2004, when the Company issued its 2005 guidance. FAC ¶ 38. Moreover, none of the alleged statements by CW1 or any of the confidential witnesses support any inference, let alone a strong inference, that any Defendant actually knew that the 2005 guidance was false or misleading. Utter speculation by CW1 -- whose employment terminated in **2003** -- concerning what "anyone with half a brain knew" in the months preceding the Company's **July 14, 2005** guidance revision, cannot support any inference of scienter.[10] This allegation is a thinly veiled "must have known" allegation. It is well established, however, that assertions that Defendants "must have known" certain facts cannot support a strong inference of scienter. <u>See, e.g.</u>, <u>Carney</u>, 135 F. Supp. 2d at 252; <u>Galileo</u>, 127 F. Supp. 2d at 261.

In sum, Plaintiffs have failed to offer any specific facts giving rise to a strong inference that any Defendant had actual knowledge that the Company's 2005 earnings guidance was false or misleading. Rather, Plaintiffs rely solely on the very sort of "must have known" allegation that this Court previously has held cannot support a securities fraud claim. <u>Id.</u> For this independent reason, Plaintiffs' 2005 guidance claims must be dismissed.

### b. Plaintiffs' Motive Allegations With Respect To Their 2005 Guidance Claims Do Not Support A Strong Inference Of Scienter.

Where, as here, Plaintiffs fail to plead specific facts supporting a strong inference of scienter, they cannot plead scienter based on "motive and opportunity" allegations alone. <u>Greebel</u>, 194 F.3d at 197. In any event, Plaintiffs' "motive and opportunity" allegations do not

___

[10] To support their allegation that Defendants' July 2005 explanation for their revised guidance was knowingly false, Plaintiffs cite "CW1" for the proposition that "Sylvester would never have uttered such nonsense." FAC ¶ 204. Plaintiffs fail to plead any facts showing CW1 was in a position to know the information for which CW1 is cited. Moreover, sheer speculation about what "Sylvester" allegedly would, or would not, have stated plainly cannot support any inference of scienter against any Defendant.

support any inference of scienter respecting the Company's 2005 earnings guidance because: (1) Plaintiffs have failed to show that the Individual Defendants' stock trading after December 16, 2004 (or at any time during the four-plus year proposed class period) was unusual in timing or amount; and (2) Plaintiffs' allegations that the Individual Defendants stood to benefit from bonus incentives make no sense with respect to Plaintiffs' guidance allegations, as the alleged bonuses were dependant upon actual financial results, not the Company's projections.

### (1) Plaintiffs' Allegations Concerning Defendants' Trading Do Not Give Rise To A Strong Inference Of Scienter.

To support an inference of scienter based on insider trading, a plaintiff must plead facts showing that there was a suspiciously abnormal amount and pattern of trading. See, e.g., Greebel, 194 F.3d at 198, 207 (stating that defendants' trading must be "unusual" and "well-beyond [their] normal patterns of trading"); Carney, 135 F. Supp. 2d at 256 (same). Ordinarily, when plaintiffs accuse a company of issuing misleading earnings guidance, the plaintiffs attempt to show that company officers sold large quantities of stock after the allegedly misleading guidance but before any subsequent downward revision, and that such sales were suspicious or unusual. See, e.g., Limantour v. Cray, Inc., No. CO5-943Z, 2006 WL 1169791, at *15-18 (W.D. Wash. Apr. 28, 2006) (rejecting plaintiffs' attempt to establish scienter based on insider sales after allegedly misleading 2004 guidance).

Measured against these criteria, none of the Individual Defendants' stock sales highlighted in the Amended Complaint support an inference of scienter.[11] Here, Plaintiffs' trading allegations are far weaker than those this Court held wanting in Carney. 135 F. Supp. 2d at 256 (allegations that CEO and CFO sold $3.85 million and $2.6 million in shares in months preceding announcement of earnings miss did not raise strong inference of scienter). Plaintiffs'

---

[11] When considering insider trading allegations, courts take into account both stock and stock options held by insiders. See In re Silicon Graphics Inc., 183 F.3d 970, 986-87 (9th Cir. 1999).

trading allegations do not give rise to any inference of scienter with respect to: (1) the Company's 2005 guidance; or (2) any other challenged statement.

First, as Magistrate Judge Dein previously stressed in her Report: "Plaintiffs' description of Defendants' stock sales during the Class Period undermines any inference of wrongdoing." See Report at 48. Plaintiffs have not alleged any new facts relating to stock trading. Accordingly, the law of the case doctrine applies to those allegations.

Furthermore, even if the law of the case doctrine did not apply, Plaintiffs' trading allegations would remain defective for the same reasons that this Court previously held them wanting. As in their Consolidated Complaint, in their Amended Complaint, Plaintiffs fail to show that any of the Individual Defendants' stock sales after the Company's 2005 guidance were suspicious or unusual. Instead, Plaintiffs merely list all of the Individual Defendants' stock sales during the entire four-plus year proposed class period, and then make conclusory arguments -- given that they have challenged all of IFIN's historical results -- as to why such sales were purportedly suspicious. FAC ¶¶ 287-295. For this reason alone, Plaintiffs' scienter arguments fail. See Carney, 135 F. Supp. 2d at 256 ("[P]laintiffs must show that defendants' trading was 'unusual . . . .'").

Further, unlike in Carney, IFIN's CFO did not sell any Company stock after IFIN issued its allegedly misleading earnings guidance. FAC ¶ 287. This fact undermines severely Plaintiffs' scienter allegations. See In re First Union Corp. Sec. Litig., 128 F. Supp. 2d 871, 899 (W.D.N.C. 2001) (the fact that "many key First Union executives . . . . -- including the Company's Chief Financial Officer -- did not sell a single share . . . is fatal to Plaintiffs' effort to establish scienter through stock sales"); In re Credit Acceptance Corp. Sec. Litig., 50 F. Supp. 2d 662, 677 (E.D. Mich. 1999) ("The fact that [CFO] did not sell any shares during the class period undermines the suggestion that the Defendants engaged in securities fraud . . . .").

In addition, four of the seven Individual Defendants sold no IFIN stock between the issuance of the 2005 earnings guidance and the subsequent July 2005 guidance revision. FAC ¶ 287. Moreover, six of the seven Individual Defendants sold no Company stock in the