UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THE ARCHDIOCESE OF MILWAUKEE SUPPORTING FUND, On Behalf of Plaintiff and All Others Similarly Situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| v. | ) ) | NO. 05-11627-RCL **(Consolidated)** |
| INVESTORS FINANCIAL SERVICES CORP., et al., | ) ) | |
| Defendants. | ) ) ) | |

**UNOPPOSED MOTION FOR LEAVE TO FILE A REPLY
MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS THE FIRST AMENDED CONSOLIDATED COMPLAINT IN ITS ENTIRETY**

Pursuant to this Court's June 26, 2008 Order, Defendants Investors Financial Services

Corp., Kevin J. Sheehan, Michael F. Rogers, John N. Spinney, Jr., Karen C. Keenan, Robert D.

Mancuso, Edmund J. Maroney, and John E. Henry (collectively, "Defendants") hereby

respectfully move for leave to file a reply memorandum of law in support of their Motion to

Dismiss the First Amended Consolidated Complaint In Its Entirety.  A copy of the proposed

reply memorandum Defendants seek leave to file is submitted herewith.  In support of this

motion, Defendants state that their reply memorandum will clarify the legal issues in this case

and assist the Court in its determination of this matter.  Further, Defendants note that Plaintiffs

have already stipulated to a scheduling order providing Defendants the option of submitting a

reply brief in this case.  See Docket. No. 75.  Accordingly, Plaintiffs have no objection to the

relief requested herein.

WHEREFORE, Defendants hereby request that this Court grant them leave to file their

reply memorandum of law.

1

Respectfully submitted,

**INVESTORS FINANCIAL SERVICES CORP., KEVIN J. SHEEHAN, MICHAEL F. ROGERS, JOHN N. SPINNEY, JR., KAREN C. KEENAN, ROBERT D. MANCUSO, EDMUND J. MARONEY AND JOHN E. HENRY**

By their attorneys,

/s/ Jordan D. Hershman
Jordan D. Hershman, BBO #553709
Jason D. Frank, BBO #634985
James P. Lucking, BBO #650588
William R. Harb, BBO #657270
**BINGHAM McCUTCHEN LLP**
One Federal Street
Boston, MA  02110
(617) 951-8000

Dated: July 11, 2008

A/72592510.1/3002803-0000315453

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 11, 2008.

/s/ Jordan D. Hershman

A/72592510.1/3002803-0000315453

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THE ARCHDIOCESE OF MILWAUKEE SUPPORTING FUND, On Behalf of Plaintiff and All Others Similarly Situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| v. | ) ) | NO.  05-11627-RCL **(Consolidated)** |
| INVESTORS FINANCIAL SERVICES CORP., et al., | ) ) ) | |
| Defendants. | ) ) | |

**[PROPOSED] REPLY MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS'MOTION TO DISMISS THE
<u>FIRST AMENDED CONSOLIDATED COMPLAINT IN ITS ENTIRETY</u>**

BINGHAM McCUTCHEN LLP

Jordan D. Hershman, Esq. (BBO #553709)
Jason D. Frank, Esq. (BBO #634985)
James P. Lucking, Esq. (BBO #650588)
William R. Harb, Esq. (BBO #657270)
One Federal Street
Boston, MA 02110
Tel:  (617) 951-8000

Attorneys for Defendants Investors
Financial Services Corp., Kevin J. Sheehan,
Michael F. Rogers, John N. Spinney, Jr.,
Karen C. Keenan, Robert D. Mancuso,
Edmund J. Maroney and John E. Henry

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................. 1

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ..................................................................................................................... 3

I.      PLAINTIFFS FAIL TO PLEAD FRAUD WITH PARTICULARITY ............... 3

II.     PLAINTIFFS FAIL TO STATE ANY FEDERAL SECURITIES FRAUD
       CLAIMS BASED ON THE  FORWARD-LOOKING STATEMENTS
       THEY CHALLENGE ....................................................................................... 4

      A.     Plaintiffs' Forward-Looking Statement Claims Must Be Dismissed
           Under The Law Of The Case Doctrine ..................................................... 4

      B.     Plaintiffs' Forward-Looking Statement Claims Based On The
           Company's 2005 Earnings  Guidance Must Be Dismissed Under
           Rule 12(b)(6) .......................................................................................... 5

           1.     The Challenged Forward-Looking Statement Is Immune
                 From Liability  Under The PSLRA's Safe Harbor Provision ........ 5

           2.     Section 10(b) Claims Cannot Be Based On An Alleged
                 Failure Accurately To Predict Interest Rates ................................ 7

      C.     Plaintiffs' Forward-Looking Statement Claims Based On The
           Company's 2005 Earnings Guidance Must Be Dismissed Under
           The PSLRA And Rule 9(b) Because Plaintiffs Have Failed
           Adequately To Plead Scienter .................................................................. 7

           1.     Plaintiffs Must Plead Specific Facts Giving Rise To A
                 Strong Inference Of Actual Knowledge ........................................ 7

            2.     Plaintiffs Have Failed To Plead Specific Facts Giving Rise
                 To A Strong Inference Of Actual Knowledge ............................... 8

                 a.     Plaintiffs Fail To Plead Any Specific Facts
                      Supporting A Strong Inference That IFIN's  2005
                      Guidance Was Knowingly False When Made .................. 8

                 b.     Plaintiffs' Motive Allegations With Respect To
                      Their 2005 Guidance Claims Do Not Support A
                      Strong Inference Of Scienter ......................................... 10

                    (1)    Plaintiffs' Allegations Concerning
                           Defendants' Trading Do Not Give Rise To
                             A Strong Inference Of Scienter .......................... 10

                    (2)    Plaintiffs' Allegations Concerning
                             Defendants' Bonus Plans Do Not  Give Rise
                             To A Strong Inference Of Scienter ..................... 11

      D.     Plaintiffs' Claims Based On IFIN's 2004 Guidance Also Must Be
            Dismissed Under Rule 12(b)(6), The PSLRA, And Rule 9(b) ............... 11

III.    PLAINTIFFS FAIL TO STATE ANY FEDERAL SECURITIES FRAUD
       CLAIMS BASED ON THE HISTORICAL FINANCIAL RESULTS
       THAT THEY CHALLENGE ........................................................................ 12

      A.     Plaintiffs' Financial Disclosure  Claims Relating To IFIN's
           Restatement  Of Its Historical Financial Results Must Be
           Dismissed ............................................................................................. 12

1.  Plaintiffs' Restatement-Related Claims Must Be Dismissed Under The Law Of The Case Doctrine ........................................ 12

2.  Plaintiffs' Restatement-Related Claims Must Be Dismissed Under The PSLRA And Rule 9(b) ................................................ 14

   a.  Plaintiffs Fail To Plead Any Specific Facts Supporting A Strong Inference That Any Financial Disclosure Was Knowingly False When Made .............. 14

   b.  Plaintiffs' Motive Allegations Do Not Support Any Inference Of Scienter .................................................... 15

B.  Plaintiffs' Financial Disclosure Claims Relating To IFIN's SBA Securities Must Be Dismissed. ................................................ 15

1.  Plaintiffs' SBA Security-Related Claims Must Be Dismissed Under The Law Of The Case Doctrine ..................... 15

2.  Plaintiffs' SBA Security-Related Claims Must Be Dismissed Under The PSLRA And Rule 9(b) ............................ 18

   a.  Plaintiffs Fail To Plead Loss Causation Respecting Their SBA Security-Related Allegations ......................... 18

   b.  Plaintiffs Fail To Plead Specific Facts Regarding The Company's SBA Securities Establishing That Any Financial Disclosure Was False Or Misleading. ...... 20

      (1)  Plaintiffs Fail To Plead Specific Facts Showing That The Company Misclassified Its SBA Securities Or "Certain" Of Its MBS Securities ........................................................... 20

      (2)  Plaintiffs Fail To Plead Specific Facts Showing That The Company Was Required To Write Down The Value Of Its SBA Portfolio .................................................... 23

   c.  Plaintiffs Fail Adequately To Plead Scienter Respecting Their SBA Security-Related Allegations ...... 24

CONCLUSION .................................................................................................... 24

ii

# TABLE OF AUTHORITIES

## FEDERAL CASES

Aldridge v. A.T. Cross, 284 F.3d 72 (1st Cir. 2002) ....................................................20, 21

Asher v. Baxter International, Inc., 377 F.3d 727 (7th Cir. 2004)......................................6

Baron v. Smith, 380 F.3d 49 (1st Cir. 2004) ..................................................................5, 6

In re Boston Tech., Inc. Sec. Litig., 8 F. Supp. 2d 43 (D. Mass. 1998)..............................8

In re Cabletron System, Inc., 311 F.3d 11 (1st Cir. 2002).........................................20, 21

Carney v. Cambridge Tech. Partners, 135 F. Supp. 2d 235 (D. Mass. 2001)..............12, 25

Dura Pharms., Inc. v. Broudo, 544 U.S. 336 (2005).....................................................17, 18

Ezra Charitable Trust v. Tyco International, Ltd., 466 F.3d 1 (1st Cir. 2006) ............3, 4, 6

In re Galileo Corp. S'holders Litig., 127 F. Supp. 2d 251 (D. Mass. 2001) .......................7

Greebel v. FTP Software, Inc., 194 F.3d 185 (1st Cir. 1999)..................................3, 10, 21

Harris v. Ivax Corp., 182 F.3d 799 (11th Cir. 1999) ..........................................................6

Makor Issues & Rights, Ltd. v. Tellabs, Inc., 513 F.3d 702 (7th Cir. 2008) ......................9

Nursing Home Pension Fund, Local 144 v. Oracle Corp.,
    380 F.3d 1226 (9th Cir. 2004) ....................................................................................10

Sheppard v. TCW/DW Term Trust 2000, 938 F. Supp. 171 (S.D.N.Y. 1996)....................7

In re Stone & Webster, Inc. Sec. Litig., 414 F.3d 187 (1st Cir. 2005) ...............................6

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499 (2007) ...............................8

United States v. Moran, 393 F.3d 1 (1st Cir. 2004)...........................................................12

United States v. Rivera-Martinez, 93 F.2d 148 (1st Cir 1991)...........................................5

## STATE CASES

Haesler v. Novartis Consumer Health, Inc., No. 05-372 (JAG), 2006 WL
    2689830 (D.N.J. Sept. 18, 2006) .............................................................................1, 5

# FEDERAL STATUTES

15 U.S.C. §78 u-5(c)(1)(B)(ii) ............................................................................8

A/72516824.6

**INTRODUCTION**

Defendants Investors Financial Services Corp. ("IFIN" or the "Company"), Kevin J. Sheehan, Michael F. Rogers, John N. Spinney, Jr., Karen C. Keenan, Robert D. Mancuso, Edmund J. Maroney, and John E. Henry (collectively, the "Individual Defendants") submit this Reply Memorandum of Law in Support of their Motion to Dismiss the First Amended Consolidated Complaint (the "Amended Complaint" or "FAC") in its entirety, with prejudice.[1]

**PRELIMINARY STATEMENT**

Plaintiffs appear to have confused this Court's grant of a leave to file an amended complaint with an invitation to file a motion for reconsideration. When a court grants a plaintiff leave to amend, however, it is not extending to the plaintiff an invitation to re-allege the very same facts and to reassert the very same legal arguments that the court previously considered and rejected. See Haesler v. Novartis Consumer Health, Inc., No. 05-372 (JAG), 2006 WL 2689830, at *7 (D.N.J. Sept. 18, 2006) (dismissing amended complaint filed after leave to replead had been granted, holding that because plaintiff "failed to change these claims in any way so as to make them valid claims for relief," then "[u]nder the law of the case, these claims must be dismissed."). Nonetheless, that is precisely what Plaintiffs have impermissibly done here. Plaintiffs do not -- because they cannot -- identify any **new** allegations in their Amended Complaint that cure the defects that led to the dismissal of their last Complaint. That failure dictates the grant of this, second, motion to dismiss.

Plaintiffs' Opposition Brief is most notable for the extent to which it reargues the exact same points that this Court previously rejected. As Defendants noted in their moving brief ("Moving Brief" or "MB"), on July 31, 2007, Magistrate Judge Dein issued a 57-page Report and Recommendation recommending the grant of Defendants' motion to dismiss Plaintiffs' prior Complaint (the "Report"), which Judge Lindsay ultimately endorsed. MB 1. In that Report,

---

[1] Although Plaintiffs style their most recent complaint as the "First" Amended Complaint, the docket evidences that Plaintiffs have amended their complaint on prior occasions. See Dkt. No. 27 ("Lead Plaintiffs' [Corrected] Consolidated Amended Complaint").

1

Magistrate Judge Dein summarized the findings that dictated the dismissal of Plaintiffs' Section

10(b) claims as follows:

> In particular, but without limitation, this court finds that earnings projections either were not false in that, even as restated, the Company met projections, or constitute forward-looking statements which are protected by the safe harbor provisions of the PSLRA.  In addition, the Plaintiffs have failed to allege sufficient facts to support their claim that the Defendants acted with the requisite state of mind when they made statements regarding Investors Financial's historical financial results.  This court also finds that the claims relating to the Company's SBA loan portfolio must fail since the Plaintiffs have failed to plead loss causation.

Report 3-4.

In their Opposition Brief, Plaintiffs' fail to point to any **new** allegations that cure any of

these fatal defects in their case.  As Defendants stressed in their Moving Brief -- and Plaintiffs do

not contest in their Opposition -- the only new allegations in the Amended Complaint relate to an

issue that the Court previously did not even reach, <u>i.e.</u>, whether Plaintiffs had adequately pled

any GAAP violation relating to IFIN's accounting for its SBA securities.  The Amended

Complaint now asserts that IFIN incorrectly, and fraudulently, accounted for its SBA securities

as "Held-to-Maturity" ("HTM") securities.  As Plaintiffs fail to counter, those new allegations

cannot save Plaintiffs' SBA securities related claims, because they do not cure the defect that led

this Court to dismiss those claims, <u>i.e.</u>, Plaintiffs' failure adequately to please loss causation

respecting those claims.

Perhaps for that reason, Plaintiffs include in their Opposition Brief only **two conclusory**

**sentences** relating to their new HTM allegations.  OB 16, 23.  Neither sentence explains how

those scant new allegations could possibly save Plaintiffs' SBA-related claims, as they cannot do

so.  In their Moving Brief, Defendants explain precisely why those new allegations are legally

weightless.  MB 36-39.  Plaintiffs offer **no response** to these arguments: None.

Instead, other than repeating arguments that this Court previously rejected, Plaintiffs

devote the remainder of their Opposition to countering an argument that Defendants have never

made.  Defendants have **never** argued that Plaintiffs' restatement-related claims, or that their

2

2005 missed projection claims, fail for lack of loss causation. Rather, Defendants have focused their loss causation argument solely on Plaintiffs' **SBA securities claims**. Likewise, this Court's prior ruling on loss causation also relates **solely** to Plaintiffs' SBA securities claims. See Report 52-55.

Nonetheless, for reasons that remain unclear, Plaintiffs' Opposition Brief maintains that the Amended Complaint adequately pleads loss causation respecting Plaintiffs' restatement-related claims, and respecting their 2005 missed projection claims (OB 33-34), even though Defendants do not contend otherwise. Crucially, however, Plaintiffs do not point to any new fact in the Amended Complaint that bolsters their defectively pled loss causation allegations **respecting their SBA related claims**. Those are the only allegations relevant to the one loss causation issue on which this Court previously ruled. Accordingly, none of Plaintiffs' arguments addressing loss causation can save any claim in this case.

For these and other reasons discussed below, the Amended Complaint should be dismissed in its entirety, with prejudice.

## ARGUMENT

## I.    PLAINTIFFS FAIL TO PLEAD FRAUD WITH PARTICULARITY.

The law in this Circuit is clear:

> Under the PSLRA, the complaint must first provide **detailed pleading** about **each** of the statements challenged, including factual allegations illustrating precisely why **the** challenged statement is misleading. The PSLRA also requires the complaint to plead **particular facts that give rise to a strong (rather than merely reasonable) inference of scienter**. **This alters the usual Rule 12(b)(6) standard**, in that while the "court continues to give all reasonable inferences to plaintiffs, those inferences supporting scienter must be strong ones."

Ezra Charitable Trust v. Tyco Int'l, Ltd., 466 F.3d 1, 6 (1st Cir. 2006) ("Tyco") (internal citations and footnotes omitted) (emphasis added); see also Greebel v. FTP Software, Inc., 194 F.3d 185, 195-96 & n.9 (1st Cir. 1999) (PSLRA changed standard of review under Fed. R. Civ. P. 12(b)(6) as set forth in Conley v. Gibson).

In this case, Plaintiffs have failed to satisfy these pleading standards. Plaintiffs' Amended Complaint fails to contain "detailed pleading" about "each" challenged statement, illustrating "precisely why **the** challenged statement is misleading." Tyco, 466 F.3d at 6 (emphasis added). That is particularly true with respect to Plaintiffs' SBA-related allegations. Neither their Opposition Brief nor, more importantly, the Amended Complaint explains how **any one specific disclosure** relating to SBA loans, for **any specific financial period**, was false, by how much, and why. Likewise, the Amended Complaint fails to plead **any specific facts** supporting scienter allegations against any Defendant respecting any **specific** disclosure for any financial period -- about SBA loans or any other matter. That failure is also fatal to Plaintiffs' case. For the additional reasons set forth below, none of Plaintiffs' claims based on: (1) forward-looking statements; or (2) allegedly false financial statements should survive this motion to dismiss.

## II.    PLAINTIFFS FAIL TO STATE ANY FEDERAL SECURITIES FRAUD CLAIMS BASED ON THE FORWARD-LOOKING STATEMENTS THEY CHALLENGE.

### A.    Plaintiffs' Forward-Looking Statement Claims Must Be Dismissed Under The Law Of The Case Doctrine.

As explained in Defendants' Moving Brief, under the law of the case doctrine, this Court need not revisit issues that it has adjudicated previously. MB 9-10. For this reason, this Court need not revisit whether IFIN's 2005 guidance is subject to the PSLRA's safe-harbor for forward-looking statements because this Court has already adjudicated that issue, holding unequivocally that the Company's 2005 guidance "is not actionable … because it is protected by the PSLRA's safe harbor provision." Report 34.

In their Opposition Brief, Plaintiffs argue that the law of the case doctrine does not apply to this Court's order dismissing their Consolidated Complaint because a "**denial**[] of a motion to dismiss" is an "interlocutory order," which is not subject to the law of the case doctrine. OB 11. (emphasis added). Plaintiffs' argument fails because, as Plaintiffs are well aware, this Court **granted** Defendants' first motion to dismiss. There was nothing "interlocutory" about that

dismissal.   Plaintiffs have not cited -- because they cannot cite -- any authority for the proposition that an order **granting** a motion to dismiss is interlocutory or otherwise not subject to the law of the case doctrine.

As Defendants' Moving Brief explains, the law of the case doctrine requires courts to respect prior orders in the same case absent "exceptional circumstances," such as substantially different or new evidence or a change in controlling authority.  MB 9-10 (citing United States v. Rivera-Martinez, 93 F.2d 148, 151 (1st Cir 1991)).   As explained above and in Defendants' Moving Brief, Plaintiffs' Amended Complaint includes **no particularized facts** -- let alone **new** particularized facts -- that would render this case as an "exceptional circumstance[]." Accordingly, the law of the case doctrine applies to this case.  This Court, therefore, need not revisit whether IFIN's 2005 guidance is protected by the PSLRA's safe harbor provision. Haesler v. Novartis Consumer Health, Inc., No. 05-372 (JAG), 2006 WL 2689830, at *7 (D.N.J. Sept. 18, 2006) (dismissing claims under law of the case doctrine where plaintiffs were granted leave to amend but failed sufficiently to change claims to withstand motion to dismiss).

Nonetheless, as discussed below, even if the law of the case doctrine did not apply to this case -- which it does -- Plaintiffs' forward-looking statement claims warrant dismissal for all of the reasons stated in Magistrate Judge Dein's Report and Defendants' Moving Brief.

> **B.    Plaintiffs' Forward-Looking Statement
> Claims Based On The Company's 2005 Earnings
> Guidance Must Be Dismissed Under Rule 12(b)(6).**
>
> > **1.    The Challenged Forward-Looking
> > Statement Is Immune From Liability
> > Under The PSLRA's Safe Harbor Provision.**

Under the PSLRA's safe harbor provision, forward-looking statements, such as earnings estimates, are not actionable, as a matter of law, if they are identified as such and accompanied by meaningful cautionary language.  MB 11 (citing Baron v. Smith, 380 F.3d 49, 53-54 (1st Cir. 2004) (affirming grant of motion to dismiss securities fraud claims under PSLRA's safe harbor provision)).  Baron controls on this point, and Plaintiffs utterly ignore Baron.  In their Opposition Brief, Plaintiffs argue that a forward-looking statement does not receive safe harbor protection if

it is knowingly false.  OB 28, 31.  As the First Circuit has held, however, a forward-looking statement receives safe harbor protection if it is accompanied by meaningful cautionary language, **regardless of the defendant's state of mind**.  In re Stone & Webster, Inc. Sec. Litig., 414 F.3d 187, 212 (1st Cir. 2005) ("the maker of knowingly false … forward-looking statements … escapes liability for fraud if the statement is identified as a forward-looking statement and [was] accompanied by meaningful cautionary statements") (citations omitted).  As Magistrate Judge Dein recognized, "if a statement is accompanied by meaningful cautionary language, the **defendants' state of mind is irrelevant**."  Report 35 (citing Harris v. Ivax Corp., 182 F.3d 799, 803 (11th Cir. 1999).[2]

In their Opposition Brief, Plaintiffs do not point to any new facts in their Amended Complaint that could possibly cure the legal defect on which this Court premised its prior safe harbor rulings.  Instead, Plaintiffs impermissibly reargue, yet again, that the adequacy of Defendants' risk disclosures cannot be decided as a matter of law at the pleading stage.  OB 30. Plaintiffs' argument again is contrary to controlling law in this Circuit.  See Baron, 380 F.3d at 53-54 (affirming dismissal of securities claims, as a matter of law, where, as here, forward-looking statements were accompanied by meaningful cautionary language); see also Tyco, 466 F.3d at 8 (affirming dismissal where, as here, defendant company warned of exact risk that ultimately materialized).  In fact, this Court already has dismissed this case at the pleading stage under the PSLRA's safe harbor provision.  See Report 34-38.  Even if that argument did not conflict with the law in this Circuit -- which it does -- the one case cited by Plaintiffs on this point is readily distinguishable.[3]

---

[2] Plaintiffs' argument fails for the additional reason that Plaintiffs have failed to allege any specific facts supporting a strong inference that any Defendant had actual knowledge that any forward-looking statement was false.  See infra 8-10.

[3] See Asher v. Baxter Int'l, Inc., 377 F.3d 727, 734 (7th Cir. 2004) (reversing dismissal under PSLRA's safe harbor where cautionary language mentioned none of risks that came to pass and record did not support that cautionary language included important risks).

In sum, Plaintiffs' claims based on IFIN's 2005 guidance must be dismissed pursuant to the PSLRA's safe harbor for forward-looking statements, as a matter of law.

### 2. Section 10(b) Claims Cannot Be Based On An Alleged Failure Accurately To Predict Interest Rates.

In their Opposition Brief, Plaintiffs make no effort to respond to the argument that their guidance claims must also be dismissed because a Section 10(b) claim cannot be based on a failure accurately to predict interest rates. MB 12-13 (citing Sheppard v. TCW/DW Term Trust 2000, 938 F. Supp. 171, 178 (S.D.N.Y. 1996) ("Failure to predict a rise in interest rates does not constitute fraud and cannot be the basis for alleging misrepresentations or omissions of material facts.")). As explained above and in IFIN's Moving Brief, IFIN reduced its earnings growth estimate because interest rates in 2005 moved in historically anomalous ways, leading to a flatter-than-expected yield curve. As Plaintiffs do not contest, IFIN cannot be held liable for failing accurately to predict the extent to which the interest rate yield curve would flatten in 2005.

### C. Plaintiffs' Forward-Looking Statement Claims Based On The Company's 2005 Earnings Guidance Must Be Dismissed Under The PSLRA And Rule 9(b) Because Plaintiffs Have Failed Adequately To Plead Scienter.

Plaintiffs' 2005 guidance claims also must be dismissed for the separate and independent reason that Plaintiffs fail to plead specific facts giving rise to any inference, let alone a strong inference, that any Defendant had "actual knowledge" that IFIN's earnings projections were false or misleading. Moreover, Plaintiffs' motive allegations fail to support any such inference as a matter of law.

### 1. Plaintiffs Must Plead Specific Facts Giving Rise To A Strong Inference Of Actual Knowledge.

In Plaintiffs' Opposition Brief, Plaintiffs do not dispute that, pursuant to both the PSLRA and Rule 9(b), the Amended Complaint "must 'with respect to each act or omission alleged to [constitute securities fraud], state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" MB 13 (citing In re Galileo Corp. S'holders Litig., 127 F. Supp. 2d 251, 260 (D. Mass. 2001) (alteration in original) (emphasis added)).

7

Plaintiffs also do not dispute that, in a case predicated on a forward-looking statement, the required state of mind is "actual knowledge." MB 13 (citing 15 U.S.C. §78 u-5(c)(1)(B)(ii); <u>Greebel</u>, 194 F.3d at 201 (safe harbor precludes liability for forward-looking statement unless maker of statement had actual knowledge it was false or misleading)). As Magistrate Judge Dein noted, quoting the Supreme Court's recent <u>Tellabs</u> decision: "To qualify as 'strong' … an inference of scienter must be more than merely plausible or reasonable -- it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Report 40 (quoting <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 127 S.Ct. 2499, 2510 (2007)).

### 2. Plaintiffs Have Failed To Plead Specific Facts Giving Rise To A Strong Inference Of Actual Knowledge.

#### a. Plaintiffs Fail To Plead Any Specific Facts Supporting A Strong Inference That IFIN's 2005 Guidance Was Knowingly False When Made.

In Plaintiffs' Opposition Brief, they fail to point to **any specific fact** in their Amended Complaint -- let alone any **new** fact in their Amended Complaint -- supporting a strong inference that any Defendant had "actual knowledge" that IFIN's 2005 guidance was false when made. Plaintiffs fail to allege even **one specific fact** supporting a strong inference of scienter: not one specific document, or meeting, or conversation supporting any inference that **any** Defendant allegedly knew that IFIN's 2005 guidance lacked a good faith basis when issued.

Accordingly, Plaintiffs are left to resort solely to their prior -- and previously rejected -- argument that the Defendants somehow **must have known** that the guidance was false when made. In this Circuit, allegations about what any defendant "must have known" cannot give rise to a strong inference of scienter, as a matter of law. <u>In re Boston Tech., Inc. Sec. Litig.</u>, 8 F. Supp. 2d 43, 53 (D. Mass. 1998) ("[T]here is no liability where a plaintiff's claim rests on the assumption that defendants 'must have known of the severity of their problems earlier because conditions became so bad later on.'") (citations omitted). For example, Plaintiffs allege that "defendants [had] knowledge of the prepayments," because "CW1 expressly told defendant Spinney that the unamortized premiums of the SBA bonds were at risk if they prepaid,[ ] and that

risk materialized in 2002-2003." OB 5. From these vague allegations that some portion of the Company's SBA portfolio experienced prepayments in **2002** and **2003**, Plaintiffs ask this Court to draw the inference that the Defendants must have known that the Company's **2005** guidance, issued in **December 2004**, was false when made. That requested inference is not even reasonable, let alone strong.

Further, Plaintiffs' suggestion that Defendants acted with scienter based on their repeated allegation that Defendants had "actual knowledge of prepayments" (e.g., OB 22) is a non-sequitur. This Court previously held that these very allegations were defective. As it stated:

> The record is clear that the Defendants did disclose the amount of prepayments on the Company's cash flow statements during every financial reporting period, and Defendants do not deny that they were aware of prepayments. The record is also clear that the risks of prepayments were detailed in the SEC filings . . . . Thus, the record does not support the Plaintiffs' claim that that the Company failed to disclose the risks of prepayment.

Report 30-31 (record citations omitted).

More particularly, as the Amended Complaint itself acknowledges, IFIN executives did not conceal that they had knowledge of prepayments; they plainly disclosed that loans were routinely prepaid at rates that varied based on prevailing market conditions. See FAC ¶ 170 ("Included in our guidance is and has always been a forecast of SBAs running at industry prepayment speeds."). In fact, IFIN regularly disclosed both: (1) the risk of increased prepayments; and (2) the actual amount of loan prepayments each quarter. Specifically, IFIN disclosed "paydowns," i.e., loan prepayments, on its cash flow statements during every financial reporting period in question. See, e.g., App. 4 at 6, 8 at 10, and 9 at F-6. Not only did IFIN disclose the amount of prepayments, but it also expressly mentioned that it had experienced prepayments in its SEC filings.[4] See, e.g., App. 5 at 47; App. 4 at 43; App. 9 at 37-38.

---

[4] Given the fact that Defendants plainly disclosed the allegedly concealed information about loan prepayments, the cases Plaintiffs cite to support their scienter allegations, even if they reflected the law in the First Circuit -- which they do not -- are inapposite. Makor Issues & Rights, Ltd. v. Tellabs, Inc., 513 F.3d 702, 706 (7th Cir. 2008) (inferring scienter where company failed to disclose that it had flooded

(Footnote Continued on Next Page.)

Plaintiffs do not contest the accuracy of any of these disclosures. Furthermore, these publicly reported loan prepayments did not prevent IFIN from experiencing growth in excess of 25% during 2001, 2002, 2003 or 2004. Thus, Plaintiffs' confusing allegations about loan prepayments do not support any inference of scienter respecting their 2005 guidance claims (or, as discussed below, any of their other claims).

### b. Plaintiffs' Motive Allegations With Respect To Their 2005 Guidance Claims Do Not Support A Strong Inference Of Scienter.

In their Opposition Brief, Plaintiffs do not contest that, where a plaintiff fails to plead specific facts supporting a strong inference of scienter, he cannot plead scienter based on "motive and opportunity" allegations alone. MB 16 (citing Greebel, 194 F.3d at 197). In any event, Plaintiff's "motive and opportunity" allegations in this case are deficient.

### (1) Plaintiffs' Allegations Concerning Defendants' Trading Do Not Give Rise To A Strong Inference Of Scienter.

As Magistrate Judge Dein previously stressed in her Report: "Plaintiffs' description of Defendants' stock sales during the Class Period undermines any inference of wrongdoing." Report 48. Plaintiffs have not alleged any **new facts** relating to stock trading. Accordingly, the law of the case doctrine prevents the relitigation of these issues. See supra 4-5. Even if the law of the case doctrine did not apply, Plaintiffs' allegations concerning Defendants' trading still fail for the reasons set forth in Defendants' Moving Brief (MB 17-22) and in Magistrate Judge Dein's Report. Report 47-50.[5]

---

(Footnote Continued from Previous Page.)

customers with unwanted products to boost demand and support growth projections); Nursing Home Pension Fund, Local 144 v. Oracle Corp., 380 F.3d 1226, 1232 (9th Cir. 2004) (inferring scienter where, inter alia, individual defendant's insider trading was suspiciously "inconsistent with his prior trading history," and defendant personally admitted heavy involvement with business transactions at issue) (OB 23).

[5] As Defendants previously explained in their reply memorandum in support of their motion to dismiss Plaintiffs' earlier Consolidated Complaint [Dkt. No. 58, pg. 13 n.13], Plaintiffs' argument that Rule 10b5-1 trading plans cannot be considered on a motion to dismiss because Rule 10b5-1 establishes an affirmative defense for insider trading (OB 26) is based on a misunderstanding of Plaintiffs' claims.

(Footnote Continued on Next Page.)

**(2)     Plaintiffs' Allegations Concerning
Defendants' Bonus Plans Do Not
Give Rise To A Strong Inference Of Scienter.**

As for Plaintiffs' bonus compensation allegations, Plaintiffs again fail to point to any **new** facts that they have alleged that would save the bonus compensation allegations that this Court previously held did not give rise to a strong inference of scienter. Report 50-51. Further, they still fail to explain how incentive-based bonuses could possibly serve as a motive for artificially inflating the Company's earnings **projections**. While Plaintiffs have alleged that bonus compensation was tied to **financial performance**, FAC ¶ 278, nowhere do Plaintiffs allege that the Individual Defendants' compensation was in any way tied to its earnings **projections**. The bonus structure would thus not provide to IFIN executives any motive for deliberately misstating 2005 **guidance**.

**D.     Plaintiffs' Claims Based On IFIN's 2004 Guidance Also Must
Be Dismissed Under Rule 12(b)(6), The PSLRA, And Rule 9(b).**

As outlined in Defendants' Moving Brief, although the essence of Plaintiffs' guidance claim focuses on the Company's 2005 earnings guidance, Plaintiffs also allege in their Amended Complaint that the Company's 25% earnings guidance for 2004 was false and misleading because IFIN failed to disclose that it had accounted for its interest income by using the prospective method. MB 23. Plaintiffs' claims must be dismissed for the simple reason that IFIN exceeded its 25% earnings growth projections in 2004 **irrespective** of whether it was using the prospective or retrospective method of accounting. See id. Those claims must also be dismissed for the same reasons that their 2005 guidance claims fail. See id. As Magistrate Judge Dein found, as a matter of law, a company's earnings guidance that is later proven to be accurate

---

(Footnote Continued from Previous Page.)

Here, Plaintiffs have not asserted claims against the Individual Defendants for engaging in insider trading. Rather, Plaintiffs have alleged that Defendants knowingly made false statements in violation of Section 10(b) of the 1934 Act. In an attempt to buttress their allegations of scienter, Plaintiffs have included allegations (not claims) of insider trading. In their Moving Brief, Defendants cite authorities that explain that Rule 10b5-1 trading plans are judicially noticeable facts that undermine any inference of scienter based on trades made in accordance with those plans. MB 19 n.12. Plaintiffs do not even attempt to address those authorities.

11

is not actionable.  Report 32-33 (citing <u>Carney v. Cambridge Tech. Partners</u>, 135 F. Supp. 2d 235, 245 (D. Mass. 2001)).

Plaintiffs do not, because they cannot, offer any valid response to these arguments. Plaintiffs' claims based on the Company's 2004 guidance must therefore be dismissed as well.

### III.    PLAINTIFFS FAIL TO STATE ANY FEDERAL SECURITIES FRAUD CLAIMS BASED ON THE HISTORICAL FINANCIAL RESULTS THAT THEY CHALLENGE.

Plaintiffs' Opposition Brief fails entirely to respond to the myriad arguments in Defendants' Moving Brief that support the dismissal of Plaintiffs' claims based on IFIN's historical financial results.   Instead, Plaintiffs merely recite the Amended Complaint's conclusory allegations, all of which Magistrate Judge Dein previously held to be insufficient to support a claim for securities fraud.  Report 38-51.  Therefore, for the reasons discussed below, and for all of the reasons discussed in Defendants' Moving Brief and Magistrate Judge Dein's Report, Plaintiffs' Financial Disclosure Claims must be dismissed pursuant to the law of the case doctrine, the PSLRA and Rule 9(b), and Rule 12(b)(6).

#### A.    Plaintiffs' Financial Disclosure Claims Relating To IFIN's Restatement Of Its Historical Financial Results Must Be Dismissed.

##### 1.    Plaintiffs' Restatement-Related Claims Must Be Dismissed Under The Law Of The Case Doctrine.

As discussed above, Plaintiffs' argument that the law of the case doctrine does not apply to this Court's grant of Defendants' Motion to Dismiss is fallacious.  <u>See</u> <u>supra</u> at 4-5.  As Defendants detail in their Moving Brief, Plaintiffs' Amended Complaint contains the same defective restatement-related allegations that Plaintiffs included in their Consolidated Complaint. MB 24-26.  This Court rejected those claims when it adopted Magistrate Judge Dein's Report. In their Opposition Brief, as in their Amended Complaint, Plaintiffs fail to present any **new** facts, or cite to a change in controlling authority, as they must under controlling First Circuit law.  <u>See,</u> <u>e.g.</u>, <u>United States v. Moran</u>, 393 F.3d 1, 7 (1st Cir. 2004) (law of the case doctrine requires courts to respect prior orders in the same case absent exceptional circumstances, such as new

A/72516824.6

evidence or a change in controlling authority).  Accordingly, this Court should dismiss Plaintiffs'

restatement-related claims under the law of the case doctrine.

In their Opposition Brief, Plaintiffs present the same insufficient arguments and

allegations in support of their restatement-related allegations that Magistrate Judge Dein rejected

in her Report.  Specifically, Plaintiffs' Opposition Brief offers the following "facts" to support

the Plaintiffs' conclusory allegation that Defendants acted with the requisite level of scienter:

- "Defendants' knowledge of Investors Financial's true financial condition was gained, in part, through **participation** in the Company's twice monthly **ALCO meetings** . . . .  Defendants Sheehan, Rogers, Spinney and Keenan served at various times on ALCO and not only had access to, but reviewed the Company's investments."  OB 22 (citations omitted) (emphasis added).

- "[G]iven the importance of **managing and monitoring IFIN's investments**, there is **little doubt** that defendants **would be** and were aware of the status of those investments and the impact of prepayments." OB 22 (emphasis added).

- "IBT was a '**dictatorship of two partners**' (CW1) and . . . Sheenan and Spinney 'called the shots' concerning IBT's operations (CW3).  OB 23 (emphasis added).

- "Sheehan was the 'architect' of the SBA bond investment program and understood the marketplace **because of his experience as a former executive with the Bank of England** . . . ."  OB 23 (emphasis added).

Magistrate Judge Dein held these exact same allegations to be insufficient to give rise to a strong

inference of scienter.  As she stated:

> Further compounding these fundamental weaknesses in Plaintiffs' theory of liability is the Plaintiffs' failure to state with **any degree of specificity** the underlying facts, as opposed to **generalized assertions** or **conclusory allegations**, necessary to support a strong inference that the Defendants acted with an intent to deceive or defraud . . . .  In particular the Plaintiffs have not set forth **specific details** describing what the Defendants knew and when they knew it.  Instead, the Plaintiffs allege that the Defendants **must** be deemed to have acted with scienter by virtue of their **backgrounds**, their **status as members of upper management** in the Company, their **participation in ALCO meetings**, their **receipt of financial information**, and their **control over the Company's financial statements** . . . .   [T]hese allegations, even when viewed in combination, are insufficient to support such an inference.

Report 41 (emphasis added).

Magistrate Judge Dein's Report applies with equal force to claims that Plaintiffs have recycled in the Amended Complaint. Magistrate Judge Dein ruled, unequivocally, that Plaintiffs' reliance upon Defendants' "backgrounds," "status as members of upper management," and "participation in ALCO meetings" is insufficient to support a strong inference of scienter. **That holding is the law of this case**, which must be followed absent new facts or exceptional circumstances. See supra at 4-5. Plaintiffs do not -- because they cannot -- offer any meaningful response to this fact.

Not to be deterred by controlling law and precedent, Plaintiffs cling to their defective allegations, hoping that re-fielding them in an amended complaint will yield a different result. Indeed, Plaintiffs, in their Opposition Brief, make no attempt to explain how the scienter allegations in their Amended Complaint differ from the allegations in their Original Complaint. There is no difference. Compare FAC ¶¶ 7, 12, 14, 33, 34, 65, 207, 208 & 210-225, with CC ¶¶ 5-8, 20, 28, 30, 70, 73-76, 89, 202 & 231-236. Thus, Plaintiffs' restatement-related allegations must be dismissed pursuant to the law of the case doctrine.

Putting aside the fact that the law of the case doctrine mandates dismissal of Plaintiffs' restatement-related claims, those claims should also be dismissed for all of the additional reasons stated in Defendants' Moving Brief, which, as discussed below, Plaintiffs have also failed to address in their Opposition Brief.

2.       **Plaintiffs' Restatement-Related Claims Must Be Dismissed Under The PSLRA And Rule 9(b).**

a.       **Plaintiffs Fail To Plead Any Specific Facts Supporting A Strong Inference That Any Financial Disclosure Was Knowingly False When Made.**

The Opposition Brief fails to identify a **single specific fact** -- let alone a single **new** fact -- pled in the Amended Complaint supporting a strong inference that any Defendant acted with scienter. Indeed, in their the Amended Complaint, Plaintiffs failed to include any **new** facts concerning Defendants' alleged scienter, relying instead on those allegations already considered

14

and rejected by Magistrate Judge Dein.  Report 39.  As before, the Amended Complaint seeks to plead scienter solely by alleging the mere fact of the restatement; the former employment of an executive, and that four of the Individual Defendants allegedly attended twice monthly meetings of IFIN's Asset and Liability Committee.  For the reasons set forth in Defendants' Moving Brief (MB 14-16) and in Magistrate Judge Dein's Report (Report 40-47), none of those allegations, either individually, or taken in aggregate, support any inference, let alone a strong inference, of scienter.

**b.    Plaintiffs' Motive Allegations Do
Not Support Any Inference Of Scienter.**

For the reasons discussed above, <u>see</u> <u>supra</u> 10-11, Plaintiffs' motive allegations relating to the Individual Defendants' stock trading and bonus compensation do not support any inference of scienter.  As explained in Defendants' Moving Brief, Defendants' insider trading and bonus allegations also cannot support an inference of scienter as applied to Plaintiffs' restatement-related claims for the additional reason that they are illogical.  As Magistrate Judge Dein held:

> [T]he Plaintiffs' assertion that the Defendants were motivated to engage in fraud by a desire to make more money through stock sales and incentive-based bonuses is belied by allegations that the Defendants sold stock and received bonuses during periods when the Company's diluted EPS was understated.

Report 40-41.  Given that Plaintiffs' Amended Complaint contains no **new** facts to support their motive allegations, those allegations remain illogical and should be dismissed for the reasons set forth in Defendants' Moving Brief (MB 31-32) and Magistrate Judge Dein's Report.  Report 47-51.

**B.    Plaintiffs' Financial Disclosure Claims
Relating To IFIN's SBA Securities Must Be Dismissed.**

**1.    Plaintiffs' SBA Security-Related Claims Must
Be Dismissed Under The Law Of The Case Doctrine.**

As Defendants demonstrate above, the law of the case doctrine applies to the Amended Complaint, and it dictates the dismissal of Plaintiffs' SBA-related claims.  In her Report,

Magistrate Judge Dein recommended that this Court dismiss Plaintiffs' SBA security-related claims due to the Plaintiffs' failure adequately to allege loss causation with respect to those claims. Report 52-55. Plaintiffs do not -- because they cannot -- point to any **new** factual allegation that cures the deficiencies that this Court identified in dismissing Plaintiffs' SBA securities related claims on loss causation grounds. Thus, again, their arguments essentially amount to a motion for reconsideration. Without citing to the Court any new facts or law, Plaintiffs have not provided to the Court any basis for reversing its prior ruling.

For example, in their Amended Complaint, Plaintiffs make the following allegations concerning loss causation:

- "[T]hroughout the Class Period, it was part of the Investors Financial Defendants' scheme to present a misleading picture of Investors Financial's net interest income by failing to truthfully disclose: . . . 3) the Company was **in violation of FASB Statement No. 115 by classifying the Company's . . . (SBA securities) . . . as HTM** . . . [and] 4) the Company was in violation of EITF 99-20 and **failed to write down the SBA securities to fair value** . . . ." AC ¶ 298 (emphasis added).

- "On November 16, 2004, the stock price rose to $3.93 per share . . . . [H]ad the Investors Financial Defendants disclosed the truth that the Company's . . . net interest income derived from its SBA securities would be lower than initially projected . . . the resulting stock movement would have been negative." AC ¶ 302 (emphasis added).

- "On **July 14, 2005**, the truth about Investors Financial's operations and financial condition reached the market when Investors Financial announced that its *net interest income for the second quarter of 2005 would be flat compared to the same period in 2004* and the Company was revising its fiscal years 2005 and 2006 diluted EPS guidance." AC ¶ 303 (second emphasis in original).

- "On **August 9, 2005**, Investors Financial filed its . . . Form 10-Q and admitted that the Company's drastically reduced guidance and its flat net interest income was in part **due to prepayments on its SBA securities** stating: *'[p]repayment experience for Federal agency securities (primarily SBA guaranteed loan pools) also increased over this period as the weighted average life of the securities shortened'* and that 'the combination of heightened prepayment experience and, more significantly, reduced reinvestment opportunities to continue to pressure

16

out net interest income for the remainder of 2005.'"  AC ¶ 304 (third emphasis in original).

The Opposition Brief fails to explain how these allegations include any **new** fact, or cite to any exceptional circumstance, that would save Plaintiffs' SBA-related claims from dismissal under the law of the case doctrine.  Indeed, Magistrate Judge Dein previously rejected each of these loss causation allegations, holding the following:

- "[T]he Plaintiffs have failed to link their loss to **any alleged misstatements or omissions regarding the Company's SBA securities**."  Report 53 (emphasis added).

- "In fact, according to the allegations in the Complaint, it was never revealed that Investors Financial was using an improper method of accounting for its SBA loans or that those loans had become impaired and should have been written down."  Report 53.

- "Plaintiffs contend that if the Defendants had not continued to conceal the truth about the Company's SBA portfolio, their loss resulting from the announcement of the restatement would have been greater.  Therefore, the Plaintiffs have not pled that the Defendants' misstatements and omissions regarding the SBA loans proximately caused them to incur losses in 2004."  Report 54.

- [T]he Plaintiffs **have not alleged** that the **July 14, 2005 announcement** which caused them to suffer economic harm **revealed any information** that would have alerted investors that the Defendants had hid the **truth about the SBA securities**."  Report 54.

- "The Plaintiffs allege that '[t]he truth regarding the Company's earnings shortfall and severely reduced guidance' was not fully disclosed until **August 9, 2005**, when the Company revealed in its Form 10-Q . . . **that it had experienced prepayments on its SBA portfolio**.  However, **that announcement occurred after the close of the Class Period and the Plaintiffs have not alleged any economic loss resulting from that belated disclosure**."  Report 54-55 (citation omitted) (emphasis added).

Magistrate Judge Dein has already held that these loss causation allegations, which Plaintiffs recycle from their Consolidated Complaint, fail to satisfy Dura Pharms., Inc. v. Broudo, 544 U.S. 336 (2005), as a matter of law.  Report 52-55.  Lacking any new facts and failing to cite a change in controlling authority, this Court should reject Plaintiffs' SBA security-related claims under the law of the case doctrine.

A/72516824.6

Even if the law of the case doctrine did not mandate dismissal of Plaintiffs' SBA security-related claims -- and it does -- those claims should be dismissed for all of the reasons stated <u>infra</u> at Section III.B.2, as well as the reasons stated in Magistrate Judge Dein's Report.

> **2.  Plaintiffs' SBA Security-Related Claims Must Be Dismissed Under The PSLRA And Rule 9(b).**

> **a.  Plaintiffs Fail To Plead Loss Causation Respecting Their SBA Security-Related Allegations.**

As detailed in Defendants' Moving Brief, none of Plaintiffs' SBA-related allegations can support a Section 10(b) claim because Plaintiffs have failed adequately to plead loss causation. To adequately plead loss causation, Plaintiffs must plead that **the allegedly concealed facts** have become "**generally known**" and that, as a result of such disclosure, the defendant company's **share price depreciated**. <u>Dura</u>, 544 U.S. at 344. Plaintiffs do not, and cannot, contest this law.

Here, Plaintiffs have alleged that IFIN failed properly to account for its SBA securities by: (1) classifying its SBA securities as HTM in violation of FAS 115; and (2) failing to write down its SBA securities to fair value under EITF 99-20. AC ¶ 298. However, in their Opposition Brief, Plaintiffs fail to identify any allegedly concealed facts concerning how IFIN accounts for its SBA securities that became "generally known" triggering a corresponding drop in IFIN's stock price during the putative class period. OB 31-35. Plaintiffs do not -- because they cannot -- cite to a single disclosure by IFIN, or anyone else, that revealed to the market that IFIN accounted for its SBA loans improperly under FAS 115, EITF 99-20, or any other accounting rule.

Instead, Plaintiffs devote the bulk of their loss causation riposte to an argument that Defendants have not advanced, <u>i.e.</u>, that IFIN's 2004 disclosure that it would restate its historical financial results, coupled with its July 14, 2005 revision of its earnings guidance, demonstrate that Plaintiffs have satisfied <u>Dura</u>'s loss causation requirement. OB 31-35. Defendants, however, have **not** argued that Plaintiffs' claims based on forward-looking statements or IFIN's restatement fail for lack of loss causation. MB 33-36. Rather, it is Plaintiffs' **SBA-related claims** that fail for lack of loss causation. Regardless, Plaintiffs' Opposition Brief attempts to

conflate the fact that IFIN revised its guidance with Plaintiffs' allegation that IFIN accounted incorrectly for its SBA securities, in an effort to save Plaintiffs' SBA-related claims from dismissal on loss causation grounds.

However, IFIN's July 14, 2005 disclosure did not make any announcement about any alleged inaccuracy in any previously reported financial results, whether relating to its accounting for its SBA securities, or any other matter.  <u>See</u> App. 15.  Nor did IFIN's November 15, 2004 restatement of its historical financial results disclose that IFIN accounted incorrectly for its SBA securities.  In fact, as Plaintiffs themselves allege, upon restating its historical financial results, IFIN disclosed that the "restatement did not impact the accounting for our SBA portfolio."  AC ¶ 301.  Plaintiffs do not, because they cannot, allege any specific fact to the contrary.

The best Plaintiffs can do is provide a strained and contorted explanation of how a post-class period disclosure concerning increased prepayments on IFIN's SBA loans that caused IFIN's stock price to rise, somehow satisfies <u>Dura</u>'s loss causation requirement regarding Plaintiffs' SBA-related claims.  OB 31-35.   Plaintiffs' argument fails for two reasons.  First, Magistrate Judge Dein held, unequivocally, that IFIN disclosed both the risk and amount of prepayments on its securities:

> **<u>The record is clear</u>** that the Defendants **<u>did report the amount of prepayments</u>** on the Company's cash flow statements during every financial period, and Defendants do not deny that they knew about prepayments.  **<u>The record is also clear that the risks of prepayments were detailed in SEC filings</u>**.

Report 20 (emphasis added).  Plaintiffs do not allege any specific facts indicating that any of those prior disclosures was inaccurate, let alone by how much, or in what financial quarters or years.

Second, Plaintiffs have not pled any specific facts that link IFIN's August 9, 2005 post-class period disclosure to any alleged inaccuracy in how IFIN accounted for its SBA securities.  The fact that SBA loan prepayments increased in Q2 05, in response to a historically anomalous and unexpected movement in interest rates during that quarter, bears no connection to any alleged inaccuracy in IFIN's accounting for its SBA securities in any prior financial period.

Neither that August 9, 2005 post-class period disclosure, nor any other disclosure ever signaled to the market that IFIN had ever accounted incorrectly for its SBA securities, for any financial period (as it did not do so). Try as they might, Plaintiffs cannot escape that fact.

At bottom, IFIN never disclosed to the market, nor did the market ever otherwise learn, that IFIN ever accounted inaccurately for its SBA securities, whether in November 2004, July or August 2005, or at any other time. That unassailable fact precludes Plaintiffs from pleading loss causation as to their SBA security claims, which dictates the dismissal of those claims.

    **b.**    **Plaintiffs Fail To Plead Specific Facts
Regarding The Company's SBA Securities Establishing
That Any Financial Disclosure Was False Or Misleading.**

        **(1)**    **Plaintiffs Fail To Plead Specific Facts
Showing That The Company Misclassified
Its SBA Securities Or "Certain" Of Its MBS Securities.**

As Defendants highlight in their Moving Brief, Plaintiffs' Amended Complaint is devoid of any specific facts supporting Plaintiffs' allegation that IFIN misled investors by misclassifying its SBA securities and certain unspecified MBS securities as HTM under FAS 115 and FAS 140. Compare MB 36-40 with FAC ¶¶ 5, 8, 57, 62, 95, 122, 135, 143, 151, 177, 193, 199 & 226-230. In their Opposition Brief, Plaintiffs provide no answer to Defendants' arguments, as they have none.

Although Plaintiffs cite repeatedly to In re Cabletron Sys., Inc., 311 F. 3d 11 (1st Cir. 2002) and Aldridge v. A.T. Cross, 284 F.3d 72 (1st Cir. 2002), those two cases lend no support to Plaintiffs' Opposition Brief because they involve facts bearing no similarity to those here. In Cabletron, according to six former Cabletron employees, Cabletron engaged in a wide variety of revenue inflation techniques in order fraudulently to inflate its reported financial results. See Cabletron, 311 F.3d at 24. According to those sources, Cabletron processed as much as $100 million in fictitious sales by writing phony purchase orders for nonexistent sales late in one quarter, only to take back the merchandise after the next quarter began, when the merchandise simply "sat on the shelves or lay in the corridors." See id. at 25. In addition, Cabletron executives directed employees to store merchandise at their homes, and the complaint

20

specifically identifies one such employee who did so at the direction of the company's COO.
See id. Describing the specificity of the allegations that the complaint there based on statements
attributed to anonymous sources, the First Circuit stressed:

> Far from resting on mere assertions, the anonymous sources describe tractor-
> trailers in the factory yard, equipment "borrowed" from the employees' desks to
> be fraudulently processed, and the unusual activity in the warehouse as products
> were shuttled back and forth. The sources provide the name and address of one
> employee who is said to have stashed goods in the garage of his home, and say
> that [an individual defendant] told him to do so. There are multiple sources for
> many of the fictitious sales claims.

Id. at 31. In short, Cabletron highlights the degree of specificity that the PSLRA and Rule 9(b)
require, and that the Amended Complaint here lacks.

Aldridge is also of no help to Plaintiffs. The plaintiffs there alleged that Cross had
materially overstated its revenue by booking sales of its note pad products, even though Cross
had given its resellers price protection (i.e., Cross had promised its resellers that they would
receive credits or allowances if the price for Cross's products declined before the reseller was
able to sell the Cross products to end users). Aldridge, 284 F.3d at 79. Cross officials admitted
publicly in 1999 that Cross offered price protection to its resellers, yet Cross made no mention of
that fact in its SEC filings for the relevant periods. Id. at 79-80. These practices violated GAAP.
See id. at 80. Explaining its decision to sustain the complaint in Aldridge, even though it lacked
the details regarding allegedly improper accounting that the First Circuit held fatally wanting in
Greebel, the court emphasized:

> [I]n Greebel, there was no evidence of statements by management indicating
> material undisclosed contingencies, while here there was such evidence. Further,
> it is reasonable to infer that in this case all customers were offered price
> protection as a matter of company policy. Cross itself attributed losses in early
> 1999 in part to its price protection program. There was therefore little need for
> the type of specificity discussed in Greebel.

Id. at 80.

Here, like Greebel, but unlike Aldridge, the Amended Complaint lacks any allegations
respecting admissions made by members of the defendant company's senior management that
the company improperly accounted for its SBA securities during the relevant period.

21

Furthermore, no Defendant has ever admitted that IFIN engaged in any improper accounting practice in connection with any particular SBA securities, let alone all of its SBA securities. Thus, here, unlike <u>Aldridge</u>, there is a "need for the type of specificity discussed in <u>Greebel</u>." <u>Id.</u>

More specifically, as detailed in Defendants' Moving Brief, Plaintiffs allege that IFIN improperly classified its SBA securities and certain unspecified MBS securities as held-to-maturity under FAS 115 and FAS 140. FAC ¶¶ 226-231. As Defendants previously explained, the fact that a security may be contractually prepaid does not disqualify it, necessarily, from being classified as HTM. FAS 140 Appendix A, ¶ 293 ("[I]nvestments in mortgage-backed securities or callable securities purchased at an insubstantial premium, for example, are not necessarily disallowed from being classified as [HTM].") (App. 26). The relevant inquiry in determining whether a security that can be contractually prepaid may be classified as HTM is whether the company can recover "substantially all" of its investment. FAS 140, ¶ 293, Appendix A; <u>See</u> FAC ¶ 227 ("A security may not be classified as held-to-maturity if that security can contractually be prepaid or otherwise settled in such a way that the holder of the security would not recover <u>substantially all of its recorded investment</u>.") (emphasis added).

Plaintiffs' Opposition Brief does not even attempt to explain how IFIN could not recover "substantially all" of its investment in securities that IFIN classified as HTM when, as Plaintiffs allege in their Amended Compliant, SBA pools are "backed by the full faith and credit of the U.S. government" and "[t]he investor in an SBA loan or pool has an unconditional **guarantee** as to the **repayment** of **100%** of the principal and accrued interest outstanding on a timely basis." FAC ¶ 43 (emphasis added).[6] For example, Plaintiffs' Opposition Brief contains only the

---

[6] Plaintiffs also fail to cite to the specific facts underlying their conclusory allegation that IFIN's SBA loans can be "prepaid without penalty" (FAC ¶ 49) in light of the fact that the Small Business Administration imposes mandatory prepayment penalties on SBA loans that have a maturity of 15 years or more. <u>See</u> App. 27; <u>see also</u> www.sba.gov/services/financialassistance /basics/sbarole/serv_7a_penalties.html.

following two conclusory sentences regarding IFIN's alleged misclassification of its SBA securities:

- "Defendants' arguments aside, there can be no question that plaintiffs identify with particularity how IFIN improperly classified its SBA and MBS as HTM securities . . . ."  OB 16.

- "Similarly, by improperly classifying the SBA securities as HTM, defendants further misled the market into believing that payments were not significant."  OB 23.

Neither of these sentences address, in any way, whether IFIN could recover "substantially all" of its investment in its SBA loans.  Furthermore, Plaintiffs' Opposition Brief does not contain a single citation to FAS 115 or FAS 140, the two GAAP provisions that IFIN allegedly violated by classifying IFIN's SBA securities as HTM, much less discuss any of the specific factors contained in those accounting provisions that determine whether a company should classify its securities as HTM.  Ultimately, Plaintiffs' complete failure to respond to these arguments regarding the Amended Complaint's HTM allegations underscores the numerous deficiencies of those allegations.

In sum, Plaintiffs' Opposition Brief fails to identify any specific facts pled in the Amended Complaint demonstrating that IFIN misclassified its SBA securities as HTM under FAS 115 and FAS 140, as none exist.  For that reason, Plaintiffs have failed sufficiently to allege that IFIN improperly classified any securities as HTM, as a matter of law.

### (2)     Plaintiffs Fail To Plead Specific Facts Showing That The Company Was Required To Write Down The Value Of Its SBA Portfolio.

Plaintiffs' Amended Complaint asserts that IFIN's press releases and financial results were misleading because IFIN failed to take a "write-down" on its SBA portfolio, which Plaintiffs allege was required under EITF 99-20.  FAC ¶ 168 (c).  However, as Defendants highlight in their Moving Brief, EITF 99-20, on its face, does not apply to IFIN's SBA loan portfolio.  Paragraph 5.e. of EITF 99-20 states that it does not apply to "financial assets that (1) are of **high credit quality** (for example, **guaranteed by the U.S. Government**, its agencies, or

other creditworthy guarantors, and loans or securities sufficiently collaterized to ensure that the possibility of credit loss is remote). . . ."  EITF 99-20 ¶ 5.e (emphasis added) (App. 28).  As Plaintiffs admit in their Amended Complaint, "**SBA** **guaranteed**-**loan** **pools** are **backed** **by** **the** **full** **faith** **and** **credit** **of** **the** **U.S. government** and offer the advantage of excellent credit quality, while allowing investors to earn high yields indexed off the prime rate."  FAC ¶ 43 (citing Anand K. Bhattacharya & Frank J. Fabozzi, Asset-Backed Securities, Chapter 10: SBA Loan-Backed Securities) (emphasis added).  Plaintiffs literally ignore this point, and there is not a single mention of, or citation to, EITF 99-20 in Plaintiffs' 37-page Opposition Brief.  In the end, however, the Opposition Brief's silence on this point is irrelevant.  The SBA-related allegations in the Amended Complaint are defectively pled, and no amount of rhetorical gloss could have saved them from dismissal.

        **c.**      **Plaintiffs Fail Adequately To Plead Scienter**
                           **Respecting Their SBA Security-Related Allegations.**

Plaintiffs also completely fail to respond to the argument that they have failed to plead specific facts giving rise to a strong inference that any Defendant knew that any statements respecting SBA securities was false or misleading.  More particularly, the Opposition Brief fails to identify a single contemporaneous fact pled in the Amended Complaint -- not a single specific document, or meeting, or conversation -- supporting a strong inference that any Individual Defendant knew that any disclosure concerning IFIN's SBA loans was false when made.  For this independent reason, Plaintiffs' SBA security-related claims must be dismissed under Rule 9(b) and the PSLRA.

## CONCLUSION

For all of the foregoing reasons, the Amended Complaint should be dismissed.  Furthermore, because this Court already has dismissed Plaintiffs' Consolidated Complaint, without prejudice, and their Amended Complaint represents Plaintiffs' third effort to articulate cognizable claims, "[c]onsiderations of fairness, judicial economy, and congressional purpose in enacting the Securities Laws all point to a denial of discovery and to dismissal of this complaint

A/72516824.6

with prejudice."  <u>Carney</u>, 135 F. Supp. 2d at 257 (quoting <u>Colby v. Hologic, Inc.</u>, 817 F. Supp.

204, 217 (D. Mass. 1993)).

Respectfully submitted,

**INVESTORS FINANCIAL SERVICES
CORP., KEVIN J. SHEEHAN,
MICHAEL F. ROGERS, JOHN N.
SPINNEY, JR., KAREN C. KEENAN,
ROBERT D. MANCUSO, EDMUND J.
MARONEY AND JOHN E. HENRY**

By their attorneys,

/s/ Jordan D. Hershman
Jordan D. Hershman, BBO #553709
Jason D. Frank, BBO #634985
James P. Lucking, BBO #650588
William R. Harb, BBO #657270
**BINGHAM McCUTCHEN LLP**
One Federal Street
Boston, MA  02110
(617) 951-8000

Dated: July 11, 2008

25

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 11, 2008.

/s/ Jordan D. Hershman

26